ORAL ARGUMENT SCHEDULED ON MAY 14, 2026

Nos. 25-5241, 25-5265, 25-5277, 25-5310

In the United States Court of Appeals
for the District of Columbia Circuit

PERKINS COIE LLP,
PLAINTIFF-APPELLEE
*v.*

U.S. DEPARTMENT OF JUSTICE, ET AL.
DEFENDANTS-APPELLANTS

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA*

BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA, CATO INSTITUTE, ELECTRONIC FRONTIER FOUNDATION, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, NATIONAL COALITION AGAINST CENSORSHIP, REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, RUTHERFORD INSTITUTE, AND SOCIETY FOR THE RULE OF LAW IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

Arthur B. Spitzer
Scott Michelman
Laura K. Follansbee
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF THE DISTRICT OF
 COLUMBIA
529 14th Street, NW, Ste. 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org

*Counsel for* Amici Curiae

Clark M. Neily III
Thomas A. Berry
CATO INSTITUTE
1000 Mass. Ave. N.W.
Washington, D.C. 20001
(202) 425-7499
cneily@cato.org

*Counsel for Cato Institute*

William Creeley
Robert Corn-Revere
Ronald G. London
FOUNDATION FOR INDIVIDUAL
RIGHTS AND
 EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473

*Counsel for Foundation for
Individual Rights & Expression*

Brian Hauss
Ben Wizner
Cecillia D. Wang
AMERICAN CIVIL LIBERTIES
 UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
bhauss@aclu.org

*Counsel for* Amici Curiae

David Greene
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
davidg@eff.org

*Counsel for Electronic Frontier
Foundation*

Lee Rowland
Erika Sanders
NATIONAL COALITION AGAINST
CENSORSHIP
29 Broadway, Suite 1400
New York, NY 10006
(212) 807-6222

*Counsel for National Coalition
Against Censorship*

*Additional counsel listed on the
following page*

i

Alex Abdo
Jameel Jaffer
KNIGHT FIRST AMENDMENT
INSTITUTE
 AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500

*Counsel for Knight First
Amendment Institute at Columbia
University*

Bruce D. Brown
Lisa Zycherman
Gabriel Rottman
Mara Gassmann
Grayson Clary
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1020
Washington, DC 20005
(202) 795-9300
bbrown@rcfp.org

*Counsel for Reporters Committee
for Freedom of the Press*

John W. Whitehead
William E. Winters
THE RUTHERFORD INSTITUTE
109 Deerwood Road
Charlottesville, VA 22911
legal@rutherford.org

*Counsel for Rutherford Institute*

Gregg Nunziata
SOCIETY FOR THE RULE OF LAW
601 Pennsylvania Ave NW
South Building, Suite 900
Washington, DC 20004
(202) 410-0659
info@societyfortheruleoflaw.org

*Counsel for Society for the Rule of
Law*

ii

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED

## CASES AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and D.C. Circuit Rule 28(a)(1), undersigned counsel certifies as follows:

A.　　Parties and *Amici*

All parties and *amici* appearing before the district court and in this Court are listed in the briefs for the parties and the other *amici*, except for the following: *amici curiae* American Civil Liberties Union, American Civil Liberties Union of the District of Columbia, Cato Institute, Electronic Frontier Foundation, Foundation for Individual Rights and Expression, Knight First Amendment Institute at Columbia University, National Coalition Against Censorship, Reporters Committee for Freedom of the Press, Rutherford Institute, and Society for the Rule of Law, which file this brief in support of Plaintiffs-Appellees.

*Amici curiae* American Civil Liberties Union, American Civil Liberties Union of the District of Columbia, Cato Institute, Electronic Frontier Foundation, Foundation for Individual Rights and Expression, Knight First Amendment Institute at Columbia University, National Coalition Against Censorship, Reporters Committee for Freedom of the

iii

Press, Rutherford Institute, and Society for the Rule of Law state that they do not have a parent corporation and that no publicly held corporation owns 10% or more of their stock.

B.    Rulings Under Review

References to the rulings at issue appear in the government's opening brief.

C.    Related Cases

These cases have not previously been before this Court or any court other than the district court. Undersigned counsel is aware of the following related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C): No. 26-5009, *Mark Zaid v. Executive Office of the President, et al.*

<u>/s/</u> Brian Hauss
Brian Hauss

iv

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES AND CORPORATE DISCLOSURE STATEMENT ................................................. iii

TABLE OF AUTHORITIES ............................................................................ vi

INTERESTS OF *AMICI CURIAE* ................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 6

ARGUMENT ................................................................................................ 9

    I.   The Executive Orders Unconstitutionally Retaliate Against the Firms for Their Legal Advocacy. .......................................................... 11

    II.  The Executive Orders Violate Separation of Powers and Due Process. ............................................................................................... 17

CONCLUSION ........................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Abel v. United States,*
  362 U.S. 217 (1960) ................................................................. 19

*Aref v. Lynch,*
  833 F.3d 242 (D.C. Cir. 2016) ................................................. 11

*Backpage.com, LLC v. Dart,*
  807 F.3d 229 (7th Cir. 2015) .................................................. 10

*Bantam Books, Inc. v. Sullivan,*
  372 U.S. 58 (1963) .................................................................. 16

*Borough of Duryea v. Guarnieri,*
  564 U.S. 379 (2011) ................................................................ 11

*Cheek v. United States,*
  858 F.2d 1330 (8th Cir. 1988) ................................................ 22

*Department of the Navy v. Egan,*
  484 U.S. 518 (1988) ................................................................ 14

*Doe v. District of Columbia,*
  697 F.2d 1115 (D.C. Cir. 1983) .............................................. 22

*Hartman v. Moore,*
  547 U.S. 250 (2006) ................................................................ 11

*Hollins v. Oklahoma,*
  295 U.S. 394 (1935) ................................................................ 18

*In re Debs,*
  158 U.S. 564 (1895) ................................................................ 18

*Joint Anti-Fascist Refugee Committee v. McGrath,*
  341 U.S. 123 (1951) ................................................................ 14

*Legal Services Corp. v. Velazquez,*
  531 U.S. 533 (2001) ................................................ 12, 13, 17, 21, 22

*Lozman v. City of Riviera Beach,*
   585 U.S. 87 (2018) ...............................................................................11

*Marbury v. Madison,*
   1 Cranch 137 (1803) ............................................................................ 17

*Miller v. California,*
   413 U.S. 15 (1973) ................................................................................ 4

*N.Y. Times Co. v. United States,* 403 U.S. 713 (1971) ........................ 19

*NAACP v. Button,*
   371 U.S. 415 (1963) ............................................................................ 16

*National Federation of Federal Employees v. Greenberg,*
   983 F.2d 286 (D.C. Cir. 1993) ............................................................ 14

*NetChoice, LLC v. Bonta,*
   --- F.4th ----, 2026 WL 694471 (9th Cir. Mar. 12, 2026) .................... 3

*Novoa v. Diaz,*
   No. 22-13994 (11th Cir. argued June 14, 2024) .................................. 3

*Novoa v. Diaz,*
   No. 4:22-cv-324, ECF No. 44 (N.D. Fla., Nov. 17, 2022) ................... 3

*NRA v. Vullo,*
   602 U.S. 175 (2024) ....................................................................... 1, 16

*Powell v. Alabama,*
   287 U.S. 45 (1932) .............................................................................. 23

*Singletary v. District of Columbia,* 351 F.3d 519, 525 (D.C. Cir. 2005) ....................... 15

*Stanford Daily Publishing Corp. v. Rubio,*
   --- F.Supp.3d ----, 2026 WL 125241 (N.D. Cal. Jan. 16, 2026) ................................. 3

*Trump v. Selzer,*
   No. 4:24-cv-00449 (S.D. Iowa dismissed Dec. 2, 2025) ....................... 3

*United States ex rel. Carey v. Rundle,*
   409 F.2d 1210 (3d Cir. 1969) .............................................................. 22

*United States v. Gonzalez-Lopez,*
   548 U.S. 140 (2006) ............................................................................ 22

*Volokh v. James*,
(2d Cir. 2025), *certification accepted*, No. CTQ-2025-00006, 2025 WL 2646981 (N.Y. Sept. 16, 2025).................................................................. 3

**Rules**

Exec. Order No. 14244, 90 Fed. Reg. 13685, "Addressing Remedial Action by Paul Weiss," (Mar. 21, 2025)....................................................................... 7

**Other Authorities**

Albin Krebs, *Edward Bennett Williams, 68, Influential Trial Lawyer Dies; A Brilliant 'Superlawyer,'* N.Y. Times, Aug. 14. 1988 .................................... 20

1 Annals of Cong. 439 (J. Madison) (Joseph Gales ed., 1834) ...................... 17

*Arthur Hill Dies; Lawyer in Boston*, N.Y. Times, Nov. 30 1947................... 18

Bridge of Spies (Steven Spielberg, 2015)....................................................... 19

Clay Risen, *At a Time When Lawyers Feared Defending Government Enemies, One Law Firm Stood Up*, Politico (Mar. 26, 2025)....................................... 19

*Constance Baker Motley*, Supreme Court Historical Society ......................... 19

The Diary of John Adams, March 5, 1773 ...................................................... 18

Matthew Goldstein, *Five More Big Law Firms Reach Deals With Trump*, N.Y. Times, Apr. 11, 2025 ...................................................................................... 7

Matthew Goldstein, *Two Law Firms File for Permanent Relief From Trump's Executive Orders*, N.Y. Times, Apr. 10, 2025 ...................................... 13, 21

Neil A. Lewis, *Official Attacks Top Law Firms Over Detainees*, N.Y. Times (Jan. 13, 2007) ............................................................................................... 20

viii

## INTERESTS OF *AMICI CURIAE*[1]

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit organization that since 1920 has sought to protect the civil liberties of all Americans. The ACLU of the District of Columbia (ACLU-DC) is the ACLU's Washington, D.C. affiliate. The ACLU and ACLU-DC have frequently appeared in this Court, as counsel to parties or as *amicus*, in cases raising significant questions about the meaning of the Constitution, its limitations on government power, and the breadth of rights it grants. They have also participated as counsel or *amici curiae* in many consequential First Amendment cases, including those involving retaliation and constitutional protections for legal advocacy. *See, e.g.*, *NRA v. Vullo*, 602 U.S. 175 (2024) (counsel); *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001) (*amicus*). The ACLU and ACLU-DC also frequently collaborate with law firms on lawsuits challenging

---

[1] All parties have consented to the filing of this *amicus* brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for *amici curiae* certify that no counsel for a party authored this brief in whole or in part, and no person other than *amici curiae*, their members, or their counsel made a monetary contribution to the brief's preparation or submission.

government action, including lawsuits that appear to have precipitated the Executive Orders at issue here.

The Cato Institute is a nonpartisan public-policy research foundation established in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to help restore the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato files *amicus* briefs, publishes books and studies, conducts conferences, and produces the annual *Cato Supreme Court Review*.

The Electronic Frontier Foundation (EFF) is a nonprofit legal organization that has defended the rights of technology users in U.S. courts for almost 35 years. EFF's impact litigation includes numerous cases against the federal government challenging both legislative and executive actions. EFF's work is founded on the belief that lawsuits against the federal government are a vital component of the system of checks and balances that undergirds American democracy.

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the rights of all Americans to free

speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights nation-wide without regard to the speakers' views through public advocacy, strategic litigation, and participation as amicus curiae in cases that implicate expressive rights. *See, e.g.*, *Trump v. Selzer*, No. 4:24-cv-00449 (S.D. Iowa dismissed Dec. 2, 2025); *Stanford Daily Publ'g Corp. v. Rubio*, --- F.Supp.3d ----, 2026 WL 125241 (N.D. Cal. Jan. 16, 2026); *Volokh v. James*, (2d Cir. 2025), *certification accepted*, No. CTQ-2025-00006, 2025 WL 2646981 (N.Y. Sept. 16, 2025); *Novoa v. Diaz*, No. 4:22-cv-324, ECF No. 44 (N.D. Fla., Nov. 17, 2022), *pending appeal sub nom. Novoa v. Diaz*, No. 22-13994 (11th Cir. argued June 14, 2024); *NetChoice, LLC v. Bonta*, --- F.4th ----, 2026 WL 694471 (9th Cir. Mar. 12, 2026). As a free speech organization whose litigators are of necessity adverse to government bodies in all branches of government in the vast majority of their cases, often representing speakers with whom government actors strongly disagree, it is imperative that FIRE remain free to zealously advocate on behalf of its clients without fear of unconstitutional official reprisal or retaliation.

The Knight First Amendment Institute at Columbia University is a non-partisan, not-for-profit organization that works to defend the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. The Institute's aim is to promote a system of free expression that is open and inclusive, that broadens and elevates public discourse, and that fosters creativity, accountability, and effective self-government.

The National Coalition Against Censorship (NCAC) is an alliance of more than 60 national non-profit literary, artistic, religious, educational, professional, labor, and civil liberties groups. NCAC was founded in 1974 in response to the United States Supreme Court's landmark decision in *Miller v. California*, 413 U.S. 15 (1973), which narrowed First Amendment protections for sexual expression and opened the door to obscenity prosecutions. The organization's purpose is to promote freedom of thought, inquiry and expression and to oppose censorship in all its forms. NCAC engages in direct advocacy and education to support the free expression rights of activists, students, teachers, librarians, artists, and others. It therefore has a longstanding interest in assuring the continuance of robust free expression protections

for all—which includes access to counsel who can vindicate individual First Amendment rights. The positions advocated in this brief do not necessarily reflect the views of NCAC's member organizations.

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association. It was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, *amicus curiae* support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

The Rutherford Institute is a nonprofit civil liberties organization headquartered in Charlottesville, Virginia. Founded in 1982 by its President, John W. Whitehead, the Institute provides legal assistance at no charge to individuals whose constitutional rights have been threatened or violated and educates the public about constitutional and human rights issues affecting their freedoms. The Rutherford Institute works tirelessly to resist tyranny and threats to freedom by seeking to ensure that the government abides by the rule of law and is held

5

accountable when it infringes on the rights guaranteed by the Constitution and laws of the United States.

Society for the Rule of Law is a national membership organization of conservative, libertarian, and center-right lawyers, and others, who prioritize the defense of the rule of law, the Constitution, and American democracy above their partisan and policy preferences. This case is of central concern to the Society because it implicates indispensable protections of our system of ordered liberty, specifically the Constitution's provision of separation of powers and the First Amendment's guarantee of freedom of speech.[2]

**INTRODUCTION AND SUMMARY OF ARGUMENT**

As part of a concerted effort to chill law firms from taking cases adverse to the Administration, President Trump targeted several large law firms—including Plaintiffs-Appellees Perkins Coie LLP, Jenner & Block LLP, Wilmer Cutler Pickering Hale and Dorr LLP (WilmerHale), and Susman Godfrey LLP ("the Firms")—for serious, potentially business-ending sanctions by executive fiat. The sanctions were based

---

[2] The views of the Society expressed here do not necessarily reflect those of any individual member.

6

largely on the Firms' legal advocacy on behalf of clients and issues disfavored by the Administration, which the Executive Orders broadly characterize as *inter alia* "partisan 'lawfare.'"

The Executive Orders had immediate and alarming effects on the bar. President Trump revoked the Executive Order against one firm, Paul, Weiss, Rifkind, Wharton & Garrison LLP, pursuant to an agreement with the firm to take various remedial measures, including the donation of pro bono legal support to the President's preferred causes. Exec. Order No. 14244, 90 Fed. Reg. 13685, "Addressing Remedial Action by Paul Weiss," (Mar. 21, 2025). And he extracted concessions from more firms by threatening to similarly retaliate against them. *See* Matthew Goldstein, *Five More Big Law Firms Reach Deals With Trump*, N.Y. Times, Apr. 11, 2025, at A12.[3]

As recognized by all four district courts below, the Executive Orders against the Firms violate fundamental First Amendment freedoms and other constitutional protections. More generally, President Trump's systematic use of executive orders to cow law firms into political and

---

[3] https://www.nytimes.com/2025/04/11/business/trump-law-firms-kirkland-ellis-latham-watkins.html.

ideological submission undermines the rule of law at its foundation. The fallout from these assaults on the bar's independence may not be limited to lawyers who represent clients or causes that are perceived as hostile to President Trump; the precedent created here could be used by future presidents, of either party, to chill advocacy hostile to their policies or opposed to executive branch officials. If allowed to stand, these pressure tactics will have broad and lasting impacts on Americans' ability to retain legal counsel in important matters, to arrange their business and personal affairs as they like, and to speak their minds.

*Amici* are legal advocacy organizations from across the ideological spectrum that have in common an abiding commitment to the Constitution and the liberties it protects. We write to set out the ways in which the First Amendment, the separation of powers, and due process rights prohibit the President's orders sanctioning the Firms for their protected legal advocacy.

## ARGUMENT

*Amici* write to address two basic points.

First, President Trump's Executive Orders unconstitutionally retaliate against the Firms for their advocacy on behalf of private individuals and organizations, in violation of the First Amendment. Both the Speech and Petition Clauses protect lawyers' advocacy on behalf of their clients against arbitrary or viewpoint-based government interference. The sweeping and draconian sanctions imposed by the Executive Orders—including, among other things, the loss of access to federal facilities and federal employees, the *en masse* suspension of security clearances for the Firms' lawyers, and an implicit blacklist on the Firms' business with federal contractors—threaten to destroy the Firms and would chill *any* law firm from participating in similar advocacy against the Trump Administration or its officials. And the Executive Orders' sanctions are expressly premised on the Firms' protected advocacy against the Administration.

Second, the Executive Orders violate fundamental separation-of-powers principles by striking at the bar's independence. The judiciary depends on an independent bar to fulfill its constitutional role as a

bulwark against usurpations by the legislative and executive branches. By chilling lawyers from engaging in zealous advocacy on behalf of clients adverse to the Administration, the Executive Orders not only infringe the protected speech and petitioning of private parties, they also deprive courts of the expert counsel necessary, in our adversarial legal system, for a full and fair adjudication of the most pressing constitutional and statutory issues. And the Executive Orders have dire immediate consequences for the targeted firms' clients, infringing their right to counsel under the Fifth and Sixth Amendments by arbitrarily prohibiting the Firms' lawyers from using federal facilities, engaging with federal officials (including federal prosecutors), and suspending security clearances necessary to work on matters involving classified information.

"[W]here would such official bullying end, were it permitted to begin?" *Backpage.com, LLC v. Dart*, 807 F.3d 229, 235 (7th Cir. 2015). This Court should affirm the district courts' orders rebuking and enjoining the Administration's unconstitutional attempts to punish the Firms for their protected advocacy, and to intimidate other law firms and lawyers from taking on matters adverse to the government.

10

## I.    The Executive Orders Unconstitutionally Retaliate Against the Firms for Their Legal Advocacy.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *accord, e.g.*, *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018). To make out a First Amendment retaliation claim, a plaintiff must show that: (i) it engaged in constitutionally protected expression; (ii) defendants responded with an adverse action sufficient to deter a person of ordinary firmness in the plaintiff's position from speaking again; and (iii) there is a causal connection between the plaintiff's protected speech and the retaliatory actions taken against it. *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016). As the courts below recognized, the Firms easily satisfy all three factors.

First, the Constitution protects the Firms' legal advocacy on behalf of their clients. Such advocacy is protected under both the Speech and Petition Clauses of the First Amendment. *See Borough of Duryea v. Guarnieri,* 564 U.S. 379, 387 (2011) (holding that the Petition Clause protects access to federal courts, while acknowledging that the plaintiff "just as easily could have alleged that his employer retaliated against

11

him for the speech contained within his grievances and lawsuit"). The analysis under either Clause, for purposes of the Firms' respective retaliation claims, is substantially the same. *See id.* at 388 (holding that the framework for public employee retaliation claims under the Speech Clause applies to similar claims raised under the Petition Clause) ("It is not necessary to say that the two Clauses are identical in their mandate or their purpose and effect to acknowledge that the rights of speech and petition share substantial common ground. This Court has said that the right to speak and the right to petition are 'cognate rights.'" (quoting *Thomas v. Collins,* 323 U.S. 516, 530 (1945))).

The First Amendment bars the government from punishing or suppressing legal advocacy because of its viewpoint, as the Supreme Court recognized in *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001). There, plaintiffs challenged a statute prohibiting the use of federal Legal Services Corporation funds in cases challenging federal statutes under the U.S. Constitution or state statutes under federal law or the U.S. Constitution. *Id.* at 537. The Court held that lawyers' advocacy on behalf of their nongovernmental clients is constitutionally protected speech, regardless of who pays for it. *See id.* at 548–49. And it

12

concluded that viewpoint-based restrictions on such advocacy, even in the form of statutory restrictions on the use of legal services funds to raise federal statutory and constitutional challenges in litigation, violate the First Amendment. *Id.* ("Where private speech is involved, even Congress' antecedent funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest.").

Second, the draconian sanctions imposed by the Executive Orders would deter an ordinary person in the Firms' position, *i.e.*, other law firms, from engaging in similar advocacy in the future. Indeed, "several big law firms" have cut "deals with the White House" in order "to prevent big corporate clients from fleeing to other firms." Matthew Goldstein, *Two Law Firms File for Permanent Relief From Trump's Executive Orders*, N.Y. Times, Apr. 10, 2025, at B3.[4] "One provision of the deals is that the firms will perform free legal work for causes the President supports. In effect, those firms are agreeing not to support public interest groups challenging administration policies." *Id.* These responses were, unfortunately, unsurprising. The sanctions imposed by the Executive

---

[4] https://www.nytimes.com/2025/04/08/business/jenner-block-trump-filing.html.

Orders—including *inter alia* the attempt to coerce federal contractors into blacklisting the Firms for even nongovernment work, the denial of access to federal facilities and federal employees, and the loss of all security clearances for the Firms' employees[5] —are nothing short of a death sentence for any but the smallest and most local law firms. *Cf. Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 143 (1951) (Black, J., concurring) ("[G]overnment blacklists" of disfavored organizations "smack[] of a most evil type of censorship."). The message to the bar is crystal clear: Cross the Administration at your peril.

---

[5]The government argues that *Department of the Navy v. Egan*, 484 U.S. 518 (1988), forecloses judicial review of the Executive Orders' provisions suspending security clearances for Appellees' attorneys. DOJ Br. 20–40. But as the courts below all recognized, *Egan* does not bar review of the blanket suspensions at issue here. JA 1666–67, 2178, 2831, 3499–3500. Although *Egan* and its progeny limit review of the Executive's substantive determinations about whether an individual can be trusted with the nation's secrets, they do not bar courts from adjudicating constitutional challenges to the security clearance review process, including the failure to afford individualized process. *See Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 289 (D.C. Cir. 1993) ("It is simply not the case that all security-clearance decisions are immune from judicial review."); JA 1665 (collecting precedents "confirm[ing] that judicial review is available for claims that a general discriminatory policy governing security clearances exists"). The courts below properly enjoined the nakedly retaliatory blanket suspensions at issue here.

Finally, while direct evidence of retaliatory animus is not required, *see Singletary v. District of Columbia,* 351 F.3d 519, 525 (D.C. Cir. 2005), the causal connection between the Executive Orders and the Firms' protected advocacy is readily apparent. The Orders expressly identify the Firms' lawsuits challenging the Administration's policies and representation of disfavored clients as "partisan 'lawfare' . . . that undermine[s] justice and the interests of the United States." Add. 5; *see also* Add. 2 (citing efforts "to judicially overturn popular, necessary, and democratically enacted election laws, including those requiring voter identification"); Add. 8 (citing "obvious partisan representations to achieve political ends"); Add. 11 (citing "efforts to weaponize the American legal system and degrade the quality of American elections").[6] These are straightforward admissions that the Executive Orders were substantially motivated by the Firms' protected advocacy on behalf of their clients.[7]

---

[6] Some *amici curiae* are, or have been, co-counsel with the Firms in various cases.

[7] Of course, the aspersions cast by the Executive Orders on the Firms' legal advocacy do not remove one iota of First Amendment protection. "[W]hatever may be or may have been true of suits against government in other countries, the exercise in our own . . . of First Amendment rights

Although the government asserts that President Trump *also* had nonretaliatory grounds for sanctioning the Firms, DOJ Br. 52–54, that does not change the fact that the Orders were expressly tied to the Firms' protected speech and petitioning, thereby sending the unmistakable message that advocacy on behalf of disfavored clients and causes would invite similar retribution—a message that was swiftly and widely understood throughout the bar, with serious repercussions for access to representation in politically charged cases. *Cf. NRA v. Vullo*, 602 U.S. 175, 189 (2024) ("[T]he First Amendment prohibits government officials from relying on the 'threat of invoking legal sanctions and other means of coercion . . . to achieve the suppression' of disfavored speech." (omission in original) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963))). For that reason alone, this Court should reject the government's halfhearted argument that the Executive Orders were principally concerned with unprotected conduct.

---

to enforce constitutional rights through litigation, as a matter of law, cannot be deemed malicious." *NAACP v. Button*, 371 U.S. 415, 439–440 (1963).

16

## II.    The Executive Orders Violate Separation of Powers and Due Process.

The Executive Orders' retaliatory attacks on the Firms' constitutionally protected legal advocacy is not only a textbook First Amendment violation; it also threatens to undermine the bar's independence, violating basic separation-of-powers principles. The Framers conceived of the courts as an "impenetrable bulwark against every assumption of power in the Legislative or Executive." 1 Annals of Cong. 439 (J. Madison) (Joseph Gales ed., 1834). *See also Marbury v. Madison*, 1 Cranch 137, 177 (1803) ("It is emphatically the province and the duty of the judicial department to say what the law is."). To play its role effectively, the bench depends on the skill and integrity of the bar. In other words, "[a]n informed, independent judiciary presumes an informed, independent bar." *Velazquez*, 531 U.S. at 534. Courts cannot guard against the usurpations of the other branches without the assistance of lawyers willing to challenge those usurpations on their clients' behalf.

American lawyers have earned their reputation for independence by standing ready to challenge the government, even in the most controversial and high-profile matters, whether in support of a cause in

17

which they believe or on the principle that everyone deserves a robust defense. John Adams famously boasted that his representation of British soldiers in the Boston Massacre prosecution was "one of the best Pieces of Service I ever rendered my Country." The Diary of John Adams, March 5, 1773.[8] Clarence Darrow represented Eugene Debs, then the leader of the American Railway Union, in his conspiracy prosecution for encouraging workers to strike in violation of a federal court injunction. *See In re Debs*, 158 U.S. 564 (1895). Arthur Hill of Hill & Barlow represented Nicola Sacco and Bartolomeo Vanzetti, both immigrants from Italy, in their prosecution for murder. *Arthur Hill Dies; Lawyer in Boston*, N.Y. Times, Nov. 30 1947, at 76.[9] While working at the NAACP Legal Defense & Education Fund, Charles Hamilton Houston represented a Black man convicted of rape by an all-white jury, *see Hollins v. Oklahoma*, 295 U.S. 394 (1935), and Constance Baker Motley defended Rev. Dr. Martin Luther King, Jr. after he was arrested in

---

[8] https://perma.cc/SLA3-ATBJ.
[9] https://www.nytimes.com/1947/11/30/archives/arthur-hill-dies-lawyer-in-boston-second-counsel-in-famous.html

Birmingham, Alabama, *see Constance Baker Motley*, Supreme Court Historical Society.[10]

More examples abound. Arnold & Porter took on the cases of government employees accused of Communist sympathies during the Second Red Scare. *See* Clay Risen, *At a Time When Lawyers Feared Defending Government Enemies, One Law Firm Stood Up*, Politico (Mar. 26, 2025).[11] James Donovan defended accused Soviet spy Rudolf Abel in the Hollow Nickel case. *See Abel v. United States*, 362 U.S. 217 (1960).[12] Floyd Abrams of Cahill, Gordon & Reindel defended the New York Times against the government's attempt to suppress the publication of the Pentagon Papers on national security grounds. *See N.Y. Times Co. v. United States*, 403 U.S. 713 (1971). Edward Bennett Williams of Williams & Connolly represented Senator Joe McCarthy in censure proceedings before the U.S. Senate. *See* Albin Krebs, *Edward Bennett Williams, 68, Influential Trial Lawyer Dies; A Brilliant 'Superlawyer*,*"* N.Y. Times,

---

[10] https://perma.cc/S75C-R7HG.

[11] https://perma.cc/A9QW-QYPB.

[12] The case was dramatized in the film "Bridge of Spies" (Steven Spielberg, 2015).

Aug. 14. 1988, at 1.[13] And numerous major law firms represented detainees at Guantánamo Bay. *See* Neil A. Lewis, *Official Attacks Top Law Firms Over Detainees*, N.Y. Times (Jan. 13, 2007).[14]

Members of the bar uphold its best traditions when they provide zealous advocacy to clients facing the full weight of the federal government—and justice would be poorly served if only the exceedingly brave or the independently wealthy were willing to undertake such representations. Particularly in complex, high-stakes matters, clients depend on their lawyers to orchestrate the evidence, precedents, and arguments necessary to make the best submission on their behalf. But many firms would sensibly decline to take any case, no matter how meritorious or significant, that presents even a small risk of ruinous sanctions.

This is what makes the Executive Orders so pernicious to the separation of powers. "By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend

---

[13] https://www.nytimes.com/1988/08/14/obituaries/edward-bennett-williams-68-influential-trial-lawyer-dies-a-brilliant-superlawyer.html.
[14] https://perma.cc/F73H-WUYW.

20

for the proper exercise of the judicial power." *Velazquez*, 531 U.S. at 545. If allowed to stand, the Administration's retaliatory attack on the Firms will chill many law firms and lawyers from taking on high-profile cases against the government—particularly pro bono cases defending the civil and constitutional rights of ordinary individuals. *See* Goldstein, *supra* n.4 (noting that firms are agreeing "not to support public interest groups challenging administration policies" as a condition of avoiding presidential sanctions). And if the President can destroy prominent firms like the ones at issue here with the stroke of pen, the chilling effects on smaller firms and the bar at large will be only more severe.

Even when lawyers take on a representation adverse to the government, the threat of sanctions will chill them from taking positions or making arguments that offend the Administration. This fundamental conflict of interest will "distort[] the legal system by altering the traditional role of the attorneys" as zealous advocates for their clients. *Velazquez*, 531 U.S. at 544. As a result, clients will mistrust their counsels' loyalty, courts will confront case after case where only one view—the Administration's—is adequately and zealously represented, and the public will lose faith in the integrity of the judicial process. *See*

21

*id.* at 546 ("The courts and the public would come to question the adequacy and fairness of professional representations when the attorney, either consciously to comply with this statute or unconsciously to continue the representation despite the statute, avoided all reference to questions of statutory validity and constitutional authority.").

The Executive Orders also infringe Fifth and Sixth Amendment process rights. In the criminal context, "[t]he right to select counsel of one's choice . . . has been regarded as the root meaning of the constitutional guarantee" under the Sixth Amendment. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006). This right both requires "a fair or reasonable opportunity to obtain particular counsel," and bars "arbitrary action prohibiting the effective use of such counsel." *Cheek v. United States*, 858 F.2d 1330, 1334 (8th Cir. 1988) (quoting *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1215 (3d Cir. 1969)). And in the civil context, the interest in aid of counsel is a fundamental aspect of due process. *See Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983) ("[E]very litigant has a powerful interest in being able to retain and consult freely with an attorney."). There, too, the government infringes "due process in the constitutional sense" when it "arbitrarily" interferes

22

with the attorney–client relationship. *Powell v. Alabama*, 287 U.S. 45, 69 (1932).

By obstructing the Firms' lawyers from entering federal buildings, using federal facilities, and interacting with federal officials, including federal prosecutors, the Executive Orders arbitrarily prevent the Firms from doing much of the work incumbent on counsel, from negotiating with government attorneys to advocating before regulatory officials. The Executive Orders' disclosure provisions require the Firms' clients to divulge confidential relationships as a condition of receiving government contracts. And the provisions stripping the Firms' lawyers of their security clearances prevent those attorneys from discharging their duties in cases involving classified materials, giving the government an unfettered veto over the selection of criminal defense counsel in such cases.

## CONCLUSION

The Executive Orders are an unconstitutional attempt to punish the Firms for protected advocacy on behalf of their clients and to intimidate other law firms from challenging the Administration or its officials. If this governmental bullying goes unchecked, the bar will

23

swiftly lose its independence—to the detriment of litigants, courts, and public trust in the judicial process. For the reasons stated above, *Amici* respectfully submit that the Court should affirm the permanent injunctions barring enforcement of these Orders.

DATE: April 3, 2026                          Respectfully submitted,

Arthur B. Spitzer                            */s/* Brian Hauss
Scott Michelman                              Brian Hauss
Laura K. Follansbee                          Ben Wizner
AMERICAN CIVIL LIBERTIES UNION               Cecillia D. Wang
 FOUNDATION OF THE DISTRICT OF               AMERICAN CIVIL LIBERTIES
 COLUMBIA                                     UNION FOUNDATION
529 14th Street, NW, Ste. 722                125 Broad Street, 18th Floor
Washington, D.C. 20045                       New York, NY 10004
(202) 457-0800                               (212) 549-2500
aspitzer@acludc.org                          bhauss@aclu.org

*Counsel for* Amici Curiae                   *Counsel for* Amici Curiae

Clark M. Neily III                           David Greene
Thomas A. Berry                              ELECTRONIC FRONTIER
CATO INSTITUTE                               FOUNDATION
1000 Mass. Ave. N.W.                         815 Eddy Street
Washington, D.C. 20001                       San Francisco, CA 94109
(202) 425-7499                               (415) 436-9333
cneily@cato.org                              davidg@eff.org

*Counsel for Cato Institute*                 *Counsel for Electronic Frontier Foundation*

                                             *Additional counsel listed on the following page*

24

William Creeley
Robert Corn-Revere
Ronald G. London
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473

*Counsel for Foundation for
Individual Rights & Expression*

Alex Abdo
Jameel Jaffer
KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500

*Counsel for Knight First
Amendment Institute at Columbia
University*

Gregg Nunziata
SOCIETY FOR THE RULE OF LAW
601 Pennsylvania Ave NW
South Building, Suite 900
Washington, DC 20004
(202) 410-0659
info@societyfortheruleoflaw.org

*Counsel for Society for the Rule of
Law*

Lee Rowland
Erika Sanders
NATIONAL COALITION AGAINST
CENSORSHIP
29 Broadway, Suite 1400
New York, NY 10006
(212) 807-6222

*Counsel for National Coalition
Against Censorship*

John W. Whitehead
William E. Winters
THE RUTHERFORD INSTITUTE
109 Deerwood Road
Charlottesville, VA 22911
legal@rutherford.org

*Counsel for Rutherford Institute*

Bruce D. Brown
Lisa Zycherman
Gabriel Rottman
Mara Gassmann
Grayson Clary
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1020
Washington, DC 20005
(202) 795-9300
bbrown@rcfp.org

*Counsel for Reporters Committee
for Freedom of the Press*

## CERTIFICATE OF COMPLIANCE

I hereby certify that my word processing program, Microsoft Word, counted 4,343 words of the foregoing brief, excluding the items exempted by Federal Rule of Appellate Procedure 32(f) and that this complies with the word limit set forth in Federal Rule of Appellate Procedure 29(a)(5).

*/s/* Brian Hauss
Brian Hauss

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, I electronically filed the foregoing brief in support of Plaintiff-Appellee with the Clerk of the Court of the U.S. Court of Appeals for the D.C. Circuit by using the Appellate CM/ECF system which will send notice to all counsel who are registered CM/ECF users.

*/s/* Brian Hauss
Brian Hauss