Nos. 25-5241, 25-5265, 25-5277 & 25-5310

═══════════════════

**In the United States Court of Appeals
for the District of Columbia Circuit**

─────────────

PERKINS COIE LLP, *Plaintiff- Appellee*,
v.
U.S. DEPARTMENT OF JUSTICE, et al., *Defendants-Appellants*.

─────────────

JENNER & BLOCK LLP, *Plaintiff- Appellee*,
v.
U.S. DEPARTMENT OF JUSTICE, et al., *Defendants-Appellant*s.

─────────────

WILMER CUTLER PICKERING HALE & DORR LLP, *Plaintiff- Appellee*,
v.
EXECUTIVE OFFICE OF THE PRESIDENT, et al., *Defendants-Appellants*.

─────────────

SUSMAN GODFREY LLP, *Plaintiff- Appellee*,
v.
EXECUTIVE OFFICE OF THE PRESIDENT, et al., *Defendants-Appellants*.

─────────────

**On Appeal from the United States District Court
for the District of Columbia**

─────────────

**Brief *Amicus Curiae* of America's Future, Gun Owners of America, Inc., Gun Owners Foundation, Judicial Action Group, and Conservative Legal Defense and Education Fund in Support of Defendants-Appellants and Reversal**

─────────────

PATRICK M. MCSWEENEY
  Powhatan, VA  23139

RICK BOYER
  INTEGRITY LAW FIRM
  Lynchburg, VA  24506

PHILLIP L. JAUREGUI
  JUDICIAL ACTION GROUP
  Washington, DC  20005

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue West, Suite 4
  Vienna, VA  22180
  (703) 356-5070
  wjo@mindspring.com
*Counsel of Record
Attorneys for *Amici Curiae*
March 13, 2026

# CERTIFICATE AS TO
# PARTIES, RULINGS, AND RELATED CASES

## Parties and *Amici*

Except for the following, all parties, intervenors, and *amici curiae* appearing before the district court below and this Court are listed in the briefs for the parties:

*Amici curiae* are America's Future, Gun Owners of America, Inc., Gun Owners Foundation, Judicial Action Group, and Conservative Legal Defense and Education Fund.

## Rulings under Review

References to the rulings at issue appear in the Appellants' Brief filed March 6, 2026.

## Related Cases

Counsel adopt and incorporate by reference parties' statements with respect to related cases.

## CORPORATE DISCLOSURE STATEMENT

*Amici curiae* America's Future, Gun Owners of America, Inc., Gun Owners Foundation, Judicial Action Group, and Conservative Legal Defense and Education Fund, through their undersigned counsel, submit this Corporate Disclosure Statement pursuant to Rules 26.1(b) and 29(c) of the Federal Rules of

ii

Appellate Procedure, and Rule 26.1 of the Rules of the United States Court of

Appeals for the District of Columbia Circuit.

*Amici curiae* are non-stock, nonprofit corporations, which have no parent

company, and no person or entity owns them or any part of them.

*Amici curiae* are represented herein by William J. Olson, counsel of record,

and Jeremiah L. Morgan of William J. Olson, P.C., 370 Maple Avenue West, Suite

4, Vienna, VA 22180-5615; Patrick M. McSweeney, 3358 John Tree Hill Road,

Powhatan, VA 23139; Rick Boyer of Integrity Law Firm, P.O. Box 10953,

Lynchburg, VA 24506; and Phillip L. Jauregui of Judicial Action Group, 1300 I

Street, N.W. #400E, Washington, DC 20005.

_____*/s/ William J. Olson*_____
William J. Olson

iii

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES . . . . . . i

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

GLOSSARY OF ABBREVIATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.    THE DISTRICT COURT'S INJUNCTION INVOLVING SECURITY
      CLEARANCES IGNORED GOVERNING LEGAL PRINCIPLES. . . . . . . . . . . . . . . 5

II.   THE DISTRICT COURT LACKED JURISDICTION TO GRANT INJUNCTIVE
      RELIEF AGAINST AN EEOC INVESTIGATION OF LARGE LAW FIRMS . . . . . . . 7

      A.    The District Court Erred in Finding Standing to Challenge EO
            Section 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    The Authority of the EEOC to Investigate Discrimination by
            Big Law Firms Cannot Be Facially Enjoined . . . . . . . . . . . . . . . . . . 9

      C.    The District Court's Injunction Is an Illegitimate "Nationwide
            Injunction" under *Trump v. CASA* . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.  THE DISTRICT COURT OPINION IS FLAWED . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    The District Court's Questionable Findings about Perkins Coie . . . 11

iv

B.    The District Court's Questionable Description of the Acquittal of Michael Sussmann. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.    The District Court Demonstrated a Degree of Animus toward President Trump. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D.    The District Court's Questionable Reference to the *Amicus* Brief Filed by these *Amici* in Support of the Government . . . . . . . . 20

IV.    THE DISTRICT COURT ERRED BY NOT ADDRESSING WHETHER PERKINS COIE HAS CLEAN HANDS REQUIRED TO SEEK EQUITABLE RELIEF . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

v

# TABLE OF AUTHORITIES

Page

## CASES

*Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir. 1983) . . . . . . . . . 6

*Ayotte v. Planned Parenthood*, 546 U.S. 320 (2006). . . . . . . . . . . . . . . . . . . . . . . 9

*Cheng v. GAF Corp.,* 631 F.2d 1052 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . 6

*\*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) . . . . . . . . . . . . . . . . . . . . . 8

*Cromley v. Bd. of Educ.,* 17 F.3d 1059 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . 6

*Ez Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459 (Fed. Cir. 1984). . . . . . . . . . . . . 6

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933). . . . . . . . 21, 24

*\*Lee v. Garland,* 120 F.4th 880 (D.C. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
    2026 U.S. App. LEXIS 3772 (4th Cir. 2026) . . . . . . . . . . . . . . . . . . . . . . . 9

*\*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*,
    324 U.S. 806 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Smith v. Whatcott,* 757 F.2d 1098 (10th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . 6

*\*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Miller*, 624 F.2d 1198 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . 6

## MISCELLANEOUS

Dan Bongino, Spygate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Thomas Catenacci, "Left-Wing Activist Group Teaches Liberals How To Get
    Through Jury Selection and Vote 'Not Guilty' on Trump DOJ Prose-
    cutions, Recordings Show," *Washington Free Beacon* (Mar. 9, 2026) . . . 17

Jill Colvin, "DNC, Clinton Campaign Agree to Steele Dossier Funding Fine,"
    *Associated Press* (Mar. 31, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

"Former AG Whitaker says Michael Sussmann acquittal 'looks like jury
    nullification,'" *Fox News* (June 1, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sarah Fortinsky, "One-third of adults in new poll say Biden's election was
    illegitimate," *The Hill* (Jan. 2, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gregg Jarrett, The Russia Hoax: The Illicit Scheme to Clear Hillary Clinton
    and Frame Donald Trump (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Michael Kranish, "Clinton lawyer kept Russian dossier project closely held,"
    *The Washington Post* (Oct. 27, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

\* Authorities upon which we chiefly rely are marked with asterisks.

vi

Andrew McCarthy, <u>Ball of Collusion: The Plot to Rig an Election and
Destroy a Presidency</u> (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

Zach Montellaro, "Federal campaign watchdog fines DNC, Clinton campaign
over dossier spending disclosure," *Politico* (Mar. 30, 2022) . . . . . . . . . . . 23

Antonin Scalia and Bryan Garner, <u>Reading Law</u> (2012). . . . . . . . . . . . . . . . . . . . 10

Lee Smith, <u>The Plot Against the President</u> (2019). . . . . . . . . . . . . . . . . . . . . . . . 17

Joseph Sweeney, <u>Dangerous Injustice:  How Democrats Weaponized the
DOJ to protect Biden and Prosecute Trump</u> (2024) . . . . . . . . . . . . . . . . . 17

Veterans Intelligence Professionals for Sanity, "Intel Vets Challenge 'Russia
Hack' Evidence," *Consortiumnews.com* (July 24, 2017) . . . . . . . . . . . . . 15

Debra Weiss, "Perkins Coie hired company that compiled Trump dossier,"
*ABAJournal.com* (Oct. 25, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

\* Authorities upon which we chiefly rely are marked with asterisks.

vii

# GLOSSARY OF ABBREVIATIONS

DEI          Diversity, Equity, and Inclusion

DNC         Democratic National Committee

EEOC        Equal Employment Opportunity Commission

EO            Executive Order

FBI           Federal Bureau of Investigation

TRO          Temporary Restraining Order

## INTEREST OF *AMICI CURIAE*[1]

*Amici* America's Future, Gun Owners of America, Inc., Gun Owners Foundation, Judicial Action Group, and Conservative Legal Defense and Education Fund are nonprofit organizations, exempt from federal income taxation under Section 501(c)(3) or Section 501(c)(4) of the Internal Revenue Code. Each participates actively in the public policy process and together have filed hundreds of *amicus curiae* briefs in federal and state courts. These *amici* filed an *amicus* brief in the Perkins Coie case below. *See* Brief *Amicus Curiae* of America's Future, et al. in Support of Reconsideration of the TRO and Defendants' Motion to Dismiss (Apr. 9, 2025).

## STATEMENT OF THE CASE

On March 6, 2025, President Donald Trump signed an executive order ("EO") entitled "Addressing Risks from Perkins Coie LLP," 90 *Fed. Reg.* 11,781 (Mar. 11, 2025). That EO cites the role of the law firm Perkins Coie LLP ("Perkins Coie"), *inter alia*, for its role in fabricating the "Steele Dossier" in 2016 in an effort to influence the 2016 presidential election, as well as discriminatory

---

[1]  All parties consented to the filing of this *amicus* brief. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than the *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

2

practices engaged in by that firm.  President Trump later issued EOs taking similar actions against three other law firms — Jenner & Block, WilmerHale, and Susman Godfrey.

The Perkins Coie EO directed government agencies to, *inter alia*, suspend security clearances for attorneys with the four law firms, determine whether those firms provide any services to the federal government and to suspend any such services, determine whether government contractors with whom they do business have relationships with those firms, refrain from hiring employees of those firms, "absent a waiver from the head of the agency ... that such hire will not threaten the national security of the United States," and "limit[] official access from Federal Government buildings to employees of [the law firms] when such access would threaten the national security of or otherwise be inconsistent with the interests of the United States."  *Id.*

On March 11, 2025, a small army of 14 lawyers filed a Complaint on behalf of Perkins Coie against numerous federal agencies and officials, alleging a veritable smorgasbord of various legal theories, including *ultra vires* executive action on judicial questions,[2] deprivation of due process (*id*. at ¶¶ 10, 99-116),

---

[2] *Perkins Coie, LLP v. U.S. Department of Justice*, *et al.*, Complaint at ¶¶ 10, 85-98, Case No. 1:25-cv-00716-BAH (Docket #1) (Mar. 11, 2025).

3

denial of equal protection (*id*. at ¶¶ 10, 117-25), denial of free speech rights (*id*. at ¶¶ 10, 126-56), denial of free association (*id*. at ¶¶ 10, 126-56), and denial of right to counsel (*id*. at ¶¶ 10, 157-68).  Perkins Coie also filed a motion for a temporary restraining order against paragraphs 1, 3, and 5 of the Executive Order, with supporting memorandum and declarations.

The very next day, March 12, 2025, after a hearing at 2:00 pm, and before the government could even respond in writing, at 6:33 pm, the district court issued a TRO exactly as requested by Perkins Coie by prohibiting enforcement of the EO's sections 1, 3, and 5.  *Perkins Coie LLP v. United States DOJ,* 770 F. Supp. 3d 190 (Mar. 12, 2025).  The TRO went even further, enjoining the government Defendants "from using the statements laid out in Section 1 of Executive Order 14230 in any interactions with plaintiff or plaintiff's clients, or employee of plaintiff or plaintiff's clients...." *Id.* at 191.

The government filed a motion to disqualify Judge Howell on March 21, 2025, which was denied by Judge Howell on March 26, 2025 in a 21-page Opinion and Order.

Judge Howell issued her opinion on May 2, 2025.  After determining that Perkins Coie had standing and that its claims were ripe, Judge Howell concluded that the Perkins Coie EO violated the First, Fifth, and Sixth Amendments and

4

permanently enjoined the government from "implementing or enforcing Executive Order 14230 in any way." *Perkins Coie LLP v. United States DOJ*, 783 F. Supp. 3d 105 (D.D.C. 2025) ("*Perkins*") at 181.

Similar complaints filed by the other three law firms against the three other Executive Orders led to issuance of the following four decisions:

- EO 14230, *Perkins Coie LLP v. United States DOJ,* 783 F. Supp. 3d 105 (D.D.C. May 2, 2025) (Judge Beryl A. Howell);
- EO 14246, *Jenner & Block v. United States DOJ*, 784 F. Supp. 3d 76 (D.D.C. May 23, 2025) (Judge John D. Bates);
- EO 14250, *WilmerHale v. Exec. Office of the President*, 784 F. Supp. 3d 127 (D.D.C. May 27, 2025) (Judge Richard J. Leon); and
- EO 14263, *Susman Godfrey LLP v. Exec. Office of the President*, 789 F. Supp. 3d 15 (D.D.C. June 27, 2025) (Judge Loren L. AliKhan).

In each case, the district court granted summary judgment to the law firms. *See* Appellants' Brief at 15-16.

## ARGUMENT

This appeal involves four cases brought by four law firms, decided by four U.S. District Court for the District of Columbia judges involving four discrete Executive Orders. These *amici* filed an *amicus* brief below only in the Perkins Coie case, and here also focus only on that case. However, since operative portions of the four Executive Orders are generally similar, it is hoped that this *amicus* brief will be helpful in resolving aspects of the entire appeal.

5

I.   **THE DISTRICT COURT'S INJUNCTION INVOLVING SECURITY
     CLEARANCES IGNORED GOVERNING LEGAL PRINCIPLES.**

In *Perkins,* the district court enjoined the President's suspension of security

clearances ordered in EO No. 14230 based on its erroneous conclusion that the

suspension was not based on an "individualized assessment" of lawyers and others

in the law firm.  Thus, the court believed it constituted a "general policy" decision

governing a class of people, making the matter subject to judicial review.  *Perkins*

at 142-43.  However, for the reasons discussed *infra*, simply because this

executive order applied to the employees of the Perkins Coie law firm does not

make it a policy decision targeting a broad class of people.  The district court

failed to recognize that the Presidential finding was well-grounded in allegations

of serious ethical violations, that the ethical behavior of individual attorneys can

be imputed to their law firm, and that security clearances can be revoked based on

ethical misconduct.

In the Perkins EO, the President asserted a decades-long pattern of

"dishonest and dangerous activity" by members of that law firm that undermined

"democratic elections, the integrity of our courts, and honest law enforcement."

EO 14230, Section 1.  The district court took time to exalt the "courtroom

advocacy" of the law firms, but then ignored the ethical rules violations that were

6

asserted as justification for the security clearance action.  The failure of the district

courts to address the basis for the actions taken in the executive orders

demonstrates that the decisions did not satisfy the test of causation that would

justify the claims of retaliation and other claimed constitutional violations by the

executive branch officials.  For additional information on Perkins Coie's activities,

*see* section IV, *infra*.

    The EO makes clear that the suspension of security clearances for Perkins

Coie lawyers and employees was predicated on the ethical misconduct of members

of the firm.  *See* EO 14230, Section 1.  Courts have traditionally viewed both

lawyers and their law firms as being subject to the rules of professional conduct,

and in appropriate circumstances, individual and firm behavior is considered

together.  For example, when one lawyer is disqualified from handling a matter,

the disqualification can be imputed to and extend to the entire law firm.  *See, e.g.,*

*Cromley v. Bd. of Educ.,* 17 F.3d 1059, 1064-65 (7th Cir. 1994), *cert. denied*;

*Smith v. Whatcott,* 757 F.2d 1098, 1102 (10th Cir. 1985); *Ez Paintr Corp. v.*

*Padco, Inc.,* 746 F.2d 1459, 1462 (Fed. Cir. 1984); *Analytica, Inc. v. NPD*

*Research, Inc.,* 708 F.2d 1263, 1267 (7th Cir. 1983); *Cheng v. GAF Corp.,* 631

F.2d 1052, 1057-58 (2d Cir. 1980), *vacated on other grounds and remanded,* 450

U.S. 903 (1981); *United States v. Miller*, 624 F.2d 1198, 1203-04 (3d Cir. 1980).

7

Contrary to the statement of the *Perkins* court that it was not required to examine any of the "intangible qualities" involved in making the security clearance determinations reflected in the executive order (*id.* at 143), that is precisely what the court did in second-guessing the determinations made in EO 14230. *See Lee v. Garland,* 120 F.4th 880, 891 (D.C. Cir. 2024). Such determinations are committed to the executive branch and are not subject to review by the courts. *Id.*

## II. THE DISTRICT COURT LACKED JURISDICTION TO GRANT INJUNCTIVE RELIEF AGAINST AN EEOC INVESTIGATION OF LARGE LAW FIRMS.

### A. The District Court Erred in Finding Standing to Challenge EO Section 4.

Section 4 of EO No. 14230 challenged by Perkins Coie directs the Equal Employment Opportunity Commission ("EEOC"), *inter alia*, to: "review the practices of representative large, influential, or industry leading law firms for consistency with Title VII of the Civil Rights Act of 1964, including whether large law firms: reserve certain positions, such as summer associate spots, for individuals of preferred races." 90 *Fed. Reg.* 11,782 (Mar. 11, 2025). Nothing in the text of Section 4 either mentions Perkins Coie or requires the EEOC to

8

investigate any particular firm, and certainly does not require that any final agency action be taken against any firm.

No doubt Perkins Coie would like to have the district court's judicial immunity to prevent an EEOC review of its allegedly discriminatory hiring practices, but this presented no imminent or impending threat justifying injunctive relief.  Accordingly, the district court's injunction against Section 4 is unjustified. As the Supreme Court has made clear, the "threatened injury must be *certainly impending* to constitute injury in fact, and ...[a]llegations of *possible* future injury are not sufficient...."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations omitted).  Although erroneously relied on by the district court here, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm...."  *Id.* at 418 (internal quotations omitted).

When the Fourth Circuit recently reviewed somewhat similar language in EO 14151 (Jan. 20, 2025) which directed federal agencies to make certain diversity, equity, and inclusion ("DEI") changes, that circuit correctly observed that, even given its own "somewhat relax[ed] ... injury-in-fact requirement in First Amendment cases given that even the *risk* of punishment could chill speech," the plaintiffs had failed to show an imminent threat of any enforcement against them.

9

*See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 2026 U.S. App.

LEXIS 3772 at *11 (4th Cir. 2026) (internal quotations omitted).

### B.    The Authority of the EEOC to Investigate Discrimination by Big Law Firms Cannot Be Facially Enjoined.

To justify its injunction against EO Section 4, the district court made much

of the language in Section 1 of the EO, referencing Perkins Coie's role in the 2016

election in support of President Trump's opponent, and goes on to strike the entire

EO as being a "Retaliatory Action[] Sufficient to Chill Speech."  *Perkins* at 155.

But Section 4 of the EO has no mention of Perkins Coie.  Regardless of any

judicial inquiry into intent, Section 4 is lawful on its face.  Even if every section

that references Perkins Coie were stricken from the EO, Section 4 would still stand

on its own.  As the government notes:  "[t]hat is *already* what the EEOC is

supposed to be doing." Appellants' Brief at 42.

The Supreme Court has instructed, "[g]enerally speaking, when confronting

a constitutional flaw in a statute, we try to limit the solution to the problem ... to

enjoin only the unconstitutional applications of a statute while leaving other

applications in force ... or to sever its problematic portions while leaving the

remainder intact."  *Ayotte v. Planned Parenthood*, 546 U.S. 320, 328-29 (2006)

(citations omitted).

10

The district court breezily dismissed Section 4's facial neutrality and lawfulness with the simple assertion that "the inclusion of this direction in an Order explicitly targeting plaintiff speaks volumes." *Perkins* at 147. Since it was not the text of Section 4 that was found problematic, it could only have been the court's objection to the President's motive vis-à-vis Perkins Coie. However, even if such an inquiry into a motive vis-à-vis Perkins Coie were relevant, it could not preclude the ordered investigation of other Big Law firms engaged in DEI hiring. It is well established that "'[i]t is the *text's* meaning, and not the content of anyone's expectations or intentions, that binds us as law.'"[3] And Section 4's command to the EEOC is well within the statute's grant, as the government thoroughly explains. *See* Appellants' Brief at 42. Neither the court's apparent high regard for Big Law firms nor its possible support for DEI could justify the court limiting the authority of the executive branch to investigate, as granted by Congress.

**C.    The District Court's Injunction Is an Illegitimate "Nationwide Injunction" under *Trump v. CASA*.**

The court below issued its injunction in May 2025, facially enjoining the EO in all its aspects, including against Section 4's directive to review

---

[3]  Antonin Scalia and Bryan Garner, <u>Reading Law</u> at 398 (2012).

11

"representative large, influential, or industry leading law firms" for compliance with the Civil Rights Act.  The following month, the Supreme Court issued its ruling in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), holding that "'universal injunctions' ... likely exceed the equitable authority that Congress has granted to federal courts." *Id.* at 837.  The Court noted that "the equitable relief available in the federal courts is that 'traditionally accorded by courts of equity' at the time of our founding....  Nothing like a universal injunction was available at the founding, or for that matter, for more than a century thereafter.  Thus, under the Judiciary Act, federal courts lack authority to issue them." *Id.* at 856 (citations omitted). Thus, the Court declared that "'[c]omplete relief' is not synonymous with 'universal relief.'  It is a narrower concept:  The equitable tradition has long embraced the rule that courts generally 'may administer complete relief *between the parties*.'" *Id.* at 851.  Accordingly, although the injunction was issued before the Supreme Court decided *Trump v. CASA,* it is now clear that the district court lacked authority to facially enjoin the EO as to parties not before this Court.

## III.    THE DISTRICT COURT OPINION IS FLAWED.

### A.    The District Court's Questionable Findings about Perkins Coie.

The court seemed to believe it essential to its opinion to document that Perkins Coie was a bipartisan law firm filled with highly respected apolitical

12

lawyers.  The court described lawyers in Perkins Coie as coming "from all sides of the political spectrum" who have "worked in the government under administrations of both parties and reflect both major political party affiliations." *Perkins* at 122-23 (citations omitted).  Although these *amici* have not had the time or resources to scrutinize the hundreds of pages and volumes of evidence offered by the parties, it can be postulated that there is little if anything in the record supporting the claim that there is any significant political diversity among the lawyers in Perkins Coie with respect to the candidacy or Presidency of Donald Trump.  For example, how many Perkins Coie lawyers have asserted publicly their belief, in agreement with one-third[4] of the American People, that the 2020 election was fraught with fraud?  Attorneys expressing such beliefs would likely find their careers in the Big Law firms so admired by the district court to be ended and "right quick."  No doubt there are some lawyers who self-describe as Republicans, but so do (or did) Liz Cheney (R-WY), Adam Kinzinger (R-IL), and many other Republicans who opposed President Trump's election.  How many lawyers at Perkins Coie have litigated cases or filed *amicus* briefs supporting closure of the United States Border, or empowering Immigrations and Customs Enforcement to

---

[4] Sarah Fortinsky, "One-third of adults in new poll say Biden's election was illegitimate," *The Hill* (Jan. 2, 2024).

13

deport illegal aliens, or opposing Birthright Citizenship?  Almost certainly, the
answer is few, if any.  For whatever reason the court believed it important to
demonstrate that Perkins Coie was "bipartisan," it has not been proven.

The district court briefly mentioned the role of Perkins Coie only to
demonstrate that President Trump wanted to retaliate against them.  *Perkins* at
126-27.  It never characterized any work of Perkins Coie as problematic.
However, former Assistant U.S. Attorney Andrew C. McCarthy explained the
central role of Perkins Coie in the Russiagate scandal:

> Neither the Clinton campaign nor the DNC disclosed to the FEC the
> work done by Fusion GPS, including the Steele dossier.  Rather, the
> two combined to pay Perkins Coie over $12 million for "legal
> services" and "compliance consulting"; out of this amount, Perkins
> Coie paid Fusion [GPS] $1.02 million.  Fusion, in turn, paid $168,000
> to Steele....  [Andrew McCarthy, <u>Ball of Collusion:  The Plot to Rig
> an Election and Destroy a Presidency</u> at 159 (2019).]

The district court also believed it important to assert that the only political
component of Perkins Coie ended with the departure of Marc Elias from Perkins
Coie on August 21, 2021.  *See Perkins* at 124, 158.  However, even a non-
exhaustive search of the records of the Federal Election Commission revealed that
exactly **zero** employees at Perkins Coie contributed to President Trump's

14

presidential campaigns in 2016, 2020, or 2024.[5]  Contrast that with Perkins Coie employees' giving in the 2024 election cycle, where Federal Election Commission data shows total Perkins Coie reported contributions of over $898,000, with 95-96 percent going to Democrats, $250,539 of which went to Democrat presidential candidate Kamala Harris.[6]  Here too, for whatever reason, the district court felt it essential to its opinion to demonstrate that Perkins Coie is filled with apolitical professionals which include Republicans, but that portion of the opinion is not well grounded.

### B.    The District Court's Questionable Description of the Acquittal of Michael Sussmann.

Again, for whatever reason, the district court specifically addressed the role played by another former Perkins Coie attorney, Michael Sussmann.  It first explained he was not part of Elias' "Political Law Group," which was originally retained by the Clinton campaign.  It explained that Sussmann was hired by the Clinton campaign only later "due to his cybersecurity experience ... after the campaign's emails were hacked."  *Perkins* at 124.  The district court automatically

---

[5] *See* https://www.fec.gov/data/receipts/individual-contributions/?contributor_employer=perkins+coie.

[6] *See* https://www.opensecrets.org/orgs/perkins-coie/summary?cycle=2024&id=D000036616; https://www.opensecrets.org/orgs/perkins-coie/recipients?id=D000036616.

15

accepted the Clinton Campaign narrative that its campaign emails "were hacked" (a key part of the debunked Russiagate narrative), disregarding the view of others, including former National Security Agency technical director William Binney, who demonstrated that this data was not hacked but downloaded at local high speeds such as to a thumb drive.[7]

Then, the district court found it important to explain:

[a]fter being indicted in 2021 by a Special Counsel, appointed during the first Trump Administration, Sussmann was acquitted, on May 31, 2022, of the charge "of lying to the FBI about links between the Trump Organization and Russia." [*Perkins* at 124 (citation omitted).]

For whatever reason that the Sussmann story was viewed as significant by the district court, it failed to explain the rest of the story. When Sussmann was called in, he believed a crime had occurred in downloading the DNC data, but:

Perkins Coie, however, didn't call the FBI to investigate the crime; instead, they hired CrowdStrike, a cybersecurity firm.... After examining the servers for a mere day, CrowdStrike concluded two Russian groups named Cozy Bear and Fancy Bear were responsible for the cyberattack. [Dan Bongino, Spygate, at 64-65 (2018).]

The Special Counsel referred to by the district court was John Durham, originally appointed by Trump Attorney General William Barr. Sussmann was indicted under Durham for making a false statement to the FBI on September 19,

_____

[7] *See* Veterans Intelligence Professionals for Sanity, "Intel Vets Challenge 'Russia Hack' Evidence," *Consortiumnews.com* (July 24, 2017).

16

2016 (before President Trump was elected, during the Obama Administration), when meeting with then-FBI General Counsel James Baker.  Sussmann was charged with falsely stating that he was not acting on behalf of any client when he provided information about alleged suspicious communications between servers associated with the Trump Organization and Russia's Alfa Bank.  In truth, Sussmann had been representing the Clinton presidential campaign while sharing this information with the FBI.  Sussmann was acquitted on May 31, 2022, during the Biden Administration, at a trial held in the District of Columbia.  Numerous commentators agreed with former acting Attorney General Matt Whitaker that the acquittal "looks like jury nullification."[8]

In the future, even more acquittals may be occurring.  Earlier this week it was learned that leftist organizers have begun training to fully exploit the fact that the D.C. jury pool already is overwhelmingly liberal Democrat.  An anti-Trump activist group funded by George Soros called Freedom Trainers was exposed for

---

[8]  "Former AG Whitaker says Michael Sussmann acquittal 'looks like jury nullification,'" *Fox News* (June 1, 2022) ("4% of Washington, D.C. voted for Donald Trump.  Obviously, this is going to be a pro-Democrat, pro-Clinton jury.... [T]he jury foreman came out and really gave up what the jury was discussing, which is that they thought this case should have never been brought....  And that's a little concerning because this looks more like a jury nullification, where even though the evidence was overwhelming, even though they, the government, proved their case, that the jury just decided that this wasn't a case worth pursuing. So this case, to me, factually and legally was a slam dunk case.")

17

doing jury nullification training to defeat prosecutions brought by the Trump Administration:

> The group tells attendees to keep their addresses current to ensure they receive summons.  Then, during the jury selection process, it advises them to "Never mention jury nullification," "Don't signal an agenda," and "say you'll listen to the evidence before forming conclusions."  Once selected, the group tells its trainees to vote "not guilty" for any reason.  [Thomas Catenacci, "Left-Wing Activist Group Teaches Liberals How To Get Through Jury Selection and Vote 'Not Guilty' on Trump DOJ Prosecutions, Recordings Show," *Washington Free Beacon*  (Mar. 9, 2026).]

## C.     The District Court Demonstrated a Degree of Animus toward President Trump.

The overriding theme of the district court opinion was that the Executive Orders were instruments of retaliation by President Trump against his political opponents.  In other words, the EO's were aimed at those who had pushed the debunked Russian collusion narrative.[9]  Actually, in making that assertion, the court appeared to reveal a degree of animus toward President Trump.

Before even reaching the substance of constitutional and legal arguments, Judge Howell implied that President Trump's order was taking "a step in the

---

[9]  *See generally* Andrew C. McCarthy, Ball of Collusion: The Plot to Rig an Election and Destroy a Presidency (2019); Joseph B. Sweeney, Dangerous Injustice:  How Democrats Weaponized the DOJ to protect Biden and Prosecute Trump (2024); Lee Smith, The Plot Against the President (2019); Gregg Jarrett, The Russia Hoax: The Illicit Scheme to Clear Hillary Clinton and Frame Donald Trump (2018).

18

direction of a totalitarian form of government" (*Perkins* at 119), accusing him of

an "unprecedented attack on ... foundational principles" (*id*. at 120), "a cringe-

worthy" (*id.*) and "overt attempt to suppress and punish certain viewpoints." *Id*. at

120-21.  In the wake of the Biden-era government censorship efforts, this last

assertion is particularly striking.  The judge likewise quoted from an *amicus* brief

which twice used the word "tyranny" in characterizing the Executive Order.  *Id.* at

173, n.36.  Judge Howell five times mentioned Trump's "attack[s]" on the

plaintiffs through prior statements and social media posts; and four times called

this "retribution."  *Id.* at 162-64.

During litigation, the government felt obliged to file a Motion to Disqualify

Judge Howell based on "comments at the hearing on the meritless motion for a

temporary restraining order ('TRO') in this case, including gratuitous and biased

references [which] confirm that reasonable observers may view this Court as

incapable of fairly adjudicating these claims...."  Motion to Disqualify, Docket

# 34 at 1.  They provided documentation of Judge Howell:

> not [keeping her] disdain for President Trump secret.  [She] has
> voiced [her] thoughts loudly — both inside and outside the
> courtroom. In a November 2023 speech that [Judge Howell] delivered
> at a Women's White Collar Defense Association event, [she]
> lamented that America is at a "crossroads" and, in an apparent
> reference to President Trump, indicated that one path would lead to

19

authoritarianism.... [which] prompted a judicial misconduct complaint from a member of Congress and serious media scrutiny. [*Id.* at 3.]

The government also stated that Judge Howell's "hostility toward President Trump is also on full display through her disdain for his supporters. For example ... [she] engaged in wholly inappropriate name-calling, repeatedly calling President Trump's supporters 'sore losers' and stating that the President's pronouncement relayed a 'revisionist myth.'" *Id*. at 4. In 2023, Judge Howell "could not resist from editorializing, asking whether Musk 'wants to cozy up with the former president' and whether Twitter's efforts were 'to make Donald Trump feel like he is a particularly welcomed new renewed user of Twitter.'" *Id*. at 5. In a hearing held within 24 hours of the filing of the complaint in this case, the Judge made a "condescending remark that President Trump had 'a bee in his bonnet' about Fusion GPS ... a concerning and dismissive approach...." *Id*. at 6. The motion to disqualify was denied by Judge Howell. *See* Memorandum Opinion and Order, Docket # 36 (Mar. 26, 2025).

20

**D.    The District Court's Questionable Reference to the *Amicus* Brief Filed by these *Amici* in Support of the Government.**

The district court opinion includes a curious reference to the *amicus* brief filed by these *amici*, where the court appeared to criticize, or possibly ridicule, *amici*'s reference to Bible verses.

> A single amicus brief was submitted in support of the government by three gun rights groups and three conservative advocacy organizations.  *See* Br. *Amicus Curiae* of America's Future, Gun Owners of America, Gun Owners Foundation, Gun Owners of California, Judicial Action Group, & Conservative Legal Defense & Education Fund in Supp. of Recons. of the TRO & Gov't's MTD ("Br. of America's Future et al."), ECF No. 131 **(beginning with four Bible verses at the top of the Table of Authorities**, *see id.* at iii, and arguing for expansive Executive Power, while noting the total number of votes and Electoral College margin in favor of President Trump, *id.* at 23, and listing the injunctions issued by federal courts against the current Trump Administration's actions, *see id.* App. 1) [*Perkins* at 135, n.23 (emphasis added).]

The district court did not explain why *amici*'s references to Bible verses required this type of dismissive comment.  Those verses were used by these *amici* as follows:

> Although apparently allowed, the same district court judge ruling on this motion violated the maxim *nemo judex in causa sua*, that no one should be a judge of his own case, a principle drawn from Holy Writ. *See, e.g.*, *Proverbs* 18:13; *James* 2:4; *Leviticus* 19:15; and *Proverbs* 24:23."  [America's Future, et al., *amicus* brief at 3, n.3.]

21

These *amici* question the district court's comments about its Biblical references, while standing by their observation which was disregarded by the district court.

## IV.    THE DISTRICT COURT ERRED BY NOT ADDRESSING WHETHER PERKINS COIE HAS CLEAN HANDS REQUIRED TO SEEK EQUITABLE RELIEF.

The district court, in exercising equitable jurisdiction, erred in refusing to discuss a serious problem raised by these *amici* — whether Appellee Perkins Coie's unclean hands prevented it from seeking equitable relief.  The unclean hands doctrine serves as a "self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945).  This doctrine is a foundational principle that protects judicial integrity by preventing courts from aiding parties whose misconduct is directly tied to the relief sought.  *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) (unclean hands bars relief where misconduct is "offensive to the dictates of natural justice").

During the 2016 Presidential election between Donald Trump and Hillary Clinton, the Clinton for President Campaign paid its law firm, Perkins Coie, for expenses, which by all public accounts was used to fund the hiring of a foreign

22

former intelligence officer to prepare a series of phony "opposition research" documents (the "Steele Dossier").[10]  The dossier was ostensibly based on an (unreliable) Russian source about supposed connections between then-candidate Trump and Russian President Vladimir Putin.  That fabricated dossier was then used by Obama Administration officials to obtain a Foreign Intelligence Surveillance Act warrant in order to spy on Trump's campaign.  The Clinton Campaign denied foreknowledge of this corrupt political scheme engaged in by its counsel, Perkins Coie.[11]  But Perkins Coie, which was hired by the Clinton

---

[10]  *See, e.g.,* Jill Colvin, "DNC, Clinton Campaign Agree to Steele Dossier Funding Fine," *Associated Press* (Mar. 31, 2022) ("Hillary Clinton's 2016 presidential campaign and the Democratic National Committee have agreed to **pay $113,000 to settle a Federal Election Commission investigation** into whether they violated campaign finance law by **misreporting spending** on research that eventually became the infamous **Steele dossier**....  The Clinton campaign hired **Perkins Coie**, which then hired **Fusion GPS**, a research and intelligence firm, to conduct opposition research on Republican candidate Donald Trump's ties to **Russia**.  But on FEC forms, the Clinton campaign classified the spending as legal services....  The Steele dossier was a report compiled by former British spy **Christopher Steele** and financed by Democrats that included **salacious allegations** about Trump's conduct in Russia and allegations about ties between the Trump campaign and Russia." (emphasis added)).

[11]  *See, e.g.,* Debra Weiss, "Perkins Coie hired company that compiled Trump dossier," *ABAJournal.com* (Oct. 25, 2017) ("Perkins Coie lawyer **Marc Elias hired the company that compiled a dossier** with allegations about Donald Trump's Russia connections, **the law firm confirmed** on Tuesday.  Elias hired the company, Fusion GPS, to assist in the law firm's representation of the Clinton campaign and the Democratic National Committee, report the New York Times and the Washington Post, which was first with the story.  The Clinton campaign

23

Campaign and the DNC for legal and compliance consulting, should have known better.  Nonetheless, the Federal Election Commission found probable cause that the Clinton Campaign and DNC had violated federal election law by concealing the nature of the expense on its campaign disclosure forms, and those political committees agreed to pay a substantial civil penalty to settle the allegations of illegal and deceptive practices.[12]  The effort to manipulate the 2016 Presidential Campaign through the resulting Russiagate hoax was arguably the biggest political scandal in American history, and Perkins Coie was at its epicenter.[13]

Perkins Coie came to the district court seeking to be relieved of the just consequences of its own wrongful actions, and thus comes with anything but clean hands, which should have barred it from being granted equitable relief.  The U.S.

---

and the DNC helped pay for the opposition research, the stories report.  The law firm's involvement became public in a letter filed in court that was written by Perkins Coie managing partner Matthew Gehringer....  A DNC spokeswoman told the newspapers that chairman Tom Perez and the new leadership at **the DNC 'were not involved in any decision-making regarding Fusion GPS**, nor were they aware that Perkins Coie was working with the organization.'  Brian Fallon, a former Clinton campaign spokesman, said he never heard about any dossier until after the election." (emphasis added)).

[12]  *See* Zach Montellaro, "Federal campaign watchdog fines DNC, Clinton campaign over dossier spending disclosure," *Politico* (Mar. 30, 2022).

[13]  *See, e.g.,* Michael Kranish, "Clinton lawyer kept Russian dossier project closely held," *The Washington Post* (Oct. 27, 2017).

24

Supreme Court has described clean hands as "one of the fundamental principles upon which equity jurisprudence is founded." *Keystone Driller Co.* at 244. As such, it constitutes a defect in Perkins Coie's case that the district court should not have ignored. *See id.* at 245 ("courts of equity ... apply the maxim requiring clean hands ... where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.").

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgments of the district court below.

Respectfully submitted,

*/s/ William J. Olson*

_____

| | |
|---|---|
| PATRICK M. MCSWEENEY | WILLIAM J. OLSON* |
| 3358 John Tree Hill Rd. | JEREMIAH L. MORGAN |
| Powhatan, VA 23139 | WILLIAM J. OLSON, P.C. |
| | 370 Maple Avenue West, Suite 4 |
| RICK BOYER | Vienna, VA 22180 |
| INTEGRITY LAW FIRM | (703) 356-5070 |
| P.O. Box 10953 | wjo@mindspring.com |
| Lynchburg, VA 24506 | *Counsel of Record |
| | Attorneys for *Amici Curiae* |
| PHILLIP L. JAUREGUI | |
| JUDICIAL ACTION GROUP | March 13, 2026 |
| 1300 I Street, N.W. #400E | |
| Washington, DC 20005 | |

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

IT IS HEREBY CERTIFIED:

1.      That the foregoing Brief *Amicus Curiae* of America's Future, *et al.*, in Support of Defendants-Appellants and Reversal complies with the type-volume limitation of Rule 29(a)(5), Federal Rules of Appellate Procedure, because this brief contains 5,433 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 21.0.0.194 in 14-point Times New Roman.

*/s/ William J. Olson*
_____
William J. Olson
Counsel for *Amici Curiae*

Dated: March 13, 2026

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of America's Future, *et al.*, in Support of Defendants-Appellants and Reversal, was made, this 13th day of March 2026, by the Court's Case Management/ Electronic Case Files system upon the attorneys for the parties.

*/s/ William J. Olson*

_____
William J. Olson
Counsel for *Amici Curiae*