**ORAL ARGUMENT SCHEDULED ON MAY 14, 2026**

**Nos. 25-5241, 25-5265, 25-5277 & 25-5310**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

PERKINS COIE LLP,
*Plaintiff-Appellee,*
v.
U.S. DEPARTMENT OF JUSTICE, *et al.,*
*Defendants-Appellants*

---

On Appeal from the United States District Court
for the District of Columbia

---

**Brief *Amicus Curiae* of the Institute for the Rule of Law of the Union
Internationale des Avocats (UIA-IROL) in Support of Plaintiffs-Appellees and
Supporting Affirmation of the Decisions of the District Courts**

---

Jerome C. Roth
ROTH GLOBAL LAW/ARB
990 Green Street
San Francisco, CA 94133
Telephone: (415) 860-0909
Jerry@RothGlobal.com

Jacqueline R. Scott
FORTNEY & SCOTT, LLC
1909 K Street, NW Suite 330
Washington, D.C. 20006
Telephone (202) 689-1200
jscott@fortneyscott.com

*Counsel for* Amicus Curiae *UIA-IROL*

# <u>CORPORATE DISCLOSURE STATEMENT</u>

*Amicus curiae* UIA-IROL (the Institute for the Rule of Law) is an independent arm of UIA (the Union Internationale des Avocats or, in English, the International Lawyers' Association), a not-for-profit association formed under French law and headquartered in Paris, with almost 2,000 lawyers and numerous bar association members from around the world. UIA and UIA-IROL have no parent corporations or subsidiaries and do not issue stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................................ i

TABLE OF CONTENTS................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

INTEREST OF *AMICUS CURIAE*................................................................................................ 1

ARGUMENT.................................................................................................................................. 4

    A.   Sources of International Law Protecting the Independence of the Bar ............................. 4

    B.   The Rights Implicated under International Law ................................................................ 8

        1)   Lawyers' Right to Exercise Their Professional Duties.................................................... 8

        2)   Lawyers' Right Not to Be Identified or Equated With Their Clients ........................... 12

        3)   Lawyers' Right to Appear in Court and Access Necessary Information...................... 14

        4)   Lawyers' Right to Free Association ............................................................................. 15

        5)   Lawyers' Right to Free Expression............................................................................... 16

    C.   The Orders Violate Internationally Recognized Rights of Lawyers................................ 17

CONCLUSION............................................................................................................................. 18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE AND TYPE-STYLE REQUIREMENTS ............................................................................................... 21

CERTIFICATE OF SERVICE .................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Canada (Attorney General) v. Federation of Law Societies of Canada,* [2015]
1 S.C.R. 401 (Can.) ..................................................................................................9, 10

*Kruglov v. Russia,* App. No. 11264/04 (European Court of Human Rights) (Apr. 6, 2020)........ 12

*Law Society of Kenya v. Attorney General of Kenya,* [2016] KEHC 3806 (KLR)....................... 10

*Morris v. France*, Eur. Ct. H.R., Application *9369/10*, (Apr. 15, 2015) ................................ 10, 14

*Prosecutor v. Alex Tamba Brima,* 2005 SCC Online SCSL 38...................................................... 10

*R.Muthukrishnan v. Registrar General of High Court of Judicature at Madras*
[2019] 1 S.C.R. 589 ................................................................................................................ 13

*Suo Motu Writ Petition (Crl) No.2 of 2025, In re: Summoning Advocates,* 2025 INSC 1275 (Oct.
31, 2025) ................................................................................................................................ 12

**Other Authorities**

Council of Bars and Law Societies of Europe's *Charter of Core Principles of the European
Legal Profession*, adopted in Brussels in 2006.,
https://www.ccbe.eu/fileadmin/speciality_distribution/public/documents/
DEONTOLOGY/DEON_CoC/EN_DEON_CoC.pdf ................................................. 6, 7, 12, 13

Council of Europe *Newsroom* website page, https://www.coe.int/en/web/portal/-/
council-of-europe-adopts-international-convention-on-protecting-lawyers............................. 5

Council of Europe*,* Comm. of Members, Rec. No. R(2000)21, 727th Mtg.,
(CM/Notes/727/10.3) (Oct. 13, 2000) (available at https://rm.coe.int/1680502fe8) (Adopted by
the Committee of Ministers on 25 October 2000 at the 727th meeting of the ministers'
Deputies) .............................................................................................................................. 8, 12

Council of Europe, Convention for the Protection of the Profession of Lawyer,
*10.1 European Comm. On Legal Co-Operation*, 1 (Mar. 12, 2025),
https://rm.coe.int/native/0900001680b4c020 ................................................................... passim

Exec. Order No. 14263, 90 Fed. Reg. 15615 (Apr. 9, 2025). ....................................................... 2

Int'l Bar Assoc., *Int'l Principles on Conduct for the Legal Profession* (Oct. 11 2018),
https://www.ibanet.org/document?id=-International-Principles-on-Conduct-for-the-Legal-
Profession-2018 ...................................................................................................................... 6, 7

Int'l Comm'n of Jurists, Int'l Principles on the Independence and Accountability of Judges, Lawyers, and Prosecutors, Practitioners Guide No.1, at 64 (available at https://www.icj.org/wp-content/uploads/2012/04/International-Principles-on-the-Independence-and-Accountability-of-Judges-Lawyers-and-Procecutors-No.1-Practitioners-Guide-2009-Eng.pdf) ................................................................................ 9, 11, 13

United Nations Basic Principles on the Role of Lawyers, adopted by the Eighth United Nations Congress on the Prevention of Crime and the Treatment of Offenders, Havana, Cuba, 7 September 1990, https://www.ohchr.org/en/instruments-mechanisms/instruments/basic-principles-role-lawyers. ........................................................................ passim

United Nations Human Rights Counsel, Rep. of the Spec. Rapporteur, *Safeguarding the independence of judicial systems in the face of contemporary challenges to democracy,* U.N. Doc.A/HRC/56/62, ¶¶ 49, 50 (Jun. 21, 2024) .................................... 9, 11, 14

United Nations Human Rights Council, Resolution, *Independence and impartiality of the judiciary, jurors and assessors and the independence of lawyers.* G.A. Res. 56/3, U.N.Doc. A/HRC/RES/56/3 (July 11, 2024) ........................................................................ 5, 11

## INTEREST OF *AMICUS CURIAE*

The Institute for the Rule of Law of UIA (UIA-IROL) is an independent arm of the 99-year-old UIA (Union Internationale des Avocats or International Lawyers' Association), a not-for-profit association of lawyers and bar associations from over 100 countries (including the United States). UIA-IROL protects the Rule of Law and human rights and in particular advocates for lawyers who are persecuted based on their professional practice, clients they represent, or legal positions they advance.

UIA-IROL is committed to the internationally-recognized principles that an independent bar, free from government interference, is essential to (a) the Rule of Law; (b) fundamental due process rights; (c) access to justice; (d) independence of the judiciary; and (e) protection of human rights. UIA-IROL strives to ensure that lawyers are not equated to, or sanctioned based on, actions of their clients. Concern for these principles is highest when lawyers are threatened based on positions taken by their clients against the government's perceived interests.[1]

---

[1] For example, UIA IROL recently submitted an amicus brief before a criminal court in Turkey in a proceeding seeking criminal sanctions against and removal of the head of the Istanbul Bar Association as being incompatible with Turkey's obligations under international human rights law.

Consistent with these commitments, UIA-IROL submits this *amicus curiae* brief to support the position of Perkins Coie, Jenner & Block, WilmerHale, and Susman Godfrey ("Appellee Law Firms") and the decisions of the district courts to enjoin implementation of Executive Orders issued by President Trump in March and April 2025 (hereinafter the "Orders").[2]  Those Orders impose harsh sanctions on Appellee Law Firms based explicitly on the firms' representation of clients and advocacy of positions the President disfavors.

Retaliatory conduct against lawyers violates not only domestic law, including the U.S. Constitution, as found by the courts below, but also internationally-recognized principles that protect the independence of the bar and the Rule of Law.  Those principles, reflecting values embodied in the U.S. Constitution, derive from numerous sources, including the 1990 *United Nations Basic Principles on the Role of Lawyers*, the most authoritative statement of international norms regarding the protection of lawyers and the independence of the bar.  *See*, *United Nations Basic Principles on the Role of Lawyers*, adopted by the Eighth United Nations Congress on the Prevention of Crime and the Treatment of Offenders, Havana, Cuba, 7 September 1990,

---

[2] E.O. 14230, 90 Fed. Reg. 11781 (March 6, 2025) (Perkins Coie); E.O. 14246, 90 Fed. Reg. 13997 (March 25, 2025) (Jenner & Block); E.O. 14250, 90 Fed Reg. 14549 (March 27, 2025) (WilmerHale); E.O. 14263, 90 Fed. Reg. 15615 (Apr. 9, 2025) (Susman Godfrey).

https://www.ohchr.org/en/instruments-mechanisms/instruments/basic-principles-role-lawyers (hereinafter "*UN Basic Principles*").  Last year, the Council of Europe codified rights enshrined in the *UN Basic Principles* in the *Convention for the Protection of the Profession of Lawyer,* an international treaty currently signed by 16 countries.  *See* Council of Europe, Convention for the Protection of the Profession of Lawyer, *10.1 European Comm. On Legal Co-Operation*, 1 (Mar. 12, 2025) (hereinafter the "*Convention*").  The *Convention* addresses increasing governmental attacks on lawyers for practicing their profession and establishes an obligation for national governments to ensure that lawyers can perform their jobs without intimidation.

Given its mission to protect lawyers, UIA-IROL has a strong interest in seeing that the district courts' injunctions against enforcement of the Orders are upheld; that the rights of lawyers throughout the United States are protected against interference and retaliation; and that the United States does not join the growing list of governments engaged in anti-democratic actions to suppress the independence of the bar and punish lawyers for fulfilling their professional duties.

In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), amicus UIA-IROL certifies that (1) this brief was authored entirely by counsel for the amicus curiae and not by counsel for any party, in whole or part; (2) no party or counsel for any party contributed money to fund preparing or submitting this brief;

3

and (3) apart from the amicus curiae and its counsel, no other person contributed money to fund preparing or submitting this brief.

All parties consented to the filing of this *amicus curiae* brief.

## ARGUMENT

The Orders purport to punish Appellee Law Firms based on representation of clients and positions the President opposes. By their terms, the Orders are purely and proudly retaliatory. The punishments are severe and threaten the continued viability of Appellee Law Firms by stripping essential security clearances; barring access to federal facilities, including courthouses; and prohibiting federal contracts with the firms or their clients.

Appellee Law Firms challenged the actions of the President as a violation of U.S. law, including the U.S. Constitution. In each case, the district court agreed and entered a permanent injunction. *Amicus curiae* UIA-IROL emphasizes that the Orders also violate long-standing and widely-recognized international norms relating to the rights of lawyers to: 1) practice law; 2) not be equated with their clients or their clients' actions or positions; 3) appear in courts where they are appropriately qualified; 4) associate freely; and 5) enjoy freedom of expression.

### A. Sources of International Law Protecting the Independence of the Bar

International norms protecting lawyers from retribution derive from numerous sources, including customary international law, the Law of Nations, and

foundational international instruments.  These standing standards form the basis of the *UN Basic Principles* adopted by the 8th United Nations Congress on the Prevention of Crime and the Treatment of Offenders at Havana in 1990.  UN Basic Principles, *supra*.  The *UN Basic Principles* recognize that lawyers play an essential role in upholding the Rule of Law, ensuring the right to counsel and other due process rights, promoting access to justice, and safeguarding human rights.  *Id.* They further acknowledge that lawyers can fulfill this critical role only if permitted to exercise their profession freely, without government intimidation.  *Id.*  They also stress that there can be no independent judiciary, a cornerstone of democracy, without an independent bar since, absent clients' access to lawyers able to challenge governmental action, there would be no cases for courts to adjudicate. *Id.*

For the past 35 years, the *UN Basic Principles* have stood as the authoritative statement of precepts protecting lawyers across the globe.  *Id.*  They have been repeatedly reaffirmed, including by the United Nations Human Rights Council resolution titled *Independence and impartiality of the judiciary, jurors and assessors and the independence of lawyers*.  *See* G.A. Res. 56/3, U.N.Doc. A/HRC/RES/56/3 (July 11, 2024) (expressing concern about the situation where "entry into or continued practice within the legal profession is controlled or arbitrarily interfered with by the executive branch").  In March 2025, the Council

of Europe, the organization overseeing the Rule of Law for over 700 million citizens throughout Europe, relied on the *UN Basic Principles* as the foundation for the *Convention.* That *Convention*, which is in the process of being ratified, responds "to increasing reports of attacks on the practice of the profession, whether in the form of harassment, threats or attacks, or interference with the exercise of professional duties (for example, obstacles to access to clients)." Council of Europe Newsroom website page, https://www.coe.int/en/web/portal/-/council-of-europe-adopts-international-convention-on-protecting-lawyers; *see also* Convention, *supra.* Under the *Convention*, governments are not only prohibited from interfering with lawyers carrying out their professional duties but have an affirmative obligation to ensure that lawyers remain free from interference from any source and that professional associations "can operate as independent self-governing bodies." *Id.*; see also Convention, *supra*.

The *Convention* followed other European guidelines recognizing these long-standing principles, including the Council of Bars and Law Societies of Europe's *Charter of Core Principles of the European Legal Profession*, adopted in Brussels in 2006. *See*, https://www.ccbe.eu/fileadmin/speciality_distribution/public/documents/DEONTOLOGY/DEON_CoC/EN_DEON_CoC.pdf (hereinafter "*Charter of Core Principles*"). The *Charter of Core Principles* provides that "a lawyer needs to be

free - politically, economically and intellectually - in pursuing his or her activities of advising and representing the client.  This means that the lawyer must be independent of the state and other powerful interests…"  Charter of Core Principles, *supra*, Principle (a), at p. 8.  In underlining the importance of self-regulation of bar associations, the *Charter of Core Principles* states that "[i]t is one of the hallmarks of unfree societies that the state, either overtly or covertly, controls the legal profession and the activities of lawyers."  Charter of Core Principles, *supra*, Principle (j), at p. 9.

Likewise, the International Bar Association, an international association of lawyers founded in London in 1947, adopted its *International Principles on Conduct for the Legal Profession* in 2011 (amended in 2018).  *See* Int'l Bar Assoc., *Int'l Principles on Conduct for the Legal Profession* (Oct. 11 2018), https://www.ibanet.org/document?id=-International-Principles-on-Conduct-for-the-Legal-Profession-2018 (hereinafter "*IBA Principles*").  Its foundational principle states that "a lawyer shall maintain independence and be afforded the protection such independence offers in giving clients unbiased advice and representation."  IBA Principles, *supra*, Principle 1, at p.5.

> It is indispensable to the administration of justice and the operation of the Rule of Law that a lawyer act for the client in a professional capacity free from direction, control or interference.  If a lawyer is not guaranteed independence and is subject to interference from others, *especially those in power*, it will be difficult for the lawyer fully to protect clients.  Therefore, the guarantee of a lawyer's independence is

an essential requirement for the protection of citizens' rights in a democratic society.

IBA Principles, *supra,* Explanatory note 1.2, at p. 12 (emphasis added).

### B. The Rights Implicated under International Law

These instruments and customary international law make clear that the Orders punishing Appellee Law Firms for representing clients and taking positions disfavored by the President violate international standards. In particular, the Orders run afoul of several specific guarantees, as explained below.

### 1) Lawyers' Right to Exercise Their Professional Duties

International law recognizes that foundational to democratic values is the right of lawyers to exercise their profession and practice law free from government or other interference. The *UN Basic Principles* prescribe that "[g]overnments shall ensure that lawyers (a) are able to perform all of their professional functions without intimidation, hindrance, harassment or improper interference" and "(c) shall not suffer, or be threatened with, prosecution or administrative, economic or other sanctions for any action taken in accordance with recognized professional duties, standards and ethics." UN Basic Principles, *supra,* Principle 16.

The *Convention* likewise provides that States must ensure lawyers can:

a. offer and provide legal advice, assistance, and representation, including for the purpose of defending human rights and fundamental freedoms;

. . .

c. have prompt and effective access to their clients and prospective clients, even when they are deprived of liberty;

d. be recognized as persons who are authorized to advise, assist or represent their clients;

e. have effective access to any relevant materials in the possession or control of the competent public authorities, courts and tribunals when acting on behalf of their clients without undue delay and restrictions;

f. have effective access to, and communication with, a court, tribunal or other similar body before which they are qualified to appear;

. . .

h. effectively participate in all proceedings in which they are acting on behalf of their clients;

i. inform the public about their services.

Convention, *supra*, Article 6(1); *see also* Council of Europe, Comm. of Members, Rec. No. R(2000)21, 727th Mtg., (CM/Notes/727/10.3) (Oct. 13, 2000) (hereinafter "*Recommendation No. R(2000)21*") ("All necessary measures should be taken to respect, protect, and promote the freedom of exercise of the profession of lawyer without discrimination and without improper interference from the authorities or the public…."). These core principles underlie the *International Principles on the Independence and Accountability of Judges, Lawyers and Prosecutors,* a compendium of documents published by the International Commission of Jurists (ICJ), a global organization of jurists with consultative status at the United Nations and international bodies:

> In order for legal assistance to be effective, it must be carried out independently. This is recognized in the [*UN Basic Principles*], which states that "adequate protection of the human rights and fundamental freedoms to which all persons are entitled, be they economic, social and culture, or civil and political, requires that all persons have effective access to legal services provided by an independent legal profession." To this end, international law establishes certain safeguards aimed at ensuring the independence of individual lawyers as well as of the legal profession as a whole.

Int'l Comm'n of Jurists, Int'l Principles on the Independence and Accountability of Judges, Lawyers, and Prosecutors, Practitioners Guide No.1, at 64 (available at https://www.icj.org/wp-content/uploads/2012/04/International-Principles-on-the-Independence-and-Accountability-of-Judges-Lawyers-and-Procecutors-No.1-Practitioners-Guide-2009-Eng.pdf) (hereinafter "*ICJ Principles*"); *see also* United Nations Human Rights Council, Rep. of the Spec. Rapporteur, *Safeguarding the independence of judicial systems in the face of contemporary challenges to democracy,* U.N. Doc.A/HRC/56/62, ¶¶ 49, 50 (Jun. 21, 2024) (hereinafter "*2024 Report of the Special Rapporteur*") ("lawyers may be punished simply for doing their job. . . . The politically motivated disciplinary actions . . . risk corrosion of the ability of justice systems to fulfil their essential democratic role and weaken public trust in them. . . . Lawyers . . . could become reluctant to work with individuals who are out of favor with the government or to pursue cases that challenge State authority and protect fundamental democratic rights.")

High courts around the world rely on international sources that establish the rights of lawyers to practice free from interference. In *Canada (Attorney General) v. Federation of Law Societies of Canada,* for example, the Supreme Court of Canada struck down provisions of a Canadian anti-money laundering statute partly on the ground that:

> Various international bodies have also broadly affirmed the fundamental importance of preventing state interference with legal representation. The [*UN*]*Basic Principles* . . . state that "adequate protection of the human rights and fundamental freedoms to which all persons are entitled . . . requires that all persons have effective access to legal services provided by an independent legal profession." [*Citations omitted*]. Similarly, the Council of Bars and Law Societies of Europe's *Charter of Core Principles of the European Legal Profession* emphasizes lawyers' "freedom . . . to pursue the client's case", including it as the first of 10 "core principles" (p. 5(online)). The [*IBA's*] *International Principles* . . . . also emphasize committed client representation as the first principle governing lawyers' conduct: "A lawyer shall maintain and be afforded the protection such independence offers in giving clients unbiased advice and representation."

 [2015] 1 S.C.R. 401, 101 (Can.) (internal citations omitted); s*ee also Law Society of Kenya v. Attorney General of Kenya,* [2016] KEHC 3806 (KLR) (Kenya Supreme Court finds that *UN Basic Principles* are part of Kenyan law; "without an independent, committed and effective law profession, the realization of the rights and fundamental freedoms envisaged under the Constitution will be a mirage."); *see also Morris v. France*, Eur. Ct. H.R., Application *9369/10*, (Apr. 15, 2015) ("The specific status of lawyers gives them a central position in the administration of justice as intermediaries between the public and the courts. They therefore play

a key role in ensuring that the courts, whose mission is fundamental in a State based on the rule of law, enjoy public confidence") (*citations omitted)*; *see also Prosecutor v. Alex Tamba Brima,* 2005 SCC Online SCSL 38; (Special Court of Sierra Leone relying upon *UN Basic Principles* to find that government authorities have an obligation to protect lawyers in the practice of their profession); *see also Suo Motu Writ Petition (Crl) No.2 of 2025, In re: Summoning Advocates,* 2025 INSC 1275 (Oct. 31, 2025) (Supreme Court of India finds that protecting lawyers ensures against a "totalitarian form of government" citing Alexis de Tocqueville, who stated, "I cannot believe that a republic could subsist . . . if the influence of lawyers in public business did not increase in proportion to the power of people."); *Kruglov v. Russia,* App. No. 11264/04 (European Court of Human Rights) (Apr. 6, 2020) ("125. The Court has repeatedly held that persecution and harassment of members of the legal profession strikes at the very heart of the Convention system.").

### 2) Lawyers' Right Not to Be Identified or Equated With Their Clients

The *UN Basic Principles* provide that "Lawyers shall not be identified with their clients or their clients' causes as a result of discharging their duties." UN Basic Principles, *supra*, at Principle 18.  Similarly, the *Convention* requires States to "ensure that lawyers do not suffer adverse consequences as a result of being identified with their clients or their clients' causes."  Convention, *supra,* Principle

6(5).  These admonitions arise from the increasing tendency of governments to portray lawyers as indistinguishable from their client and responsible for their client's conduct.  As the *ICJ Principles* underlined:

> This rule is extremely important due to the tendency, in certain countries, to assimilate clients' causes to their lawyers.
>
> - In one report to the UN Commission on Human Rights [the predecessor to the United Nations Human Rights Council], the Special Rapporteur on the independence of judges and lawyers noted his concern at "the increased number of complaints concerning Governments' identification of lawyers with their clients' causes.  Lawyers representing accused persons in politically sensitive cases are often subjected to such accusations".  The Special Rapporteur concluded that "identifying lawyers with their clients' causes, unless there is evidence to that effect, could be construed as intimidating and harassing the lawyers concerned".  According to international law, the Special Rapporteur said, "where there is evidence of lawyers identifying with their clients' causes, it is incumbent on the Government to refer the complaints to the appropriate disciplinary body of the legal profession."

ICJ Principles, *supra*, at 66 (quoting UN Basic Principles, *supra*, Principle 19).

This unjustified equation of lawyer and client threatens independent legal representation and subjects lawyers to opprobrium, harassment and punishment. International law prohibits this false equivalence, recognizing that the lawyer is a representative only and acts to ensure justice as an integral part of the legal system. *See* 2024 Report of Special Rapporteur, *supra* ("Disparagement and labelling by government officials of judges, prosecutors and lawyers may interfere with their independence and sow the seeds of disdain among the public. . ..; lawyers have

been labelled as "traitors" or "foreign agents" when they represented politically sensitive clients or took on human rights-related matters"); *see also* Human Rights Council 2024 Resolution, *supra*, ¶ 7 ("[u]nderscores that lawyers must not be identified with their clients or their clients' causes as a result of discharging their function").

### 3) Lawyers' Right to Appear in Court and Access Necessary Information

Article 6(1)(f) of the *Convention* requires the government to "ensure that lawyers have effective access to, and communication with, a court, tribunal, or other similar body before which they are qualified to practice." Convention, *supra*. This is an extension of the predecessor *Recommendation No. R(2000)21,* which provides that "[l]awyers should not be refused access to a court before which they are qualified to appear and should have access to all relevant files when defending the rights and interests of their clients in accordance with their professional standards." Recommendation No. R(2000), *supra*, Principle 1(7); *see also* UN Basic Principles*, supra*, No. 19 ("No court or administrative body before whom the right to counsel is recognized shall refuse to recognize the right of a lawyer to appear before it for his or her client unless that lawyer has been disqualified in accordance with national law and practice and in conformity with these principles."; *see also* UN Basic Principles*, supra*, No. 21 ("It is the duty of competent authorities to ensure lawyers access appropriate information, files, and

documents in their possession or control in sufficient time to enable lawyers to provide effective legal assistance to their clients.").

Restrictions on qualified lawyers' access to courts, agencies, and relevant information constitute a pernicious restraint on the independence of the bar and the judiciary. The right to due process becomes meaningless if counsel cannot appear before the tribunal where a matter is pending or review pertinent files.

### 4) Lawyers' Right to Free Association

International standards establish that lawyers have a right to associate with professional colleagues, both inside and outside their firms, as well as with clients. This right is set forth in Article 23 of the *UN Basic Principles* and is recognized by high courts around the globe. The Indian Supreme Court, for example, in *R.Muthukrishnan v. Registrar General of High Court of Judicature at Madras, [2019] 1 S.C.R. 589,* cited the *UN Basic Principles* to uphold lawyers' "right to freedom of association and assembly, which includes the right to form and join self-governing professional associations to represent their interests." *See also* ICJ International Principles, *supra*, at 67 ("As is the case with judges, freedom of expression and association constitute essential requirements for the proper functioning of the legal profession. Although these freedoms are enjoyed by all persons, they acquire specific importance in the case of persons involved in the administration of justice.") (*citing* UN Basic Principles, *supra*, Principle 23).

Governments cannot infringe on these rights by prohibiting a lawyer from joining a particular firm or representing a particular client.

### 5) Lawyers' Right to Free Expression

Recognized by the *UN Basic Principles,* lawyers' right to free expression forms a cornerstone of international law. The *Convention* provides that governments are obligated to "ensure the right of lawyers to inform the public about matters relating to the cases of their clients," subject only to restrictions imposed by professional ethics, the administration of justice, and privacy rights. Convention, *supra*, Article 7(1). Governments also must ensure "the right of lawyers . . . to promote the rule of law and adherence to it, to take part in public discussion on the substance, interpretation and application of existing and proposed legal provisions, judicial decisions, the administration of access to justice and the promotion and protection of human rights, as well as to make proposals for reforms concerning these matters." Convention, *supra*, Article 7(2).

As the European Court of Human Rights has held:

134. …freedom of expression is applicable also to lawyers. It encompasses not only the substance of the ideas and information expressed but also the form in which they are conveyed. [citations omitted] Lawyers are thus entitled, in particular, to comment in public on the administration of justice, provided that their criticism does not overstep certain bounds. [citations omitted]. . .

135. *The question of freedom of expression is related to the independence of the legal profession, which is crucial for the effective functioning of the fair administration of justice.*"

*Morris v. France*, *supra*, at II.D.1(c) (*Citations omitted*) (*emphasis added*); *see also* 2024 Report of the Special Rapporteur, *supra*, ¶ 48 ("disciplinary proceedings against lawyers have been enabled or initiated—sometimes resulting in disbarment or suspension—following statements that amount to the legitimate exercise of freedom of expression").

### C. The Orders Violate Internationally Recognized Rights of Lawyers

The Orders violate each of these rights recognized under international law. They punish the Appellee Law Firms merely for practicing law, representing clients, and taking positions the President disfavors. For example, the Perkins Coie Order seeks to punish the firm for representing a candidate who ran against President Trump. The Jenner & Block Order seeks retribution for advocating for protection of rights of transgender people and immigrants, as well as for hiring a former federal prosecutor involved in investigations and prosecutions relating to foreign interference in U.S. elections, including allegations against President Trump. The WilmerHale Order accuses the firm of "obvious partisan representations" relating to protection of immigrants, elections, and diversity initiatives, as well as the hiring of a lawyer previously involved in investigating foreign interference in U.S. elections and the conduct of President Trump. The Susman Godfrey Order asserts that the firm "spearheads efforts to weaponize the

American legal system and degrade the quality of American elections" based on positions the firm's clients took in litigation relating to the integrity of the 2020 Presidential election. All the Orders seek to equate the subject law firm with its clients and to punish lawyers as though their own conduct were at issue, a strategy routinely adopted by anti-democratic regimes to persecute the legal profession in retaliation for representation of disfavored groups.

The Orders further prohibit Appellee Law Firms from entering federal facilities, thereby restricting them from appearing before courts and agencies necessary for practicing law. The Orders infringe Appellee Law Firms' rights to association and free expression by purporting to punish the firms and their lawyers for the identity of their clients; the causes and positions they have advocated; statements they have made on their clients' behalf, in and outside the courtroom; and positions taken by lawyers they have hired. In short, the Orders infringe a range of internationally-recognized rights that ensure the independence of lawyers and, by extension, the judiciary.

## **CONCLUSION**

UIA-IROL protects lawyers globally from attacks by governments intent on curbing the independence of the bar. It does so in the conviction that rights to due process and the importance of an independent judiciary require that lawyers be free to practice their profession without government harassment. International law –

18

like U.S. law, including the Constitution – recognizes that lawyers' freedom to exercise their profession is fundamental to the protection of democracy and human rights.  Regrettably, in recent years, certain governments increasingly have interfered with lawyers' freedoms, attacking lawyers for the clients they represent and the positions they take – a dangerous trend that threatens democratic values.

United States bar associations and lawyers stand with UIA-IROL to safeguard lawyers from intimidation.  To be sure, the United States has been a leader in those efforts.  Yet now, the President has issued Orders to punish law firms for the lawyers they hire, positions they take, and clients they represent.  It would have devastating consequences for the bar, the judiciary, and people throughout the United States and worldwide if this nation were to now join the ranks of those countries undermining the independence of the bar and the judiciary for authoritarian ends.  It would also violate widely recognized international norms, putting the United States on the wrong side of global protection of democratic values, the Rule of Law, and human rights.

For these reasons, UIA-IROL respectfully supports affirmance of the district court decisions enjoining enforcement of the Orders.

Dated: March 31, 2026

*/s/ Jerome C. Roth*

Jerome C. Roth
ROTH GLOBAL LAW/ARB
990 Green Street
San Francisco, CA 94133
Telephone: (415) 860-0909
Jerry@RothGlobal.com

*/s/ Jacqueline R. Scott*

Jacqueline R. Scott
FORTNEY & SCOTT, LLC
1909 K Street, NW Suite 330
Washington, D.C. 20006
Telephone (202) 689-1200
jscott@fortneyscott.com

*Counsel for Amicus Curiae UIA-IROL*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE AND TYPE-STYLE REQUIREMENTS

It is hereby certified:

1. The foregoing *Amicus Curiae* brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4326 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: March 31, 2026.

> */s/ Jacqueline R. Scott*
> Jacqueline R. Scott
> D.C. Bar No. 495479
> FORTNEY & SCOTT, LLC
> 1909 K Street, NW Suite 330
> Washington, D.C. 20006
> Telephone (202) 689-1200
> jscott@fortneyscott.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 31st day of March, 2026, I electronically filed the

foreging brief with the Clerk of Court for the United States Court of Appeals for

the District of Columbia Circuit by using the Court's CM/ECF system.

Respectfully submitted:

*/s/ Jacqueline R. Scott*
Jacqueline R. Scott
D.C. Bar No. 495479
FORTNEY & SCOTT, LLC
1909 K Street, NW Suite 330
Washington, D.C. 20006
Telephone (202) 689-1200
jscott@fortneyscott.com
