**ORAL ARGUMENT SCHEDULED ON MAY 14, 2026**

**Nos. 25-5241, 25-5265, 25-5277, 25-5310**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

PERKINS COIE LLP,

*Plaintiff-Appellee,*

v.

U.S. DEPARTMENT OF JUSTICE, ET AL.,

*Defendants-Appellants.*

---

**On Appeal from the United States District Court
for the District of Columbia**

---

**BRIEF OF AMICI CURIAE
INTERNATIONAL BAR ASSOCIATION HUMAN RIGHTS INSTITUTE AND
COMMONWEALTH LAWYERS ASSOCIATION IN SUPPORT OF APPELLEES AND
URGING AFFIRMANCE**

---

*Of Counsel*:
Timothy Otty KC
George Molyneaux
Will Bordell
Joshua Hillis
BLACKSTONE CHAMBERS
Blackstone House
Temple, London, EC4Y 9BW
United Kingdom

John D. Cline*
LAW OFFICE OF JOHN D. CLINE
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
cline@johndclinelaw.com

*Counsel of Record for
Amici Curiae

# DISCLOSURE STATEMENT UNDER D.C. CIR. R. 26.1

The International Bar Association Human Rights Institute ("IBAHRI") is a not-for-profit corporation organized under the laws of the State of New York. The IBAHRI has no parent corporation, and no publicly held corporation owns more than 10% of its stock.

The Commonwealth Lawyers Association ("CLA") is a private company limited by guarantee, organized under the laws of the United Kingdom. The CLA has no parent corporation, and no publicly held corporation owns more than 10% of its stock.

# CERTIFICATE OF COUNSEL UNDER D.C. CIR. R. 29(d)

Undersigned counsel certifies under D.C. Cir. R. 29(d) that a separate brief is necessary because amici joining this brief present an international law perspective that is distinct from the perspective presented by other amici supporting appellees in these consolidated cases.

/s/   John D. Cline
John D. Cline
Counsel of Record for Amici Curiae
International Bar Association
Human Rights Institute and
Commonwealth Lawyers
Association

**TABLE OF CONTENTS**

**Page**

DISCLOSURE STATEMENT UNDER CIR. R. 26.1 ............................................i

CERTIFICATE OF COUNSEL UNDER CIR. R. 29(d) ....................................ii

TABLE OF AUTHORITIES ......................................................................iv

IDENTITY AND INTERESTS OF AMICI CURIAE .......................................1

SUMMARY OF THE ARGUMENT ...............................................................2

ARGUMENT .............................................................................................3

    I.    THE MEMBER STATES OF THE UN, INCLUDING THE UNITED STATES, HAVE LONG RECOGNIZED THE CENTRALITY TO THE RULE OF LAW OF THE INDEPENDENCE OF LAWYERS AND OF THEIR ABILITY TO DISCHARGE THEIR FUNCTIONS WITHOUT FEAR OR FAVOR. ...................................................................................3

    II.    SIMILAR PRINCIPLES HAVE ALSO RECENTLY BEEN CODIFIED AT A REGIONAL LEVEL, IN THE COUNCIL OF EUROPE'S CONVENTION FOR THE PROTECTION OF THE PROFESSION OF LAWYER. ......................................................10

    III.    THE FUNDAMENTAL IMPORTANCE FOR THE RULE OF LAW OF LAWYERS' INDEPENDENCE AND ABILITY TO DISCHARGE THEIR FUNCTIONS WITHOUT FEAR OR FAVOR IS WIDELY RECOGNIZED IN BOTH COMMON LAW AND CIVIL LAW JURISDICTIONS. ......................................................17

        A.  England and Wales. ...............................................................17

        B.  Canada. .................................................................................19

        C.  New Zealand. ........................................................................21

        D.  Australia. ...............................................................................22

        E.  Civil Law Jurisdictions............................................................23

CONCLUSION ........................................................................................25

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ............27

CERTIFICATE OF SERVICE....................................................................28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bagirov v. Azerbaijan*,
81024/12 (ECHR Sept. 25, 2020)… ........................................................12

*Canada (Attorney General) v. Federation of Law Societies of Canada* [2015], 1
SCR 401 ...................................................................................10, 20

*Canada (Attorney General) v. Law Society of British Columbia* [1982], 2 SCJ
No. 70 ......................................................................................19

*Elci & Ors v. Turkey*,
23145/93, 25091/94 (March 24, 2004) .....................................................11

*Finney v. Barreau du Quebec* [2004], SCC 36 ................................................19

*H v. S [Counsel: Debarment]* [2016], NZHC 409 ......................................21, 22

*Morice v. France*,
62 EHRR 1 (2016) ........................................................................12, 13

*Nikula v. Finland*,
31611/96 (ECHR March 21, 2002)........................................................11, 12

*R v. Secretary of State for the Home Department ex parte Anderson*,
[1984] QB 778..............................................................................18

*R (Daly) v. Secretary of State for the Home Department*,
[2001] UKHL 26 ............................................................................18

*Steur v. Netherlands*,
39657/98 (EHCR Oct. 28, 2003)............................................................11

**STATUTES AND RULES**

D.C. Cir. R. 26.1.............................................................................i

D.C. Cir. R. 29(d) ..........................................................................ii

Administration of Justice Act (United Kingdom 1985) ........................................18

*Advocatenwet*, Art. 10a(1) (Netherlands)...................................................24

*Bundesrechtsanwaltsordnung*, Arts. 1, 3(2) (Germany) ......................................23

Courts and the Legal Services Act (England 1990) ............................................18

Law Society Act (Ontario 1990) ........................................................18

Lawyers and Conveyancers Act (New Zealand 2006) ................................21, 22

Legal Profession Uniform Law (Australia:  New South Wales, Victoria, Western Australia) ................................................................22

Legal Practitioners Act (Australia: South Australia 1981) ..............................23

Legal Profession Act (Australia: Australian Capital Territory 2006) ...............23

Legal Profession Act (Australia: Northern Territory 2006) .............................23

Legal Profession Act (Australia: Queensland 2007) ......................................23

Legal Profession Act (Australia: Tasmania 2007) ..........................................23

Legal Services Act (England 2007)..................................................18

*Legge N. 247, Nuova disciplina dell'ordinamento della professione forense*, Art. 3 (Italy)......................................................................24

*Ley Organica 6/1985 del Poder Judicial*, Art. 542(2) (Spain) ........................24

*Real Decreto 658/2001 por el que se aprueba el Estatuto General de la Abogacia Espanola*, Art. 1(1) (Spain)......................................24, 25

*Rechtsanwaltsordnung*, Art. 9(1)  (Austria)........................................23

Solicitors Act (England 1974)..............................................18

Treason Act (England 1695) .................................................17

**OTHER AUTHORITIES**

*A Complete Collection of State Trials and Proceedings for High Treason and Other Crimes and* Misdemeanors, Vol. XXII ...........................................2

Council of Europe, *Convention for the Protection of the Profession of Lawyer*, (May 13, 2025)...........................................3, 10, 11, 13, 14, 15, 16, 17

Council of Europe, *Recommendation No. R(2000)21 of the Committee of Ministers to Member States on the Freedom of Exercise of the Profession of Lawyer* (Oct. 25, 2000) .....................................................13, 14

International Bar Association, *Standards for the Independence of the Legal Profession*...................................................................................9, 10

International Covenant on Civil and Political Rights (1966)..............................4

Report of the Special Rapporteur on the Independence of Judges and Lawyers, *Safeguarding the Independence of Judicial Systems in the Face of Contemporary Challenges to Democracy*, A/HRC/56/62 (June 21, 2024) ....9

Report of the Special Rapporteur on the Independence of Judges and Lawyers, A/64/181 (2009) ...................................................................................10

The Law Society of England and Wales, *UN Basic Principles on the Role of Lawyers: Independence of the Legal Profession and Lawyer/Client Rights Worldwide* (Feb. 2022).....................................................................3

United Nations Special Rapporteur, *Protection of Lawyers Against Undue Interference in the Free and Independent Exercise of the Legal Profession*, A.HRC.50/36 (2022) ..................................................................7, 9

United Nations Human Rights Committee, General Comment 32, Art. 14, *Right to Equality Before Courts and Tribunals and to Fair Trial*, CCPR/C/GC/32 (Aug. 23, 2007) .......................................................................7

United Nations, *Basic Principles on the Role of Lawyers* (1990) .............*passim*

United Nations Human Rights Council, Resolution 44/9, *Independence and Impartiality of the Judiciary, Jurors and Assessors, and the Independence of Lawyers* (July 23, 2020)..........................................................8

United Nations General Assembly, Resolution 53/144, *Declaration on the Right and Responsibility of Individuals, Groups and Organs of Society to Promote and Protect Universally Recognized Human Rights and Fundamental Freedoms* (March 8, 1999).....................................................5

United Nations General Assembly, Resolution 45/166, *Human Rights in the Administration of Justice* (Dec. 18, 1990) .......................................4

Vienna Declaration and Programme of Action (June 25, 1993).........................8

World Conference on Human Rights, 22d Plenary Meeting, A/CONF.157/PV.22 (June 25, 1993).............................................................8

**IDENTITY AND INTERESTS OF AMICI CURIAE[1]**

The International Bar Association is the world's leading international organization of legal practitioners, Bar associations and law societies. The International Bar Association's Human Rights Institute is an autonomous and financially independent entity, which works with the global legal community to promote and protect human rights and the independence of the legal profession worldwide. The Commonwealth Lawyers Association is a body dedicated to the rule of law throughout the Commonwealth.[2] Four signatories to this brief are practicing members of the English Bar. Timothy Otty KC has signed the brief with the full authority of the IBAHRI and the CLA.

The main purpose of this brief is to demonstrate that both international and domestic frameworks in multiple well-respected jurisdictions recognize – as fundamental to the rule of law – the independence of lawyers and their freedom to carry out their professional activities without fear or favor. The brief does not purport to address the correct approach in this appeal as a matter of the law of the United States. Instead, it is hoped that the Court may be assisted by international and comparative materials which illustrate the strength and breadth of the global

---

[1] This brief is filed by consent of all parties. No counsel for any party authored this brief, in whole or in part, nor did anyone apart from counsel for *amici* contribute money toward its preparation and filing.

[2] The Commonwealth is a voluntary association whose members are drawn from 56 independent sovereign states. Its 2.7 billion people account for over 30 percent of the world's population.

1

consensus, previously embracing the United States, and providing relevant background to the issues raised on these appeals.

## SUMMARY OF THE ARGUMENT

Fundamental principles respecting the role of lawyers and their ability to discharge their functions without fear or favor have been familiar since the time of the Founding Fathers. When in 1792 the British government headed by William Pitt the Younger sought to prosecute Thomas Paine for seditious libel in response to the publication of the <u>Rights of Man</u>, his lawyer Thomas Erskine defended his decision to represent Mr. Paine in the following terms:[3]

> I will for ever, at all hazards, assert the dignity, independence and integrity of the English Bar, without which impartial justice, the most valuable part of the English Constitution, can have no existence. From the moment that any advocate can be permitted to say he will, or will not stand between the Crown and the subject arraigned in the court where he daily sits to practice, from that moment the liberties of England are at an end.

In over two centuries since those words were spoken, the sentiment expressed by Lord Erskine has coalesced around a series of principles shared across most of the democratic world. As the former United Nations Special Rapporteur on the Independence of Judges and Lawyers, Diego García-Sayán, recently explained, the independence of the legal profession is "a value shared across jurisdictions and legal cultures. Not only is the independence of the legal profession a value, but it is established in binding domestic and international case

---

[3] *A Complete Collection of State Trials and Proceedings for High Treason and Other Crimes and Misdemeanors*, Volume XXII, at 412.

law, thereby creating rights for the client and their legal representatives, as well as corresponding obligations for States."[4]

These principles are reflected in the <u>United Nations Basic Principles on the Role of Lawyers</u> (1990) ("<u>Basic Principles</u>"), which were unanimously welcomed by all UN Member States, including the United States.  They are also reflected in the Council of Europe's <u>Convention for the Protection of the Profession of Lawyer</u> promulgated on 13 May 2025 ("<u>CoE Convention</u>") and in the domestic legal systems of both common law and civil law jurisdictions.  There is therefore a strong international consensus that lawyers must be independent of the executive, and able to discharge their functions without fear or favor.

**ARGUMENT**

**I.     THE MEMBER STATES OF THE UN, INCLUDING THE UNITED STATES, HAVE LONG RECOGNIZED THE CENTRALITY TO THE RULE OF LAW OF THE INDEPENDENCE OF LAWYERS AND OF THEIR ABILITY TO DISCHARGE THEIR FUNCTIONS WITHOUT FEAR OR FAVOR.**

The most widely adopted international recognition of the principle that lawyers should be independent and permitted to represent clients who choose to instruct them without fear or favor is found in the <u>Basic Principles</u>.  All UN

---

[4] The Law Society of England and Wales, <u>UN Basic Principles on the Role of Lawyers: Independence of the Legal Profession and Lawyer/Client Rights Worldwide</u> (February 2022), at 3.

Member States, including the United States, welcomed the <u>Basic Principles</u> through a unanimous resolution of the UN General Assembly 35 years ago.[5]

At their heart, the <u>Basic Principles</u> recognize that the independence of lawyers is necessary for protecting rights and freedoms, and for maintaining the rule of law.[6] The Preamble makes this clear: "adequate protection of the human rights and fundamental freedoms to which all persons are entitled, be they economic, social and cultural, or civil and political, requires that all persons have effective access to legal services provided by an independent legal profession." Article 1 further provides: "All persons are <u>entitled</u> to call upon the assistance of a lawyer <u>of their choice</u> to protect and establish their rights and to defend them in all stages of criminal proceedings." (Emphasis added.) The integrity and fairness of the legal system – the bedrock of the rule of law – depends to a significant extent upon the effective functioning of the lawyer-client relationship.

---

[5] United Nations General Assembly, Resolution 45/166 (December 18, 1990): Human rights in the administration of justice. The <u>Basic Principles</u> had been adopted at the Eighth United Nations Congress on the Prevention of Crime and the Treatment of Offenders, August 27 to September 7, 1990.

[6] This is also exemplified in the <u>International Covenant on Civil and Political Rights</u> ("<u>ICCPR</u>"), where the importance of defendants in criminal proceedings having the following rights is emphasised: (i) the right "to communicate with counsel of [the defendant's] choosing" (Article 14(3)(b)); and (ii) the right "to have legal assistance assigned to him, in any case where the interests of justice so require, and without payment by [the defendant] in any such case if [the defendant] does not have sufficient means to pay for it" (Article 14(3)(d)). The United States is a signatory to the ICCPR and has ratified it.

To achieve their objectives, the <u>Basic Principles</u> require governments to ensure that the role of lawyers is protected. This responsibility falls into two parts.

Firstly, governments must protect citizens who are in need of a lawyer by ensuring that there are "efficient procedures and responsive mechanisms for effective and equal access to lawyers" within their jurisdiction and "without distinction of any kind," including by reference to discrimination based on "political or other opinion" (Article 2).

Secondly, governments must also provide a number of "[g]uarantees for the functioning of lawyers," as outlined in Articles 16-22. The guarantee in Article 18 is especially important: "Lawyers shall not be identified with their clients or their clients' causes as a result of discharging their functions." Other key guarantees include: (i) ensuring that lawyers can "perform all of their professional functions without intimidation, hindrance, harassment or improper interference" (Article 16(a));[7] (ii) enabling them to travel and consult with clients freely at home and abroad (Article 16(b)); (iii) ensuring that they "shall not suffer, or be threatened with, prosecution or administrative, economic or other sanctions for any action taken in accordance with recognized professional duties, standards

---

[7] Analogously, Article 12 of the <u>UN Declaration on the Right and Responsibility of Individuals, Groups and Organs of Society to Promote and Protect Universally Recognized Human Rights and Fundamental Freedoms</u>, United Nations General Assembly, Resolution 53/144 (March 8, 1999), highlights that States must "take all necessary measures" to protect human rights defenders including lawyers against "any violence, threats, retaliation, de facto or de jure adverse discrimination, pressure or any other arbitrary action as a consequence of his or her legitimate exercise of the rights referred to in the present Declaration."

and ethics" (Article 16(c)); (iv) granting them civil and penal immunity for statements made in good faith in pleadings or in professional appearances (Article 20); and (v) giving them "access to appropriate information, files and documents in [the government's] possession or control in sufficient time to enable lawyers to provide effective legal assistance to their clients" (Article 21).

Lawyers must perform their roles in accordance with certain duties and responsibilities, set out at Articles 12-15 of the Basic Principles. These include that lawyers "at all times maintain the honour and dignity of their profession as essential agents of the administration of justice" (Article 12), "at all times act freely and diligently in accordance with the law and recognized standards and ethics of the legal profession" when protecting their clients' rights and promoting the cause of justice (Article 14), and "always loyally respect the interests of their clients" (Article 15).

The Basic Principles also make clear the entitlement of lawyers to freedom of expression, belief, association and assembly, in particular highlighting their right "to take part in public discussion of matters concerning the law, the administration of justice and the promotion and protection of human rights . . . without suffering professional restrictions by reason of their lawful action or their membership in a lawful organization" (Article 23). Lawyers are further entitled to form and join self-governing professional associations to represent their interests, promote their continuing education and training, and protect their professional integrity (Articles 24-25). Disciplinary proceedings brought against

lawyers must take place before an independent body, supervised by a court (Article 28).  Any such proceedings must be determined in accordance with codes of professional conduct established by the legal profession (Articles 26 and 29).[8] Thus, in welcoming the <u>Basic Principles</u>, the UN's member States – including the United States – have unanimously recognized the value of the independence of lawyers.  Far from being entitled to impose sanctions on lawyers, the executive must ensure that lawyers can perform their functions unimpeded, and without fear of sanction for doing so.  Maintenance of the rule of law requires nothing less.

In welcoming the <u>Basic Principles</u> in December 1990, the UN General Assembly invited governments to "respect them and to take them into account within the framework of their national legislation and practice."  In August 2007, the UN Human Rights Committee – the body of independent experts that monitors implementation of the ICCPR – made clear that lawyers should be able "to advise and to represent persons . . . in accordance with generally recogni[z]ed professional ethics without restrictions, influence, pressure or undue interference from any quarter."[9]

---

[8] The UN Special Rapporteur on the Independence of Judges and Lawyers has explained that – as well as codes of professional conduct – the principles of legality, foreseeability, and narrow interpretation applicable in criminal matters also apply to disciplinary proceedings against lawyers, citing the Inter-American Court of Human Rights in *López Lone et al. v. Honduras* (5 October 2015), at §257.  *See Protection of Lawyers Against Undue Interference in the Free and Independent Exercise of the Legal Profession*, A.HRC.50/36 (2022), at §83.

[9] UN Human Rights Committee, General Comment 32, Article 14, *Right to Equality before Courts and Tribunals and to Fair Trial*, CCPR/C/GC/32

Thirty years after their adoption, in July 2020, the UN Human Rights Council specifically recalled the <u>Basic Principles</u> in adopting a resolution that emphasized the importance of the independence of lawyers, underscoring in particular (at §6) that "lawyers must not be identified with their clients or their clients' causes as a result of discharging their function."[10]  In the Preamble to Resolution 44/9, the Human Rights Council observed that an independent legal profession is a "prerequisite for the protection of human rights and the application of the rule of law and for ensuring fair trials and the administration of justice without any discrimination."  At §1, it called upon all States to guarantee the independence of lawyers including by taking measures "that will enable them to carry out their professional functions without interference, harassment, threats or intimidation of any kind."  It also emphasized (at §7) that "lawyers should be

---

(Aug. 23, 2007), §34. The <u>Vienna Declaration and Programme of Action</u>, which was unanimously adopted by 171 states at the World Conference on Human Rights in Vienna on June 25, 1993, also reflects these principles in providing (at §27) that "an independent judiciary and legal profession in full conformity with applicable standards contained in international human rights instruments are essential to the full and non-discriminatory realization of human rights and indispensable to the processes of democracy and sustainable development."  The United States Representative at the World Conference described the <u>Vienna Declaration</u> as reaffirming "the basic principles my country has stood for."  World Conference on Human Rights, 22d Plenary Meeting, A/CONF.157/PV.22 (June 25, 1993), at 16.

[10] UN Human Rights Council, Resolution 44/9, *Independence and Impartiality of the Judiciary, Jurors and Assessors, and the Independence of Lawyers* (July 23, 2020).

enabled to discharge their functions independently and without any fear of reprisal."

As a further indication of international recognition of the need to protect these values, the UN Commission on Human Rights and the UN Human Rights Council have since 1994 appointed a Special Rapporteur on the Independence of Judges and Lawyers.[11]  In a 2022 report, the Special Rapporteur recommended that States "should pay special attention to cases and disputes in which legal professionals are exposed to high-profile situations because of the sensitivity of the legal cases they represent.  The impact of attacks on lawyers representing sensitive issues hinders and undermines their general capacity to perform their professional duties."[12]  As part of her most recent report in June 2024, the Special Rapporteur reaffirmed the essential role of lawyers in maintaining the rule of law and warned of a growing trend of governments undermining democracy by attacking the rule of law and the independence of lawyers.[13]

The Special Rapporteur has also relied upon the <u>Standards for the Independence of the Legal Profession</u> adopted by the IBA ("<u>IBA Standards</u>") as

---

[11] The Special Rapporteur was originally appointed by the Commission on Human Rights.  The UN Human Rights Council assumed the Special Rapporteur's mandate in 2006 and has renewed it seven times since.

[12] 'Protection of lawyers against undue interreference in the free and independent exercise of the legal profession' (2022) A.HRC.50/36, at §115.

[13] Report of the Special Rapporteur on the Independence of Judges and Lawyers, *Safeguarding the Independence of Judicial Systems in the Face of Contemporary Challenges to Democracy*, A/HRC/56/62 (June 21, 2024).

part of the international norms and guidelines relevant to the role and independence of lawyers.[14] The <u>IBA Standards</u> complement the <u>Basic Principles</u>, reinforcing the principles that lawyers are not to be identified with their client or their client's case, and that lawyers should not suffer or be threatened with sanctions or harassment for advising or representing any client or client's cause.[15]

In light of the foregoing, we respectfully agree with the Supreme Court of Canada that "there is overwhelming evidence of a strong and widespread consensus concerning the fundamental importance in democratic states of protection against state interference with the lawyer's commitment to his or her client's cause." *Canada (Attorney General) v. Federation of Law Societies of Canada* [2015] 1 SCR 401, at §102 (Cromwell, J). This is the international consensus from which it appears that the United States would be departing if this appeal were to be allowed.

## II. SIMILAR PRINCIPLES HAVE ALSO RECENTLY BEEN CODIFIED AT A REGIONAL LEVEL, IN THE COUNCIL OF EUROPE'S CONVENTION FOR THE PROTECTION OF THE PROFESSION OF LAWYER.

The international recognition of the centrality to the rule of law of the independence of lawyers and of their ability to discharge their functions without fear or favor was recently illustrated, at a regional level, by the <u>CoE Convention</u>.

---

[14] Report of the Special Rapporteur on the Independence of Judges and Lawyers, A/64/181 (2009), at §14.

[15] See in particular §§7 and 8 of the <u>IBA Standards</u> (adopted 1990).

Since being opened for signature on May 13, 2025, the <u>CoE Convention</u> has been signed by 29 European States to date.[16]

The <u>CoE Convention</u> reflects longstanding principles articulated by the European Court of Human Rights, in cases such as *Nikula v. Finland*, 31611/96 (ECHR March 21, 2002), *Steur v. Netherlands*, 39657/98 (ECHR Oct. 28, 2003) and *Elçi & Ors v. Turkey*, 23145/93 and 25091/94 (ECHR March, 24 2004). <u>*Elçi*</u> was a case in which the applicant Turkish lawyers alleged that they had been detained unlawfully by law enforcement officers on the pretext of involvement in criminal activities, but in reality because they had been involved in human rights work of which the Turkish authorities disapproved. At §669, when assessing the applicants' ultimately successful complaints that their detention violated the European Convention on Human Rights, the Court went to great lengths to underscore (emphasis added):

> the central role of the legal profession in the administration of justice and the maintenance of the rule of law. <u>The freedom of lawyers to practise their profession without undue hindrance is an essential component of a democratic society and a necessary prerequisite for the effective enforcement of the provisions of the Convention, in particular the guarantees of fair trial and the right to personal security. Persecution or harassment of members of the legal profession thus strikes at the very heart of the Convention system.</u> For this reason, allegations of such persecution in whatever form, but particularly large scale arrests

---

[16] The <u>CoE Convention</u> is not yet in force, but it will enter into force once at least eight countries (including six member States of the Council of Europe) have ratified it: see https://www.coe.int/en/web/portal/-/council-of-europe-convention-on-protecting-lawyers-opens-for-signature; and also https://www.coe.int/en/web/conventions/full-list?module=signatures-by-treaty&treatynum=226 (accessed February 6, 2026).

and detention of lawyers and searching of lawyers' offices, will be subject to especially strict scrutiny by the Court.

At §45 of *Nikula*, the Court was also emphatic that:

[T]he special status of lawyers gives them a central position in the administration of justice as intermediaries between the public and the courts. Such a position explains the usual restrictions on the conduct of members of the Bar. Moreover, the courts – the guarantors of justice, whose role is fundamental in a State based on the rule of law – must enjoy public confidence. Regard being had to the key role of lawyers in this field, it is legitimate to expect them to contribute to the proper administration of justice, and thus to maintain public confidence therein.

The European Court of Human Rights has also specifically noted the harshness of sanctions such as disbarment and their potential to have a "chilling effect" on lawyers' performance of their professional duties. *Bagirov v. Azerbaijan*, 81024/12 (ECHR Sept. 25, 2020), at §83.

The Grand Chamber of the European Court of Human Rights summarized the principles from the Court's case law on the status and freedom of expression of lawyers in *Morice v. France*, 62 EHRR 1 (2016), at §§132-139. Those principles include that, first, lawyers are independent professionals with a special role in the administration of justice that is essential to the rule of law. Second, lawyers are entitled to freedom of expression, and in particular to comment on the administration of justice, provided that criticism does not exceed certain bounds. Third, freedom of expression is related to the independence of the legal profession, which is crucial to the effective functioning of the fair administration of justice. Fourth, it is only in exceptional cases that restriction of defense

counsel's freedom of expression is necessary in a democratic society. Fifth, lawyers have a duty to defend their clients' interests zealously, such that there is an especially wide degree of latitude in what speech is protected in the context of comments by lawyers in the courtroom. Sixth, lawyers' comments outside the courtroom are still protected since their clients' interests may be pursued through media statements and the like.

In *Morice*, the Grand Chamber's ultimate conclusion (at §§177-178) was that punishment of a lawyer for criticism of judges in a newspaper article violated the lawyer's right to freedom of speech notwithstanding the hostile and serious nature of the criticism. The Grand Chamber held (at §167) that "a lawyer should be able to draw the public's attention to potential shortcomings in the justice system."

The CoE Convention also reflects the longstanding position of the Council of Europe. For example, in its *Recommendation No. R(2000)21 of the Committee of Ministers to Member States on the Freedom of Exercise of the Profession of Lawyer*, adopted on October 25, 2000, the Council of Europe indicated that "[a]ll necessary measures should be taken to respect, protect and promote the freedom of the exercise of the profession of lawyer without discrimination and without improper interference from the authorities or the public, in particular in the light of the relevant provisions of the European Convention on Human Rights" (Principle I(1)). Principle I(3) entitles lawyers to "freedom of belief, expression, movement, association and assembly," and Principle I(4) also provides that

"[l]awyers should not suffer or be threatened with any sanctions or pressure when acting in accordance with their professional standards." The importance of lawyers having access to their clients and not being refused access to courts before which they are qualified to appear (as well as having access to all relevant files) is recognized in Principles I(5) and I(7).

It is out of that long and firm tradition that the CoE Convention has emerged. Its Preamble confirms that the member States had taken into account the Basic Principles, and wished to underline "the fundamental role that lawyers and their professional associations play in upholding the rule of law." The Preamble noted "with grave concern that lawyers are increasingly being subjected to attacks, threats, harassment and intimidation on account of their professional activities as well as to improper hindrance or interference when performing their legitimate professional activities," and considered "the need to strengthen the international legal framework to ensure the freedom to practise the profession of lawyer."

The Explanatory Report accompanying the CoE Convention explains (at §§3-4) that lawyers are central to the proper administration of justice and the rule of law, playing crucial roles in protecting human rights and fundamental freedoms, by "represent[ing] natural or legal persons in legal matters, defending their rights and interests, within the framework of judicial systems, acting as intermediaries between courts and the public." It was also recognized (at §7) that undue interference by public authorities in the work of lawyers "undermines the

independence of the legal profession and the effective operation of the rule of law." The Explanatory Report goes on to explain (also at §7) that "[t]he ability of lawyers to carry out their professional activities may also be undermined by harassment, prejudice and negative stereotyping stemming from their membership, or perceived membership, of a particular group of persons." At §8, the Explanatory Report acknowledges the particular need to protect lawyers representing "unpopular causes or clients":

> Lawyers who are involved in defending unpopular causes or clients, may face stigmatisation, both professionally and personally, impacting their practice and well-being. In some cases, there may be insufficient support or an inadequate response from the authorities in protecting lawyers from such adverse situations; in severe cases public authorities may be the source of such criticisms. Failure to support or publicly discrediting (groups of) lawyers may contribute to an environment that is hostile to do so. This demonstrates the need for structured legal protection to ensure that lawyers can carry out their professional duties and activities without fear of interference, intimidation, or harm.

Many of the principles set out in the CoE Convention reflect and reinforce those that appear in the Basic Principles. For example, Article 6 includes (by way of example) the following provisions:

- Article 6(1)(f) requires parties to the CoE Convention to "ensure that lawyers can . . . have effective access to, and communication with, a court, tribunal or other similar body before which they are qualified to appear." The Explanatory Report observes (at §43) that this provision is intended to cover "the ability of lawyers both to attend the premises

of the body in which any proceedings on behalf of their clients are taking place and to communicate with that body in connection with those proceedings using any means that might be authorised for that purpose."

- Article 6(2) requires parties to "ensure that lawyers shall not incur civil or criminal liability for oral and written statements made in good faith and diligently in the conduct of all proceedings on behalf of their clients." At §47, the Explanatory Report indicates that this protection is "essential if lawyers are to be able to represent their clients effectively since the principle of fairness militates in favour of free and forceful exchanges of arguments and submissions."

- Article 6(4) provides that the rights established by Articles 6(1)-(3) cannot be restricted other than where "prescribed by law and . . . necessary in a democratic society." The Explanatory Report emphasizes (at §51) that any restrictions require "clear evidence" and "should remain exceptional."

- Article 6(5) requires parties to "ensure that lawyers do not suffer adverse consequences as a result of being identified with their clients or their clients' cause." Unlike Articles 6(1)-(3), Article 6(5) cannot be restricted in any way (Explanatory Report, §34). Article 6(5) is to be read with Article 9(4) which provides for parties to ensure that lawyers are not targeted with "i. any form of physical attack, threat, harassment

16

or intimidation; or ii. any improper hindrance or interference," and for the State itself also to refrain from engaging in such conduct.

The <u>CoE Convention</u> thus illustrates the widespread acceptance of the fundamental values set out in the <u>Basic Principles,</u> as well as reinforcing them.

## III. THE FUNDAMENTAL IMPORTANCE FOR THE RULE OF LAW OF LAWYERS' INDEPENDENCE AND ABILITY TO DISCHARGE THEIR FUNCTIONS WITHOUT FEAR OR FAVOR IS WIDELY RECOGNIZED IN BOTH COMMON LAW AND CIVIL LAW JURISDICTIONS.

The international consensus embodied in the <u>Basic Principles</u> and the <u>CoE Convention</u> is reflected in multiple common law and civil law jurisdictions.

### A. England and Wales.

The principle that lawyers are not to be identified with their clients has been established for centuries in England and Wales. For example, by passing the Treason Act 1695, the English Parliament made clear that lawyers did not commit treason by arguing on behalf of those accused of that crime. Section 1 of the Act provided that the judge presiding over a trial for treason was required, at the accused's request, to assign to the accused up to two counsel. In making provision of this kind, Parliament acknowledged that counsel themselves were obliged to perform their role and were not to be associated with the allegedly treasonous conduct with which their client had been charged.

More recently, it has been emphasized at the highest level that the right of access to a lawyer is integral to the right of access to the courts, which has been

a core constitutional principle since at least Magna Carta. The connection between the two rights was highlighted by Robert Goff LJ in *R v. Secretary of State for the Home Department ex parte Anderson* [1984] QB 778, 790:

> At the forefront of those civil rights is the right of unimpeded access to the courts; and the right of access to a solicitor to obtain advice and assistance with regard to the initiation of civil proceedings is inseparable from the right of access to the courts themselves.

Lord Bingham of Cornhill, with whom the other members of the Judicial Committee of the House of Lords (the predecessor to the Supreme Court of the United Kingdom) endorsed this assessment in *R (Daly) v. Secretary of State for the Home Department* [2001] UKHL 26; [2001] 2 AC 532, at §8.

Under English law, lawyers have a professional obligation to act "with independence and integrity," *see* §1 of the Legal Services Act 2007, which is reflected in relevant professional codes of conduct. The executive has no power or right to discipline lawyers; rather, the disciplinary oversight of lawyers is entrusted to independent regulators in the form of the Solicitors Regulation Authority (for solicitors) and the Bar Standards Board (for barristers). Those bodies exercise the delegated functions of the Law Society and the General Council of the Bar respectively as the relevant "approved regulators" recognized by §1 of Schedule 4 to the Legal Services Act 2007.[17] Any disciplinary

---

[17] In addition to the Legal Services Act 2007, regulatory functions of the Law Society are also found in the Solicitors Act 1974, the Administration of Justice Act 1985, and the Courts and the Legal Services Act 1990.

proceedings against a solicitor or barrister are brought before an independent tribunal, which determines whether any disciplinary offense has been committed (and, if so, any appropriate sanction) by applying the relevant professional code of conduct. Such tribunals are subject to supervision by the High Court of England and Wales. Therefore, in common with Articles 26 to 29 of the <u>Basic Principles</u>, disciplinary action is taken by impartial bodies under the supervision of the courts applying codes of conduct produced by lawyers.

**B.     Canada.**

In Canada, the Supreme Court has repeatedly recognized the necessity of the independence of lawyers for the rule of law and a free society. In <u>*Canada (Attorney General) v. Law Society of British Columbia*</u> [1982] 2 SCJ No.70, the Supreme Court unanimously held at §41:

> The independence of the Bar from the state in all its pervasive manifestations is one of the hallmarks of a free society. Consequently, regulation of these members of the law profession by the state must, so far as by human ingenuity it can be so designed, be free from state interference, in the political sense, with the delivery of services to the individual citizens in the state, particularly in fields of public and criminal law. The public interest in a free society knows no area more sensitive than the independence, impartiality and availability to the general public of the members of the Bar and through those members, legal advice and services generally.

In *Finney v. Barreau du Québec* (2004) SCC 36, [2004] 2 SCR 17, the Supreme Court held at §1 that an "independent bar composed of lawyers who are free of influence by public authorities is an important component of the fundamental legal framework of Canadian society."

The significance of such statements was underlined in *Canada (Attorney General) v. Federation of Law Societies of Canada* [2015] 1 SCR 401 in which the Supreme Court (at §84) recognized as a fundamental principle that the State cannot impose duties on lawyers that would undermine their duty of commitment to their clients' causes. The decision was delivered in the context of a constitutional challenge brought by the Federation of Law Societies to regulations which purported to impose duties on lawyers to collect, record and retain material for the purposes of combating money laundering and terrorist financing. The Supreme Court held that certain of the regulations were of no effect and others were to be read down to exclude lawyers from their scope. This was appropriate because, as the Supreme Court held at §110, the imposition of sanctions for non-compliance with the purported obligations would undermine lawyers' duty of commitment to their clients' causes. The Supreme Court expressly referred to the <u>Basic Principles</u> (at §101), and the decision illustrates the strength of the principle in Canada that lawyers must be independent and able to discharge their functions without fear or favor.

The strength of this principle is also illustrated by the way in which powers to discipline lawyers in Canda are entrusted to regulators. Those regulators are independent from the executive. The law society of each of the ten provinces and three territories which comprise Canada (or two law societies in the case of

Quebec) is recognized in the respective provincial or territorial legislation as the sole regulator of lawyers in that jurisdiction.[18]

### C. New Zealand.

In New Zealand, the centrality of the same fundamental values is seen in § 4 of the Lawyers and Conveyancers Act 2006, pursuant to which a lawyer must observe "fundamental obligations": (i) "to uphold the rule of law and to facilitate the administration of justice in New Zealand"; (ii) "to be independent in providing regulated services to his or her clients"; (iii) "to act in accordance with all fiduciary duties and duties of care owed by lawyers to their clients"; and (iv) "to protect, subject to his or her overriding duties as an officer of the High Court and to his or her duties under any enactment, the interests of his or her clients." These principles are reflected in the rules of professional conduct drafted by the New Zealand Law Society: see the Lawyers and Conveyancers Act (Lawyers: Conduct and Client Care) Rules 2008, which the High Court of New Zealand has described as "the profession's own collective judgment as to the standards to be expected of practitioners." *H v. S [Counsel: Debarment],* [2016] NZHC 409; [2016] NZAR 613, at §§25-26.

The executive has no power or right to discipline lawyers. Disciplinary sanctions may only be imposed on a lawyer if an independent disciplinary

---

[18] For example, in Ontario, Part II of the Law Society Act 1990 empowers the Ontario Law Society to exercise various disciplinary powers where lawyers are found, following a fair and impartial process, to have failed to comply with the professional standards set out in §4 of the same Act.

tribunal finds them guilty of misconduct, negligence, etc. Sections 227-242, Lawyers and Conveyancers Act 2006. The only other institution which has the power to interfere with lawyers' discharge of their functions is the High Court, which has power to restrain lawyers from appearing in proceedings. However, the threshold for taking such a step is very high, requiring that the integrity of the judicial process would be impaired. As the Court put it in *H v. S*, at §23:

> That jurisdiction is not to be exercised lightly. A litigant should not be deprived of his or her choice of counsel without good cause. The right of a litigant to choose counsel is a basic right which the Court will only exercise in a clear case, where it is satisfied that the actual or apparent fairness of the Court process requires it.

Accordingly, New Zealand is similar to England and Wales in providing for a system of regulation which enshrines at its heart the fundamental principles described above. The executive is not entitled to sanction lawyers.

**D.    Australia.**

Similarly, in Australia, the executive does not have a role in the disciplining of lawyers. The regulation of lawyers is a matter for the states and territories rather than a federal matter. A unifying theme though in each of the states and territories is that only bodies independent from the executive have powers to discipline lawyers.

Under §299 of the Legal Profession Uniform Law, adopted in the states of New South Wales, Victoria, and Western Australia, the designated local regulatory authority may make various disciplinary orders against a lawyer whom

it finds to have engaged in "unsatisfactory professional conduct." Section 405 provides that, for the authority to exercise its disciplinary functions, it must be an independent statutory body. Disciplinary powers are conferred upon an independent tribunal in cases falling within the more serious category of "professional misconduct," for example under §302.

In the other states (Queensland, South Australia, and Tasmania) and territories (Northern Territory and Australian Capital Territory), the relevant legislation also provides that only bodies independent from the executive may discipline lawyers.[19]

### E.    Civil Law Jurisdictions.

Many civil law jurisdictions have recognized in statute the principles that lawyers should be independent and able to discharge their functions without fear or favor. For example:

- In Austria, Article 9(1) of the *Rechtsanwaltsordnung* provides (in translation): "The lawyer is obliged to conduct the representation he has assumed in accordance with the law and to represent the rights of his party against everyone with zeal, loyalty and conscientiousness. He is authorized to put forward frankly all that he deems expedient in accordance with the law for the representation of his party, to use its

---

[19] Queensland: Legal Profession Act 2007, Ch. 4; South Australia: Legal Practitioners Act 1981, Part 6; Tasmania: Legal Profession Act 2007, Ch. 4; Northern Territory: Legal Profession Act 2006, Ch. 4; Australian Capital Territory: Legal Profession Act 2006, Ch. 4.

means of attack and defense in every way which does not contradict his mandate, his conscience and the laws."

- In Germany, Article 1 of the *Bundesrechtsanwaltsordnung* provides (in translation): "The lawyer is an independent organ of the administration of justice." Under Article 3(2): "[The lawyer's] right to appear before courts, arbitral tribunals or authorities in legal matters of any kind may be restricted only by a federal law."

- In Italy, Article 3 of *legge n° 247, Nuova disciplina dell'ordinamento della professione forense* recognizes (in translation) that "[t]he exercise of the activity of a lawyer must be based on the autonomy and independence of professional action and intellectual judgment."

- In The Netherlands, Article 10a(1) of *Advocatenwet* provides (in translation): "In the interest of the proper administration of justice, the lawyer is responsible for the safeguarding of his client's legal rights. To this end, the lawyer in the exercise of his profession is: (a) independent of his client, third parties and the cases in which he appears; (b) partial in the representation of the legitimate interests of his client . . . ."

- In Spain, Article 542(2) of *Ley Orgánica 6/1985 del Poder Judicial* and Article 1(1) of *Real Decreto 658/2001 por el que se aprueba el Estatuto General de la Abogacía Española* provide (in translation): (i) "[i]n their actions before the courts and tribunals, lawyers are free and independent, shall be subject to the principle of good faith, shall enjoy

24

the rights inherent in the dignity of their function, and shall be protected by these rights in their freedom of expression and defense"; and (ii) "[t]he legal profession is a free and independent profession that provides a service to society in the public interest and is practiced under a regime of free and fair competition, through the advice and defense of public or private rights and interests, by applying legal science and technology, in order to achieve harmony, the effectiveness of fundamental rights and freedoms, and justice."

## CONCLUSION

Although we do not opine on the position in the United States as a matter of domestic law, it would be surprising if the legal position in the United States diverged from that set out in the <u>Basic Principles</u>, which were unanimously welcomed by all of the UN's member States, including the United States. A wide variety of other mature democratic States with well-respected legal systems sharing a largely common legal heritage, both among themselves and with the United States, all recognize these fundamental values as central to the rule of law and to democracy. To allow the appeals would appear to risk departing from that well-established position.

DATED:  April 1, 2026                    Respectfully submitted,

                                         /s/  John D. Cline
                                         John D. Cline

                                         Counsel of Record for
                                         Amici Curiae

                                         *Of Counsel*
                                         Timothy Otty KC
                                         George Molyneaux
                                         Will Bordell
                                         Joshua Hillis

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMIT**

1.     This document complies with the word limit of Cir. R. 29(a)(5), Fed. R. App. P. 32(a)(7)(B)(i) and Cir. R. 32(a)(7)(B)(i), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6473 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Cir. R. 32(a)(5)(A)  and the type-style requirements of Fed. R. App. P. 32(a)(6) and Cir. R. 32(a)(5)(A) because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2603) in Times New Roman 14-point font.

/s/  John D. Cline
John D. Cline

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ John D. Cline
John D. Cline