# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――

PERKINS COIE, et al.,
*Plaintiffs-Appellees,*

v.

U.S. DEPARTMENT OF JUSTICE, et al.,
*Defendants-Appellants.*

―――――――――

On Consolidated Appeals from the
U.S. District Court for the District of Columbia
(Case Nos. 25-716, 25-916, 25-917, 25-1107)

―――――――――

**BRIEF OF WASHINGTON LEGAL FOUNDATION
AS AMICUS CURIAE SUPPORTING
PLAINTIFFS-APPELLEES AND AFFIRMANCE**

―――――――――

Cory L. Andrews
Zac Morgan
  *Counsel of Record*
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
zmorgan@wlf.org

April 2, 2026          *Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Under D.C. Circuit Rule 28(a)(1), the undersigned counsel of record certifies:

## A.    Parties and Amici

Except for Aaron H. Caplan, Union Internationale des Avocats, Institute for the Rule of Law, Lawyers Defending American Democracy, European Bar Associations, International Bar Association Human Rights Institute, Commonwealth Lawyers Association, and American Bar Association, all known parties and as-filed amici are listed in certificates in the Defendants-Appellants' and Plaintiffs-Appellees' briefs.

## B.    Ruling Under Review

The rulings under review are: *Perkins Coie v. U.S. Dep't of Justice*, Case No. 25-716 (D.D.C. May 2, 2025) (Howell, J.); *Jenner & Block v. U.S. Dep't of Justice*, Case No. 25-916 (D.D.C. May 23, 2025) (Bates, J.); *WilmerHale v. U.S. Dep't of Justice*, Case No. 25-917 (D.D.C. May 27, 2025) (Leon, J.); *Susman Godfrey v. U.S. Dep't of Justice*, Case No. 25-1107 (D.D.C. June 27, 2025) (AliKhan, J.).

## C.   Related Cases

*Zaid v. Executive Office of the President*, Case No. 26-5009 (D.C.

Cir. 2026) is presently pending before this Court.

/s/ Zac Morgan
Zac Morgan

## STATEMENT ON AUTHORSHIP, MONETARY CONTRIBUTIONS, AND SEPARATE BRIEFING

No party's counsel authored any part of this brief and no one, other than Washington Legal Foundation and its counsel, contributed money intended to fund the brief's preparation and submission. Fed. R. App. P. 29(a)(4)(E).

As an organization dedicated to both free markets and the rule of law, WLF's brief is necessary to provide the Court with the unique perspective that the President's executive orders will deleteriously distort the free market in legal services and erode the First Amendment's robust protection of the right to provide effective legal representation.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................ii

GLOSSARY ...................................................................................iv

INTEREST OF AMICUS CURIAE...........................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................1

ARGUMENT ...................................................................................3

I. THE EXECUTIVE ORDERS IMPERMISSIBLY DISTORT THE PRIVATE MARKET FOR LEGAL SERVICES BY PICKING WINNERS AND LOSERS ......................................................................3

II. THE EXECUTIVE ORDERS VIOLATE THE FIRST AMENDMENT RIGHT TO PROVIDE EFFECTIVE REPRESENTATION IN THE COURTS..................................................................................7

CONCLUSION .............................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bill Johnson's Rests., Inc. v. NLRB,*
    461 U.S. 731 (1983) ................................................................ 7

*Borough of Duryea v. Guarnieri,*
    564 U.S. 379 (2011) ............................................................ 2, 7

*FTC v. Ticor Title Ins. Co.,*
    504 U.S. 621 (1992) ................................................................ 3

*Legal Servs. Corp. v. Velazquez,*
    531 U.S. 533 (2001) ................................................................ 8

*Lehnert v. Ferris Faculty Ass'n,*
    500 U.S. 507 (1991) ................................................................ 7

*NAACP v. Ala.,*
    357 U.S. 449 (1958) ................................................................ 7

*NAACP v. Button,*
    371 U.S. 415 (1963) ............................................................ 2, 7

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982) ................................................................ 9

*Nieves v. Bartlett,*
    587 U.S. 391 (2019) ................................................................ 9

*Thomas v. Collins,*
    323 U.S. 516 (1945) ............................................................ 7, 9

*United States v. Morrison,*
    529 U.S. 598 (2000) ................................................................ 7

*United States v. Sineneng-Smith,*
    590 U.S. 371 (2020) ......................................................................8

*U.S. Catholic Conf. v. Abortion Rts. Mobilization, Inc.,*
    487 U.S. 72 (1988) ........................................................................7

**Statute**

42 U.S.C. § 1983 ................................................................................7

**Executive Orders**

Executive Order 14230.................................................................. 1, 5

Executive Order 14246.............................................................. 1, 5, 10

Executive Order 14250.............................................................. 1, 5, 10

Executive Order 14263........................................................... 1, 5, 9, 10

**Other Authorities**

Akhil Reed Amar,
    *The Bill of Rights: Creation and Reconstruction* (1998)................10

The Federalist, No. 78..........................................................................7

Alan Greenspan & Adrian Wooldridge,
    *Capitalism in America: A History* (2018)........................................4

# GLOSSARY

EPA        Environmental Protection Agency

FTC        Federal Trade Commission

NLRB     National Labor Relations Board

WLF        Washington Legal Foundation

## INTEREST OF AMICUS CURIAE

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free markets, individual rights, and the rule of law. WLF has long defended the rule of law as indispensable to economic liberty, warned against governmental distortion of private markets, and opposed executive overreach that punishes disfavored private actors. This case directly implicates all those concerns.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The President has singled out four private law firms for punishment. He wants attorneys at those firms stripped of security clearances, debarred from government contracting and government employment, and excluded from federal buildings. Executive Orders 14230, 14246, 14250, 14263. The President has not hidden his motivation for doing this. *Id*. He doesn't support the firms' prior legal representations and pro bono work. *Id*. Both markets and Madison favor voiding the Executive's actions.

Start with markets. Businesses do not operate in a vacuum. They depend on enforceable contracts, secure property rights, and impartial

dispute resolution. An independent bar of highly trained legal advocates is indispensable for securing those guarantees. In a free market, corporate clients are generally fully capable of selecting and retaining counsel on their own terms.

But if the President can punish lawyers for the clients they choose or the positions they advance on behalf of those clients, it distorts the competitive market for sophisticated legal services. This, in turn, raises transaction costs for every business that relies on legal counsel and signals that a successful law practice turns on political favor rather than merit. That's economic poison. Free markets thrive on predictability. They collapse when success turns on currying government favor.

Next, Madison. The First Amendment protects speech, assembly, and petition. Those rights bundle into a constitutional umbrella for advocacy, association, and asking—the very stuff of effective legal representation. *See NAACP v. Button*, 371 U.S. 415, 429 (1963) (legal advocacy is "a form of political expression" shielded from government interference); *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388–89 (2011) ("A petition conveys the special concerns of its author to the

2

government and, in its usual form, requests action by the government to address those concerns.").

If the President can punish firms for lawfully taking on disfavored cases or clients, it turns that umbrella inside-out. Not just for the four firms here. Every other firm in America—big and small, for-profit and nonprofit—will be chilled by the knowledge that selecting the wrong case can bring representation-ruining presidential consequences. And that risk won't end when this President leaves office. Upholding the orders will leave a tempting loaded weapon on the Resolute Desk for all his successors.

## ARGUMENT

### I. THE EXECUTIVE ORDERS IMPERMISSIBLY DISTORT THE PRIVATE MARKET FOR LEGAL SERVICES BY PICKING WINNERS AND LOSERS.

The "preservation of the free market and of a system of free enterprise . . . is essential to economic freedom." *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 632 (1992). Law firms are businesses. Their clients— corporations, entrepreneurs, and individuals—rely on zealous, independent counsel to navigate regulations, enforce contracts, protect property, and litigate disputes. Elite law firms compete vigorously in a

global market for corporate representation, regulatory advice, and high-stakes litigation.

Free-market advocates have long warned that regulatory uncertainty silently slays investment. Businesses "crave certainty as much as almost anything: certainty is what allows them to make long-term plans and long-term investments." Alan Greenspan & Adrian Wooldridge, *Capitalism in America: A History* 258 (2018). When businesses competing in a global economy can't know whether their choice of counsel will suddenly expose them to collateral governmental sanction, capital flees to safer, more predictable jurisdictions.

So for the market to work, clients must choose their legal counsel based on expertise, reputation, and independence—not on whether their prior advocacy pleases the incumbent administration. The Executive's orders upend that free-market dynamic. By directing agencies to terminate existing contracts "to the maximum extent permitted by applicable law," suspend attorney clearances, and bar attorney access to federal facilities and personnel, the President has imposed market disabilities on targeted firms that no private competitor could lawfully

replicate. Executive Orders 14230, 14246, 14250, 14263. Such selective punishment is the antithesis of free enterprise.

Above all, the President's orders oust the legal services industry from a merit-based system into one where success depends on avoiding disfavored clients or causes. In such a market, corporate counsel would lose access to preferred legal representation precisely when government-facing matters arise. Smaller firms and in-house departments would face higher costs and inferior options. The result would be reduced competition, higher prices, and diminished quality across the board—classic symptoms of government-created barriers to entry.

Sophisticated corporate clients, who drive demand in this market, are eminently capable of evaluating and choosing counsel based on merit, experience, and alignment with their business objectives. The orders effectively enlist those clients as unwilling enforcers of Executive Branch preferences. Federal agencies must compel every government contractor that finds itself a client of a targeted firm to disclose, in writing, any ongoing business with that firm. *Id*. Agency heads are then directed to review—and terminate or realign—those clients' own federal contracts if the relationship continues. *Id*.

In this way, the orders conscript the economic self-interest of unrelated businesses, forcing them to choose between retaining preferred counsel and preserving their own revenue streams. Government has no business inserting itself into these private contractual relationships or attempting to coerce business decisions that the market is best equipped to resolve on its own. By turning private contracting decisions into instruments of retaliation, the orders do not merely punish certain law firms—they weaponize the marketplace itself against the voluntary associations and merit-based competition that define free enterprise.

Free markets thrive on predictability; they collapse when success turns on currying government favor. This isn't conjecture—the immediate fallout of the Executive's actions makes the case. The district courts documented tangible economic consequences. Firms suffered parallel client restlessness and revenue uncertainty. Some clients suspended engagements; others terminated their relationships outright. And, unless this Court upholds the injunctions issued below and definitively voids the cause of those harms, this administration's retaliation today will become every business's regulatory risk tomorrow.

## II. THE EXECUTIVE ORDERS VIOLATE THE FIRST AMENDMENT RIGHT TO PROVIDE EFFECTIVE REPRESENTATION IN THE COURTS.

The First Amendment protects the "cognate rights" of speech, assembly, and petition. *Thomas v. Collins*, 323 U.S. 516, 530 (1945). And not just the rote ability to advocate, associate, ask, and appeal—but the capability to effectively do so. *NAACP v. Ala.*, 357 U.S. 449, 460 (1958); *Button*, 371 U.S. at 431. Since advocacy, association, and asking is the very stuff of lawyering, the First Amendment preserves effective legal representation from unlawful attack. *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 528 (1991); *Ala.*, 357 U.S. at 460; *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *Borough of Duryea*, 564 U.S. at 388–89.

Let's be honest: it's pretty easy for lawyers to self-aggrandize our role in the firmament of the Republic. But it's also simply true that the federal courts are indispensable not just for holding the federal and state governments to constitutional limits, *United States v. Morrison*, 529 U.S. 598, 616 n.7 (2000); 42 U.S.C. § 1983; The Federalist, No. 78, but for ensuring that the government legitimately decides competing claims for justice. Judges don't—can't, really—do that alone. *U.S. Catholic Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 77 (1988). Federal courts "have finite bounds of authority," *id.*, and "do not, or should not, sally

forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (punctuation altered, citation omitted). Learned counsel of a client's choosing completes that system. *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) ("An informed, independent judiciary presumes an informed, independent bar.").

The President's orders strike against the right to provide effective representation in two ways. First, and most immediately, they hit the targeted firms. The President has made it (at best) unpredictable whether a disfavored firm's attorneys may engage with opposing counsel or federally employed witnesses, review sensitive documents, or even enter federal buildings. And his contractor disclosure mandates disincentivize any client with contracting concerns from associating with any targeted firm's counsel. The firms' ability to provide effective representation in the federal courts would be nearly impossible under those circumstances.

Second, the President's orders create a looming threat that "blankets with uncertainty" virtually all effective legal representation.

*Thomas*, 323 U.S. at 535. The orders singled out these four firms because they allegedly "weaponize[d] the American legal system," Executive Order 14263, and did pro bono work the President dislikes. Shorn of hyperbole, that's impermissible retaliation for the firm's constitutionally protected advocacy, association, and asks. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (First Amendment prohibits government retaliation for protected activity); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982) ("For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims.").

If the President's orders stand, all attorneys—those in large firms, those in small shops, and those working in the nonprofit sector—will know that bringing the wrong cases may bring down firm-disruptive presidentially directed consequences. And that threat won't expire with this administration. Firms will always read the political moment and rationally—even if only subconsciously—chill their representation of clients with "inappropriate" regulatory or ideological exposure.

That inevitable chilling effect table-sets for the very incumbent self-dealing by "the people's agents" that the First Amendment was written

to fence off. Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* 23 (1998). A firm's litigious clients are a matter of public record. Any president can rationally identify which clients and causes are likely to bring difficult cases for the federal government—and then kneecap them by deeming their preferred lawyers "detrimental to critical American interests." Executive Orders 14246, 14250, 14263. And so, if these executive actions are lawful, tomorrow's administration could target any firm whose lawyers once represented the "wrong" clients: energy companies challenging EPA rules, tech firms defending antitrust suits, manufacturers contesting trade actions, nonprofits that supported those efforts as amicus—the list goes on.

That just can't be right. The First Amendment prevents the President from putting clients and counsel in the position of advocating, associating, asking, and appealing to the courts with one wary eye always on the White House.

## CONCLUSION

Markets and Madison point in the same direction. The permanent injunctions should be affirmed.

Respectfully submitted,

/s/ Zac Morgan
Cory L. Andrews
Zac Morgan
  *Counsel of Record*
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
zmorgan@wlf.org

April 2, 2026

# CERTIFICATE OF COMPLIANCE AND SERVICE

I certify:

(i)     That this brief complies with the relevant length limitations set forth in the Rules. It contains 1,795 words.

(ii)    That this brief complies with the format, typeface, and type-style requirements of Fed. R. App. P. 32(a)(4)–(6) because it has been prepared using Microsoft Office Word and is set in 14-point Century Schoolbook font.

(iii)   That I electronically filed this brief with the Clerk via the CM/ECF system, which will serve all parties automatically.

/s/ Zac Morgan
Zac Morgan
*Counsel for Amicus Curiae*

April 2, 2026