**ORAL ARGUMENT SCHEDULED MAY 14, 2026**
Nos. 25-5241, 25-5265, 25-5277, 25-5310 (Consolidated)

---

# United States Court of Appeals for the District of Columbia Circuit

---

**PERKINS COIE LLP,**
*Plaintiff-Appellee,*

**v.**

**U.S. DEPARTMENT OF JUSTICE, et al.,**
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Columbia

Nos. 1:25-cv-00716 (BAH), 1:25-cv-00916 (JDB),
1:25-cv-00917 (RJL), 1:25-cv-01107 (LLA)

---

**BRIEF OF *AMICI CURIAE* MEMBERS OF CONGRESS IN
SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

Justin M. Sher
Douglas R. Jensen
Rebecca Prager
SHER TREMONTE LLP
90 Broad St., 23rd Floor
New York, NY 10004
Tel.: (212) 202-2600
jsher@shertremonte.com

*Attorneys for* Amici Curiae
*Members of Congress*

<u>**CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES**</u>

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned certifies as follows:

**A. Parties and Amici**

Except for the following, all parties, intervenors, and *amici* appearing in this Court are listed in the briefs for the parties and other *amici*:

*Amici curiae* are nineteen Members of the United States House of Representatives Committee on the Judiciary: Representatives Jamie Raskin, Jerrold Nadler, Zoe Lofgren, Steve Cohen, Henry C. "Hank" Johnson, Jr., Eric Swalwell, Ted W. Lieu, Pramila Jayapal, J. Luis Correa, Mary Gay Scanlon, Joe Neguse, Lucy McBath, Deborah K. Ross, Becca Balint, Jesús G. "Chuy" García, Sydney Kamlager-Dove, Jared Moskowitz, Dan Goldman, and Jasmine Crockett.

**B. Rulings Under Review**

References to the rulings at issue appear in the Brief of Appellants.

**C. Related Cases**

This case has not previously been before this court. This Court has consolidated *Perkins Coie LLP v. U.S. Department of Justice et al.*, No.

25-5241, with three related appeals: (1) *Jenner & Block LLP v. U.S. Department of Justice, et al.*, No. 25-5265; (2) *Wilmer Cutler Pickering Hale and Dorr LLP v. Executive Office of the President, et al.*, No. 25-5277; and (3) *Susman Godfrey LLP v. Executive Office of the President, et al.*, No. 25-5310. It has also ordered that these consolidated appeals be scheduled for oral argument on the same day and before the same panel as *Zaid v. Executive Office of the President, et al.*, No. 26-5009.

Dated:     April 2, 2026          /s/ *Justin M. Sher*

                                  Justin M. Sher
                                  *Attorney for* Amici Curiae
                                  *Members of Congress*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 26.1 and 29(b), counsel for *amici curiae* state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

Dated:     April 2, 2026                    /s/ *Justin M. Sher*

Justin M. Sher
*Attorney for* Amici Curiae
*Members of Congress*

# CERTIFICATE REGARDING SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(d), counsel for *amici curiae* certifies that a separate brief is necessary to express the views of the lawmakers responsible for statutes such as civil rights laws, environmental laws, and consumer-protection laws, the enforcement of which necessarily depends upon the preservation of an independent private bar. Because the challenged Executive Orders implicate separation-of-powers principles, *amici*, as representatives of the legislative branch, are uniquely positioned to advise this Court.

Dated:  April 2, 2026           /s/ *Justin M. Sher*

                                Justin M. Sher
                                *Attorney for* Amici Curiae
                                *Members of Congress*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................vi

INTEREST OF *AMICI CURIAE*.......................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................2

ARGUMENT ...................................................................................4

   I.  The Executive Orders Undermine the Constitutional Functions of Both the Judicial and Legislative Branches................................4

  II.  The Escalating Pattern of Retaliation Confirms the Orders' Unconstitutional Purpose. ...........................................................12

CONCLUSION ...............................................................................18

APPENDIX: LIST OF *AMICI CURIAE*................................................ A1

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aref v. Lynch,*
  833 F.3d 242 (D.C. Cir. 2016) ...................................................................12

*Bantam Books, Inc. v. Sullivan,*
  372 U.S. 58 (1963) ........................................................................................12

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
  472 U.S. 299 (1985) ........................................................................................8

*Bennett v. Spear,*
  520 U.S. 154 (1997) ......................................................................................11

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ..........................................................................................5

*Christiansburg Garment Co. v. EEOC,*
  434 U.S. 412 (1978) ........................................................................................7

*Clinton v. City of New York,*
  524 U.S. 417 (1998) ......................................................................................17

*Dep't of Commerce v. New York,*
  588 U.S. 752 (2019) ......................................................................................15

*Ex parte Garland,*
  71 U.S. (4 Wall.) 333 (1866) ........................................................................5

*Goodyear Tire & Rubber Co. v. Haeger,*
  581 U.S. 101 (2017) ........................................................................................5

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ........................................................................................9

*Jenner & Block LLP v. DOJ,*
  784 F. Supp. 3d 76 (D.D.C. 2025) ...........................................................2, 4

*Legal Servs. Corp. v. Velazquez,*
   531 U.S. 533 (2001) ..................................................................... 6, 11

*Marbury v. Madison,*
   5 U.S. (1 Cranch) 137 (1803) .......................................................... 5

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
   429 U.S. 274 (1977) ........................................................................ 12

*NAACP v. Button,*
   371 U.S. 415 (1963) .......................................................................... 6

*Newman v. Piggie Park Enters.,*
   390 U.S. 400 (1968) .......................................................................... 7

*NRA v. Vullo,*
   602 U.S. 175 (2024) ......................................................................... 11

*Perkins Coie LLP v. DOJ,*
   783 F. Supp. 3d 105 (D.D.C. 2025) ............................ 2, 10, 13, 15, 17

*Powell v. Alabama,*
   287 U.S. 45 (1932) ............................................................................ 5

*President and Fellows of Harvard College v. Dep't of HHS,*
   No. 25-cv-11048 (D. Mass. Apr. 21, 2025) ......................................... 14

*Susman Godfrey LLP v. Exec. Off. of the President,*
   789 F. Supp. 3d 15 (D.D.C. 2025) ......................................... 2, 4, 8, 13

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens,*
   529 U.S. 765 (2000) .......................................................................... 10

*WilmerHale v. Exec. Off. of the President,*
   784 F. Supp. 3d 127 (D.D.C. 2025) .................................................. 2, 4

**Statutes**

15 U.S.C. § 1640 ................................................................................... 8

15 U.S.C. § 1692k ................................................................................. 8

31 U.S.C. § 3730 ......................................................................................10

33 U.S.C. § 1365 .......................................................................................7

42 U.S.C. § 7604 .......................................................................................7

**Legislative Materials**

Letter from the Hon. Frank Pallone, Jr. and the Hon. Jamie Raskin, to Mr. David Ellison, CEO, Paramount Skydance Corporation (Aug. 20, 2025), https://democrats-energycommerce.house.gov/sites/evo-subsites/democrats-energycommerce.house.gov/files/evo-media-document/2025.08.20.pallone-raskin-to-ellison-paramount-skydance-re-merger.pdf....................................................3

Letter from the Hon. Jamie Raskin, the Hon. Richard Blumenthal, and the Hon. Robert C. "Bobby" Scott, to the Hon. Andrea R. Lucas, Acting Chair, U.S. Equal Employment Opportunity Commission (July 9, 2025), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2025-07-09-raskin-blumenthal-scott-to-lucas-eeoc)-law-firms.pdf..................................................................16

Letter from the Hon. Jamie Raskin, to Mr. Kenneth R. Weinstein, Ombudsman, CBS News (Dec. 3, 2025), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2025-12-03.raskin-to-weinstein-cbs-re-editorial-decisions.pdf...............................................................3

Letter from the Hon. Richard Blumenthal and the Hon. Jamie Raskin, to Mr. David Warrington, White House Counsel (Apr. 6, 2025), https://www.hsgac.senate.gov/wp-content/uploads/2025-4-6-Blumenthal-Raskin-Letter-to-David-Warrington.pdf....................3, 16

Letter from the Hon. Richard Blumenthal and the Hon. Jamie Raskin, to Mr. Richard M. Trobman, Chair and Managing Partner, Latham & Watkins LLP (Apr. 18, 2025), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2025-4-18-blumenthal-raskin-letter-to-lw.pdf ...................................................16

Letter from the Hon. Richard Blumenthal, the Hon. Jamie Raskin, and the Hon. Adam B. Schiff, to Mr. Brad S. Karp, Chairman, Paul, Weiss, Rifkind, Wharton & Garrison LLP (Sept. 24, 2025), https://www.hsgac.senate.gov/wp-content/uploads/2025-9-24 -Letter-from-Sen.-Blumenthal-Congressman-Raskin-Sen.-Schiff -to-Paul-Weiss.pdf ............................................................................ 3, 16

S. Rep. No. 94-1011 (1976), 1976 U.S.C.C.A.N. 5908 ............................... 6

## Constitutional Provisions

U.S. Const. art. I ............................................................................................ 17

U.S. Const. art. III ........................................................................................... 5

## Other Authorities

Exec. Order No. 14230, 90 Fed. Reg. 11781 (Mar. 11, 2025) ................. 13

Exec. Order No. 14237, 90 Fed. Reg. 13039 (Mar. 20, 2025) ................. 13

Exec. Order No. 14244, 90 Fed. Reg. 13685 (Mar. 26, 2025) ................. 13

Nitisha Baronia, Jared Lucky & Diego A. Zambrano, *Private Enforcement at the Founding and Article II*, 114 Cal. L. Rev. 131 (2026) .............................................................. 7

Pamela S. Karlan, *Disarming the Private Attorney General*, 2003 U. Ill. L. Rev. 183 (2003) ............................................................ 6

Presidential Memorandum, Suspension of Security Clearances and Evaluation of Government Contracts (Feb. 25, 2025), https://perma.cc/66W7-9WM3 ......................................................... 13

Press Release, *Ranking Member Raskin's Statement on Judiciary Republicans' Subpoena of Harvard University* (June 26, 2025), https://democrats-judiciary.house.gov/media-center/press-releases/ranking-member-raskin-s-statement-on-judiciary-republicans-subpoena-of-harvard-university ...................................... 3

Ryan Lucas, *Trump Attacks on Law Firms Begin to Chill Pro Bono Work on Causes He Doesn't Like*, NPR (Apr. 13, 2025, 5:00 AM), https://www.npr.org/2025/04/13/g-s1-59497/ trump-law-firms-pro-bono ....................................................................9

*White House Budget Proposes Eliminating LSC, Defunding Civil Legal Aid for Millions of Low-Income Americans*, Legal Services Corp. (May 30, 2025), https://www.lsc.gov/press-release/white-house-budget-proposes-eliminating-lsc-defunding-civil-legal-aid-millions -low-income-americans ................................................................17

# INTEREST OF *AMICI CURIAE*

*Amici*[1] are nineteen Members of the United States House of Representatives Committee on the Judiciary. *Amici* exercise legislative and oversight jurisdiction over the Department of Justice, the federal judiciary, and the administration of justice.

*Amici* have two institutional interests in this case. First, *amici* are responsible for enacting statutes that rely on private counsel for their enforcement, including civil rights laws, environmental laws, and consumer-protection laws. *Amici* accordingly have a direct interest in preserving the vibrant and independent bar on which those enforcement mechanisms depend. Second, as members of a coordinate branch of government, *amici* have an institutional interest in the separation-of-powers principles that the challenged Executive Orders threaten.

A full list of *amici* appears in the Appendix.

---

[1] No counsel for any party authored this brief in whole or in part. No party or their counsel, or any person other than *amici* or their counsel, contributed money that was intended to fund this brief. All parties to the appeal have consented to the filing of this brief.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Four district courts examined the four Executive Orders at issue in this appeal and concluded that each was unlawful. Those courts were correct. The challenged Executive Orders are a systematic and unconstitutional project designed to intimidate the legal profession from challenging the President. *See Perkins Coie LLP v. DOJ*, 783 F. Supp. 3d 105 (D.D.C. 2025); *Jenner & Block LLP v. DOJ*, 784 F. Supp. 3d 76 (D.D.C. 2025); *WilmerHale v. Exec. Off. of the President*, 784 F. Supp. 3d 127 (D.D.C. 2025); *Susman Godfrey LLP v. Exec. Off. of the President*, 789 F. Supp. 3d 15 (D.D.C. 2025).

*Amici* write to highlight two additional ways in which the challenged Orders undermine our constitutional separation of powers. *First*, the district courts explained that the Orders intrude on the judicial branch. But the Orders also threaten Congress: they undermine *amici*'s Article I legislative powers by disabling the rights Congress has created and the mechanisms by which Congress has chosen to enforce them. Rights are meaningful only if lawyers can help clients vindicate them, and the President's unlawful Orders attack that premise and so undermine the statutory protections Congress has implemented.

*Second*, the challenged Orders are part of an escalating pattern of attacking institutions that stand up to this tyrannical administration.[2] President Trump's retribution campaign began with a single law firm and then quickly spread to others, and then to universities, media organizations, nonprofits, and more. The President punishes organizations that defy him and reaps hundreds of millions of dollars

---

[2] *Amici* have repeatedly investigated this Administration's attacks on these institutions. For just some examples, *see, e.g.*, Letter from the Hon. Richard Blumenthal and the Hon. Jamie Raskin, to Mr. David Warrington, White House Counsel (Apr. 6, 2025), https://www.hsgac.senate.gov/wp-content/uploads/2025-4-6-Blumenthal-Raskin-Letter-to-David-Warrington.pdf; Letter from the Hon. Richard Blumenthal, the Hon. Jamie Raskin, and the Hon. Adam B. Schiff, to Mr. Brad S. Karp, Chairman, Paul, Weiss, Rifkind, Wharton & Garrison LLP (Sept. 24, 2025), https://www.hsgac.senate.gov/wp-content/uploads/2025-9-24-Letter-from-Sen.-Blumenthal-Congressman-Raskin-Sen.-Schiff-to-Paul-Weiss.pdf; Letter from the Hon. Frank Pallone, Jr. and the Hon. Jamie Raskin, to Mr. David Ellison, CEO, Paramount Skydance Corporation (Aug. 20, 2025), https://democrats-energycommerce.house.gov/sites/evo-subsites/democrats-energycommerce.house.gov/files/evo-media-document/2025.08.20.pallone-raskin-to-ellison-paramount-skydance-re-merger.pdf; Letter from the Hon. Jamie Raskin, to Mr. Kenneth R. Weinstein, Ombudsman, CBS News (Dec. 3, 2025), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2025-12-03.raskin-to-weinstein-cbs-re-editorial-decisions.pdf; Press Release, *Ranking Member Raskin's Statement on Judiciary Republicans' Subpoena of Harvard University* (June 26, 2025), https://democrats-judiciary.house.gov/media-center/press-releases/ranking-member-raskin-s-statement-on-judiciary-republicans-subpoena-of-harvard-university.

from those that capitulate, a playbook he has repeatedly deployed since assuming office. That systematic campaign imperils all institutions that resist lawless executive power and requires our strongest condemnation.

This Court should affirm.

## ARGUMENT

### I. The Executive Orders Undermine the Constitutional Functions of Both the Judicial and Legislative Branches.

The district courts below recognized that the challenged Orders usurp the judicial branch's powers. Judge Bates underscored that restrictions on an independent bar "threaten not only the lawyers and their clients but also the ability of a coequal branch of government to function," *Jenner & Block*, 784 F. Supp. 3d at 98; Judge Leon held that the President "wield[ed] his authority to punish a law firm for engaging in litigation conduct the President personally disfavors," thereby "usurp[ing] the Judiciary's authority to resolve cases and sanction parties," *WilmerHale*, 784 F. Supp. 3d at 160; and Judge AliKhan found that the Susman Godfrey Order "improperly seizes authority that the Constitution grants to the judiciary," *Susman Godfrey*, 789 F. Supp. 3d at 55.

Rightly so. Article III vests "[t]he judicial Power of the United States" in the federal courts. U.S. Const. art. III, § 1. That power encompasses the authority to regulate the conduct of attorneys. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). Disciplining attorneys for misconduct and sanctioning abuses of the judicial process are quintessential exercises of judicial, not executive, power. *See Ex parte Garland*, 71 U.S. (4 Wall.) 333, 378–79 (1866).

The challenged Orders, however, also undermine Congress's legislative powers: they disable the rights Congress has created and the enforcement mechanisms through which Congress has chosen to vindicate them. Our constitutional structure depends on "the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803). But the right to claim the protection of the laws "would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Powell v. Alabama*, 287 U.S. 45, 69 (1932). The Supreme Court has thus long recognized that the right to legal representation is the fundamental mechanism by which all other rights are enforced. When the government

chills lawyers from taking cases, it renders those underlying rights unenforceable. *See NAACP v. Button*, 371 U.S. 415, 430 (1963) ("[U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances."); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 546 (2001) (restrictions on legal advocacy distort the system on which enforcement of rights depends).

Congress has long legislated against that backdrop. Recognizing that rights are meaningful only if lawyers are willing to vindicate them, Congress has for decades empowered private attorneys to enforce federal statutes. *See* S. Rep. No. 94-1011, at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5910 ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *see also* Pamela S. Karlan, *Disarming the Private Attorney General*, 2003 U. Ill. L. Rev. 183, 205 (2003) (describing "[e]very significant contemporary civil rights statute" as relying on private enforcement). That so-called "private attorney general" model features in

hundreds of statutes. The civil rights laws are paradigmatic examples: in Title VII and 42 U.S.C. § 1983, Congress enacted fee-shifting provisions precisely because it understood that only private counsel could fully vindicate the rights Congress had created. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978); *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) (civil rights plaintiff obtains injunction "not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority"). Subsequent Congresses have repeatedly adopted that model across the United States Code.

All told, Congress has created more than 350 federal private rights of action and has made private parties the primary enforcers in key regulatory areas. *See* Nitisha Baronia, Jared Lucky & Diego A. Zambrano, *Private Enforcement at the Founding and Article II*, 114 Cal. L. Rev. 131, 134 (2026). Environmental citizen-suit provisions empower counsel representing private parties to enforce pollution standards when the government does not. *See, e.g.*, 33 U.S.C. § 1365 (Clean Water Act); 42 U.S.C. § 7604 (Clean Air Act). The False Claims Act's qui tam mechanism, 31 U.S.C. § 3730, authorizes private whistleblowers and

their attorneys to pursue fraud against the government on the public's behalf. Securities laws rely on private rights of action to supplement SEC enforcement, *see Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985); consumer-protection statutes do as well, *see, e.g.*, 15 U.S.C. §§ 1640(a), 1692k. In these and many other statutes, Congress assessed that an independent private bar unafraid to act contrary to the government's enforcement decisions was vital to the legislative scheme.

The challenged Orders attack that basic premise: that lawyers must be free to take on any case, including (and often especially) cases the government does not want brought. The Orders' deliberate vagueness casts an extraordinarily broad chill on the private bar. Each Order targets "activities inconsistent with the interests of the United States," language so capacious that any matter adverse to the government or its priorities could trigger retaliation. *See, e.g.*, *Susman Godfrey*, 789 F. Supp. 3d at 52 (finding the Order unconstitutionally vague because it "impermissibly delegates matters to [the Administration] for resolution on an ad hoc and subjective basis" (internal quotation marks omitted)). With the boundaries of permissible advocacy so undefined, lawyers will steer wider of the line than each Order requires—avoiding not just the

political causes that provoked the Orders, but the full range of enforcement actions that might displease the Executive. *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) ("Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." (internal quotation marks omitted)).

These concerns are not hypothetical. Civil rights organizations, immigration advocates, and other groups that depend on pro bono counsel from large firms to enforce federal statutory rights report that firms are declining representations they would previously have accepted. *See, e.g.*, Ryan Lucas, *Trump Attacks on Law Firms Begin to Chill Pro Bono Work on Causes He Doesn't Like*, NPR (Apr. 13, 2025, 5:00 AM), https://www.npr.org/2025/04/13/g-s1-59497/trump-law-firms-pro-bono (quoting Dustin Rynders, Legal Director of the Texas Civil Rights Project, as describing how he has "been turned down on some recent requests where people have expressed concern about . . . being involved in civil rights, voting rights cases, in challenges against the administration."). The *Perkins Coie* district court found that law firms with "some of the most talented lawyers in the world with the most

9

resources . . . chose silence." 783 F. Supp. 3d at 157 (internal quotation marks omitted). And more than 500 law firms filed an amicus brief in the district court describing the "looming threat" that "any . . . representation challenging actions of the current administration . . . now brings with it the risk of devastating retaliation." Br. of Amici Curiae 504 Law Firms in Supp. of Pl.'s Mot. for Summ. J. ¶ 2, *Perkins Coie LLP v. DOJ*, No. 25-cv-716, ECF No. 78 (D.D.C. Apr. 4, 2025). Under the challenged Orders, the rights Congress created in the Voting Rights Act, the Immigration and Nationality Act, and countless other statutes are becoming too perilous to enforce.

The chilling effect also reaches into areas where private enforcement is designed to operate against the government itself. Qui tam suits under the False Claims Act, for instance, necessarily include cases the Department of Justice has considered and declined to pursue on its own—Congress created the qui tam mechanism precisely so that private attorneys could fill that gap. *See* 31 U.S.C. § 3730(b)(1) (authorizing private relators to bring civil actions "in the name of the Government"); *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771–72 (2000) (describing qui tam relators' role in

supplementing government enforcement). Environmental citizen suits serve the same function: they exist because Congress recognized that the Executive will not always enforce the law against itself. *See Bennett v. Spear*, 520 U.S. 154, 165 (1997) (citizen-suit provisions exist to vindicate public interests). When the President can intimidate lawyers out of bringing these cases, he nullifies Congress's choice to empower private enforcement as a check on the Executive itself.

The result is a de facto veto over many of Congress's most prized statutory programs. That is much the concern the Supreme Court identified in *Legal Services Corp. v. Velazquez*, where it struck down restrictions preventing Legal Services Corporation lawyers from challenging welfare laws because those restrictions "distort[ed] the legal system by altering the traditional role of the attorneys" and sought "to insulate the Government's laws from judicial inquiry." 531 U.S. at 544, 546. The Orders before this Court do just that, but in even more sweeping fashion. They threaten the entire private bar with devastating retaliation for any representation the President disfavors. And they work through executive fiat a suppression of advocacy that even legislation could not lawfully accomplish. *See NRA v. Vullo*, 602 U.S. 175, 190 (2024) (the

government "cannot do indirectly what [it] is barred from doing directly" (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67–69 (1963))).

The challenged Orders therefore undermine not only the judiciary's ability to resolve cases, but also Congress's ability to see its laws enforced.

## II. The Escalating Pattern of Retaliation Confirms the Orders' Unconstitutional Purpose.

*Amici* also underscore that these Orders are part of a broader pattern, which *amici* are actively investigating,[3] of this Administration retaliating against institutions that resist its overreach and lavishing favors on those that comply. The government asks this Court to ignore that context and evaluate each Order in a vacuum. *See* Gov't Br. 1–3, 17–19. But the First Amendment does not require willful blindness. A plaintiff must show that protected activity was a "motivating factor" in the challenged action, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977), and that the action would deter a person of "ordinary firmness" from speaking again, *Aref v. Lynch*, 833 F.3d 242,

---

[3] For a partial collection of *amici*'s many investigations into the Administration's unlawful targeting of law firms, universities, media organizations, nonprofits, technology companies, and many other organizations, *see supra* n. 2.

258 (D.C. Cir. 2016). Context, including a pattern of escalation, can provide powerful evidence of both.

Here, the pattern of retaliation this Administration has unleashed confirms the Orders' unconstitutional purpose. In February 2025, the Administration suspended security clearances at Covington & Burling.[4] On March 6, Executive Order 14230 targeted Perkins Coie.[5] On March 14, Executive Order 14237 targeted Paul Weiss.[6] A week later, after Paul Weiss's chairman met with the President, the firm pledged $40 million in directed pro bono services and the Order was rescinded.[7] That firm's capitulation demonstrated that the coercive mechanism worked, and within days, Skadden "engaged proactively with the President" to negotiate a deal before any Order had been issued against it. *Perkins Coie*, 783 F. Supp. 3d at 155. Willkie and Milbank followed. *Id.* at 155–56; *Susman Godfrey*, 789 F. Supp. 3d at 33. Then came further Orders targeting Jenner & Block, WilmerHale, and Susman Godfrey for refusing

---

[4] *See* Presidential Memorandum, Suspension of Security Clearances and Evaluation of Government Contracts (Feb. 25, 2025), https://perma.cc/66W7-9WM3.

[5] Exec. Order No. 14230, 90 Fed. Reg. 11781 (Mar. 11, 2025).

[6] Exec. Order No. 14237, 90 Fed. Reg. 13039 (Mar. 20, 2025).

[7] Exec. Order No. 14244, 90 Fed. Reg. 13685 (Mar. 26, 2025).

to submit. The pattern has been clear: pay up to the Administration's shakedown or fight back and pay the price.

The campaign against law firms is but one part of this President's playbook of using federal funding and regulatory authority to punish institutions that refuse to bend to his will. The Administration froze $400 million in funding to Columbia University to extract a $221 million settlement and policy concessions. It froze more than $2.6 billion in grants to Harvard after the university rejected the President's demands that Harvard change its curriculum, hiring, and admissions practices. And the Administration has paused or terminated funding to Cornell, Northwestern, the University of Pennsylvania, Brown, and Princeton, among others. In each case, it leveraged federal spending to coerce private institutions. *See, e.g.*, *President and Fellows of Harvard College v. Dep't of HHS*, No. 25-cv-11048 (D. Mass. Apr. 21, 2025) (challenging funding freeze as unlawful retaliation). The challenged Orders are of a piece with that broader program of coercion.

The retaliatory pattern, combined with the President's own statements, makes plain that DOJ's post hoc justifications for the Orders are pretext for unlawful coercion. The Supreme Court has refused to

14

credit "contrived" rationales that do not reflect the actual reasons for government action, even where the action might otherwise have been lawful. *See Dep't of Commerce v. New York*, 588 U.S. 752, 783–85 (2019) (rejecting pretextual justification because "judicial review . . . must demand something better than the explanation offered"). Here, President Trump has publicly bragged about his shakedowns: "Have you noticed that lots of law firms have been signing up with Trump? $100 million, another $100 million, for damages that they've done. But they give you $100 million and then they announce, 'We have done nothing wrong.' And I agree, they've done nothing wrong. But what the hell, they've given me a lot of money considering they've done nothing wrong." *Perkins Coie*, 783 F. Supp. 3d at 156 (internal quotation marks omitted). Here too, then, as in *Department of Commerce*, the government's pretextual justifications cannot obscure the retaliatory purpose that the Orders' text, context, and the President's own statements make plain.

Nine law firms—Paul Weiss, Skadden, Willkie, Milbank, Kirkland & Ellis, Sullivan & Cromwell, Simpson Thacher, A&O Shearman, and Latham & Watkins—have struck deals with the President, pledging their resources to support his priorities as the price for avoiding retaliation.

Those deals represent a dark chapter in the history of our legal profession, and *amici* have investigated them and will continue to do so.[8] This case is not about those deals. But the deals powerfully demonstrate the Orders' chilling effect and confirm that the Executive Orders are achieving their intended purpose of bringing the bar to heel.

In addition to representing a capitulation to the Administration's unlawful Orders, however, the deals themselves also encroach on Congress's authority because they represent an unauthorized

---

[8] *See, e.g.*, Letter from the Hon. Richard Blumenthal and the Hon. Jamie Raskin, to Mr. David Warrington, White House Counsel (Apr. 6, 2025), https://www.hsgac.senate.gov/wp-content/uploads/2025-4-6-Blumenthal-Raskin-Letter-to-David-Warrington.pdf; Letter from the Hon. Richard Blumenthal and the Hon. Jamie Raskin, to Mr. Richard M. Trobman, Chair and Managing Partner, Latham & Watkins LLP (Apr. 18, 2025), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2025-4-18-blumenthal-raskin-letter-to-lw.pdf; Letter from the Hon. Jamie Raskin, the Hon. Richard Blumenthal, and the Hon. Robert C. "Bobby" Scott, to the Hon. Andrea R. Lucas, Acting Chair, U.S. Equal Employment Opportunity Commission (July 9, 2025), https://democrats-judiciary.house .gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2025-07-09-raskin-blumenthal-scott-to-lucas-eeoc)-law-firms.pdf; Letter from the Hon. Richard Blumenthal, the Hon. Jamie Raskin, and the Hon. Adam B. Schiff, to Mr. Brad S. Karp, Chairman, Paul, Weiss, Rifkind, Wharton & Garrison LLP (Sept. 24, 2025), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2025-9-24-letter-from-sen-blumenthal-congressman-raskin-sen-schiff-to-paul-weiss_0.pdf; *see also generally supra* n. 2.

conscription of private resources for public purposes. The nine deal firms pledged over $940 million in pro bono services, directed not to causes of their choosing but to the President's priorities: the President himself boasted that he would "use some of those people, some of those great firms" to pursue his policy objectives. *Perkins Coie*, 783 F. Supp. 3d at 156 (internal quotation marks omitted). But it is Congress, not the President, that creates and funds federal programs. U.S. Const. art. I, § 9, cl. 7. The Framers vested the spending power in Congress to prevent the Executive from marshaling the nation's resources without legislative authorization. *See Clinton v. City of New York*, 524 U.S. 417, 438–40 (1998). The coerced deals achieve a functional equivalent: the President used the threat of punitive action to redirect hundreds of millions of dollars in private legal resources toward his preferred causes, without any congressional authorization.

If the President wishes to fund legal services for veterans or create a similar pro bono program to increase access to justice, his proper course is to come to Congress and seek an appropriation for such a program. Indeed, such a program would look much like the Legal Services Corporation that this Administration has tried to defund. *See White*

*House Budget Proposes Eliminating LSC, Defunding Civil Legal Aid for Millions of Low-Income Americans*, Legal Services Corp. (May 30, 2025), https://www.lsc.gov/press-release/white-house-budget-proposes-eliminating-lsc-defunding-civil-legal-aid-millions-low-income-americans (proposing eliminating legal aid to nearly 45,000 veterans). But regardless of the programs' merits, the President may not circumvent the appropriations process by coercing private firms into doing his bidding and punishing those that do not capitulate.

## CONCLUSION

A robust and independent bar is Congress's primary tool for enforcing many of its most important statutes. Just as courts depend on lawyers for fair adjudication, Congress depends on lawyers to enforce the laws it enacts. When the Executive intimidates the legal profession into silence, no institution remains to enforce congressional enactments and check executive overreach. Our constitutional order cannot survive a

President who punishes every institution that lawfully checks his power.

This Court should affirm.

Dated: April 2, 2026

Respectfully submitted,

/s/ *Justin M. Sher*
Justin M. Sher
Douglas R. Jensen
Rebecca Prager
SHER TREMONTE LLP
90 Broad St., 23rd Floor
New York, NY 10004
Tel.: (212) 202-2600
jsher@shertremonte.com

*Attorneys for* Amici Curiae
*Members of Congress*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 3,489 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook font.

Dated: April 2, 2026

/s/ *Justin M. Sher*

Justin M. Sher
*Attorney for* Amici Curiae
*Members of Congress*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the Court's CM/ECF system on April 2, 2026.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:     April 2, 2026                    /s/ *Justin M. Sher*

                                            Justin M. Sher
                                            *Attorney for* Amici Curiae
                                            *Members of Congress*

# APPENDIX: LIST OF *AMICI CURIAE*

**Jamie Raskin**
Representative of Maryland

**Jerrold Nadler**
Representative of New York

**Zoe Lofgren**
Representative of California

**Steve Cohen**
Representative of Tennessee

**Henry C. "Hank" Johnson, Jr.**
Representative of Georgia

**Eric Swalwell**
Representative of California

**Ted W. Lieu**
Representative of California

**Pramila Jayapal**
Representative of Washington

**J. Luis Correa**
Representative of California

**Mary Gay Scanlon**
Representative of Pennsylvania

**Joe Neguse**
Representative of Colorado

**Lucy McBath**
Representative of Georgia

**Deborah K. Ross**
Representative of North Carolina

**Becca Balint**
Representative of Vermont

**Jesús G. "Chuy" García**
Representative of Illinois

**Sydney Kamlager-Dove**
Representative of California

**Jared Moskowitz**
Representative of Florida

**Dan Goldman**
Representative of New York

**Jasmine Crockett**
Representative of Texas