**ORAL ARGUMENT SCHEDULED FOR MAY 14, 2026**

**Nos. 25-5241, 25-5265, 25-5277, 25-5310**

# In The United States Court of Appeals
# for the District of Columbia Circuit

———————————

PERKINS COIE LLP,

Plaintiff-Appellee,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

Defendants-Appellants

———————————

*On Appeal from the United States District Court for the District of Columbia*

———————————

**NONPROFIT ORGANIZATIONS'CONSENTED AMICUS CURIAE
BRIEF IN SUPPORT OF APPELLEES AND AFFIRMANCE**

———————————

Gregory K. McGillivary*
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave NW, Suite 1000
Washington, DC 20005
Tel.: (202) 833-8855
gkm@mselaborlaw.com

Aaron Kaufmann
KAUFMANN & GROPMAN LLP
1939 Harrison Street, Suite 620
Oakland, CA 94612
Tel.: (510) 817-4380
akaufmann@kgworklaw.com

Philip Monrad
Emily M. Maglio*
Peter Saltzman
LEONARD CARDER LLP
1999 Harrison Street, Suite 2700
Oakland, California 94612
Tel.: (510) 272-0169
emaglio@leonardcarder.com

(*Admitted to U.S. Court of Appeals for the District of Columbia Circuit)



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

## STATEMENT OF CONSENT AS TO FILING

Undersigned counsel affirm that all parties have expressly consented to filing this brief. Accordingly, pursuant to Rule 29(a)(2), this amicus curiae brief is filed without a motion.

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES
### A. Parties and Amici

Except for Amici filing this brief, listed below, all parties, intervenors and amici curiae appearing before the district court and this Court are listed in the briefs for the parties. Amici listed below are represented by undersigned counsel. The Executive Director or other person with authority for each Amicus listed below has authorized the organization to sign on to this brief.

The Statement of Interest that these Amici share is set out in Section I, page One of this brief. Amici filing this brief are:

1. **Western Center on Law and Poverty,** for nearly 60 years has represented low-income Californians in the courts and in the Capital, particularly in the areas of health, welfare, housing, and access to justice. To preserve scarce resources, the Western Center has frequently co-counseled in major litigation with large firms, who have provided representation pro bono.

2. **Legal Aid Association of California** (LAAC) represents the interests of over 100 California-based civil legal aid nonprofits and advocates for increased access to justice. LAAC's members provide services in core anti-poverty areas of the law, including housing, public benefits, immigration and workers' rights. Their members rely on the legal pro bono community to meet the needs of the millions of low-income Californians who need access to legal help.

3. **American Immigration Lawyers Association** (AILA), founded in 1946, is a national, nonpartisan, nonprofit association with more than 18,000 members,


Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

ii

including lawyers and law school professors who practice and teach in the field of immigration and nationality law. AILA seeks to advance the administration of law pertaining to immigration, nationality, and naturalization; to cultivate the jurisprudence of the immigration laws; and to facilitate the administration of justice. AILA has participated as amicus curiae in numerous cases before the Courts of Appeals and the Supreme Court. AILA's members practice regularly before the Department of Homeland Security, the immigration courts, the Board of Immigration Appeals, and the federal courts. To support those efforts, both AILA and its members frequently co-counsel with law firms providing representation pro bono.

4. **California Center for Movement Legal Services** (Movement Legal) provides legal services in the pursuit of improving the lives of California's traditionally underserved residents, carrying out legal work that fosters community led policy creation, implementation and enforcement of policy won through community organizing.

5. **OneJustice** is a legal nonprofit organization in California working to strengthen the legal services sector's expertise and capacity to advance justice and equity. We believe equal access to justice is a basic human right. OneJustice equips the legal services sector with the skills and tools needed to maximize its impact and champions a robust and reliable flow of resources to expand access to legal services for low-income Californians. OneJustice works with legal services organizations to establish and improve their pro bono programs, and identifies strategies to better engage with pro bono volunteers. OneJustice also collaborates with law firms, corporate legal departments, and law schools to develop pro bono best practices and to coordinate their work with legal services organizations.

6. **California Rural Legal Assistance Foundation** For 40 years, CRLA Foundation has provided free legal services and policy advocacy to California's

iii



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

rural poor, including immigrant families, farmworkers, and other low-wage workers. CRLA Foundation mainly represents clients in immigration and employment matters, including health and safety, and other areas such as housing and education. CRLA Foundation has relied on the legal pro bono community to represent California's rural poor in court in complex matters.

7. **Legal Aid of Marin** is a California non-profit organization. Our mission is to create an equitable Marin by empowering the community through legal representation, advocacy, and education. We envision an inclusive Marin with equal justice and opportunity for all. Legal Aid of Marin is the pre-eminent free civil legal services provider in Marin County. Through litigation and policy advocacy, we demand justice and create equity on behalf of communities that society has intentionally divested from opportunity, generational wealth, and institutional power.

8. **Counsel for Justice** (CFJ) is a nonprofit legal services organization based in Los Angeles County that provides free civil legal assistance to underserved communities through a volunteer-driven model. CFJ serves thousands of people each year in core areas including domestic violence, housing, immigration, and veterans' legal needs. CFJ relies on pro bono attorneys to deliver a substantial portion of its services to low-income individuals who would otherwise lack access to legal assistance.

9. **Social Justice Legal Foundation** is a nonprofit litigation group based in Los Angeles. We develop civil rights and social impact cases and train the next generation of public interest lawyers to litigate those cases from investigation to trial. As a small organization taking on big cases, we rely on pro bono counsel from private firms to co-counsel our cases and provide trial-level expertise in cases against government and corporate actors.

iv


Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

10. **National Center for LGBTQ Rights** (NCLR) is a national non-profit legal organization dedicated to protecting and advancing the civil rights of lesbian, gay, bisexual, and transgender people and their families through litigation, public policy advocacy, and public education. Since its founding in 1977, NCLR has played a leading role in securing fair and equal treatment for LGBTQ people and their families in cases across the country involving constitutional and civil rights, including with respect to employment, education, healthcare, public accommodations, family law, and immigration and asylum.

11. **Texas Civil Rights Project** (TCRP) is a nonpartisan, nonprofit legal organization dedicated to protecting and advancing the civil rights of Texans through litigation and policy advocacy. It focuses on three main areas of work: safeguarding the freedom to vote and strengthening representative democracy; advancing humane, safe immigration systems alongside migrants and border communities; and reducing the harms caused by over-criminalization and the carceral system. In order to accomplish this work, TCRP frequently relies on pro bono support from private law firms.

12. **East Bay Community Law Center** (EBCLC) is one of the largest providers of free legal services in the San Francisco Bay Area, serving 4,000 clients annually. We increase economic mobility for families by utilizing a three-pronged approach: (1) holistic legal services, (2) community-centered policy advocacy, and robust clinical education to over 100 law students a year.

13. **Public Law Center** is a nonprofit organization which empowers low-income and vulnerable communities in Orange County, CA, through our free legal services, including representation, strategic litigation, and advocacy, to challenge injustices impacting these communities.

14. **Climate Rights International,** a non-profit organization based in California, conducts on-the-ground investigations into the human rights



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

consequences of climate change. We compile these findings into reports, press releases, briefing papers, letters, commentary, and analysis. We work in partnership with local communities, environmentalists, lawyers, journalists, climate activists, climate scientists, and others. We advocate for the rights to freedom of expression, association, and assembly, and the right to information for activists and frontline communities.

15. **Public Justice Center** is a nonprofit organization which has represented low-income Marylanders for over forty years, litigating and advocating in housing, education, health care access, workers' rights, and other matters involving basic human needs. The PJC does not have the resources to conduct major litigation without pro bono co-counsel from private law firms.

16. **Legal Aid DC** is the District's oldest and largest civil nonprofit legal services organization, providing free legal advice and representation to low-income D.C. residents for housing, family, domestic violence, immigration, public benefits, record sealing, and consumer issues. Law firms that provide pro bono representation significantly help Legal Aid achieve its mission of making justice real.

17. **National Employment Law Project** (NELP) is a non-profit legal organization with over 55 years of experience advocating for the employment and labor rights of low-wage and unemployed workers. NELP advocates for strong labor standards and strict enforcement of labor standards, as well as participates as amicus in many cases addressing the rights of workers under federal and state labor and employment laws.

18. **National Police Accountability Project** (NPAP) is a nonprofit organization founded to address misconduct by law enforcement officers through coordinating and assisting civil rights lawyers. NPAP has approximately 550 attorney members practicing in every region of the United States, including



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

members who regularly co-counsel cases with private law firms. The Executive Orders have had a direct and chilling impact on NPAP's ability to bring cases with private law firm assistance.

NPAP is often represented by private law firm attorneys when it serves as *amicus curiae* and regularly collaborates and co-counsels with firms on long-term litigation matters. However, there has been a noticeable shift in firms' interest in representing NPAP as a client or joining NPAP's cases as co-counsel. For example, in November 2024, as soon as Trump won reelection, a top firm that was helping NPAP develop a lawsuit against a city's police force stopped attending planning calls. Later, the firm struck a deal with the Trump administration. The firm informed NPAP that it would reconsider the case in the future, but to date, it has not sought to continue the partnership. NPAP relies on law firm partnerships to litigate complex cases seeking injunctive relief and systemic changes to policing policy. Without the assistance of private law firms, NPAP's capacity to file these cases is limited.

19. **Centro Legal de la Raza,** founded in 1969, is a nonprofit legal services agency in Oakland, California protecting and advancing the rights of low-income and immigrant communities through legal representation, education, and advocacy. By combining quality legal services with know-your-rights education and youth development, Centro Legal ensures access to justice for thousands of individuals throughout Northern and Central California. Centro Legal relies on law firms to provide pro bono legal representation and co-counsel in individual and impact litigation to advance the rights of our clients and communities.

20. **Legal Aid at Work** (LAAW) is a California-based nonprofit that supports low-income workers by helping to ensure fair treatment in the workplace. For more than a century, LAAW has worked to expand access to justice for workers, families, and communities across the state by providing free legal



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

services, pursuing precedent-setting litigation, and advocating for policy changes that address systemic barriers to equity.

21. **<u>Legal Aid Center of Southern Nevada</u>**, founded in 1958, is a nonprofit legal aid provider committed to the preservation of access to justice and the provision of quality legal counsel, advice, and representation for individuals who are unable to protect their rights because they cannot afford an attorney. Legal Aid Center represents children in foster care, the elderly in danger of exploitation, families in crisis, including children and families seeking immigration relief. Our organization relies on pro bono firms and attorneys to join us in representing the hundreds of thousands of Nevadans who cannot afford an attorney.

22. **<u>Disability Rights Education and Defense Fund</u>** (DREDF), based in Berkeley, California, is a nonprofit national law and policy center dedicated to defending and advancing the civil rights of people with disabilities. Founded in 1979, DREDF is a cross-disability, disability-led organization that pursues its mission through education, advocacy, and law reform efforts. DREDF regularly partners with private pro-bono counsel to meet the legal needs of disabled people across a broad range of civil rights matters.

23. **<u>Justice in Aging</u>**'s mission is to protect and advance the rights of low-income older adults. Through advocacy, litigation, and the education and counseling of legal aid attorneys and other local advocates, we seek to ensure the health and economic security of older adults with limited income and resources. Our work strives to ensure access to the courts for low-income people who are reliant on Medicaid, Medicare, Social Security and SSI so that they may receive



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

essential benefits and live with dignity and independence. As a nonprofit public interest organization, our partnerships with pro bono counsel are critical to our advocacy model and our ability to bring class action lawsuits on behalf of low-income clients. As such, we have an interest in the outcome of this case.

24. **California ChangeLawyers** is a 36 year old nonprofit organization whose mission is to build a better justice system for all Californians. We envision a fully-inclusive democracy led by vigilant changemakers who safeguard the humanity of all. We are able to conduct major aspects of our work only with the support of pro bono legal services from private law firms.

25. **Catholic Legal Immigration Network, Inc.** (CLINIC) protects the rights and promotes the dignity of immigrants through a network of over 400 Catholic and community-based legal immigration programs across 49 states and the District of Colombia. CLINIC provides legal training, technical assistance, and advocacy in support of its network of approximately 3,000 legal professionals who collectively provide immigration services to nearly 500,000 immigrants each year. CLINIC frequently relies on pro bono support from private law firms to assist with impact litigation and amicus brief preparation.

26. **Social Justice Collaborative** is a nonprofit legal services organization that represents immigrants and advances access to justice through direct representation, impact advocacy, and movement-aligned legal support. We rely on the availability of independent counsel and a legal profession free to represent clients and causes adverse to the government without fear of retaliation. The Executive Orders at issue threaten that independence and, in turn, impair the ability of nonprofit organizations like ours to secure representation and vindicate the rights of the communities we serve

27. **Impact Fund** is a non-profit legal organization that litigates class actions and provides strategic, training, and financial support for social justice



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

impact litigation across the country. Impact Fund has co-counseled with law firms in major civil rights class actions, and has also experienced a substantial increase in requests for assistance from non-profit legal organizations litigating impact cases as a result of the Executive Orders' chilling effect on large law firms' willingness to partner as pro bono counsel.

28. **Law Foundation of Silicon Valley** is a nonprofit legal services organization that advances the rights of under-represented individuals and families through legal services, strategic advocacy, and educational outreach. Serving predominantly low-income communities in the greater Silicon Valley region, the Law Foundation focuses on housing stability, children and youth rights, including education and immigration, and access to health care and public benefits. Its approach combines direct services with systems change advocacy, including impact and class action litigation, to address both immediate client needs and broader structural inequities, serving more than 15,000 individuals and families each year. The Law Foundation regularly partners with private law firms to expand its impact through pro bono representation in complex litigation and systemic advocacy.

29. **Community Legal Services in East Palo Alto** (CLSEPA) is a nonprofit organization that offers legal services that improve the lives of low-income families throughout the San Francisco Bay Area region. CLSEPA is committed to pursuing multiple, innovative strategies, including community education, individual legal advice and representation, legal assistance to community groups, policy advocacy, and impact litigation. We provide free housing, immigration, workers' rights, reentry legal services and consumer protection resources, and we partner with pro bono law firms to maximize our impact.

x



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

30. **<u>The National Lawyers Guild</u>** (NLG) was founded in 1937 as an association of progressive lawyers and jurists who believed that they had a major role to play in the reconstruction of legal values to emphasize human rights over property interests. The Guild is the oldest and most extensive network of public interest and human rights activists working within the legal system. It is painfully familiar with the devastating impact an out-of-control executive branch can have as it was placed on the attorney general's list of subversive organizations in the 1950's because its members represented Communists and it refused to demand of its members whether they were affiliated with the Communist Party. Its projects and committees regularly litigate against government repression.

31. **<u>Equal Rights Advocates</u>** (ERA) is a national civil rights advocacy organization dedicated to protecting and expanding economic and educational access and opportunities for people of all marginalized gender identities. Since its founding in 1974, ERA has led efforts to combat sex discrimination and advance gender equality by litigating high-impact cases, engaging in policy reform and legislative advocacy campaigns, conducting community education and outreach, and providing free legal assistance to individuals experiencing unfair treatment at work and in school. ERA has filed hundreds of suits and appeared as amicus curiae in numerous cases to defend and enforce gender equity and other civil rights in state and federal courts, including before the United States Supreme Court. ERA frequently co-counsels with, and depends upon, private firm partnership and pro bono support to represent clients, assist members of the public with legal inquiries, and effectuate its overall mission as a nonprofit legal organization.



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

## B. Rulings Under Review

References to the rulings at issue appear in Appellants' certificate of same.

## C. Related Cases

None of the cases in this consolidated appeal have previously been before this Court. Related Cases in this appeal are set out in the Court's Order dated February 6, 2026.

## CORPORATE DISCLOSURE STATEMENT

Amici curiae filing herewith are non-stock, nonprofit organizations. They have no parent corporations. No Amicus issues stock.

## STATEMENT REGARDING AUTHORSHIP, SUPPORT

No counsel for a party has authored this brief in whole or in part, and no person or entity, other than Amici nonprofit organizations or their counsel, has made a monetary contribution to the preparation or submission of this brief.



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

**TABLE OF CONTENTS**

STATEMENT OF CONSENT AS TO FILING .......................................................ii

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ..............ii

CORPORATE DISCLOSURE STATEMENT ........................................................xii

STATEMENT REGARDING AUTHORSHIP, SUPPORT ...................................xii

TABLE OF AUTHORITIES ..................................................................................xiv

I.      STATEMENT OF INTEREST OF AMICI ...................................................1

II.     INTRODUCTION ........................................................................................2

III.    THE EXECUTIVE ORDERS HAVE CHILLED LAW FIRMS'
        WILLINGNESS TO REPRESENT NONPROFITS IN MATTERS
        ADVERSE TO THE ADMINISTRATION..................................................4

IV.     THE DISTRICT COURTS' RULINGS THAT THE EXECUTIVE
        ORDERS VIOLATE APPELLEES' *CLIENTS'* CONSTITUTIONAL
        RIGHT TO PETITION THE GOVERNMENT MUST BE AFFIRMED....10

V.      THE EXECUTIVE ORDERS ARE PART OF AN UNPRECEDENTED
        ATTACK ON THE LEGAL INSTITUTIONS OF THIS COUNTRY ON
        WHICH AMICI CRITICALLY RELY. .......................................................14

VI.     CONCLUSION ...........................................................................................15

CERTIFICATE OF COMPLIANCE .....................................................................17



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

# TABLE OF AUTHORITIES

**Cases**

*Am. Airways Charters, Inc. v. Regan*,

746 F.2d 865 (D.C. Cir. 1984) .............................................................................13

*Baggett v. Bullitt*,

377 U.S. 360 (1964) ..............................................................................................4

*Baird v. State of Arizona*,

401 U.S. 1 (1971) ..................................................................................................4

*BE&K Constr. Co. v NLRB*,

536 U.S. 513 (2002) ..........................................................................................4,13

*Bhd. of R.R. Trainmen v. Virginia*,

377 U.S. 1 (1964) ...........................................................................................11, 14

*Borough of Duryea v. Guarnieri*,

564 U.S. 379 (2011) .............................................................................................13

*Chambers v. Baltimore & O.R. Co.*,

207 U.S. 142 (1907) .............................................................................................13

*Heffernan v. City of Paterson*,

578 U.S. 266 (2016) .............................................................................................10

*Jenner & Block v. U.S. Dep't of Just.*,

784 F.Supp.3d 76 (D.D.C. 2025) .......................................................3, 5, 9, 10, 13

*Keyishian v. Board of Regents*,

385 U.S. 589 (1967) ..............................................................................................4



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

*Laird v. Tatum*,
  408 U.S. 1 (1972) ................................................................................................4, 11

*Lamont v. Postmaster General*,
  381 U.S. 381 (1965) ................................................................................................4

*Legal Services Corp. v. Velazquez*,
  531 U.S. 533 (2001) ..............................................................................................14

*Muniz v. Meese*,
  115 F.R.D. 63 (D.D.C. 1987) ..................................................................................4

*Perkins Coie LLP v. U.S. Dep't of Just.*,
  784 F.Supp.3d 76 (D.D.C. 2025) .......................................................................3, 11

*Susman Godfrey LLP v. Executive Office of the President*,
  789 F.Supp.3d 15 (D.D.C. 2025) .......................................................................3, 12

*Trentadue v. Integrity Comm.*,
  501 F.3d 1215 (10th Cir. 2007)............................................................................12

*United Mine Workers of Am. v. Ill. State Bar Ass'n*,
  389 U.S. 217 (1967) ..............................................................................................11

*United States v. Gonzalez-Lopez*,
  548 U.S. 140 (2006) ..............................................................................................13

*WilmerHale Pickering Hale & Dorr LLP v. Executive Office of the President, et al*,
  784 F.Supp.3d 127 (D.D.C. 2025) ........................................................4, 5, 13, 15

*Zaid v. Executive Office of the President*,
  __ F.Supp.3d __ 2025 WL3724884 (D.D.C. Sept. 23, 2025).............................15



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

**Miscellaneous**

Alison Knezevich, BigLaw Shying Away From Some Pro Bono Work 'Out Of Fear,' Law360 (April 10, 2025), ...................................................................8

David Lat, Big Law Is Standing Down When It Comes to Standing Up to Trump, Bloomberg Law (November 5, 2025) ...................................................8

Josh Dawsey, C.Ryan Barber, Sadie Gorman, Trump Ordered Justice Department Reversal on Law Firm Sanctions, Wall Street Journal (March 11, 2026) .............6

Matthew Goldstein and Jessica Silver-Greenberg, Some Giant Law Firms Shy Away From Pro Bono Immigration Cases, N.Y. Times (May 24, 2025) ..............7

Michael Birnbaum, Law firms refuse to represent Trump opponents in the wake of his attacks, Washington Post (March 25, 2025)...............................................7, 9

Mike Spector, Brad Heath, et al, How Trump's Crackdown On Law Firms Undermining Legal Defenses For The vulnerable, Reuters (July 31, 2025) .........6

Molly Redden, Trump's War on Big Law Means It's Harder to Challenge the Administration, ProPublica (August 6, 2025).......................................................8

Ryan Lucas, Trump attacks on law firms begin to chill pro bone work on causes he doesn't like, NPR (April 13, 2025) ...................................................................8

William R. Bay, The ABA Rejects Efforts to Undermine the Courts and the Legal Profession, ABA Website (March 3, 2025) .......................................................15



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

## I. STATEMENT OF INTEREST OF AMICI

Amici submit this consented Amicus Curiae Brief pursuant to Local Rule 29, urging affirmance of the District Court judgments on appeal here. Amici signatory hereto are listed, with a brief description, in the *Parties and Amici* statement above.

Amici are nonprofit public interest organizations that serve and advocate for their clients on a wide array of issues, or that assist other organizations in doing so. As diverse as they are, Amici have three things in common that constitute their interest in this matter:

First, Amici provide services and/or advocate for policies to which the current Administration is opposed, including for example, advocating for workers' and immigrants' rights, environmental justice, reproductive rights, voting rights, LGBTQ+ equality and DEI (diversity, equity and inclusion) programs and initiatives.

Second, Amici advance their missions, in part, either by pursuing legal action, often with the assistance of outside counsel on a pro bono basis, or by supporting other organizations in such litigation, or by advocating for social justice policies advanced by such litigation. For many Amici, pro bono support from law firms is the only way they can afford to undertake any litigation at all.

Third, Amici have experienced, and/or are aware of and gravely concerned about the profound chilling effect that the Executive Orders ("EOs") at issue in these lawsuits have inflicted on law firms' willingness to represent them or allied organizations in litigation challenging the Administration's policies and practices, or in supporting legal positions that are not aligned with the Administration's priorities.



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

## II.    INTRODUCTION

Amici submit this brief to emphasize that, although they are not named parties to these cases, they have a vital interest at stake in this lawsuit – the right to freely secure legal representation in litigation and other legal matters adverse to the current Administration and its priorities. That interest is distinct from but intertwined with the corollary interest of Appellee law firms -- to vindicate their right to file that very type of litigation for parties such as Amici.

Specifically, Amici submit this brief to make two points that supplement and support Appellees' positions in these appeals.

First, the Executive Orders ("EOs") have inflicted collateral damage on nonprofit organizations like Amici far beyond the damage inflicted on the specific law firms to which the EOs were directed. Specifically, the EOs -- and the Administration's threats of more to come -- have had a profound chilling effect on law firms' willingness to represent nonprofit organizations in litigation adverse to the Administration's policies.

Appellants' claim that these EOs "do not impose any cognizable burden on third parties' right to counsel." AOB at 4. That is true only to the extent that the district courts enjoined Appellants from implementing the EOs against the four Appellee law firms. *It will remain true only if those rulings are affirmed*.

But the clients and potential clients of law firms that capitulated, and of countless other law firms fearful of an EO being directed at them, are suffering cognizable harm *right now* -- unless and until this Court decisively affirms the rulings on appeal here.

Second, Amici emphasize that the collateral damage noted above violates fundamental rights of Amici that are intertwined with Appellees' rights at stake in these lawsuits. The rulings in all four cases on appeal



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

affirm that Appellees' constitutional right to *file litigation* adverse to the Administration is inextricably intertwined with Amici's distinct antecedent constitutional right to *retain attorneys* to file just such litigation on their behalf. Indeed, these twin rights are so intertwined that the district courts' rulings at issue here often assert them as one.

For example, the District Court in *Jenner & Block v. U.S. Dep't of Just. ("Jenner")*, 784 F.Supp.3d 76 (D.D.C. 2025) held: "[T]he First, Fifth and Sixth Amendments speak in unison here, all eyeing skeptically the administration's attempt to stifle any voice *Jenner and its clients* might wish to raise before the courts in protest." *Id.* at 98, emphasis added (internal quotes omitted). Likewise, "If Section 5 [of the EO against Jenner] plays out as intended, it would stymie Jenner's ability to represent its clients, and *alongside it, Jenner's clients' rights to choose their lawyers.*" *Id.* at 113 (emphasis added).

The infringement on the constitutional rights of clients is similarly highlighted in *Perkins Coie LLP v. U.S. Dep't of Just. ("Perkins")* ("EO 14230 Violates the Fifth and Sixth Amendment Rights to Counsel *of Plaintiff's Clients,*" 784 F.Supp.3d 76, 84 (D.D.C. 2025), emphasis added), and in *Susman Godfrey LLP v. Executive Office of the President ("Susman")* ("the Order [at issue] violates the Fifth Amendment *right to counsel.*" 789 F.Supp.3d 15, 54 (D.D.C. 2025), emphasis added).

In short, Amici urge this Court to affirm all four rulings and thereby affirm the unfettered right of attorneys to represent nonprofit organizations like Amici in litigation without fear of reprisal from the Administration, and the corollary unfettered right of such organizations to petition the government by retaining law firms such as Appellees. Each of these interlinked rights are essential to the rule of law. Together, they are necessary to ensure a robust defense against the Administration's attempt to

Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

thwart the "'right to petition as one of the most precious rights of the liberties safeguarded by the Bill of Rights.'" *WilmerHale Pickering Hale & Dorr LLP v. Executive Office of the President, et al ("WilmerHale")*, 784 F.Supp.3d 127, 156 (D.D.C. 2025), quoting *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002).

## III.   THE EXECUTIVE ORDERS HAVE CHILLED LAW FIRMS' WILLINGNESS TO REPRESENT NONPROFITS IN MATTERS ADVERSE TO THE ADMINISTRATION.

It has long been settled that "constitutional violations may arise from the deterrent or 'chilling' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (citing *Baird v. State of Arizona*, 401 U.S. 1 (1971); *Keyishian v. Board of Regents*, 385 U.S. 589 (1967); *Lamont v. Postmaster General*, 381 U.S. 381 (1965); *Baggett v. Bullitt*, 377 U.S. 360 (1964)).

The EOs at issue here have inflicted precisely that chilling effect -- and constitutional violation -- by causing many law firms to pull back from filing litigation adverse to the Administration's policies and agenda. This is collateral damage extending far beyond the damage inflicted against the five law firms to whom the EOs were directed.[1]

---

[1] In its brief, the government trivializes the substantial chilling effect the EOs have inflicted on individuals' and organizations' right to counsel, stating only that "plaintiffs cannot allege that their 'clients are unable to obtain alternative qualified counsel'" (AOB, p. 59). The Fifth Amendment's guarantee of right to counsel cannot be so limited to simply requiring that individuals and organizations must be able to obtain *any* alternative qualified counsel at all. Rather, the Fifth Amendment is violated by "government intrusion into [citizens'] right to select and to be represented by *counsel of their choice*. *Perkins Coie*, 783 F.Supp.3d at 171(emphasis added), quoting *Muniz v. Meese*, 115 F.R.D. 63, 66 n.11 (D.D.C. 1987). As Amici show, there is no doubt that the EOs have substantially chilled law firms'

Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

Fortunately, four of those firms secured summary judgments in lawsuits challenging the EOS against them, which judgments are the subject of these consolidated appeals. But one firm, Paul Weiss LLP, capitulated to the Administration and agreed to terms that dramatically limits its ability to act as a member of "an independent bar willing to tackle unpopular cases, however daunting," in exchange for the EO against it being rescinded. *WilmerHale*, 784 F.Supp.3d at 135.

The chilling effect of the EOs on other law firms' commitment to membership in an "independent bar" (*id.*) was demonstrated when at least eight other firms promptly and preemptively agreed to similar terms as Paul Weiss LLP, even though EOs had not even been issued against them. AOB, fn,1, p.2. Those firms surrendered their prospective "clients' rights to choose their lawyers." *Jenner*, 784 F.Supp.3d at 112.

The EOs have inflicted collateral damage far beyond that inflicted on clients and prospective clients of the eight law firms which surrendered their independence. The chilling effect inflicted by the EOs on law firms' willingness to represent nonprofit organizations like Amici in matters adverse to the Administration and its agenda is confirmed by widespread journalistic reporting on the EOs.

As recently as March 11, 2026, the Wall Street Journal reported that "these [EO] sanctions have cast a chill over the [legal] industry. Many of the same firms that took on leading roles opposing the Trump administration in the president's first term have shied away from similar work in his second."[2]

---

willingness to represent nonprofit organizations in matters adverse to the administration, and thereby have chilled Amicis' right to *counsel of their choice*.

[2] Josh Dawsey, C.Ryan Barber, Sadie Gorman, *Trump Ordered Justice Department Reversal on Law Firm Sanctions*, Wall Street Journal (March 11, 2026), https://www.wsj.com/politics/policy/trump-ordered-justice-

5

Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

An example of this chill is provided by Amicus National Police Accountability Project, which states:

> [T]here has been a noticeable shift in firms' interest in representing NPAP as a client or joining NPAP's cases as co-counsel. For example, in November 2024, as soon as Trump won reelection, a top firm that was helping NPAP develop a lawsuit against a city's police force stopped attending planning calls. Later, the firm struck a deal with the Trump administration. The firm informed NPAP that it would reconsider the case in the future, but to date, it has not sought to continue the partnership. NPAP relies on law firm partnerships to litigate complex cases seeking injunctive relief and systemic changes to policing policy. Without the assistance of private law firms, NPAP's capacity to file these cases is limited.

National Police Accountability Project statement, *Parties and Amici*, No. 17, *supra*, vii.

According to a July 25, 2025 Reuters article, "How Trump's Crackdown On Law Firms Is Undermining Legal defenses For The Vulnerable," reported that "[f]ourteen civil rights groups said the law firms they count on to pursue legal challenges are hesitating to engage with them, keeping their representation secret or turning them down altogether in the wake of Trump's pressure."[3]

---

department-reversal-on-law-firm-sanctions-f137f164?mod=Searchresults&pos=1&page=1

[3] Mike Spector, Brad Heath, et al, *How Trump's Crackdown On Law Firms Is Undermining Legal Defenses For The vulnerable*, Reuters (July 31, 2025), https://www.reuters.com/investigations/trumps-war-big-law-leads-firms-retreat-pro-bono-work-underdogs-2025-07-31/

6



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

A May 24, 2025, New York Times article, "Some Giant Law Firms Shy Away From Pro Bono Immigration Cases," reported that "even firms that have not been targeted directly by Mr. Trump are declining to participate in legal work that challenges his agenda." The article quoted the Executive Director of a nonprofit representing immigrants stating that "It has gotten much harder to get law firms to take a case on pro bono."[4]

A March 25, 2025, Washington Post article, "Law Firms Refuse to Represent Trump Opponents in the Wake of His Attacks," reported that "some nonprofits say that major law firms that in Trump's first term would have been quick to assist them with pro bono work now say that they can't risk the cost if Trump goes after them as a result. Many of those same groups are worried that the administration will soon go after their nonprofit tax status -- and that they won't be able to find high-powered lawyers to contest it."[5]

The same March 25 Washington Post article further reported that "a former official in the Biden administration who has been pulled into Trump-era litigation had lined up a pro bono lawyer from a major law firm that, the day after an executive order against the heavyweight law firm Perkins Coie, said that it had discovered a conflict of interest and dropped the person as a client. … Five other firms said they had conflicts, the former official said." *Id.*

---

[4] Matthew Goldstein and Jessica Silver-Greenberg, *Some Giant Law Firms Shy Away From Pro Bono Immigration Cases*, N.Y. Times (May 24, 2025) https://www.nytimes.com/2025/05/06/business/trump-law-firms-pro-bono-immigration.html.

[5] Michael Birnbaum, *Law firms refuse to represent Trump opponents in the wake of his attacks*, Washington Post (March 25, 2025) https://www.washingtonpost.com/politics/2025/03/25/trump-law-firms/.

Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

An April 10, 2025, Law360 article, "Big Law Shying Away From Some Pro Bono Work 'Out Of Fear," reported that "nonprofit leaders whose organizations have long worked with [Big Law firms], tell Law360 Pulse they have seen attorneys shy away from certain legal work that may be looked on unfavorably by the administration."[6]

An April 13, 2025, National Public Radio (NPR) article, "Trump Attacks On Law Firms Begin To Chill Pro Bono Work On Causes He Doesn't Like," reported on numerous nonprofit organization's difficulty in retaining outside counsel, including: "an attorney at another civil rights' organization said that law firms they have teamed up with in the past have recently declined to work with them."[7]

An August 6, 2025, ProPublica article, "Trump's War On Big Law Means It's Harder to Challenge the Administration," reported that "Some of the country's largest law firms have declined to represent clients challenging the Trump administration, more than a dozen attorneys and nonprofit leaders told ProPublica, while others have sought to avoid any clients that Trump might perceive as his enemies."[8]

A November 5, 2025, article in Bloomberg Law, "Big Law Is Standing Down When It Comes to Standing Up to Trump," reported that: "Large law firms represented plaintiffs in 15% of cases challenging Trump

---

[6] Alison Knezevich, *Big Law Shying Away From Some Pro Bono Work 'Out Of Fear,'* Law360 (April 10, 2025), https://www.law360.com/pulse/articles/2323753.

[7] Ryan Lucas, *Trump attacks on law firms begin to chill pro bone work on causes he doesn't like*, NPR (April 13, 2025), https://www.npr.org/2025/04/13/g-s1-59497/trump-law-firms-pro-bono.

[8] Molly Redden, *Trump's War on Big Law Means It's Harder to Challenge the Administration*, ProPublica (Aug. 6, 2025), https://www.propublica.org/article/trump-law-firms-accountability-environment-police-lgbtq.

Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

executive orders between January and mid-September of this year, according to The Washington Post. In contrast, during the comparable period in Trump's first term, big firms represented plaintiffs in roughly 75% of such cases." The author attributed the difference to the "*in terrorem*" effect of the EOs, noting that "small and midsize firms have stepped up to the plate . . . [b]ut these actors, which don't have the same resources as big Law, are struggling to keep up. Their lawyers are working nights and weekends on lawsuits arising out of Trump administration policies -- and they turn away many cases because of an inability to staff them."[9]

An example of this collateral damage inflicted by the EOs is provided by Amicus Impact fund, which states:

> Impact Fund has co-counseled with law firms in major civil rights class actions, and has also experienced a substantial increase in requests for assistance from non-profit legal organizations litigating impact cases as a result of the Executive Orders' chilling effect on large law firms' willingness to partner as pro bono counsel.

Impact Fund Statement, *Parties and Amici*, No. 27, *supra*, x.

But the chilling effect on Amici's right to retain counsel is most strikingly demonstrated by the fact that numerous nonprofit organizations contacted by undersigned counsel were unwilling to sign on to this amicus brief for fear of retaliation from the current Administration, and for fear that speaking out could make it even harder to retain outside counsel.

This is not a surprise. Indeed, the March 25, 2025, Washington Post article cited *supra* aptly noted that the "person [whose pro bono lawyer dropped him because of a "conflict of interest"] and others spoke on the

---

[9] David Lat, *Big Law Is Standing Down When It Comes to Standing Up to Trump*, Bloomberg Law (Nov. 5, 2025), https://news.bloomberglaw.com/us-law-week/big-law-is-standing-down-when-it-comes-to-standing-up-to-trump

Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

condition of anonymity to avoid further difficulties obtaining a lawyer." *None* of the nonprofit leaders quoted in the article were willing to be identified by name.

Thus, the EOs at issue here, and the Administration's threats of more to come, chill not only the specific right of amici to retain counsel, they also chill Amici's core First Amendment rights to actively participate in a democratic society. As the court noted in *Jenner*: "The chill [from the EO against Jenner & Block] does not end with the legal profession. …. What the President does to the bar he can equally do to other pillars of our constitutional order -- the press, non-governmental organizations, and more. Retaliatory action against one profession thus 'tells the others that they engage in protected activity at their peril.'" *Jenner*, 784 F.Supp.3d 76, 115 (D.D.C. 2025) (quoting *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016)).

The refusal of some nonprofit organizations to sign onto this brief despite general agreement with Amici's position, and the refusal of some nonprofit leaders to be quoted in the press, demonstrate that the collateral damage of these EOs extends beyond nonprofit organizations' difficulty in finding pro bono representation from law firms. The damage goes deeper, chilling even the nonprofits' freedom to freely and openly engage in civic debate -- extending even to chilling nonprofits' freedom to inform the Court of this alarming fact.

## IV. THE DISTRICT COURTS' RULINGS THAT THE EXECUTIVE ORDERS VIOLATE APPELLEES' *CLIENTS'* CONSTITUTIONAL RIGHT TO PETITION THE GOVERNMENT MUST BE AFFIRMED.

Amici and other nonprofit organizations are not named parties in these cases. But the judgments appealed here all acknowledge that the Appellee



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

law firms' First, Fifth and Sixth Amendment rights to *file* litigation are inextricably intertwined with the antecedent distinct right of organizations like Amici to *retain* those law firms to do so -- including to file litigation adverse to the Administration and its policies.

Without the right of Amici to retain counsel, a victory simply for attorneys to file litigation -- without clients -- would be a hollow victory. Indeed, the chilling effect on law firms' willingness to represent nonprofit organizations in litigation adverse to the current Administration's policies is precisely what violates Amici's constitutional rights. *See Laird*, 408 U.S. at 11.

In *Perkins,* the Court correctly ruled that "EO 14230 violates the Fifth and Sixth Amendment Rights to Counsel *of Plaintiff's Clients*." *Perkins*, 783 F.Supp.3d at 168 (emphasis added).[10] Supported by ample precedent, the Court's ruling confirms the fundamental point Amici make here -- that litigation brought by attorneys is brought on behalf their clients "who also have a fundamental First Amendment right in speaking and associating with counsel." *Id*. at 165. The Court cited numerous, long-standing precedents confirming this essential principle, including, for example, "*United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 217, 221-22 (1967) ("[T]he freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights."); *Bhd.*

---

[10] The Court in *Perkins* did not make a similar ruling regarding the First Amendment rights of its clients, because "plaintiff advances the First Amendment retaliation claims only as to itself and not on behalf of any of Plaintiff's clients." 783 F.Supp.3d at 159. The court did, however, rule that "EO 14230's Section 3 violates the First Amendment Associational Right of Plaintiff *and Plaintiff's Clients* by Compelled Disclosure." *Id.* at 165, (emphasis added.) This Section required Government contractors to disclose any business they do with Perkins Coie. *Id.*

Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

*of R.R. Trainmen v. Virginia*, 377 U.S. 1, 7 (1964) ("A State could not . . . infringe in any way the right of individuals and the public to be fairly represented in lawsuits.")." *Id.*

*Perkins also* relied on well-settled authority to hold that the right to petition the government by retaining counsel is not only guaranteed by the First Amendment, but also "this liberty interest in petitioning the government is so fundamental, therefore, that it is protected under the due process clauses of both the Fifth and Fourteenth Amendments. *Id.* at 172 (citing *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 136-37 (10th Cir. 2007)).

Likewise, the Opinion in *Susman* case relied on settled authority in explicitly holding that "the [Executive] Order violates the Fifth Amendment *right to counsel*." *Susman*, 789 F.Supp.3d at 50 (emphasis added).

The Court noted that:

> The Fifth Amendment protects the 'right to the aid of counsel when desired and provided by the party asserting the right.' *Powell v. Alabama,* 287 U.S. 45, 68 … (1932). It guarantees due process by safeguarding the rights of individuals or entities to obtain legal representation. *See U.S. Dep't Lab. v. Triplett,* 494 U.S. 715, 720-21 … (1990); *see also Am. Airways Charters, Inc. v. Regan*, … D.C. Cir. 1984) ("[A]n individual or entity may in fact be denied the most fundamental elements of justice without prompt access to counsel."): *Muniz v. Meese*, 115 F.R.D. 63, 66 (D.D.C. 1987) ("[A] violation of civil liberties … is implied by a government intrusion into their right to select and to be represented by counsel of their choice.")
>
> … [T]he Order directly interferes with Susman's clients by impermissibly restricting the firm's attorneys from entering federal courthouses or interacting with government officials. The Order cuts Susman off at the knees and effectively *denies the firm's clients its counsel.* Because 'government attempt[s] to deny counsel to a civil litigant are invalid, *Am. Airways Charters*, 746 F.2d at 873 (collecting cases), the Order violates



Leonard
Carder LLP

1999 Harrison Street, Suite 2700
Oakland, CA 94612

the Fifth Amendment right to counsel. Susman is therefore entitled to summary judgment.

*Id.* at 53 (emphasis added).

Again, the Opinion in *WilmerHale* case is consistent. In that case, the Court correctly held that "the [First Amendment's] Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes," 784 F.Supp.3d 127, 155-56 (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (internal quotes omitted)). Likewise, the Court quoted the Supreme Court: "We have recognized the right to petition as one of the most precious rights of the liberties safeguarded by the Bill of Rights." *Id.* at 156 (quoting *BE&K Constr. Co. v NLRB*, 536 U.S. 513, 524-25 (2002) (internal quotes omitted)).

Finally, the Opinion in *Jenner* cited settled authority confirming that the "[t]he right to sue and defend in the courts" is "the right conservative of all other rights, a*nd lies at the foundation of orderly government*." *Id.* at 98 (quoting *Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907)) (internal quotes omitted) (emphasis added). The Court went on to note that the EO challenged in the *Jenner* case "implicates also the Fifth and Sixth Amendment guarantees of the "right to choose counsel without interference by officialdom." *Id.* (citing *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 872 (D.C. Cir. 1984); and *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144-46 (2006)).

Thus, all four rulings on appeal correctly confirm that the right of Appellee law firms to advocate for clients of their choice is inextricably intertwined with the right of individuals and organizations like Amici to retain law firms as their counsel -- without fear of retaliation from the Administration. This Court must rule that, just as the EOs at issue here violate the constitutional rights of Appellees, so do they also violate the



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

constitutional rights of Amici and similarly situated organizations to retain counsel. These holdings must be affirmed.

**V.    THE EXECUTIVE ORDERS ARE PART OF AN UNPRECEDENTED ATTACK ON THE LEGAL INSTITUTIONS OF THIS COUNTRY ON WHICH AMICI CRITICALLY RELY.**

The threats and political pressure the Trump administration has imposed on the Appellee law firms are part of an unprecedented attack on the legal institutions in this country. The constitutional rights to retain a lawyer to petition the government for redress of grievances, indisputably a foundational component of our democracy, rest on a three-legged stool. It requires, first, an independent judiciary; second, a robust legal profession free to represent those seeking redress of grievances in courts of law; and third, unfettered access to legal representation, the courts and due process of law. *See Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) ("An informed, independent judiciary presumes an informed, independent bar."); *Bhd. of R.R. Trainmen v. Virginia*, 377 U.S. 1, 7 (1964) ("A State could not . . . infringe in any way the right of individuals and the public to be fairly represented in lawsuits.").

If one of these three supports fail, they all fail, and these constitutional rights cease to have any meaningful application. The three legs supporting these constitutional rights broadly protect the rule of law and lie at the core of any functioning democracy. Conversely, they are very often the first casualty of anti-democratic and authoritarian regimes.

It is no surprise that in the first few months of the current administration, attacks were mounted on all three. Administration officials called for judges who rule against the government to be impeached, and have repeatedly refused to implement their orders; they have -- with the EOs



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

at issue here[11] -- unlawfully sought to punish lawyers who represent clients with interests adverse to the administration's policies, and in so doing, to limit the right to counsel; and they have denied due process of law to immigrants lawfully present in the United States. In response to these attacks, the President of the American Bar Association issued this warning in March 2025:

> [These] government actions evidence a clear and disconcerting pattern. If a court issues a decision this administration does not agree with, the judge is targeted. If a lawyer represents parties in a dispute with the administration, or if a lawyer represents parties the administration does not like, lawyers are targeted. … These actions highlight escalating governmental efforts to interfere with fair and impartial courts, the right to counsel and due process, and the freedoms of speech and association in our country.[12]

If unchecked, the Executive Orders would prevent Amici, who critically rely on the right to pro bono counsel, from being able to fulfill their mission to protect and advance the interests of their clients and to exercise their fundamental constitutional rights.

## VI.    CONCLUSION

In sum, the EOs -- as intended by the Administration -- pose an existential threat to "[t]he cornerstone of the American system of justice [which] is an independent judiciary and an independent bar willing to tackle unpopular cases, however daunting." *WilmerHale*, 784 F.Supp.3d at 135.

---

[11] *Zaid v. Executive Office of the President*, __ F.Supp.3d __ 2025 WL 3724884 (D.D.C. Sept. 23, 2025) on appeal to this Court (No. 25-5241) is another example.

[12] William R. Bay, *The ABA Rejects Efforts to Undermine the Courts and the Legal Profession*, ABA Website (March 3, 2025), https://www.americanbar.org/news/abanews/aba-news-archives/2025/03/aba-rejects-efforts-to-undermine-courts-and-legal-profession/

Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

The harm from that threat, if realized, cannot be separated from the harm that would be inflicted on organizations like Amici in their "right to petition as one of the most precious rights of the liberties safeguarded by the Bill of Rights." *Id.* at 156.

Amici respectfully and urgently ask this Court to decisively affirm the judgments entered below -- including those rulings that Appellees' clients' rights were violated -- which prevent the direct and collateral damage that would otherwise be caused by the EOs.

Respectfully submitted,

Dated: April 2, 2026

/s/ Gregory K. McGillivary
Gregory K. McGillivary
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave NW, Suite 1000
Washington, DC 20005
Tel.: (202) 833-8855
gkm@mselaborlaw.com

/s/ Emily M. Maglio
Emily M. Maglio
Philip Monrad
Peter Saltzman
LEONARD CARDER LLP
1999 Harrison Street, Suite 2700
Oakland, California 94612
Tel.: (510) 272-0169
Fax: (510) 272-0174
emaglio@leonardcarder.com

/s/Aaron Kaufmann
Aaron Kaufmann
KAUFMANN & GROPMAN LLP
1939 Harrison Street, Suite 620
Oakland, CA 94612
Tel.: (510) 817-4380

*Counsel for Amici*

16



Leonard
Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit prescribed by Federal Rules of Appellate Procedure 29(a)(5) because it contains 4,454 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(a)(2) and Circuit Rule 32(e)(3).

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font.


Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

**CERTIFICATE OF SERVICE**

I certify that on April 2, 2026, a true and correct copy of this Consented Amicus Curiae Brief was filed via the Court's CM/ECF System. Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

Dated: April 2, 2026                    /s/ Gregory K. McGillivary
                                        Gregory K. McGillivary



Leonard Carder LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612

18