# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

PERKINS COIE LLP,

　　　　　　　　　　　Plaintiff-Appellee,

v.

U.S. DEPARTMENT OF JUSTICE, *ET AL.*,

　　　　　　　　　　　Defendants-Appellant.

_____

On Appeal from the U.S. District Court for the District of Columbia

_____

**BRIEF OF *AMICI CURIAE* WASHINGTON STATE BAR ASSOCIATION, OREGON STATE BAR, AND THE STATE BAR OF CALIFORNIA IN SUPPORT OF APPELLEES**

Ambika Kumar
ambikakumar@dwt.com
Caesar Kalinowski IV
caesarkalinowski@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone:  206-757-8232

*Attorneys for Amici Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amici curiae* certify that:

## A. Parties and *Amici*

Except for the following, all parties, intervenors, and *amici curiae* appearing before the district court and this Court are listed in the Briefs for Appellants and Appellees:

*Amici curiae* are the Washington State Bar Association, Oregon State Bar, and the State Bar of California, state government entities that regulate the admission and practice of law in their respective jurisdictions under authority and direction from, or as part of, their respective state judicial branches.[1]

## B. Rulings Under Review

References to the rulings at issue appear in the Briefs for Appellants and Appellees.

## C. Related Cases

The following case is currently pending before the D.C. Circuit: *Zaid v. Executive Office of the President*, No. 26-5009.

s/ Caesar Kalinowski IV
Caesar Kalinowski IV

---

[1] All parties consented to the filing of this amicus brief. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than the *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

# TABLE OF CONTENTS

<b>Page</b>

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

TABLE OF AUTHORITIES ............................................................... iii

INTEREST OF *AMICI CURIAE* ....................................................1

INTRODUCTION ............................................................................3

STATEMENT OF THE CASE...........................................................4

      A.    The Executive Orders.................................................4

      B.    The Court Orders........................................................4

STATUTES AND REGULATIONS....................................................5

SUMMARY OF ARGUMENT ..........................................................5

ARGUMENT ...................................................................................6

I.   THE EXECUTIVE ORDERS INFRINGE FUNDAMENTAL CONSTITUTIONAL RIGHTS....................................................6

II.  THE EXECUTIVE ORDERS VIOLATE SEPARATION OF POWERS.......12

CONCLUSION...............................................................................17

CERTIFICATE OF COMPLIANCE..................................................18

CERTIFICATE OF SERVICE ..........................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*,
  377 U.S. 1 (1964)*............................................................................8

*Borough of Duryea, Pa. v. Guarnieri*,
  564 U.S. 379 (2011)........................................................................7

*Bradley v. Fisher*,
  80 U.S. 335 (1871)........................................................................14

*Ex parte Burr*,
  22 U.S. 529 (1824)........................................................................14

*De Jonge v. State of Oregon*,
  299 U.S. 353 (1937)..............................................................6, 7, 11

*DeLoach v. Bevers*,
  922 F.2d 618 (10th Cir. 1990) ........................................................8

*Denius v. Dunlap*,
  209 F.3d 944 (7th Cir. 2000) ..........................................................8

*Eng v. Cooley*,
  552 F.3d 1062 (9th Cir. 2009) ......................................................8, 9

*Ex parte Garland*,
  71 U.S. 333 (1866)*..................................................................12, 14

*Goldberg v. Kelly*,
  397 U.S. 254 (1970)........................................................................8

*Jenner & Block LLP v. U.S. Dep't of Just.*,
  784 F. Supp. 3d 76 (D.D.C. 2025)...................................................5

*Lane County v. State of Oregon*,
  74 U.S. 71 (1868).........................................................................13

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001)*..................................................................9, 14, 16

*Martin v. Lauer*,
686 F.2d 24 (D.C. Cir. 1982).................................................................8

*NAACP v. Button*,
371 U.S. 415 (1963)*.........................................................................7, 11

*NAACP v. State of Ala. ex rel. Patterson*,
357 U.S. 449 (1958)................................................................................7

*Perkins Coie LLP v. U.S. Dep't of Just.*,
783 F. Supp. 3d 105 (D.D.C. 2025)........................................................5

*Polk County v. Dodson*,
454 U.S. 312 (1981)................................................................................9

*Powell v. Alabama*,
287 U.S. 45 (1932)..................................................................................8

*In re Primus*,
436 U.S. 412 (1978)............................................................................8, 9

*Printz v. United States*,
521 U.S. 898 (1997)..............................................................................13

*Ex parte Secombe*,
60 U.S. 9 (1856)....................................................................................12

*Soranno's Gasco, Inc. v. Morgan*,
874 F.2d 1310 (9th Cir. 1989) ...............................................................9

*Stern v. Marshall*,
564 U.S. 462 (2011)*............................................................................13

*Susman Godfrey LLP v. Exec. Off. of President*,
789 F. Supp. 3d 15 (D.D.C. 2025)..........................................................5

*Thomas v. Collins*,
323 U.S. 516 (1945).........................................................................9, 10

*United States v. Cronic*,
    466 U.S. 648 (1984) ..................................................................................9

*United States v. Cruikshank*,
    92 U.S. 542 (1876) ....................................................................................6

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006) ..................................................................................8

*United States v. Nixon*,
    418 U.S. 683 (1974) .................................................................................14

*United Transp. Union v. State Bar of Mich.*,
    401 U.S. 576 (1971) ..................................................................................8

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*,
    784 F. Supp. 3d 127 (D.D.C. 2025) ..........................................................5

**State Cases**

*In re Att'y Discipline Sys.*,
    19 Cal. 4th 582 (1998) .............................................................................12

*In re Lambuth*,
    18 Wash. 478 (1898) ................................................................................12

*In re Thatcher*,
    80 Ohio St. 492 (1909) ............................................................................12

*Ex parte Thompson*,
    32 Or. 499 (1898) ....................................................................................12

**Constitutional Provisions**

Cal. Const., art. VI, § 9 ..................................................................................1

U.S. Const. amend. 1.................................................................5, 6, 8, 9, 10, 17

U.S. Const. amend. 5....................................................................................8

U.S. Const. amend. 6....................................................................................8

U.S. Const. art. III, § 1 ................................................................................13

**State Statutes**

ORS 9.010 ..................................................................................................1, 15

RCW 2.48.060 ...........................................................................................1, 15

**Rules**

Cal. R. Ct. 9.3 ...........................................................................................1, 15

WA GR 12.2 ..............................................................................................1, 15

N.D. Cal. Civ. L.R. 11-1 ...............................................................................15

**Other Authorities**

2 *Diary and Autobiography of John Adams* (L.H. Butterfield, 1961 ed.) .................3

Addressing Risks from Jenner & Block, Exec. Order No. 14246,
    90 FR 13997 (Mar. 25, 2025) .......................................................................4, 10

Addressing Risks from Perkins Coie LLP, Exec. Order No. 14230,
    90 FR 11781 (Mar. 6, 2025) ...................................................................4, 10, 16

Addressing Risks from Susman Godfrey, Exec. Order No. 14263,
    90 FR 15615 (Apr. 9, 2025).........................................................................4, 10

Addressing Risks from WilmerHale, Exec. Order No. 14250,
    90 FR 14549 (Mar. 27, 2025) ......................................................................4, 10

**INTEREST OF *AMICI CURIAE***

*Amici curiae* are the Washington State Bar Association ("WSBA"), Oregon State Bar ("OSB"), and the State Bar of California ("CSB"), government entities that operate under judicial authority delegated by their respective state supreme courts to oversee the qualification, admissions, and discipline of attorneys in their states. *See* WA GR 12.2 ("In the exercise of its inherent and plenary authority to regulate the practice of law in Washington, the Supreme Court authorizes and supervises the [WSBA's] activities."); RCW 2.48.060 (affirming WSBA authority over admission and disbarment "subject to the approval of the supreme court"); ORS 9.010(2) ("[OSB] is a public corporation and an instrumentality of the Judicial Department of the government of the State of Oregon."); Cal. Const., art. VI, § 9 (CSB is a public corporation); Cal. R. Ct. 9.3 ("[CSB] serves as the administrative arm of the Supreme Court [of California] for admissions matters ….").

As nonpartisan organizations dedicated to ensuring that the public has access to qualified and ethical legal representatives, who are critical to upholding our republican form of government and the Constitution, *amici* have a keen interest in safeguarding the ability of their licensed legal professionals to represent the broadest range of clients and causes. Given that Perkins Coie LLP is headquartered in the Pacific Northwest, with more attorneys in its offices there than anywhere else, the threat to the WSBA and OSB is particularly acute. Moreover, in light of *amici*'s

exclusive authority to license and discipline attorneys who violate ethical obligations—delegated by the Judiciary through its jurisdiction over court functions and attorney oversight—they have a direct interest in preserving the attendant separation of powers against any executive or legislative encroachment. For absent an informed and independent bar of attorneys to serve the public's needs, *amici*'s respective state judiciaries and the cause of justice in their states will suffer.

Because *amici* represent government entities whose rights and responsibilities will be directly impacted—and there are a significant number of private and public *amici* that have already appeared below to address a broad range of issues—a single joint amicus brief is not practicable here. While the briefs may sometimes reference similar authorities, this brief focuses on narrow issues that affect all attorneys who are members of a bar. Separate briefs are thus necessary to illustrate the breadth of the Executive Orders' potential impact on various communities and to help inform the Court of the underlying issues that separately render the Executive Orders infirm.

.

**INTRODUCTION**

From its inception, America's immutable sense of justice has largely been defined by the willingness of lawyers to take on unpopular cases and clients. In 1770, John Adams agreed to defend British soldiers charged with murder after they fired on American protestors, calling it "one of the best Pieces of Service [he] ever rendered [his] Country."[2] Over two centuries later, lawyers at the American Civil Liberties Union defended the rights of Neo-Nazis to demonstrate against Holocaust survivors in Skokie, Illinois, advancing key rights for all citizens but losing member support along the way. And every day in every courtroom in every state, public defenders provide vigorous advocacy for accused criminals—regardless of how heinous the crime or culpable the client may be.

As this history shows, our Nation's lawyers have long answered the call to take on difficult cases for maligned clients. For regardless of whether a person's claims are vindicated by a judge, their crimes are confirmed by a jury, or a cause is beloved by the community, our Constitution recognizes that all individuals have a right to choose their counsel and petition the courts. But this right presupposes the independence and tenacity of their advocates, who must answer to the courts alone for any missteps along the way. Because the Executive Orders infringe those

---

[2] 2 *Diary and Autobiography of John Adams*, at 79 (L.H. Butterfield, 1961 ed.).

rights—and usurp the courts' authority over attorney discipline—the Court should affirm the injunctions and judgments below.

## STATEMENT OF THE CASE

### A. The Executive Orders

Beginning in March 2025, President Trump issued multiple Executive Orders that—among other things—restricted law firms from accessing federal buildings, retaining security clearances, or obtaining government contracts based on their representation of clients and allegedly discriminatory practices (collectively, the "Executive Orders"). *See, e.g.*, Addressing Risks from Perkins Coie LLP, Exec. Order No. 14230, 90 FR 11781 (Mar. 6, 2025); Addressing Risks from Jenner & Block, Exec. Order No. 14246, 90 FR 13997 (Mar. 25, 2025); Addressing Risks from WilmerHale, Exec. Order No. 14250, 90 FR 14549 (Mar. 27, 2025); Addressing Risks from Susman Godfrey, Exec. Order No. 14263, 90 FR 15615 (Apr. 9, 2025).

### B. The Court Orders

In response to the Executive Orders, Plaintiffs-Appellees Perkins Coie LLP, Jenner & Block LLP, Wilmer Cutler Pickering Hale and Dorr LLP, and Susman Godfrey LLP (collectively, the "Law Firms") challenged the legality of the President's directives. Judges from the United States District Court for the District of Columbia permanently enjoined the Executive Orders, including on grounds that they impermissibly retaliated against the Law Firms' protected activities under the

4

First Amendment and/or violated separation of powers. *See, e.g.*, *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 152–57 (D.D.C. 2025); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 101–12 (D.D.C. 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 150–61 (D.D.C. 2025); *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 41–49, 54–55 (D.D.C. 2025).  On appeal, the Government challenges those rulings, claiming that (1) there is no causal link between the retaliation and activity protected by the First Amendment, Opening Brief ("OB") at 46–47, 52–54, and (2) the President retains Executive discretion to issue the restrictions, regardless of the Judiciary's authority, *id.* at 54–55.

## STATUTES AND REGULATIONS

All applicable statutes, etc., are contained in the Briefs for Appellants and Appellees.

## SUMMARY OF ARGUMENT

As this Nation's precedent shows, the First Amendment protects against government efforts to stifle association, speech, and petitioning activities—which are necessary to our republican form of government.  Since the earliest days of America, attorneys have played an integral role in advocating on behalf of their clients, and this advocacy is an inseparable aspect of their clients' rights.  Although attorneys have abused those rights from time to time, it is the Judiciary—not the

Executive—who has the exclusive authority to address any such misconduct. Because the Executive Orders retaliate against the Law Firms' protected First Amendment activities, through their representation of clients or their own expressive conduct, and violate separation of powers principles by usurping the Judiciary's role in overseeing the practice of law, this Court should affirm the lower courts' rulings.

**ARGUMENT**

## I. THE EXECUTIVE ORDERS INFRINGE FUNDAMENTAL CONSTITUTIONAL RIGHTS

The First Amendment has long protected the rights of individuals and their attorneys to associate, speak, and petition the courts through their attorneys. Even before the Bill of Rights was incorporated and made applicable to the States, First Amendment protections for individuals to meet and seek redress were understood to be a necessary component of our form of government. Indeed, "[t]he very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552 (1876).

After incorporation, these protections took on a new dimension as local law enforcement and legislatures tried to suppress undesirable political speech. In *De Jonge v. State of Oregon*, 299 U.S. 353 (1937), the Supreme Court affirmed the right to advocate for a total change in our form of government—which could ultimately represent the "will of the people" and "may be obtained by peaceful means"—as

"the essence of [a person's] guaranteed personal liberty." *Id*. at 365. Far from threatening our Nation, the Court held that this freedom represents "the security of the Republic, the very foundation of constitutional government." *Id.*

Beyond purely individual rights, citizens also necessarily have the right to associate with others who can petition on their behalf. "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association[.]" *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958). "Petition, as a word, a concept, and an essential safeguard of freedom, is of ancient significance in the English law and the Anglo–American legal tradition." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 395 (2011). Importantly, "[t]he right to petition is in some sense the source of other fundamental rights, for petitions have provided a vital means for citizens to request recognition of new rights and to assert existing rights against the sovereign." *Id.* at 397.

With regard to minority groups and ideas, the Supreme Court has recognized that "association for litigation may be the most effective form of political association" that exists. *NAACP v. Button*, 371 U.S. 415, 431 (1963). In fact, "under the conditions of modern government, litigation may well be the *sole* practicable avenue open to a minority to petition for redress of grievances." *Id.* at 430 (emphasis added). It is therefore now well-established that "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection

of the First Amendment." *See In re Primus*, 436 U.S. 412, 426 (1978) (quoting

*United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971)).

This includes an individual's right to associate and consult with and speak through attorneys. For "while private parties must ordinarily pay their own legal fees, they have an undeniable right to retain counsel to ascertain their legal rights." *Martin v. Lauer*, 686 F.2d 24, 32 (D.C. Cir. 1982); *see also Denius v. Dunlap*, 209 F.3d 944, 953–54 (7th Cir. 2000) ("The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition."); *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) ("The right to retain and consult with an attorney ... implicates … clearly established First Amendment rights of association and free speech.").

The First Amendment therefore bars the Government from retaliating against a lawyer—whether directly or indirectly—based on their client advocacy.[3] *See Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 5–6 (1964); *Eng v.*

---

[3] As other Supreme Court cases establish, such restrictions also implicate a party's Fifth and Sixth Amendment rights to counsel in the criminal and civil context. *See, e.g.*, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146-48 (2006) (Sixth Amendment "commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best" and "the right to select counsel of one's choice …. has been regarded as the root meaning of the constitutional guarantee"); *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970) ("[T]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel."); *Powell v. Alabama*, 287 U.S. 45, 68 (1932) (Fifth Amendment protects "the right to the aid of counsel when desired and provided by the party asserting the right").

*Cooley*, 552 F.3d 1062, 1069 (9th Cir. 2009) ("[T]he attorney is, after all, the client's speaker hired to deliver the client's message."). Moreover, because "[a]n informed, independent judiciary presumes an informed, independent bar[,]" *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001), the Supreme Court has recognized that "[c]ounsel [must] be free of state control" and unfettered in the exercise of "independent judgment on behalf of the client," *id.* at 542 (quoting *Polk County v. Dodson*, 454 U.S. 312, 321–22 (1981)); *see also United States v. Cronic*, 466 U.S. 648, 655 (1984) ("The very premise of our adversary system … is that partisan advocacy on both sides of a case will best promote the ultimate objective[.]") (citation & internal quotation marks omitted). "There can be little doubt, then, that 'state action designed to retaliate against and chill an attorney's advocacy for his or her client strikes at the heart of the First Amendment.'" *Eng*, 552 F.3d at 1069 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)) (cleaned up).

It is also well-established that "any attempt to restrict those liberties must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger." *Thomas v. Collins*, 323 U.S. 516, 530 (1945). "Where political expression or association is at issue," the Supreme Court has not tolerated the "imprecision that often characterizes government regulation of the conduct of commercial affairs." *Primus*, 436 U.S. at 434. Instead, "[o]nly the gravest abuses,

endangering paramount interests, give occasion for permissible limitation" on these "inseparable" rights, *see Thomas*, 323 U.S. at 530, which prevent "petty tyrannies … tak[ing] root and grow[ing]" into large ones," *id.* at 542.

The Executive Orders represent petty tyrannies that strike at the heart of First Amendment rights and threaten to chill the protected activities of the Law Firms and their advocacy on behalf of their clients. Although the Government now claims that it was primarily targeting "racial discrimination," OB at 47-48, 52-53, the Executive Orders reference the Law Firms' representation and association with clients and politically active entities as the reason for restrictions. *See* Exec. Order Nos. 14230 (restrictions based on firm's actions "while representing failed Presidential candidate Hillary Clinton" and "work[ing] with activist donors"); 14246 (firm "condoned partisan 'lawfare,' and abused its pro bono practice" and "engages in obvious partisan representations to achieve political ends"); 14263 (firm "spearheads efforts to weaponize the American legal system" and "funds groups that … inject[] … political and radical ideology"); 14250 (firm "engages in obvious partisan representations to achieve political ends" and "support[s] efforts designed to enable noncitizens to vote"). Because such activities are protected, the Executive Orders' retaliatory restrictions violate the Law Firms' First Amendment rights.

In invalidating the Executive Orders on this ground, the district courts properly recognized the breadth of the chilling effect from such retaliation. If such

10

restrictions were allowed to stand, lawyers and law firms would necessarily shy away from legal representation and association that might be considered controversial out of fear that elected officials could restrict their ability to practice law. As organizations dedicated to ensuring that qualified and diligent counsel can represent all members of the public—regardless of the outcome of their case or the popularity of their cause—*amici* are particularly concerned about the potential chilling effect if this form of executive action were approved and then repeated at the local, state, and federal level. Access to justice would surely suffer, especially for those communities who are most in need. *Button*, 371 U.S. at 431.

Most notably, the Executive Orders explicitly punish attorneys who represent the political parties or causes disfavored by the President, effectively seeking to prohibit certain viewpoints and dissuade any law firms from representing clients that are challenging his political positions or agenda. But a Republican-led Executive Branch has no authority to target lawyers representing Democrats any more than a Democrat-led Executive Branch could target the President's lawyers for challenging the 2020 election or defending him against charges in 2022. Simply put, such partisanship is not permitted in our representative republic, where an independent bar with strong protections for association, speech, and petitioning represents "the very foundation of constitutional government." *See De Jonge*, 299 U.S. at 365. The lower courts' rulings on this ground should therefore be affirmed.

11

## II. THE EXECUTIVE ORDERS VIOLATE SEPARATION OF POWERS

Most directly relevant to *amici*, the Executive Orders also violate the Judiciary's exclusive authority over attorney discipline and regulating access to the courts. For throughout the history of our Nation, "it has been well settled, by the rules and practice of common-law courts, that [authority] rests ***exclusively*** with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed." *Ex parte Secombe*, 60 U.S. 9, 13 (1856) (emphasis added). Any regulation of "the rights and independence of the bar" must be "scrupulously guarded and maintained by the court." *Id.* Attorneys, who are appointed as "officers of the court" and "admitted as such by its order," are thus ***only*** "responsible to [the court] for professional misconduct … and can only be deprived of [their office] for misconduct ascertained and declared by the judgment of the court." *Ex parte Garland*, 71 U.S. 333, 378–79 (1866).[4]

---

[4] *See also, e.g.*, *In re Lambuth*, 18 Wash. 478, 480 (1898) (the "power to strike from the rolls is inherent in the court itself" and while "[a]ttorneys may forfeit their professional franchise by abusing it, … the power to exact the forfeiture is lodged in the courts which have authority to admit attorneys to practice"); *Ex parte Thompson*, 32 Or. 499, 501–02 (1898) ("Thompson's resignation, not having been made with the consent or approval of this court, cannot have the effect of striking his name from the roll of attorneys"); *In re Att'y Discipline Sys.*, 19 Cal. 4th 582, 592 (1998) ("[T]he power to regulate the practice of law, including the power to admit and to discipline attorneys, has long been recognized to be among the inherent powers of the article VI courts. Indeed, every state in the United States recognizes that the power to admit and to discipline attorneys rests in the judiciary.") (citation & internal quotation marks omitted); *In re Thatcher*, 80 Ohio St. 492, 654 (1909) ("it is almost universally held that both the admission and the disbarment of attorneys are judicial acts").

Under the Constitution, "[t]he judicial Power of the United States" is solely vested in the Supreme Court and such inferior courts established by Congress.  U.S. Const. art. III, § 1.  "As its text and our precedent confirm, Article III is 'an inseparable element of the constitutional system of checks and balances' that 'both defines the power and protects the independence of the Judicial Branch.'"  *Stern v. Marshall*, 564 U.S. 462, 482–83 (2011) (citation omitted).  Based on concerns over prior excesses by the English monarchs and parliaments, "the Framers considered it essential that 'the judiciary remain truly distinct from both the legislature and the executive.'"  *Id.* at 483 (quoting The Federalist No. 78, at 466 (C. Rossiter ed. 1961)) (cleaned up).[5]

"Under the basic concept of separation of powers ... the judicial Power of the United States can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto."  *Id.* (quoting *United States*

---

[5] Likewise, an original understanding of the Constitution recognizes the important distinction of federalism in this context, whereby the federal government cannot usurp the states' authority over its courts and their affairs.  *See Lane County v. State of Oregon*, 74 U.S. 71, 76 (1868) ("[I]n many articles of the Constitution the necessary existence of the States, and, within their proper spheres, the independent authority of the States, is distinctly recognized.  To them nearly the whole charge of interior regulation is committed or left; to them and to the people all powers not expressly delegated to the national government are reserved."); *Printz v. United States*, 521 U.S. 898, 918–19 (1997) ("Although the States surrendered many of their powers to the new Federal Government, they retained 'a residuary and inviolable sovereignty[.]'") (quoting The Federalist No. 39, at 245).

*v. Nixon*, 418 U.S. 683, 704 (1974)) (cleaned up).  Thus, when the Executive or Congress seeks to "to truncate presentation to the courts" by limiting its practitioners, such restrictions impair the judicial function and violate the separation of powers mandated in our tripartite government.  *See Velazquez*, 531 U.S. at 545–46.

Given the important role that diligent advocates play in ensuring an independent Judiciary, even the courts' inherent authority to place restrictions on practice cannot be arbitrarily exercised.  *See Garland*, 71 U.S. at 378–79.  And beyond the need to preserve an adversarial system, "the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise."  *Ex parte Burr*, 22 U.S. 529, 530 (1824); *see also Bradley v. Fisher*, 80 U.S. 335, 355 (1871) ("To deprive one of an office of this character would often be to decree poverty to himself and destitution to his family.").  Thus, while the "power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice[,]" "[i]t is a power which should only be exercised for the most weighty reasons" by the courts.  *Bradley*, 80 U.S. at 354.

The restrictions in the Executive Orders have the practical effect of dictating who may access (and therefore practice in) the courts of the United States and who may represent clients providing services to the United States.  But it is solely within the federal Judiciary's purview to decide who may enter its courts to practice law—

or whether access should be restricted based on some adjudicated misconduct. Similarly, as federal courts in Washington, Oregon, and California restrict admission to those attorneys who are already a member of their respective state bars, that authority has been delegated to the state judiciaries and *amici*. *See* WA GR 12.2; RCW 2.48.060; ORS 9.010; Cal. R. Ct. 9.3.[6] By restricting the Law Firms' access to federal court attorneys in Washington, Oregon, and California, the Executive

---

[6] *See Attorney Admissions*, U.S. Dist. Ct. for the W.D. of Wash., https://www.wawd.uscourts.gov/attorneys/admissions ("Any attorney who is a member in good standing of the Washington State Bar is eligible for admission to practice in the Western District of Washington."); *Attorney Admissions, Pet. for Admission*, U.S. Dist. Ct. for the E.D. of Wash., https://www.waed.uscourts.gov/attorney-admissions ("You must be a member of the Washington State Bar Association in order to petition for admission in the Eastern District of Washington."); *Attorney Admissions, Instructions for Gen. Admissions*, U.S. Dist. Ct. for the D. Or., https://ord.uscourts.gov/index.php/attorneys/attorney-admissions ("A requirement of admission to the bar for the U.S. District Court for the District of Oregon is membership in the Oregon State Bar."); *Instructions for Application for Admission to the Bar of the Central District of California*, U.S. Dist. Ct. for the C.D. of Cal., https://www.cacd.uscourts.gov/attorneys/admissions ("Active members in good standing of the State Bar of California may apply for admission to the Bar of [the Central District of California][.]"); *Attorney Admission*, U.S. Dist. Ct. for the S.D. of Cal., https://www.casd.uscourts.gov/attorney/attorney-admission.aspx ("To practice in the Southern District of California an attorney must be a member in good standing of the California State Bar."); *Attorney Admission*, U.S. Dist. Ct. for the E.D. of Cal., https://www.caed.uscourts.gov/caednew/index.cfm/attorney-info/attorney-and-pro-hac-vice-admission/ ("To practice in the Eastern District of California an attorney must be a member in good standing of the California State Bar."); *Admission & Bar Membership*, *Admission to Practice*, U.S. Dist. Ct. for the N.D. of Cal., https://cand.uscourts.gov/attorneys/admission-bar-membership ("Civil Local Rule 11-1 provides that the Bar of [the Northern District of California] consists of attorneys of good moral character who are active members in good standing of the State Bar of California.").

Order violates the separation of powers and infringes on the rights of the federal and state judiciaries—as well as *amici* as their delegees.

Although the Government now claims that it is unknown whether "access to federal buildings" might be limited, *see* OB at 59, the Executive Orders make clear that the Law Firms will be restricted. For example, the President dictated that all agencies "shall … provide guidance limiting official access from Federal Government buildings to employees of Perkins Coie when such access would … otherwise be inconsistent with the interests of the United States." Order No. 14230. However, preceding that mandate, the President averred that Perkins Coie lawyers had already engaged in "dishonest and dangerous activity" that "undermin[ed] democratic elections, the integrity of our courts, and honest law enforcement," "engaged in a serious violation of the public trust," and he therefore has "good cause" to restrict access to "our Nation's secrets" and "Federal funds." *Id.* In other words, access to federal facilities by Perkins Coie lawyers is not in the interest of the United States. Because the Government does not have the right to tell the federal Judiciary or *amici* that certain lawyers may not enter into their courthouses and practice law in their courtrooms—"[a] scheme so inconsistent with accepted separation-of-powers principles" under any theory, *Velazquez*, 531 U.S. at 545–46— the Executive Orders are properly enjoined on this ground as well.

## CONCLUSION

For these reasons, *amici* request that the Court affirm the lower courts' rulings, which protect the First Amendment rights of the Law Firms and *amici*'s licensed attorneys, the residents of their states, and their authority as a co-equal branch of government.

Dated this 3rd day of April, 2026.

s/ Caesar Kalinowski IV
Ambika Kumar
ambikakumar@dwt.com
Caesar Kalinowski IV
caesarkalinowski@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: 206-757-8232

*Attorneys for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7) and Circuit Rule 32, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 4,165 words.

Counsel relies on the computer program used to create this brief for the word count.

By:  *s/ Caesar Kalinowski IV*
Caesar Kalinowski IV

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on April 3, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

By: _s/Caesar Kalinowski IV_
Caesar Kalinowski IV