# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

PERKINS COIE LLP,

*Plaintiff-Appellee,*

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

# BRIEF OF AMICI CURIAE NINETEEN NONGOVERNMENTAL ORGANIZATIONS IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

Amelia J. Schmidt (D.C. Bar 1012380)
Zachary N. Adorno (D.C. Bar 1048777)
Kaiser PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
aschmidt@kaiserlaw.com
zadorno@kaiserlaw.com

*Attorneys for Amici Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), except for the following, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the briefs for the parties:

Amici curiae are the nineteen nonprofit groups and nongovernmental organizations set forth below in the section entitled "Interests of Amici Curiae."

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, amici curiae certify that they are independent nonprofit groups or nongovernmental organizations. No amici have a parent company, and no other company has an ownership interest in any of the amici.

References to the rulings at issue appear in the Brief of Appellants.

References to related cases pending before this Court or in any other court appear in the Brief of Appellants.

Dated:  April 3, 2026

*/s/ Amelia J. Schmidt*
Amelia J. Schmidt

**RULE 29 STATEMENTS**

Pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure, all parties consented to the filing of this brief.

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici curiae represents that no counsel for a party authored the brief in whole or in part, and no person other than amicus or their counsel made a monetary contribution to the preparation or submission of this brief.

Pursuant to D.C. Circuit Rule 29(d), amici state that a separate brief is necessary due to their distinct expertise and qualifications, as set forth below in the section entitled "Interests of Amici Curiae."

Dated:     April 3, 2026                 */s/ Amelia J. Schmidt*
                                                 Amelia J. Schmidt

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................. iii

TABLE OF AUTHORITIES ..................................................................... iv

GLOSSARY .............................................................................................. vii

INTERESTS OF AMICI CURIAE ............................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 9

ARGUMENT ........................................................................................... 11

    I.    The Orders chill NGOs from exercising their First Amendment right to petition the government. ........................................................................ 12

    II.   The Orders violate Amici's First Amendment right to freedom of association by threatening their ability to access counsel. ...................................... 15

    III.  The Orders are an affront to the rule of law. ...................................... 19

CONCLUSION ........................................................................................ 21

CERTIFICATE OF COMPLIANCE ........................................................ 22

CERTIFICATE OF SERVICE ................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) ..........................................15

*BE & K. Constr. Co. v. NLRB*, 536 U.S. 516, 517 (2002)........................................12

*Citizens United v. FEC*, 558 U.S. 310, 339 (2010) .................................................20

Executive Order 14263, *Addressing Risks from Susman Godfrey* (April 9, 2025)....1

*Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) ..............................12

*Jenner & Block LLP v. U.S. Department of Justice, et al.*, 784 F. Supp. 3d 76

   (D.D.C. 2025) ......................................................................................................11

*NAACP v. Alabama*, 357 U.S. 449, 460 (1958)........................................................16

*NAACP v. Button*, 371 U.S. 415, 429 (1963)....................................... 12, 14, 15, 20

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024)................ 12, 14, 15, 17

*Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)..........................................................12

*Perkins Coie LLP v. U.S. Department of Justice, et al.*, 783 F. Supp. 3d 105

   (D.D.C. 2025) ......................................................................................................11

*Susman Godfrey LLP v. Executive Office of the President, et al.*, 789 F. Supp. 3d 15

   (D.D.C. 2025) ......................................................................................................11

*Wilmer Cutler Pickering Hale and Dorr LLP v. Executive Office of the President,*

   *et al.*, 784 F. Supp. 3d 127 (D.D.C. 2025)..........................................................11

**Other Authorities**

*'Enormous Fear': Trump's Threats Against George Soros Chill US Non-Profits*
(October 6, 2025), available at https://www.ft.com/content/68bf4bc8-02de-47fb-
b05c-4295f3f3b10f .................................................................................14

and Executive Order 14248, *Preserving and Protecting the Integrity of American
Elections* ............................................................................................19

Executive Order 13997, *Addressing Risks from Jenner & Block* (March 25, 2025).1

Executive Order 14168, *Defending Women from Gender Ideology Extremism and
Restoring Biological Truth to the Federal Government* ...................................18

Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based
Opportunity*........................................................................................19

Executive Order 14206, *Protecting Second Amendment Rights*; *Six Possible Effects
of Trump's Climate Policy Change* (February 13, 2026), available at
https://www.bbc.com/news/articles/cd03ee39945o ............................................18

Executive Order 14230, *Addressing Risks from Perkins Coie LLP* (March 6, 2025)
.........................................................................................................1

Executive Order 14250, *Addressing Risks from WilmerHale* (March 27, 2025).......1

*How Trump's Crackdown on Law Firms is Undermining Legal Defenses for the
Vulnerable* (July 31, 2025; updated August 3, 2025),

https://www.reuters.com/investigations/trumps-war-big-law-leads-firms-retreat-pro-bono-work-underdogs-2025-07-31/.......................................................... 16, 18

*Law Firms' Deals with Trump Roil Their Staff, Deepen Industry Rifts* (April 15, 2025), available at https://www.reuters.com/legal/government/law-firms-deals-with-trump-roil-their-staff-deepen-industry-rifts-2025-04-14/ ...........................17

*Memorandum for the Heads of Executive Departments and Agencies, Advancing United States Interests When Funding Nongovernmental Organizations* (February 6, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/02/memorandum-for-the-heads-of-executive-departments-and-agencies/ ..............................................................................................13

*Trump Administration Freezes Critical Title X Funding for 16 Organizations* (April 3, 2025), available at https://time.com/7273838/trump-administration-freezes-title-x-funding-impact/.......................................................................18

*Trump Reaches Deals with 5 Law Firms, Allowing Them to Avoid Prospect of Punishing Executive Orders* (April 11, 2025), available at https://apnews.com/article/trump-law-firms-executive-order-fe8f38a61cf77c5bb6add1315f5f96f1 .................................................................17

*Trump's Campaign of Retribution: At Least 470 Targets and Counting* (November 26, 2025), available at https://www.reuters.com/investigates/special-report/usa-trump-retribution-tracker/................................................................................14

# GLOSSARY

| | |
|---|---|
| Advocates for Transgender Equality Education Fund | A4TE |
| The Environmental Law & Policy Center | ELPC |
| GLBTQ Legal Advocates & Defenders | GLAD |
| Multicultural Media, Telecom and Internet Council | MMTC |
| Nongovernmental Organizations | NGOs |
| National Network to End Domestic Violence | NNEDV |
| Natural Resources Defense Council, Inc. | NRDC |
| The National Women's Law Center | NWLC |
| Southern Environmental Law Center | SELC |

# INTERESTS OF AMICI CURIAE

Amici represent a wide range of NGOs engaged in advocacy efforts for diverse causes. Amici include:

- <u>Advocates for Transgender Equality Education Fund</u>: Advocates for Transgender Equality Education Fund ("A4TE") is a nonprofit organization dedicated to advocating for the rights of transgender and nonbinary individuals across the United States. A4TE seeks to achieve full-lived equality for the transgender and nonbinary community through impact litigation, policy advocacy, and education in areas such as employment, healthcare, housing, conditions of confinement, education, identity documents, and public accommodations.

- <u>American Oversight</u>: American Oversight is a nonpartisan, nonprofit Section 501(c)(3) organization committed to advancing truth, accountability, and democracy by enforcing the public's right to government records. Through research and Freedom of Information Act (FOIA) and other public records requests, American Oversight uses the information it gathers, and its analysis of that information, to educate the public about the activities and operations of federal, state, and local governments through reports, published analyses, press releases, and other media.

- <u>Americans United for Separation of Church and State</u>: Americans United for Separation of Church and State is a nonpartisan, not-for-profit educational and advocacy organization that brings together people of all religions and none to protect the right of everyone to believe as they want and stop anyone from using their beliefs to harm others. We fight in the courts, legislatures, and the public square for freedom without favor and equality without exception. We regularly file lawsuits and submit amicus briefs to defend the Constitution, the rule of law, and our cherished American principle of the separation of religion and government.

- <u>Brady Center to Prevent Gun Violence</u>: Brady Center to Prevent Gun Violence ("Brady") is the nation's most longstanding nonpartisan, nonprofit organization dedicated to reducing gun violence. Brady passes and defends gun violence prevention laws, reforms the gun industry, and educates the public about responsible gun ownership. Brady's work to free America from gun violence involves critical partnerships with pro bono counsel on amicus brief filings, gun violence prevention law defense, and affirmative litigation against the gun industry.

- <u>The Center for Reproductive Rights</u>: The Center for Reproductive Rights is the only global legal advocacy organization dedicated to advancing reproductive rights. For more than 30 years, the Center has litigated groundbreaking reproductive rights cases against government defendants—including the U.S. government—regardless of the political party in power. The Center frequently partners with private law firms, including some of the law firms that have been targeted by President Trump's punitive executive orders, who work pro bono to defend the reproductive rights of patients, healthcare providers and others against government incursion.

- <u>Children's Rights, Inc.</u>: Children's Rights is a national advocacy organization committed to improving the lives of children who are in or impacted by government systems. Through strategic advocacy and legal action—often in partnership with leading law firms as co-counsel—Children's Rights holds governments accountable for keeping kids safe, healthy, and supported. Since its founding in 1995, Children's Rights has achieved lasting, systemic change for hundreds of thousands of children across more than 20 jurisdictions throughout the United States.

- Earthjustice: Earthjustice is the nation's largest public interest environmental law organization. Our staff includes over 200 attorneys who litigate at the federal, state, and local level. Since its founding over 50 years ago, Earthjustice has brought hundreds of lawsuits against both Democratic- and Republican-led administrations, and has always represented its clients free of charge.

- The Environmental Law & Policy Center: The Environmental Law & Policy Center ("ELPC") is the Midwest's leading regional environmental advocacy organization. For more than 30 years, ELPC has used litigation, policy advocacy, and strategic communications to improve environmental quality and protect the Midwest's natural resources.

- GIFFORDS Law Center to Prevent Gun Violence: GIFFORDS Law Center to Prevent Gun Violence is the legal arm of the gun violence prevention organization founded and led by former Congresswoman and gun violence survivor Gabby Giffords.

- GLBTQ Legal Advocates & Defenders: GLBTQ Legal Advocates & Defenders ("GLAD Law") is New England's leading public interest legal organization dedicated to creating a just society free of discrimination based on transgender status, HIV status, and sexual

orientation. GLAD Law uses all aspects of the law, including federal court litigation, to advance the rights of LGBTQ people and people living with HIV.

- Human Rights Campaign Foundation: Through programming and initiatives, the Human Rights Campaign Foundation seeks to make transformational change for LGBTQ+ people by shifting policies, practices, and hearts and minds in institutions that shape our daily lives. Its Impact Litigation and Advocacy Program leverages a collaborative spirit and strong partnerships in pursuing legal matters that expand and protect the rights and voices of LGBTQ+ people. As a guidepost, the Program works toward the empowerment of individuals in our community through systemic, structural, and institutional change.

- Immigration Equality: Immigration Equality is a national legal service provider that assists immigrants fleeing persecution on the basis of their sexual orientation, gender identity, or HIV status. Each year, the organization provides legal advice to thousands of individuals and families, actively manages more than 600 immigration cases, and appears in federal circuit courts as counsel or amicus curiae.

- Lambda Legal Defense and Education Fund, Inc.: Lambda Legal Defense and Education Fund, Inc. is the nation's oldest and largest legal

organization committed to achieving full recognition of the civil rights of lesbian, gay, bisexual, transgender people, and everyone living with HIV through impact litigation, education, and policy advocacy. Lambda Legal has been instrumental in securing landmark legal victories for LGBTQ+ people, including the right to marriage equality and broad protections against discrimination.

- <u>Lawyers for Good Government</u>: Lawyers for Good Government is a high-impact nonprofit whose mission is to mobilize lawyers to ensure that all levels of government—federal, state, and local—promote equal justice under the law and uphold civil and human rights. Since our founding in 2016, we have mobilized over $100 million in pro bono legal services through a dedicated network of more than 125,000 lawyers and advocates in all 50 states.

- <u>Multicultural Media, Telecom and Internet Council</u>: Multicultural Media, Telecom and Internet Council ("MMTC") was established in 1986 as a national nonprofit organization dedicated to promoting and preserving equal opportunity and civil rights in the mass media, telecommunications, and broadcast industries. MMTC performs civil rights advocacy; conducts research and analysis, particularly in the area of broadband access and broadband adoption for people of color and

other vulnerable populations; and regularly participates in agency rulemaking proceedings affecting these issues.

- National Network to End Domestic Violence: The National Network to End Domestic Violence ("NNEDV") represents the 56 U.S. State and territorial coalitions against domestic violence. NNEDV was instrumental in the passage and implementation of the Violence Against Women Act. NNEDV is dedicated to creating a social, political, and economic environment in which domestic violence no longer exists and works to make domestic violence a national priority, change the way society responds to domestic violence, and strengthen domestic violence advocacy at every level.

- The National Women's Law Center: The National Women's Law Center ("NWLC") is a nonprofit legal organization, founded in 1972, that fights for gender justice in the courts, in public policy, and in our society. NWLC works across issues that are central to the lives of women and girls—especially women of color, LGBTQ people, and low-income women and families.

- Natural Resources Defense Council, Inc.: Natural Resources Defense Council, Inc. ("NRDC"), is a leading nonprofit advocacy organization that works to protect public health and the environment. Since its

founding in 1970, NRDC has litigated many hundreds of cases involving the federal government"—both as a plaintiff challenging governmental actions and, as an intervenor or amicus, defending governmental actions.

- Southern Environmental Law Center: As the largest environmental advocate focused on the South and one of the most robust nonprofit environmental law firms in the nation, the Southern Environmental Law Center ("SELC") represents hundreds of grassroots organizations and local governments every year as they advocate for environmental policies, enforce environmental laws, and hold governments and industry accountable. SELC's advocates appear in every level of the state and federal courts and advocate in Congress and before federal environmental and land management agencies. In the service of its public interest mission, SELC has filed successful federal litigation against one or more federal agencies under every presidential administration over the past 40 years.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Amici are nineteen nonprofit groups and nongovernmental organizations ("NGOs") that share a common interest and concern in the President's executive orders[1] (collectively, "the Orders") targeting four law firms[2] that supported—and/or whose clients support—causes the President does not like. The district courts unanimously, and correctly, found those Orders unconstitutional. If this Court were to overturn these findings, the Orders would stifle the President's critics—which include Amici—by threatening retribution for supporting causes he dislikes.

Reversing the district courts' decisions would harm Amici in three principal ways.

*First*, the Orders chill Amici's First Amendment right to petition the government for redress of grievances. The President has targeted and threatened law firms that have represented certain causes he disfavors, with severe consequences: canceling their government contracts, revoking security clearances, blocking them

---

[1] Executive Order 14230, *Addressing Risks from Perkins Coie LLP* (March 6, 2025); Executive Order 13997, *Addressing Risks from Jenner & Block* (March 25, 2025); Executive Order 14250, *Addressing Risks from WilmerHale* (March 27, 2025); and Executive Order 14263, *Addressing Risks from Susman Godfrey* (April 9, 2025).

[2] The firms, and Plaintiffs-Appellees in this matter, are Perkins Coie LLP ("Perkins"); Jenner & Block LLP ("Jenner"); Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"); and Susman Godfrey LLP ("Susman") (collectively, "Plaintiffs-Appellees" or the "Firms").

from meeting with federal officials, and even barring them from entering government buildings. Such blatant viewpoint discrimination against these four law firms sends Amici a clear message: Do not challenge the President or you will be next. This directly impinges on Amici's protected advocacy efforts.

*Second*, by targeting law firms, the Orders violate Amici's First Amendment right to freedom of association by restricting Amici's access to (and association with) effective legal representation. NGOs rightfully fear the Trump administration will target them if they engage any of the law firms that have been—or may be—out of favor with the President. And law firms (including the Firms), in turn, fear retribution if they represent NGOs concerning interests that do not align with the President's views. If reinstated, the Orders will diminish NGOs' ability to obtain and associate with effective counsel—particularly pro bono counsel—further impinging on their First Amendment rights.

*Third*, the Orders ultimately threaten the rule of law, which depends on organizations like Amici to be able to engage fairly and freely in advocacy and litigation, including but not limited to challenging and/or defending governmental policies and actions, before neutral courts. Private law firms regularly represent or otherwise aid Amici in such lawsuits. If private-sector lawyers fear retribution for representing or helping Amici, that undermines the American people's ability to hold accountable a government that is pushing the boundaries of its authority or violating

10

the U.S. Constitution. NGOs serve a special role in initiating and amplifying those efforts. They must be able to engage in constitutionally protected speech and association to do their work without fear of retribution.

## ARGUMENT

The Orders are an unprecedented assault on the legal profession's independence, chilling NGOs' rights to petition the government and to seek legal advocacy. All four district courts recognized this in permanently enjoining the Orders and finding, *inter alia*, that the Orders violated the First Amendment by retaliating against the Firms for their client advocacy. *See, e.g.*, *Perkins Coie LLP v. U.S. Department of Justice, et al.*, 783 F. Supp. 3d 105 (D.D.C. 2025) (JA 1628, 1679); *Jenner & Block LLP v. U.S. Department of Justice, et al.*, 784 F. Supp. 3d 76 (D.D.C. 2025) (JA 2157, 2175); *Wilmer Cutler Pickering Hale and Dorr LLP v. Executive Office of the President, et al.*, 784 F. Supp. 3d 127 (D.D.C. 2025) (JA 2804, 2838); and *Susman Godfrey LLP v. Executive Office of the President, et al.*, 789 F. Supp. 3d 15 (D.D.C. 2025) (JA 3482, 3516).

Vacating those Orders would (1) chill Amici's First Amendment right to petition the government; (2) undermine Amici's First Amendment right to freely associate with law firms, especially in litigation that the President may disfavor; and (3) erode the rule of law by constricting NGOs' ability to challenge any President

11

who engages in viewpoint discrimination, retaliation, or other constitutional violations.

## I. THE ORDERS CHILL NGOS FROM EXERCISING THEIR FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT.

The First Amendment right to petition the government is "one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K. Constr. Co. v. NLRB*, 536 U.S. 516, 517 (2002) (internal quotation marks omitted). That includes litigating against, or in support of, government action in court. *NAACP v. Button*, 371 U.S. 415, 429 (1963) ("Groups which find themselves unable to achieve their objections through the ballot frequently turn to the courts."). Indeed, "under the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." *Id.* at 430. The right to petition the government includes the right to do so without fear of retaliation from the government. *See also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024) ("[T]he government official] cannot … use the power of the State to punish or suppress disfavored expression."); *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).

The Orders plainly seek to punish speech and constitutionally protected activity. For example, as all four of the district courts have held, Section 5 of the Orders precludes the Firms from meeting with government officials and even

entering public buildings, literally locking them out from petitioning the government. Using Section 5 as an example, the *WilmerHale* court found that "[t]he Order, however, goes further than punishing WilmerHale for past petitioning. It also creates hurdles to prevent the firm from pursuing future lawsuits." JA 2845; *Jenner* (JA 2197) ("Even more than the order's other sections, Section 5 is inexplicable by anything other than a pure desire to inflict pain on Jenner."); *see also Susman* (JA 3503); *Perkins* (JA 1676).

If reinstated, the Orders could deter the NGOs from exercising their First Amendment right to petition the government for fear of retribution from the President. The President has made clear that NGOs are in his crosshairs. *See Memorandum for the Heads of Executive Departments and Agencies, Advancing United States Interests When Funding Nongovernmental Organizations* (February 6, 2025);[3] *'Enormous Fear': Trump's Threats Against George Soros Chill US Non-Profits* (October 6, 2025).[4] He is fixated on retaliating against people and organizations that support causes he disfavors. *See Trump's Campaign of*

---

[3] Available at: https://www.whitehouse.gov/presidential-actions/2025/02/memorandum-for-the-heads-of-executive-departments-and-agencies/.

[4] Available at: https://www.ft.com/content/68bf4bc8-02de-47fb-b05c-4295f3f3b10f.

*Retribution: At Least 470 Targets and Counting* (November 26, 2025).[5] The Orders are a direct result of that fixation. *See, e.g.*, *Perkins* (JA 1679); *Jenner* (JA 2175); *WilmerHale* (JA 2838); *Susman* (JA 3516).

If the Orders were reinstated—and the President thereby emboldened by such reinstatement—there would be almost no conceivable limit to the retaliatory orders that could follow against organizations, private firms, or causes the President seeks to suppress. If organizations like Amici were to challenge the Administration in court, they or their lawyers could find themselves the target of the next executive order. *See Button*, 371 U.S. at 432 ("For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar[.]"). That prospect unconstitutionally chills Amici's speech because "a government entity's 'threat of invoking legal sanctions and other means of coercion' against a third party 'to achieve the suppression' of disfavored speech violates the First Amendment." *Vullo*, 602 U.S. at 180 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)). *See also Button*, 371 U.S. at 433 ("These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions.").

---

[5] Available at: https://www.reuters.com/investigates/special-report/usa-trump-retribution-tracker/.

As each district court found, the government cannot "use the power of the State to punish or suppress disfavored expression." *Vullo*, 602 U.S. at 188; *see also Perkins* (JA 1631) (quoting *Vullo*, 602 U.S. at 188); *Jenner* (JA 2157) (same); *WilmerHale* (JA 2839) (same); and *Susman* (JA 3497) (same). The Orders would have precisely that effect in chilling NGOs' ability to criticize and challenge the government's actions. The district courts recognized as much. Overturning their findings would endanger Amici's ability to petition the government.

## II. THE ORDERS VIOLATE AMICI'S FIRST AMENDMENT RIGHT TO FREEDOM OF ASSOCIATION BY THREATENING THEIR ABILITY TO ACCESS COUNSEL.

NGOs' ability to co-counsel and partner with law firms, often on a pro bono basis, in petitioning the government is an important part of their work. If the Orders are reinstated, they will not only discourage law firms from representing and co-counseling with Amici and similarly situated NGOs, but they also will strike fear throughout the bar that, if a law firm takes on a case or cause opposed by the President, they could be the next firm to suffer severe sanctions. *See Jenner* (JA 2202) ("The [executive] order's chilling effect is uniquely harmful for its focus on pro bono work. When law firms volunteer to represent vulnerable individuals and groups without pay, they embody the best of the profession.").

Defendants-Appellants argue that the Orders have not yet had any "concrete[] impact" on Plaintiffs-Appellees. Br. at 65. But the Orders' impact on NGOs, even

15

with the injunctions in place, has been all-too real, and that is a direct result of the chilling effect the Orders have had on law firms like Plaintiffs-Appellees. In the year since the Orders were issued, Amici have witnessed many law firms declining to work with NGOs out of fear of additional sanctions and retaliation by the President. Other firms have curtailed their pro bono practices, reduced ongoing commitments to NGOs, and literally sanitized their websites to avoid any mention of causes the President might disfavor. *See generally How Trump's Crackdown on Law Firms is Undermining Legal Defenses for the Vulnerable* (July 31, 2025; updated August 3, 2025).[6] These are textbook chilling effects, and only confirm that the orders directly infringes on NGOs' First Amendment right to freedom of association. *See NAACP v. Alabama*, 357 U.S. 449, 460 (1958) ("It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of [freedom of speech].").

The President issued similar executive orders against a total of seven law firms, and he has threatened to issue more against others.[7] Nine firms have publicly

---

[6] Available at: https://www.reuters.com/investigations/trumps-war-big-law-leads-firms-retreat-pro-bono-work-underdogs-2025-07-31/.

[7] *See Trump Reaches Deals with 5 Law Firms, Allowing Them to Avoid Prospect of Punishing Executive Orders* (April 11, 2025), available at: https://apnews.com/article/trump-law-firms-executive-order-fe8f38a61cf77c5bb6add1315f5f96f1

announced settlements with the administration to resolve sanctions the President imposed or preemptively stave off future sanctions.[8] These deals included, among other things, a collective promise by those law firms to perform $940 million in pro bono work on administration-approved matters. These agreements demonstrate that the President's illicit strategy is working as designed. *See Vullo*, 602 U.S. at 193 (citing the reaction of the threatened parties as evidence of coercion). Indeed, the *Perkins* decision makes clear that the deals made by the nine law firms are alone evidence that the Orders chill speech. JA 1687.

This is rank viewpoint discrimination. By constraining NGOs' ability to obtain counsel to participate in protected speech through threats to third parties (the law firms), the Orders plainly violate the First Amendment. *See Vullo*, 602 U.S. at 191 (holding that it was a violation of the First Amendment for a New York government official to threaten third-party insurance carriers with punishment if they did business with the NRA).

Again, even the law firms that have not made a deal with the Administration are still considerably less likely to partner with an NGO if the President has expressed his opposition for that NGO's cause(s). *See How Trump's Crackdown on Law Firms is Undermining Legal Defenses for the Vulnerable* (July 31, 2025;

---

[8] *See Law Firms' Deals with Trump Roil Their Staff, Deepen Industry Rifts* (April 15, 2025), available at: https://www.reuters.com/legal/government/law-firms-deals-with-trump-roil-their-staff-deepen-industry-rifts-2025-04-14/

updated August 3, 2025).[9] Amici represent a wide variety of organizations advocating for different causes, including advocating for gun violence prevention, environmental protection, reproductive rights, LGBTQ rights, civil rights, and voting rights. The President has made clear that he opposes many if not all of these causes. *See, e.g.,* Executive Order 14206, *Protecting Second Amendment Rights*; *Six Possible Effects of Trump's Climate Policy Change* (February 13, 2026);[10] *Trump Administration Freezes Critical Title X Funding for 16 Organizations* (April 3, 2025);[11] Executive Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*; Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*; and Executive Order 14248, *Preserving and Protecting the Integrity of American Elections*. The Orders demonstrate that lawyers who support clients espousing or advancing those causes could face sanctions from the President. If the Orders are reinstated, law firms will be even less likely to work with such NGOs, for fear of becoming the next target.

---

[9] Available at: https://www.reuters.com/investigations/trumps-war-big-law-leads-firms-retreat-pro-bono-work-underdogs-2025-07-31/.

[10] Available at: https://www.bbc.com/news/articles/cd03ee39945o

[11] Available at: https://time.com/7273838/trump-administration-freezes-title-x-funding-impact/

Through this intimidation, the President aims to silence his critics through threats of retribution. In this way, the Orders transform an NGO's litigation decisions about whether to challenge a federal policy, and who to engage as co-counsel, into a potentially existential question for NGOs—all driven by fear of Presidential retribution.

In enjoining the Orders, the district courts recognized this. The President's retaliatory actions against law firms "casts a chill over the whole of the legal profession, leaving lawyers around the country weighing the necessity of vigorous representation against the peril of crossing the federal government." *Jenner* (JA 2202); *see also Susman* (JA 3524) ("It chills Susman's speech advocating for clients whose interests are adverse to the government."); *WilmerHale* (JA 2871) ("The intended and actual effect of the Order's sanctions is to drive clients away from WilmerHale[.]"). If this Court overturns the district courts' decisions, the Orders will drive a wedge between NGOs and their counsel, a blatant infringement on NGOs' freedom of association. *See Button*, 371 U.S. at 437 (holding that state limitations on arranging for legal representation violated First Amendment freedom of association).

### III. THE ORDERS ARE AN AFFRONT TO THE RULE OF LAW.

The Orders stifle the speech of NGOs like Amici, suppress their freedom to petition the government and of association, and insulate the President from both

19

criticism and the limits imposed by the law. Ultimately, the collective effect of the Orders and their implementation is to seriously harm the rule of law across the United States. "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010). "Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints." *Id.* at 340.

The rule of law in the United States depends on Americans' ability to hold government officials accountable. That accountability depends not only on independent courts, but also on an independent bar willing to represent clients, including unpopular ones. When the government seeks to deter lawyers from undertaking such work, it weakens a structural safeguard long understood to secure equal justice under law. For organizations like Amici, that danger is immediate and concrete: without lawyers willing to bring cases without fear or favor, the promise of neutral judicial review becomes empty in practice.

If this Court overturns the district courts' decisions, the President could issue similar executive orders, and where there once was vibrant and legitimate criticism and a valuable check on executive power, there will be growing silence. NGOs that might otherwise challenge the legality of certain government action may be silenced—whether by fear of retribution from the President directly or because they

cannot access skilled legal representation from law firms that, too, have been intimidated or coerced into silence.

## CONCLUSION

For the foregoing reasons, Amici urge the Court to safeguard the NGO sector's survival—and the survival of the First Amendment—by affirming the district courts' orders for summary judgment and permanently enjoining the President's Orders.

Dated:      April 3, 2026

*/s/ Amelia J. Schmidt*
Amelia J. Schmidt (D.C. Bar 1012380)
Zachary N. Adorno (D.C. Bar 1048777)
Kaiser PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
aschmidt@kaiserlaw.com
zadorno@kaiserlaw.com
*Attorneys for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

This *amici curiae* brief complies with the word limit of Fed. R. App. P. 29(a)(5) because it contains 4,073 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced, serif typeface in 14-point Times New Roman font.

Dated:      April 3, 2026                */s/ Amelia J. Schmidt*
                                         Amelia J. Schmidt

**CERTIFICATE OF SERVICE**

I certify that on April 3, 2026, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, thereby serving all persons required to be served.

/s/ Amelia J. Schmidt
Amelia J. Schmidt