Nos. 25-5241, 25-5265, 25-5277, 25-5310

———————————

# United States Court of Appeals for the District of Columbia Circuit

———————————

**PERKINS COIE LLP,**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,**
*Defendants-Appellants.*

———————————

Appeal from the United States District Court
for the District of the District of Columbia

———————————

**BRIEF FOR AMICI CURIAE BIPARTISAN CURRENT AND
FORMER UNITED STATES SENATORS**

———————————

Paul Bland
BERGER MONTAGUE PC
1001 G Street NW, Ste. 400E
Washington, DC 20001
Telephone: (202) 809-9136
pbland@bergermontague.com

Joseph E. Samuel, Jr.
BERGER MONTAGUE PC
1818 Market Street, Ste. 3600
Philadelphia, PA 19103
Telephone: (215) 875-3020
jsamuel@bergermontague.com

Matthew Summers
BERGER MONTAGUE PC
505 Montgomery St., Ste. 625
San Francisco, CA 94111
Telephone: (800) 424-6690
msummers@bergermontague.net

April 3, 2026

## <u>DISCLOSURE STATEMENT UNDER D.C. CIR. RULE 26.1</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 26.1 and 29(b), Senators state that they are individuals to whom Rule 26.1 does not apply.

## CERTIFICATE OF COUNSEL PURSUANT TO
## D.C. CIR. RULE 29

Pursuant to D.C. Circuit Rule 29(b), counsel for Senators certifies that a separate brief is necessary to express the unique views of United States Senators, who often appear as amici curiae in cases concerning constitutional interpretation, the separation of powers, and Executive Branch overreach, and who also rely on private attorneys for a number of other important legislative and advocacy purposes.

## CERTIFICATE REGARDING PARTIES, RULINGS, AND
## RELATED CASES

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for the Appellants. References to rulings at issue and related cases also appear in the Brief for the Appellants.

## TABLE OF CONTENTS

IDENTITY AND INTEREST OF AMICI CURIAE .................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT .................2

ARGUMENT ........................................................................................5

I.    The Executive Orders Infringe the First Amendment Rights of United States Senators ...............................................................5

    A.    The Executive Orders Violate Senators' Freedom of Speech...............................................................................5

    B.    The Executive Orders Violate Senators' Freedom of Association and Right to Choose Counsel .............................9

    C.    The Executive Orders Violate Senators' Freedom to Petition the Government ....................................................13

    D.    The Executive Orders Violate the Speech or Debate Clause...............................................................................14

II.   The Executive Orders Violate the Separation of Powers.............15

    A.    The Executive Orders Intrude Upon the Legislative Branch by Interfering with Legislative Access to Legal Counsel.............................................................................15

    B.    The Executive Orders Constitute Impermissible Bills of Attainder ..........................................................................18

III.  The Executive Orders Threaten Key Congressional Functions....20

IV.   Filing Amicus Briefs Is a Central Avenue for Senators to Express Themselves on Matters of Public Concern ......................23

V.    Congress Benefits from the Legal Profession's Diverse Views .....27

CONCLUSION .................................................................................29

iii

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                     <u>Page(s)</u>

*American Foreign Service Ass'n v. Garfinkel*,
  490 U.S. 153 (1989) ..................................................................25

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021) ...............................................................6, 10

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) .....................................................................7

*Borough of Duryea, Pa. v. Guarnieri*,
  564 U.S. 379 (2011) ..................................................................13

*Boumediene v. Bush*,
  549 U.S. 1328 (2007) ................................................................26

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ..................................................................26

*Citizens United v. FEC*,
  558 U.S. 310 (2010) ..................................................................26

*Cohen v. Hurley*,
  366 U.S. 117 (1961) ..................................................................29

*Dehainaut v. Pena*,
  32 F.3d 1066 (7th Cir. 1994) .....................................................20

*Doe v. D.C.*,
  697 F.2d 1115 (D.C. Cir. 1983) .................................................21

*Elrod v. Burns*,
  427 U.S. 347 (1976) ..................................................................10

*FEC v. Cruz*,
  596 U.S 289 (2022) ...................................................................25

*Foretich v. United States*,
  351 F.3d 1198 (D.C. Cir. 2003) .................................................20

*Gravel v. United States*,
  408 U.S. 606 (1972) ..................................................................14

*Houston Cmty. Coll. Sys. v. Wilson*,
  595 U.S. 468 (2022) ....................................................................6

*INS v. Chadha*,
  *462 U.S. 919 (1983)* ................................................................25

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
  510 U.S. 86 (1993) ...................................................................25

iv

*Joint Anti–Fascist Refugee Comm. v. McGrath,*
*341* U.S. 123 (1950) ................................................................20
*Laird v. Tatum,*
408 U.S. 1 (1972) ....................................................................7
*McDonald v. City of Chicago, Ill.,*
561 U.S. 742 (2010) ..............................................................25
*NLRB v. Canning,*
573 U.S. 513 (2014) ..............................................................25
*NRA of Am. v. Vullo,*
602 U.S. 175 (2024) ................................................................6
*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
591 U.S. 732 (2020) ..............................................................25
*Perkins Coie LLP v. U.S. Dep't of Just.,*
783 F. Supp. 3d 105 (D.D.C. 2025) ................................ *passim*
*Roberts v. U.S. Jaycees,*
468 U.S. 609 (1984) ..............................................................10
*School Bd. of Nassau Cnty., Fla. v. Arline,*
*480* U.S. 273 (1987) ..............................................................25
*Town of Greece, N.Y. v. Galloway,*
572 U.S. 565 (2014) ..............................................................25
*United States v. Booker,*
543 U.S. 220 (2005) ..............................................................24
*United States v. Brown,*
381 U.S. 437 (1965) ..............................................................19
*United States v. Eichman,*
496 U.S. 310 (1990) ..............................................................25
*United States v. Gonzalez-Lopez,*
548 U.S. 140 (2006) ..........................................................11, 12
*United States v. Johnson,*
383 U.S. 169 (1966) ..............................................................15
*United States v. Rahimi,*
602 U.S. 680 (2024) ..........................................................23, 24
*W. Va. State Bd. of Educ. v. Barnette,*
319 U.S. 624 (1943) ..............................................................27
*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President,*
784 F. Supp. 3d 127 (D.D.C. 2025) ........................................6
*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.,*
550 U.S. 516 (2007) ..............................................................26

Statutes

U.S. Const. amend. I ..................................................................................5
U.S. Const. art. I § 9...............................................................................19
U.S. Const. art. I § 10.............................................................................19

Other Authorities

Brief of 186 Members of the U.S. House of Representatives and 39 Members
  of the U.S. Senate as Amici Curiae Supporting Petitioners,
  *United States v. Texas*, 2016 WL 891342 (2016) (No. 15-674) ..................... 23
Brief of Senator Blumenthal, et al. as Amici Curiae Supporting Petitioners,
  *Fuld v. PLO*, 742025 WL 430942 (2d Cir. 2025) (Nos. 24-20)..................... 24
Brief of Sentaor Blumenthal, et al. as Amici Curiae Supporting Petitioner,
  *United States v. Rahimi,* 2023 WL 5489058 (2023) (No. 22-915) ............... 23
Brief of Senator Klobuchar, et al. as Amici Curiae Supporting Petitioner,
  *United States v. Rahimi,* 2023 WL 5491387 (2023) (No. 22-915) ............... 23
Brief of Senator Whitehouse, et al. as Amici Curiae Supporting Court-
  Appointed Amicus Curiae, *Seila Law LLC v. Consumer Financial
  Protection Bureau*, 2020 WL 469669 (2020) (No. 19-7) ............................... 24
Exec. Order No. 14230, 90 Fed. Reg. 11781 (Mar. 11, 2025) ...................1
Exec. Order No. 14246, 90 Fed. Reg. 14549 (Mar. 28, 2025) ...................1
Exec. Order No. 14250, 90 Fed. Reg. 14549 (Apr. 3, 2025) ......................1
Exec. Order No. 14263, 90 Fed. Reg. 15615 (Apr. 15, 2025) ...................1

## IDENTITY AND INTEREST OF AMICI CURIAE

Amici are the following bipartisan group of current and former Members of the United States Senate (collectively, "Senators"):

- U.S. Sen. Richard Blumenthal;

- Chuck Hagel, Former Secretary of Defense & U.S. Senator;

- U.S. Sen. Cory A. Booker;

- U.S. Sen. Christopher A. Coons;

- U.S. Sen. Mazie K. Hirono;

- U.S. Sen. Adam B. Schiff;

- U.S. Sen. Chris Van Hollen; and

- U.S. Sen. Sheldon Whitehouse

Senators submit this brief to express grave constitutional concerns with Executive Orders 14230, 14246, 14250, and 14263 (the "Executive Orders" or "Orders"). These Orders target law firms for their representation of clients and pursuit of legal positions disfavored by the Executive Branch. While these Orders plainly violate the First Amendment and other constitutional rights of the firms themselves, they also inflict a distinct injury upon Senators. As public officials, Senators routinely engage the services of and otherwise consult with firms such as

1

Perkins Coie LLP ("Perkins"), Jenner & Block LLP ("Jenner"), Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), and Susman Godfrey LLP ("Susman") (collectively, the "Targeted Law Firms") to advance legislative and policy priorities, advise on important legal issues, and litigate questions implicating the separation of powers and other issues, including by filing amicus briefs such as this one. The Orders obstruct those efforts and, in doing so, infringe upon the constitutional rights of Senators and undermine the structural principles of representative democracy.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Among the many grave constitutional concerns they present, the Executive Orders impermissibly burden Senators' First Amendment rights, including the freedom of speech, the freedom of association, and the right to petition. Senators currently regularly work with law firms on a range of important legislative work and advocacy, and the Executive Orders, by targeting the speech and advocacy of law firms who disagree with the current Executive, will chill law firms from working with any Senators who do not stay in lockstep with that Executive's preferred orthodoxy. A core principle of the First Amendment is that no one should

2

suffer retaliation for engaging in protected speech, which is exactly what the Executive Orders do.

The Executive Orders also violate the Senators' rights to associate with and choose the counsel of their choice, by threatening lawyers who associate with clients who have taken positions the President disfavors. This is not mere conjecture; some law firms have already severed ties with clients they thought might draw the wrath of this Administration. This violates the Senators' Sixth Amendment rights to select counsel they choose. This right is particularly important in the current moment, when a number of Senators have been targeted by this Administration for politically motivated prosecutions or investigations.

The Executive Orders further violate the Senators' rights to petition the government. Senators routinely rely on skilled counsel to present their views on a range of matters that relate to their legislative work, and the government's affirmative effort to effectively destroy law firms who take positions that displease the Executive violates this important right.

Moreover, the Executive Orders violate the Speech or Debate Clause, which was designed to ensure that legislators would have the

3

wide freedom to debate and deliberate without intimidation or threats from the Executive Branch.

The Executive Orders also constitute impermissible Bills of Attainder, as they target specific law firms and declare them to be guilty, then impose punitive actions against them, all without any judicial process. The text and structure of the Constitution show why this protection applies here.

Collectively, these infringements on rights violate the principle of separation of powers, by interfering with the ability of the Legislative Branch to provide a check upon the Executive Branch. Congress has a substantial interest and a role in checking the Executive, whether it is operating with or without statutory authority. And Senators often rely on outside counsel to play this role.

Senators also often rely on outside counsel to help craft and write amicus briefs, which are often essential to the Senators' legislative work. The Executive Orders threaten and discourage attorneys from assisting Senators with this work. Finally, the Executive Orders discourage attorneys from working on any side of an issue that is disfavored by the

4

Executive. This undermines the diversity and independence of the bar, and thus also undermines democracy.

## ARGUMENT

## I. The Executive Orders Infringe the First Amendment Rights of United States Senators

The Executive Orders harm the constitutionally protected activity of U.S. Senators. Senators work with outside counsel for important advocacy on behalf of their constituents, including amicus briefs, legislative analysis, and assisting with Congressional oversight. By punishing law firms that represent clients who do not share the administration's views, the Orders burden Senators' First Amendment rights, including the freedom of speech, the freedom of association, and the right to petition. These rights are implicated when senators work with law firms to help draft amicus briefs, consult on legislation, and participate in litigation regarding matters of public importance. As such, Amici urge this Court to affirm the decisions below and protect their constitutional interests.

### A. The Executive Orders Violate Senators' Freedom of Speech

The Executive Orders impermissibly chill speech that senators routinely engage in through various channels. The First Amendment

prohibits the "government from 'abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'" *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 605-06 (2021) (quoting U.S. Const. amend. I). As the *Perkins* District Court observed, "[o]ne obvious implication" of the First Amendment is that government officials may not "subject[] individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 150 (D.D.C. 2025) ("Perkins Opinion") (quoting *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022)); *see also Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 153 (D.D.C. 2025) ("WilmerHale Opinion") (quoting *NRA of Am. v. Vullo*, 602 U.S. 175, 188 (2024)) ("President Trump can 'share [his] views freely and criticize particular beliefs, and [he] can do so forcefully in the hopes of persuading others to follow [his] lead.' … He cannot, however, 'use the power of the State to punish or suppress disfavored expression.'"). By targeting and retaliating against law firms based on their perceived political affiliations, the Executive Orders run afoul of this prohibition. A contrary holding would permit the Executive to punish activity that is

perceived to be political, which is one of the central evils the freedom of speech protects against.

Senators and other legislators are uniquely vulnerable to this assault on the freedom of speech. For example, the *Perkins* Court found that former Perkins Coie lawyer Marc Elias's relationship with then-U.S. Senator Bill Nelson contributed to the animus behind the Executive Order targeted at Perkins. Perkins Opinion at 125 & n.8. Similarly, the *WilmerHale* Court noted that WilmerHale had "drawn the ire" of the Executive after representing Members of Congress who filed litigation in their official capacity seeking the President's tax returns. Wilmer Opinion at 136.

In targeting the firms, the Executive Orders impermissibly chill Senators' own protected speech. *See Laird v. Tatum*, 408 U.S. 1, 11 (1972) ("constitutional violations [can also] arise from the deterrent, or 'chilling,' effect of governmental regulations."); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) ("the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation" can violate freedom of speech just like a direct bar on speech). Senators routinely engage in their own protected speech through various channels, a primary example of

which is the filing of amicus briefs to weigh in on questions of statutory interpretation or other pending litigation, as this brief itself reflects. The freedom of speech that Senators enjoy is not limited to oral or written expression by individual legislators on the Senate floor. In modern practice, speech by Senators and other legislators includes filing strategic litigation, submitting briefs in judicial proceedings, and coordinating legal messaging. Amicus briefs are an especially important vehicle for expression. They allow legislators to articulate their understandings of statutes, defend legislative prerogatives, participate in the adjudication of critical legal issues of the day, and express the views of their constituents in court. When a Senator retains a law firm to draft such a brief, she is exercising her own freedom of speech.

The Executive Orders directly threaten Senators' freedom of speech. By punishing law firms for prior representations, the Orders impermissibly chill future representations—including those sought by Senators. In the current environment, a firm must consider whether taking on a new matter, including an amicus engagement, might subject it to sanctions as severe as being barred from federal buildings (including

8

courthouses) or excluded from federal contracts. That calculus may chill representation because the Executive disfavors it.

The chilling effect is particularly acute in politically sensitive litigation—exactly the type of case where amicus briefs from legislators are most valuable. Cases involving immigration policy, constitutional interpretation, separation of powers, voting rights, gun violence prevention, reproductive rights, or regulatory authority are common subjects of legislative amicus participation on all sides. The Orders send an unmistakable signal: firms that assist with advocacy adverse to the current Administration on key issues of the day do so at their peril.

The Executive Orders stifle speech and distort public discourse. If opposing perspectives are targeted by the state, the First Amendment's promise of a free marketplace of ideas is hollow. The voices of Senators—individually and collectively—must not be silenced or sidelined through fear or intimidation.

## B.    The Executive Orders Violate Senators' Freedom of Association and Right to Choose Counsel

The Executive Orders infringe on Senators' freedom of association and the right to choose their own counsel. The Supreme Court has "long understood as implicit in the right to engage in activities protected by the

First Amendment a corresponding right to associate with others." *Bonta*, 594 U.S. at 606 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). "Protected association furthers 'a wide variety of political, social, economic, educational, religious, and cultural ends,' and 'is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority.'" *Id.* The Supreme Court has held that the freedom of association is violated "where individuals are punished for their political affiliation." *Bonta*, 594 U.S. at 606 (citing *Elrod v. Burns*, 427 U.S. 347, 355 (1976) (plurality opinion)). It has also long been recognized that the freedom of association includes the right to join with others to express, promote, pursue, and defend common interests. *Bonta*, 594 U.S. at 606 (collecting cases).

When the Executive Branch imposes penalties on law firms for associating with clients like Senators—targeting, in particular, those who have taken positions the President disfavors—it invades that protected sphere. The Orders' associational harm is not hypothetical: law firms have already faced pressure to sever ties with certain clients. Jenner, for example, was told that a client could not bring its attorneys to a Department of Justice meeting. Jenner Opinion at 6. And the Orders

are "chilling [] current and prospective attorney-client relationships in the here-and-now." Susman Opinion at 20. In this environment, law firms are likely to view certain political and legislative clients as liabilities, particularly around hot-button issues. The natural result is self-censorship and disengagement.

The Executive Orders also impinge on Senators' "Sixth Amendment right to paid counsel of [their] choosing." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citation omitted). As Justice Scalia explained, the Sixth Amendment "commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id.* at 146.

In recent months, multiple Senators and other public officials have been subject to criminal investigations that observers, including Professor Don Moynihan at the University of Michigan, have accused of being politically motivated "lawfare."[1] Prosecutors failed in their effort to indict Senators Elissa Slotkin and Mark Kelly for alerting service

---

[1] Lauren Arantani, *'Pattern of lawfare': Trump is targeting opponents with mortgage fraud claims*, The Guardian, Aug. 24, 2025, https://www.theguardian.com/us-news/2025/aug/24/trump-lawfare-mortgage-fraud-lisa-cook.

members of their right to refuse illegal orders.[2]. President Trump has openly called for Former Attorney General Pam Bondi to prosecute Senator Adam Schiff,[3] and public reporting suggests that federal prosecutors heeded that call even in the absence of evidence.[4] Lawmakers under investigation by the current administration have understandably engaged major law firms in their defense against malicious prosecutions, including Senator Schiff publicly retaining WilmerHale. *Id.* The executive actions targeting law firms risk interfering with lawmakers' right to choose their hired counsel.

---

[2] Josh Gerstein et al., *Prosecutors fail to secure indictment against 6 Dem lawmakers*, Politico, Feb. 10, 2026, https://www.politico.com/news/2026/02/10/lawmakers-military-orders-grand-jury-indictment-00775504.

[3] *See, e.g.*, Kristen Welker and Rebecca Shabad, *Trump accidentally posted message pressuring Pam Bondi to charge his enemies, source says*, NBC News, Oct. 10, 2025, https://www.nbcnews.com/politics/justice-department/trump-accidentally-posted-message-pressuring-pam-bondi-charge-enemies-rcna236830.

[4] *See, e.g.*, Ryan J. Reilly, *et al.*, *The Adam Schiff criminal probe has stalled, sources say*, NBC News, Oct. 23, 2025, https://www.nbcnews.com/politics/justice-department/adam-schiff-criminal-probe-stalled-sources-say-rcna239375.

### C.     The Executive Orders Violate Senators' Freedom to Petition the Government

The right to petition the government is squarely implicated by the Executive Orders. "The right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (citation omitted) (collecting cases). Senators frequently use the courts to challenge executive action, defend legislative prerogatives, and support policies enacted by Congress. In these efforts, they rely on skilled counsel, like the Targeted Law Firms, to frame arguments, navigate procedure, and ensure that their views are effectively presented. If the Executive can retaliate against law firms who assist in this petitioning—by stripping security clearances, terminating contracts, or barring access to federal buildings—it functionally denies Senators the ability to petition the government through the courts.

That denial is especially pernicious because it strikes at the ability of one co-equal branch to check another. Petitioning through litigation is sometimes the only viable response when the Executive strays beyond its authority. Indeed, Senators and members of the House of Representatives have exercised this option against the Executive in the

13

past. *See, e.g., Blumenthal et al. v. Whitaker et al.*, No. 1:18-cv-2664 (D.D.C.) (action seeking injunction against alleged violation of Appointments Clause); *Comm. on Ways and Means, U.S. House of Representatives v. U.S. Dep't of Treasury,* 1:19-cv-1974 (D.D.C.) (action seeking compliance with Congressional oversight over President Trump's tax returns).

The Orders interfere with Senators' ability to retain counsel of their choosing to petition the courts and check Executive overreach. This upsets the balance of constitutional powers.

### D.    The Executive Orders Violate the Speech or Debate Clause

Finally, because the Executive Orders reach actions taken by a Targeted Law Firm on behalf of Senators, they violate the Speech or Debate Clause. "The Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v. United States,* 408 U.S. 606, 616 (1972). This protection is not limited to individual Members of Congress themselves; it extends to legislators' aides, assistants, and agents. *Id.* The clause contemplates that "it is literally impossible, in view of the complexities of the modern

14

legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants." *Id.* As such, the work of such agents "is so critical to the Members' performance that they must be treated as the latter's alter egos; and that if they are not so recognized, the central role of the Speech or Debate Clause—to prevent intimidation of legislators by the Executive . . . will inevitably be diminished and frustrated." *Id.* at 616-17 (citing *United States v. Johnson*, 383 U.S. 169, 181 (1966)).

The Executive Orders disrupt the legislator-agent relationship by targeting law firms that Senators retain to draft amicus briefs, advise on legal implications of proposed legislation, and litigate constitutional matters. Like legislative aides, legal counsel functioning as a mouthpiece for a Senator should be immune from coercive Executive action.

## II.    The Executive Orders Violate the Separation of Powers

### A.    The Executive Orders Intrude Upon the Legislative Branch by Interfering with Legislative Access to Legal Counsel

The Orders offend core principles of separation of powers. They obstruct Senators from retaining legal counsel necessary to fulfill their constitutional functions. In our tripartite system of government, the

15

legislative branch must be able to participate meaningfully in disputes implicating the powers of the federal government. When the Executive chills law firms from taking on politicized work, it undermines the ability of the legislature to check the Executive.

Members of Congress routinely file cases or appear as amici in litigation involving the scope of federal power and the allocation of authority among the branches. Their participation is often essential to courts' understanding of legislative intent, historical practice, and the consequences of particular decisions. Senators' amicus briefs are especially important when executive action is at issue. When executive action is based on statutory authority, Congress has a substantial interest in such action as both architects of the statutes in question and representatives of the body charged with oversight. And when executive action is *not* derived from statutory authority—like the Executive Orders here—Congress naturally plays a critical role in checking the Executive's improper exercise of legislative power.

To participate in this process, Senators rely on outside counsel with the expertise and institutional resources necessary to engage in complex federal litigation. Firms like Jenner, Perkins, and WilmerHale have

16

historically provided this support across administrations. *See infra* Sec. I.A, *see supra* Sec. IV. The Orders at issue here deter that assistance by labeling such firms as disloyal and barring them from federal work. This infringes on the legislative branch's ability to be heard by the judiciary, particularly in cases that test the limits of executive power. Historically, Senators have not hesitated to bring litigation against the Executive (or weigh in against the Executive in pending litigation) when the stakes are high. Without access to private counsel, those lawsuits and filings would not be feasible.

Checks and balances are vital to our democratic system. The Constitution contemplates an energetic, independent legislature capable of asserting its autonomy from the other branches. That vision cannot be realized if Senators are denied access to willing and capable legal representation because law firms are bullied into silence.

For example, the Speech or Debate Clause of the Constitution provides immunity to legislators for legislative acts. It also paints a clear picture of the importance of legislative independence. Senators who speak through amicus briefs, or who bring legal claims contesting executive overreach, are exercising core legislative functions. Actions by

17

the Executive to interfere with those activities—even indirectly—violate the separation of powers and erode the democratic safeguards enshrined in our constitutional structure. By interfering with the legislature's ability to obtain independent legal assistance, the Orders strike at the heart of the constitutional framework. This Court should affirm the district court's conclusion that such conduct is inconsistent with the structure of the federal government.

### B.    The Executive Orders Constitute Impermissible Bills of Attainder

The Executive Orders further violate the separation of powers by functioning as impermissible bills of attainder. As the *Perkins* Court correctly observed, each of the Executive Orders "is indistinguishable from a bill of attainder: it targets [each law firm] specifically, finds facts and declares [each law firm] guilty" of various forms of misconduct, and "imposes multiple forms of punitive adverse actions, without notice or other judicial process protections." *Perkins*, 783 F. Supp. 3d at 173 n. 36.

While the Constitution's express prohibition on bills of attainder appears in Article I, there are strong indications that the Framers did not intend this prohibition to only apply to the legislative power, like other aspects of Article I. *First,* there are *two* clauses barring bills of

18

attainder—in Section 9 (stating that "No Bill of Attainder or ex post facto Law shall be passed") and Section 10 (barring any "State" from "pass[ing] any Bill of Attainder"). This indicates the seminal importance placed on the prohibition of bills of attainder by the Framers. Indeed, these provisions "were adopted by the Constitutional Convention unanimously, and without debate." *United States v. Brown*, 381 U.S. 437, 441 (1965). Bills of attainder are also expressly prohibited in every state constitution.

*Second*, the underlying purpose of the Framers' prohibition on bills of attainder was to guard against the despised practice of political bodies declaring an individual guilty and inflicting punishment without trial. In our tripartite system, the legislative and executive branches are both political and may be equally motivated to impose unfairly personalized punishment. The Executive action challenged here usurps (and contorts) the judicial power.

The Executive is prohibited from enacting bills of attainder. While bills of attainder are often considered legislative, the legislative powers require Congressional approval *and* the President's signature (absent a veto). "By placing the Bill of Attainder Clauses in Article I, the Framers clearly did not intend to authorize the President to do alone what

19

Congress and the President, acting together, could not." *Perkins*, 783 F. Supp. 3d at 173 n. 36 (citing amicus brief by former senior government officials); *see also Dehainaut v. Pena*, 32 F.3d 1066, 1071 (7th Cir. 1994) (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 143 (1950) (Black, J., concurring)) ("It is true that the classic bill of attainder was a condemnation by the legislature following investigations by that body . . . But I cannot believe that the authors of the Constitution, who outlawed the bill of attainder, inadvertently endowed the executive with power to engage in the same tyrannical practices that had made the bill such an odious institution.").

The Constitution's prohibitions on bills of attainder bar targeted action that imposes punishment on individuals without any judicial process. Each Executive Order "(1) applies with specificity, and (2) imposes punishment." *Foretich v. United States*, 351 F.3d 1198, 1217 (D.C. Cir. 2003) (internal citations omitted). In that way, they function as unconstitutional bills of attainder.

## III. The Executive Orders Threaten Key Congressional Functions

The Executive Orders impose material burdens on law firms. They make it more difficult for Congress to obtain the legal services it needs.

These burdens are not incidental—they are the intended result of a deliberate strategy to penalize dissent through economic and reputational sanctions. The Orders' sweeping provisions direct federal agencies to review and terminate contracts, revoke security clearances, and restrict access to government buildings. Any law firm representing clients or causes disfavored by the Executive may face financial ruin. The Orders infringe on the "powerful interest" individuals—including Senators—have "in being able to retain and consult freely with an attorney." *Doe v. D.C.*, 697 F.2d 1115, 1119 (D.C. Cir. 1983).

Congress is a repeat player in the legal arena. Whether conducting oversight, evaluating the legality of executive actions, or drafting complex legislation, Members of Congress like Senators often rely on outside counsel to provide expert-level support. Law firms provide essential services in investigations, technical briefings, and impact assessments. Moreover, these engagements are not isolated transactions. They form part of a broader, interconnected ecosystem of legal advice that undergirds the legislative process. Various stakeholders, including industry groups, advocacy organizations, and state or local entities, often retain their own counsel to interpret evolving legislative proposals.

Within this ecosystem, law firms, congressional offices, and affected stakeholders interact through a continuous exchange of legal interpretation, policy analysis, and strategic counsel. This ecosystem depends on law firms to provide subject-matter expertise that is difficult, if not impossible, to replicate within government alone. If the Executive can manipulate market conditions to drive law firms away from working with Congress, the result is a less informed, less effective legislature. Law firms cannot serve as effective partners to Senators if they must constantly calculate the political risks of their client base. Nor can the business of the Senate function fully if Senators are deprived of access to the legal talent required to meet today's complex challenges. The Orders undermine this relationship of mutual reliance and shared responsibility.

The Executive cannot be allowed to dictate who may speak in court, nor who may assist Senators in fulfilling their constitutional duties. This Court should not permit the Executive Branch to unilaterally narrow the field of available legal support through coercive decrees.

## IV.  Filing Amicus Briefs Is a Central Avenue for Senators to Express Themselves on Matters of Public Concern

Amicus briefs are a primary vehicle for Senators to communicate their views on issues of constitutional and legislative significance. These filings often provide unique legislative context that would otherwise be absent from the judicial record. Through amicus participation, Senators amplify the voices of their constituents and defend congressional intent in the face of encroachment. The Executive Orders impermissibly chill Senators' ability to work with the Targeted Law Firms and many other law firms that might fear retribution for taking a legal position contrary to the Executive's aims.

Congresspeople on both sides of the aisle routinely file amicus briefs in important cases and rely on large law firms like Perkins, Jenner, Susman, and WilmerHale to do so. For example, in *United States v. Rahimi*, 602 U.S. 680 (2024), Jenner filed a bipartisan amicus brief for Democratic Senator Amy Klobuchar, Republican Representative Brian Fitzpatrick, and Democratic Representative Debbie Dingell. 2023 WL 5491387.  In another case, addressing standing of state governments to challenge immigration decisions, WilmerHale filed an amicus brief for 186 House members and 39 Senators. *United States v. Texas*, 2016 WL

23

891342, at *9 (U.S. 2016). In *Seila Law LLC v. CFPB*, Susman Godfrey filed an amicus brief for Senators Whitehouse, Blumenthal, and Hirono supporting the power of Congress to create independent agencies. *Seila Law LLC v. Consumer Financial Protection Bureau*, 2020 WL 469669, at *11 (U.S. 2020). Paul Weiss also filed an amicus brief in *Rahimi* for Senator Blumenthal, Representative Thompson, and 169 other Senators and Representatives. 2023 WL 5489058.

Amicus briefs often provide an opportunity for Senators with vastly different political views to represent the interests of Congress in the courts. *See, e.g.,* Brief for Senator Richard Blumenthal, Representative Theodore E. Deutch, Senator Charles E. Grassley, Senator James Lankford, Representative Grace Meng, Representative Jerrold Nadler, Representative Kathleen Rice, Senator Marco Rubio, Representative Bradley E. Schneider, Representative Claudia Tenny, and Representative Lee Zeldin, *Fuld v. PLO*, 2025 WL 430942 (2d Cir. 2025) (No. 24-20).

Courts routinely recognize the importance of amicus briefs by U.S. Senators and cite them in landmark decisions. *See, e.g.*, *United States v. Booker*, 543 U.S. 220, 257 (2005) (citing brief by Senators for their view

on sentencing guidelines); *NLRB v. Canning*, 573 U.S. 513, 531 (2014) (comparing Senator amicus briefs for views on recess appointment powers); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 789 (2010) (citing Senate brief); *FEC v. Cruz*, 596 U.S 289, 303 (2022) (citing Brief for Senator Blunt et al.); *American Foreign Service Ass'n v. Garfinkel*, 490 U.S. 153, 160 (1989) (citing brief by full Senate); *United States v. Eichman*, 496 U.S. 310, 317 n. 6 (1990) (citing argument in Speaker and House Leadership brief favorably); *School Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, n. 14 (1987) (citing brief by Senators for view on legislative history); *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 760 (2020) (citing Brief for Senator Mike Lee, et al.); *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 588 (2014) (citing both Senator Rubio brief and Members of Congress brief); *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 110 n. 18 (1993) (citing Senators' brief); *INS v. Chadha*, 462 U.S. 919, 953 n. 16 (1983) (addressing arguments regarding separation of powers raised in brief by House members).

Supreme Court justices also often cite briefs by Senators in concurrences and dissents. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310,

406 (2010) (Stevens, J., concurring in part and dissenting in part) (citing brief by Senator McCain et al.); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 747 (2014) (Ginsburg, J., dissenting) (citing Brief for Senator Murray et al. regarding RFRA); *Boumediene v. Bush*, 549 U.S. 1328, 1330 (2007) (Stevens and Kennedy, JJ., dissenting from denial of certiorari) (citing Brief for Senator Arlen Specter); W*inkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 541 (2007) (Scalia, J., concurring in the judgment in part) (citing Brief for Senator Edward Kennedy et al. for views on IDEA legislative intent).

The participation of Members of Congress is indispensable in landmark disputes that shape the lives of millions of Americans. Courts confirm the persuasive value of legislative briefs by citing them in opinions. Discouraging law firms from preparing briefs on behalf of legislators can silence Congress in critical judicial proceedings. Without access to experienced legal counsel, Senators are held back from contributing to legal debates unfolding in the courts. The Orders thus deprive the judiciary of informed legislative perspectives and silence the voice of the people in the courts.

26

The Orders make clear that advocacy perceived as contrary to the administration's views is singled out. This is precisely the kind of speech the First Amendment protects. The Orders threaten to tilt the amicus playing field, chilling dissent and undermining the courts' ability to consider the full range of views. Even worse, law firms that have capitulated when threatened by Executive Orders have often agreed to perform amicus or other similar advocacy efforts in *support* of the administration's views. This dangerous quid pro quo violates the Constitution's crucial ideal that no official "can prescribe what shall be orthodox in politics." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

Legislative amicus briefs serve a vital constitutional role. They reflect the voice of the people's representatives, enrich judicial understanding, and promote the Constitutional order. Curtailing that participation through intimidation of counsel erodes not just First Amendment values, but the integrity of the judicial process itself.

## V.    Congress Benefits from the Legal Profession's Diverse Views

The Orders convey a dangerous message: that the legal profession must conform to prevailing political winds or face exclusion from public

work. Lawyers are officers of the court and are expected to represent clients zealously, regardless of the political climate. That principle cannot coexist with executive mandates that punish law firms for the cases they bring or the clients they represent.

The consequences extend beyond the courtroom. The legal profession plays a key role for Senators in vetting judicial nominees, providing expert analysis on legislation, and promoting the rule of law. Recent executive action targeting the American Bar Association for its participation in judicial vetting illustrates a broader campaign to marginalize institutional voices that the Executive finds inconvenient or simply disagrees with. *See* Pam Bondi Curtails American Bar Association's Role in Vetting Judicial Nominees, *Time*, May 30, 2025, www.time.com/7289964/pam-bondi-american-bar-association-justice-department-letter-bias-accusations/. That campaign cannot be squared with a constitutional system that depends on open debate and dissent.

A diverse and independent legal bar is essential to democracy. As the *Perkins* Court correctly observed, "[a]bsent their crucial independence, lawyers would 'become nothing more than parrots of the views of whatever group wields governmental power at the moment.'"

28

*Perkins*, 783 F. Supp. 3d 105, 120 (quoting *Cohen v. Hurley*, 366 U.S. 117, 138 (1961) (Black, J., dissenting)).

The Orders at issue punish perceived political enemies and chill the speech of those who might support them. This conduct has no place in a constitutional democracy. This Court should affirm the Injunctions and ensure that the legal profession remains a forum for fearless advocacy, not filtered obedience.

## CONCLUSION

This Court should affirm the decisions below finding the Executive Orders to be unconstitutional.

Date: April 3, 2026

Joseph E. Samuel, Jr.
BERGER MONTAGUE PC
1818 Market Street, Ste. 3600
Philadelphia, PA 19103
(215) 875-3020
jsamuel@bergermontague.com

Matthew Summers
BERGER MONTAGUE PC
505 Montgomery St., Ste. 625
San Francisco, CA 94111
(800) 424-6690
msummers@bergermontague.com

Respectfully Submitted,

*/s/ F. Paul Bland*
Paul Bland
BERGER MONTAGUE PC
1001 G Street NW, Ste. 400E
Washington, DC 20001
(202) 809-9136
pbland@bergermontague.com

*Counsel for Amici Curiae*
*U.S. Senators*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.      This document complies with the word limit of Cir. R. 29(a)(5), Fed. R. App. P. 32(a)(7)(B)(i) and Cir. R. 32(a)(7)(B)(i), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,316 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Cir. R. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) and Cir. R. 32(a)(5)(A) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

# CERTIFICATE OF SERVICE

I, F. Paul Bland, hereby certify that on this day of April 3, 2026, I filed an electronic copy of the foregoing Amicus Brief with the Clerk of the Court via the Court's electronic filing systems (NextGen CM/ECF), which will notify and serve all parties via the ECF system.

*/s/ F. Paul Bland*
F. Paul Bland

*Counsel of Record for*
*Amici Curiae U.S. Senators*