ORAL ARGUMENT SCHEDULED FOR MAY 14, 2026

Nos. 25-5241, 25-5265, 25-5277 & 25-5310
(Consolidated)

**United States Court of Appeals
for the District of Columbia Circuit**

———————

Perkins Coie LLP,

*Appellee*,

v.

Unites States Department of Justice, et al.,

*Appellants*,

AND RELATED CASES.

———————————————————

**On Appeal from the United States District Court
for the District of Columbia,
Nos. 25-cv-00716, 25-cv-00916, 25-cv-00917 & 25-cv-01107**

**BRIEF OF AMICI CURIAE FORMER AND CURRENT GENERAL
COUNSEL SUPPORTING APPELLEES**

Eric M. Fraser
David B. Rosenbaum
Mary R. O'Grady
Joseph N. Roth
Andrew G. Pappas
Joshua J. Messer
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000

efraser@omlaw.com
drosenbaum@omlaw.com
mogrady@omlaw.com
jroth@omlaw.com
apappas@omlaw.com
jmesser@omlaw.com

**Attorneys for Amici Curiae Former and Current General Counsel Supporting Appellees**

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

**A.** **Parties and Amici:** Except for amici America's Future, Gun Owners of America, Inc., Gun Owners Foundation, Judicial Action Group., and Conservative Legal Defense and Education Fund (*see* Document 2163615), all other parties appearing in this Court and amici appearing below are listed in the Opening Brief and the documents it cites.

**B.** **Rulings Under Review:** References to the rulings at issue appear in the Opening Brief.

**C.** **Related cases:** The cases under review have not previously been before this Court, but the Court has ordered that these cases be consolidated for argument with *Zaid v. Executive Office of the President*, No. 26-5009.

Dated: April 3, 2026.

OSBORN MALEDON, P.A.

By s/Eric M. Fraser
    Eric M. Fraser
    David B. Rosenbaum
    Mary R. O'Grady
    Joseph N. Roth
    Andrew G. Pappas
    Joshua J. Messer
    2929 N. Central Avenue, Suite 2000
    Phoenix, Arizona 85012

**Attorneys for Amici Curiae Former and Current General Counsel Supporting Appellees**

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and D.C. Circuit Rule 26.1, counsel states and certifies as follows: this brief is filed on behalf of a group of individuals and not a corporation, association, joint venture, partnership, syndicate, or other similar entity.

Dated: April 3, 2026.

OSBORN MALEDON, P.A.

By s/Eric M. Fraser
    Eric M. Fraser
    David B. Rosenbaum
    Mary R. O'Grady
    Joseph N. Roth
    Andrew G. Pappas
    Joshua J. Messer
    2929 N. Central Avenue, Suite 2000
    Phoenix, Arizona 85012

**Attorneys for Amici Curiae Former and Current General Counsel Supporting Appellees**

## STATEMENT REGARDING CONSENT TO FILE AND NECESSITY OF SEPARATE BRIEFING

All parties have consented to the filing of this amicus brief. Amici filed their notice of intent to participate in this case on April 1, 2026, and their corrected notice of intent to participate in this case on April 3, 2026.

Under D.C. Circuit Rule 29(d), counsel certifies that this separate brief is necessary because the executive orders at issue in this case risk inflicting severe harms on corporate legal representation throughout the country—a unique concern of the current and former corporate general counsel filing this brief.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

No other party's counsel authored this brief in whole or in part, no other party or party's counsel contributed money intended to fund preparing or submitting the brief, and no person, party, or party's counsel contributed money to fund the preparation and submission of the brief.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...................................................................................3

CORPORATE DISCLOSURE STATEMENT ...........................................5

STATEMENT REGARDING CONSENT TO FILE AND NECESSITY OF SEPARATE BRIEFING .......................................6

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ....................................................................6

TABLE OF AUTHORITIES ....................................................................9

GLOSSARY ...........................................................................................11

STATUTES & REGULATIONS .............................................................12

STATEMENT OF INTEREST OF AMICI CURIAE ............................12

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT .........................................................................................15

I.    The Orders hijack a corporation's relationship with outside counsel. ..............................................................................15

   A.    Selecting outside counsel plays a vital role in corporate governance. ..........................................................15

   B.    The Orders suppress the free selection of outside counsel. .................................................................................16

II.   The Orders violate corporate America's First Amendment rights .........................................................................................19

III.  The Orders will cause lasting real-world harm ...........................22

CONCLUSION ......................................................................................25

CERTIFICATE OF COMPLIANCE ......................................................27

CERTIFICATE OF SERVICE...........................................................28

CIRCUIT RULE 29(d) CERTIFICATE......................................29

Identities of Amici Curiae ..................................................30

# TABLE OF AUTHORITIES

## Cases

*Abrams v. United States,*
  250 U.S. 616 (1919) ..................................................................... 14

*BE&K Constr. Co. v. N.L.R.B.,*
  536 U.S. 516 (2002) ..................................................................... 20

*Citizens United v. F.E.C.,*
  558 U.S. 310 (2010) ............................................................... 20, 25

*Legal Servs. Corp. v. Velazquez,*
  531 U.S. 533 (2001) ......................................................... 13, 19, 23

*Lozman v. Riviera Beach,*
  585 U.S. 87 (2018) ....................................................................... 20

*Martinez v. Ryan,*
  566 U.S. 1 (2012) ......................................................................... 13

*McIntyre v. Ohio Elections Comm'n,*
  514 U.S. 334 (1995) ..................................................................... 21

*N.R.A. v. Vullo,*
  602 U.S. 175 (2024) ............................................................... 21, 22

*NAACP v. Button,*
  371 U.S. 415 (1963) ..................................................................... 20

*Polk Cnty. v. Dodson,*
  454 U.S. 312 (1981) ..................................................................... 16

## Regulations

90 Fed. Reg. 11781 ......................................................................... 12

90 Fed. Reg. 13997 ......................................................................... 12

90 Fed. Reg. 14549 ......................................................................... 12

90 Fed. Reg. 15615 ......................................................................... 12

## Other Authorities

*Fact Sheet: President Donald J. Trump Addresses Risks from Susman Godfrey*, The White House (Mar. 25, 2025)................17

*Preventing Abuses of the Legal System and the Federal Court*, Presidential Memorandum (Mar. 22, 2025)...........................17

## GLOSSARY

| | |
|---|---|
| Jenner & Block | Jenner & Block LLP |
| Perkins Coie | Perkins Coie LLP |
| Susman Godfrey | Susman Godfrey LLP |
| WilmerHale | Wilmer Cutler Pickering Hale & Dorr LLP |

## STATUTES & REGULATIONS

All applicable statutes and regulations are contained in the briefs of the parties, but this case is about four executive orders: EO 14230 ("Addressing Risks from Perkins Coie LLP"), 90 Fed. Reg. 11781; EO 14246 ("Addressing Risks from Jenner & Block"), 90 Fed. Reg. 13997; EO 14250 ("Addressing Risks from WilmerHale"), 90 Fed. Reg. 14549; and EO 14263 ("Addressing Risks from Susman Godfrey"), 90 Fed. Reg. 15615 (collectively, the "Orders").

## STATEMENT OF INTEREST OF AMICI CURIAE

Amici are former and current general counsel from a broad cross-section of America's leading companies. They have managed and advised businesses across the corporate landscape—from small, growing tech firms to long-established Fortune 50 companies. They have worked with outside counsel on legal issues of every kind, including significant matters adverse to the government.

Amici speak for themselves, not their current or former employers, regarding the harms the Executive Orders inflict on American businesses. And, to be clear, Amici do not speak as former or current clients of the law firms, supporters or critics of the law firms' advocacy, the work of their current or former lawyers, or the specific corporate

policies referenced in the Orders.  Rather, Amici speak because they know that "the right to counsel is the foundation for our adversary system," *Martinez v. Ryan*, 566 U.S. 1, 12 (2012), and a lawyer's advocacy on behalf of a client is "constitutionally protected expression," *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001).  As Judge Howell explained, "only when lawyers make the choice to challenge rather than back down when confronted with government action. . . can a case be brought to court for judicial review," and that depends on their ability to provide the "vigorous and zealous representation" to which their clients are entitled. JA1630 n.3.  Consequently, the rule of law and good business require that government action be constrained by these principles.

## SUMMARY OF ARGUMENT

The district court correctly invalidated the Orders as unconstitutional exercises of executive power.  Four judges, appointed by presidents of both parties, concluded that the Orders violate the First Amendment by retaliating against law firms for their advocacy and the viewpoints of their clients.  This Court should affirm.

The constitutional infirmities extend beyond the First Amendment. The Orders offend other foundational principles of the American legal

system, including the right to select counsel of one's own choosing. The Orders do not merely unjustly punish the targeted law firms and their hundreds of employees; they erode the foundation of legal representation by counsel of choice by threatening the federal contracts of companies who choose a disfavored law firm—in effect, conscripting private businesses to settle the President's political scores. The message is clear: hire the wrong lawyers, or take the wrong public stance, and your company will be punished.

The government's opening brief confirms that the threat persists. The government's opening lines and a substantial portion of its brief admonish that courts cannot question the President's Orders without "encroaching" on the President's authority to "discuss and address" supposed "problems with certain law firms." Op. Brief at 1. But our Constitution does not permit the President to "sweep away all opposition" by decree. *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting) (citation modified). It embraces a "free trade in ideas," not "persecution for the expression of opinions." *Id.* "That at any rate is the theory of our Constitution," *id.*, and the Court should evaluate the Orders accordingly.

# ARGUMENT

I.  The Orders hijack a corporation's relationship with outside counsel.

A.  Selecting outside counsel plays a vital role in corporate governance.

Effective corporate governance depends on the ability to select and maintain relationships with outside counsel based on expertise, trust, and proven performance. The modern corporation relies on law firms for a vast array of legal needs, including in highly specialized areas where there may be only a handful of qualified counsel available with adequate knowledge of and experience with the complexities of the industry.

Because of these needs, corporations typically develop long-term, trusted relationships with their counsel to represent them across a range of matters, including in dealings with the government, where the company may sometimes be aligned with and sometimes adverse to the government. These law firms develop institutional knowledge about the company's operations, needs, and legal history. That knowledge and experience are critical to the company's decision to continue hiring the firm.

15

**B.     The Orders suppress the free selection of outside counsel.**

The Orders violate the right to counsel of choice protected by the Fifth Amendment, as each of the law firms demonstrated below.  At their core, the Orders undermine a fundamental premise of the rule of law: when parties challenge the government, their lawyers "oppose[] the designated representatives of the State," and "[t]he system assumes that adversarial testing will ultimately advance the public interest in truth and fairness." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981). This safeguard against government overreach fails when attorneys cannot "advance the undivided interests of their clients" for fear of reprisal from the government.  *Id.* at 318-19 (citation modified).

The Orders violate these principles and invade the attorney-client relationship by discouraging lawyers from taking on clients or issues adverse to the President, and by compelling companies to choose counsel to avoid the President's retribution rather than based on independent business judgment, experience, skill, or expertise.

For the many companies with a relationship with the law firms, the harm is direct.  But the Orders' damage extends well past the law firms: the President has made clear that, given the opportunity, he will issue

16

similar orders against any law firm who engages in what the administration alone deems to be "frivolous litigation" or "fraudulent practices." *Preventing Abuses of the Legal System and the Federal Court*, Presidential Memorandum (Mar. 22, 2025), *available at* https://tinyurl.com/fcmbx6c6.

Each of the Orders has essentially the same terms. Section 3(b) instructs agency heads to "submit . . . an assessment of contracts with . . . entities that do business with" the law firms "and any actions taken with respect to those contracts in accordance with this order." It does not take much to read between those lines: if you do business with a targeted firm, your government contract will be canceled or otherwise negatively impacted. If there were any doubt about the intended effect, the White House's accompanying fact sheets spell it out: "To ensure taxpayer dollars no longer go to contractors whose earnings subsidize activities not aligned with American interests, the Federal Government will terminate contracts that involve" those law firms. *See, e.g., Fact Sheet: President Donald J. Trump Addresses Risks from Susman Godfrey*, The White House (Mar. 25, 2025), *available at* https://tinyurl.com/5n89ejbc.

17

Even for companies that do not depend on government contracts, Section 5(a) practically prohibits companies from retaining a targeted firm in any matter involving the federal government—not just litigation, but also seeking regulatory approval or discussing a government investigation. Under § 5(a), every agency shall limit "access from Federal Government buildings to employees of" the law firms and "limit Government employees . . . from engaging with" those firms' employees. Of course, every legal matter requires communication, negotiation, and interaction. So § 5 forces clients to abandon the targeted law firm even when they wish to maintain the relationship.

The Orders thus send a clear message to every company that conducts business with (or has matters against) the government: when selecting a law firm, avoid choosing one that the President may target due to its perceived opposition to the President, his political agenda, or his private businesses. General counsel and other corporate leaders must now assess not just the skill, expertise, and trust they have in counsel, but also whether those lawyers work at law firms that the President may seek to discredit or destroy.

These effects impose severe practical costs on American businesses. The cost of changing counsel is not just inconvenience. Changing counsel requires new counsel to "get up to speed" at significant cost, interrupts and delays ongoing matters, and risks the loss of the former firm's institutional knowledge and particular expertise. In certain specialized areas it may be impossible to find suitable alternative counsel, making the "restriction on speech . . . even more problematic." *Velazquez*, 531 U.S. at 546 (speech restriction of greater concern "in cases where the attorney withdraws from a representation, [and] the client is unlikely to find other counsel"). All of this disrupts business operations and the ability to effectively manage legal risk.

## II.   The Orders violate corporate America's First Amendment rights.

As the four judges below each found, the Orders also violate the First Amendment. JA1679-1704 (Perkins); JA2167-2199 (Jenner); JA2833-2849 (WilmerHale); JA3505-3519 (Susman). As the Answering Briefs show, this Court should readily affirm that conclusion. Indeed, the Orders are textbook examples of viewpoint discrimination, penalizing speech and association based on the President's disagreement with the positions taken by the law firms' lawyers on behalf of clients.

The First Amendment harms extend beyond the law firms, as corporations and their employees have First Amendment rights too, including the right to petition the government (through litigation or otherwise) and to associate with counsel of choice for that purpose. *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018) (noting the right to petition is "one of most precious of the liberties safeguarded by the Bill of Rights" (quoting *BE&K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524 (2002)); *NAACP v. Button*, 371 U.S. 415, 430 (1963) ("Under the conditions of modern government, litigation may well be the sole practical avenue . . . to petition for redress of grievances."); *Citizens United v. F.E.C.*, 558 U.S. 310, 355 (2010) ("The First Amendment protects the right of corporations to petition . . . .").

The Orders violate these rights. Section 1 of each Order, which explains their "purpose," attacks the law firms for their prior advocacy and litigation positions—that is, the firms' protected speech and petition activities undertaken on behalf of its clients. Sections 2-5 impose the consequences: canceled contracts and security clearances, intense agency scrutiny, and exclusion from government employees and buildings. Taken together, the Orders' provisions gut "the purpose behind the Bill

of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression . . . ." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995).

Although the Orders name only the law firms, the Orders threaten retaliation for the First Amendment-protected activities of all corporations and their employees, particularly in light of the government's assertion that the courts may not even review the Orders. If the government may terminate a company's contracts for hiring a disfavored law firm, what prevents retaliation against the same company for any other protected activities the President alone may deem "detrimental"? Would a company face retribution for litigating against the President's policies, making political donations to support candidates or causes adverse to the President, or having employees or board members who are politically active in their private lives? The warning is clear: companies, their board members, and their employees take these actions at their peril.

This is an unconstitutional "attempt to coerce private parties in order to punish or suppress views that the government disfavors." *N.R.A. v. Vullo*, 602 U.S. 175, 180 (2024). The government—and especially the

President—may not "invok[e] legal sanctions and other means of coercion . . . to achieve the suppression" of speech. *Id.* at 189; *id.* at 191-92 ("Generally speaking, the greater and more direct the government official's authority, the less likely a person will feel free to disregard a directive from [an] official.").

## III. The Orders will cause lasting real-world harm.

Beyond their immediate constitutional violations, the Orders will cause lasting harm for American businesses.

**First**, corporations will be reluctant to challenge executive authority, diminishing an essential check on government power. Corporate legal departments must now weigh the risk of presidential retaliation (including contract termination and other punitive measures) when deciding whether to oppose the government. Law firms will be, and no doubt already are, reluctant to challenge questionable executive actions. That reluctance harms both clients and the interests of the public in ensuring that the executive branch acts within the bounds of the law and the Constitution. In essence, this will "draw lines around" legal advocacy based on "those arguments and theories [the President] finds unacceptable but which by their nature are within the province of

the courts to consider." *Velazquez*, 531 U.S. at 546. This offends the First Amendment, is "inconsistent with accepted separation-of-powers principles," *id.,* and weakens the rule of law.

The chilling effect is real. The composition of Amici, predominantly *former* rather than current general counsel, demonstrates the Orders' swift, powerful, and intimidating influence on the legal profession and business community.

**Second**, the Orders create dangerous precedents for future administrations. If the Orders were deemed lawful, future administrations would have every incentive to use similar tactics to punish their perceived enemies and silence their critics, creating an unstable cycle of retaliation. Corporations would face the expense and disruption of switching counsel every few years, as one set of favored firms becomes the next administration's targeted firms.

**Third**, the Orders' subversion of the rule of law increases costly uncertainty and instability in the American economy. The rule of law is not only a legal abstraction but an economic necessity. When harsh sanctions can be imposed based on presidential preference rather than through consistent application of established law, businesses cannot

effectively plan for and manage risk. This uncertainty will require businesses to divert resources toward currying political favor rather than investment, innovation, and growth.

**Fourth**, and relatedly, the Orders distort the free market by encouraging a system where business success depends more on political favor than merit, efficiency, or innovation. The Orders do this explicitly, confirming that certain law firms are acceptable to the administration and certain are not. Clients will gravitate toward the "acceptable" firms, regardless of expertise or skill. This reduces competition and the quality of legal representation available to businesses.

**Fifth**, the Orders promote a culture of silence, distrust, and conformity in American business. Companies may conclude it is too risky to hire or retain employees who have spoken out against the President, litigated against him in prior employment, or otherwise made themselves a target of the President. Others may be intimidated into silence knowing that the President has issued executive orders against law firms based on the work partners did while not working for the firm. *See, e.g.,* Exec. Order 14246 & 14250 (punishing Jenner & Block and WilmerHale for "engag[ing] in obvious partisan representations to achieve political

ends" and for hiring lawyers who had served as prosecutors in the Special Counsel probe during President Trump's first term). Such suppression of competing, dissenting views harms "society as a whole, which is deprived of an uninhibited marketplace of ideas." *Citizens United*, 558 U.S. at 335.

## CONCLUSION

The Orders trample on corporate independence, the right to counsel, and First Amendment rights, transforming independent business and legal judgments into political calculations about presidential whims. The Orders threaten not just the targeted firms and their clients, but any corporation or law firm that might someday advocate against this or any future president's preferred position. To preserve the rule of law and a vibrant marketplace of ideas, Amici respectfully ask that the Court affirm the district court orders enjoining the Orders.


RESPECTFULLY SUBMITTED this 3rd day of April, 2026.

OSBORN MALEDON, P.A.


By s/Eric M. Fraser
   Eric M. Fraser
   David B. Rosenbaum
   Mary R. O'Grady
   Joseph N. Roth
   Andrew G. Pappas
   Joshua J. Messer
   2929 N. Central Avenue, Suite 2000
   Phoenix, Arizona 85012

**Attorneys for Amici Curiae Former and Current General Counsel Supporting Appellees**

# CERTIFICATE OF COMPLIANCE

Counsel certifies as follows:

1.     This brief complies with the type-volume requirement of Fed. R. App. P. 29(d) because this brief contains 2,493 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Cir. R. 32(e)(1).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Century font using Microsoft Word.

Dated this 3rd day of April, 2026.

OSBORN MALEDON, P.A.

s/Eric M. Fraser
Eric M. Fraser
David B. Rosenbaum
Mary R. O'Grady
Joseph N. Roth
Andrew G. Pappas
Joshua J. Messer
2929 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

**Attorneys for Amici Curiae Former and Current General Counsel Supporting Appellees**

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(d) and Cir. R. 25, that on April 3, 2026, the foregoing brief was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Dated this 3rd day of April, 2026.

s/Eric M. Fraser
Eric M. Fraser

## CIRCUIT RULE 29(d) CERTIFICATE

Pursuant to Circuit Rule 29(d), I hereby certify that this separate amicus curiae brief is necessary and it was not practicable to join with other amicus briefs filed in this case. The Orders risk inflicting unique harms on American business interests, separate and distinct from the harms addressed by other amici, and only the general counsel amici represented in this brief can adequately explain those harms.

Dated this 3rd day of April, 2026.

s/Eric M. Fraser
Eric M. Fraser

## Identities of Amici Curiae

**Robert A. Armitage**
Former General Counsel,
Eli Lilly and Company

**Michelle Banks**
Former Global General Counsel,
The Gap, Inc.

**Matthew Broad**
Former General Counsel,
OfficeMax, Inc.

**Maureen Brundage**
Former Executive Vice
President, General Counsel,
Chief Ethics Officer and
Corporate Secretary of The
Chubb Corporation

**Kevin M. Carome**
Former General Counsel,
Invesco Ltd.

**Mark Chandler**
Former Chief Legal Officer,
Cisco Systems, Inc.

**Robert Chesnut**
Former General Counsel, Airbnb
Inc.

**Richard T. Collier**
Former Senior Vice President &
General Counsel: Rhône-Poulenc
Rorer, Inc.; Pharmacia & Upjohn
Company; Pharmacia
Corporation; Elan, plc.

**Daniel Cooperman**
Former Senior Vice President,
General Counsel and Secretary,
Apple, Inc.; Former Senior Vice
President, General Counsel and
Secretary, Oracle Corporation

**Carolyn L. Cox**
Former General Counsel, Alera
Group, Inc.

**Stephen M. Cutler**
Former General Counsel,
JPMorgan Chase & Co.

**Lloyd Norton Cutler Jr.**
Former General Counsel,
BlueStar Communications

**Dorian Daley**
Former Executive Vice President and General Counsel, Oracle Corporation

**Sheila Kearney Davidson**
Former Chief Legal Officer, New York Life Insurance Company

**Pierre Donahue**
Former Executive Vice President and General Counsel of a hotel management company

**Maggie Drucker**
Former Chief Legal Officer, Grubhub

**Alinka Flaminia**
Former Chief Legal Officer, Cadence Design Systems, Inc.; Former General Counsel, Mellanox Technologies and PMC-Sierra, Inc.

**Edward Gallagher**
Former Senior Vice President, Secretary and General Counsel, NCR Corporation

**Peter J. Ganz**
Former Senior Vice President, General Counsel and Corporate Secretary, Ashland, Inc.

**Jennifer A. Gorman**
Former General Counsel, KCI Technologies, Inc.

**Noah Hanft**
Former General Counsel and Chief Franchise Officer, Mastercard, Inc.

**Michael Harrington**
Former Senior Vice President and General Counsel, Eli Lilly and Company

**Jill Harrison**
Former General Counsel of a medical device company

**Jennifer R. Hart**
Former General Counsel, Tata Consumer Products U.S.

**Nancy Heinen**
Former General Counsel, Apple, Inc.

**Lucy Lee Helm**
Former Executive Vice President, General Counsel and Secretary, Starbucks Coffee Company

**Christie Hill**
Former Chief Legal Officer, Aristocrat Leisure Limited; Former Chief Legal Officer and Head of Global Corporate Citizenship, The Dun & Bradstreet Corporation; Former General Counsel, Secretary and Chief Compliance Officer, Primus Telecommunications Group, Inc.

**Jerald S. Howe**
Former General Counsel, TASC, Inc. and Veridian Corporation

**John W. Holleran**
Former Executive Vice President and General Counsel, Boise Cascade Corporation; Former Senior Vice President and General Counsel, Itron, Inc.

**Michael Jacobson**
Former General Counsel, eBay, Inc.

**Seth R. Jaffe**
Former Chief Legal Officer, Levi Strauss & Co.; Former General Counsel, Williams-Sonoma, Inc.

**Virginia H. Johnson**
Former Chief Legal Officer, General Counsel and Corporate Secretary of various companies across industries

**Shirin Keen**
General Counsel for technology and entertainment companies

**Julie Kinch**
Former Vice President and General Counsel, Remy Cointreau USA; Former Senior Vice President and Chief Legal Officer, Heineken USA

**Stephanie Adamson King**
Chief Legal Officer and General Counsel to start-ups in the technology sector

**Bruce Kuhlik**
Former General Counsel, Merck & Co., Inc., and Pathfinder International

**Alison R. Lazerwitz**
Former General Counsel, Daniel Swarovski Corporation; Former Chief Legal Officer, Sodexo, SA

**Michele C. Lee**
Former General Counsel, Pinterest

**Erin Lewin**
Former General Counsel, Avnet, Inc.

**J. May Liang**
General Counsel, OpenConcept Systems, Inc.; Former General Counsel, Total Music LLC; Former Associate General Counsel, AOL Inc.

**Doug Luftman**
General Counsel and Former Vice President, General Counsel & Secretary to various technology companies

**David Mann**
Former Senior Vice President, Chief Legal Officer and Secretary, Dunkin' Brands, Inc.

**Michael Malecek**
Chief Legal Officer and Company Secretary

**Michele Coleman Mayes**
Former General Counsel, The New York Public Library, Allstate Insurance Company, and Pitney Bowes Inc.

**Teri P. McClure**
Former General Counsel, United Parcel Service

**A. Douglas Melamed**
Former Senior Vice President and General Counsel, Intel Corporation

**Shelley Milano**
Former Senior Vice President and General Counsel, L Brands; Senior Vice President, General Counsel, and Secretary at Eddie Bauer; Executive Vice President and General Counsel, Starbucks Corporation

**Randal S. Milch**
Former Executive Vice President, Public Policy, and General Counsel, Verizon Communications Inc.

**Manas Mohapatra**
General Counsel, Trust
Machines

**Karen G. Narwold**
Former General Counsel,
Albemarle Corp., Barzel
Industries, Inc., and GrafTech
International Ltd.

**Laura Nyquist**
Former General Counsel,
Teradata Corporation

**William M Ojile, Jr.**
Former Chief Legal Officer,
Valor Communications Group,
Inc. and Alta Colleges, Inc.

**Amy Fliegelman Olli**
Former Executive Vice President
and General Counsel, VMware
and Avaya

**Marla S. Persky**
Former Senior Vice President,
General Counsel and Corporate
Secretary, Boehringer Ingelheim
Corporation; Former Acting
General Counsel and Corporate
Secretary, Baxter International

**Valerie Pierce**
Former General Counsel of
several biotechnology and
biopharmaceutical companies

**Brett Pletcher**
Former Executive Vice President
and General Counsel, Gilead
Sciences, Inc.

**Karyn S.W. Polak**
Former Chief Legal Officer,
Transamerica; Former General
Counsel, Citi Private Bank and
Citi Investment Research

**Kelli L. Roach**
Former General Counsel, Black
Mountain Sand

**Mark Roellig**
Former Chief Legal Officer, General Counsel and Secretary, Massachusetts Life Insurance Company (MassMutual), Fisher Scientific International Inc., Storage Technology Corp. (StorageTek), and US WEST Inc.

**James F Rogers**
Former Chief Legal Officer, Cars.com Inc.; Former Senior Vice President, General Counsel and Secretary, Orbitz Worldwide, Inc.; Former Senior Vice President, General Counsel and Secretary, TLC Vision Corporation

**Phillip H. Rudolph**
Former Executive Vice President, Chief Legal & Risk Officer, and Corporate Secretary of a National Restaurant Chain

**Edward Ryan**
Former Executive Vice President and General Counsel, Marriott International, Inc.

**Peter D. Staple**
Former General Counsel and Executive Vice President, ALZA Corporation

**Lori A. Schechter**
Former Executive Vice President, Chief Legal Officer & General Counsel, McKesson Corporation

**Katherine E. Schuelke**
Former Senior Vice President, Chief Legal Officer, and Corporate Secretary, Seagate Technology LLC; Former Senior Vice President, General Counsel, and Corporate Secretary, Altera Corporation

**Steven R Secrist**
Former Senior Vice President and General Counsel, Puget Sound Energy

**Margaret K Seif**
Former Senior Vice President and Chief Legal Officer, Analog Devices, Inc.

**Jane Sherburne**
Former General Counsel, Bank of New York

**Johnathan H. Short**
Former General Counsel &
Corporate Secretary,
Intercontinental Exchange, Inc.

**Savalle Sims**
Former General Counsel for a
media company

**Isaac Stein**
Former General Counsel,
Raychem Corp.

**Micheal Stern**
Former General Counsel,
General Magic

**Kristin Sverchek**
Former President and General
Counsel, Lyft

**Monica Winghart**
General Counsel to technology
companies

**Irving Yoskowitz**
Former Executive Vice President
and General Counsel, United
Technologies Corporation

**Sharon Zezima**
Former General Counsel,
Marketo, GoPro, Pax Labs and
Acoustic

**Richard Ziegler**
Former General Counsel, 3M
Company