[ORAL ARGUMENT SCHEDULED FOR MAY 14, 2026]

Nos. 25-5241, 25-5265, 25-5277, 25-5310

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

Perkins Coie LLP, Plaintiff-Appellee,

v.

United States Department of Justice, *et al.*, Defendants-Appellants.

_____

Jenner & Block LLP, Plaintiff-Appellee,

v.

United States Department of Justice, *et al.*, Defendants-Appellants.

_____

Wilmer Cutler Pickering Hale & Dorr LLP, Plaintiff-Appellee,

v.

Executive Office of the President, *et al.*, Defendants-Appellants.

_____

Susman Godfrey LLP, Plaintiff-Appellee,

v.

Executive Office of the President, *et al.*, Defendants-Appellants.

_____

On Appeal from the United States District Court
for the District of Columbia

## BRIEF OF AMICI CURIAE ILLINOIS, MASSACHUSETTS, NEW JERSEY, WASHINGTON, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND VIRGINIA IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts

DAVID C. KRAVITZ
State Solicitor
KATHERINE DIRKS
Chief State Trial Counsel
1 Ashburton Place
Boston, Massachusetts 02108

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General
SARAH A. HUNGER
Deputy Solicitor General
AKANKSHA SHAH
BRIANNA YANG
Assistant Attorneys General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

Counsel for Amici States

JENNIFER DAVENPORT
Attorney General
State of New Jersey

JEREMY M. FEIGENBAUM
Solicitor General
25 Market Street
Trenton, NJ 08625

NICHOLAS W. BROWN
Attorney General
State of Washington

NOAH G. PURCELL
Solicitor General
P.O. Box 40100
Olympia, WA 98504

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to this Court's Rule 28(a)(1), I hereby certify that:

### I.    Parties and Amici

Except for the States of Illinois, Massachusetts, New Jersey, Washington, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Maine, Maryland, Michigan, Minnesota, Nevada, New York, Oregon, Rhode Island, Vermont, and Virginia, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the briefs for the parties and other amici.

### II.    Rulings Under Review

References to the rulings at issue appear in the Brief for Defendants-Appellants, at ii.

### III.    Related Cases

These consolidated cases have not previously been before this Court.  The Court has ordered that the consolidated appeals be scheduled for oral argument on the same day and before the same panel as *Zaid v. Executive Office of the President*, No. 26-5009.

<u>/s/ Sarah A. Hunger</u>

i

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... iii

GLOSSARY ...........................................................................................vii

IDENTITY AND INTEREST OF AMICI STATES ................................1

SUMMARY OF ARGUMENT ..................................................................4

ARGUMENT ...........................................................................................6

I.    The EOs Violate Foundational First Amendment Principles That Protect The Rule Of Law In Our Democracy...................................6

II.   If Not Invalidated, The EOs Will Harm Amici States And Their Residents. ....................................................................................12

CONCLUSION ......................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Am. Airways Charters, Inc. v. Regan,*
746 F.2d 865 (D.C. Cir. 1984)......................................................11

*Chambers v. Baltimore & O.R. Co.,*
207 U.S. 142 (1907) .....................................................................11

*Cousart v. Metro Transit Police Chief,*
101 F. Supp. 3d 27 (D.D.C. 2015)................................................13

*Denius v. Dunlap,*
209 F.3d 944 (7th Cir. 2000) ..........................................................9

*Harris v. Fischer,*
No. 14-2957 (2d Cir.) ......................................................................9

*In re Primus,*
436 U.S. 412 (1978) ........................................................................9

*Jacobs v. Schiffer,*
204 F.3d 259 (D.C. Cir. 2000).........................................................9

*Jenner & Block LLP v. U.S. Dep't of Just.,*
784 F. Supp. 3d 76 (D.D.C. 2025).......................................2, 4, 7, 8

*Legal Servs. Corp. v. Velazquez,*
531 U.S. 533 (2001) ............................................... 8, 10, 16, 19, 20

*Martinez v. Ryan,*
566 U.S. 1 (2012) ..........................................................................11

*NAACP v. Button,*
371 U.S. 415 (1963) ................................................................ 12, 13

*Nat'l Rifle Ass'n of Am. v. Vullo,*
602 U.S. 175 (2024) ........................................................................6

*Nieves v. Bartlett,*
    587 U.S. 391 (2019) ................................................................6

*Padilla v. Kentucky,*
    559 U.S. 356 (2010) ...............................................................11

*Perkins Coie LLP v. U.S. Dep't of Just.,*
    783 F. Supp. 3d 105 (D.D.C. 2025) ..............................2, 4, 7, 8, 12

*Powell v. Alabama,*
    287 U.S. 45 (1932) .................................................................11

*Sup. Ct. of New Hampshire v. Piper,*
    470 U.S. 274 (1985) ...............................................................10

*Susman Godfrey LLP v. Exec. Off. of President,*
    789 F. Supp. 3d 15 (D.D.C. 2025)........................................2, 4, 7, 8

*Thomas v. Anderson,*
    No. 18-1424 (U.S.) ...................................................................9

*United States v. Gonzalez-Lopez,*
    548 U.S. 140 (2006) ...............................................................11

*Vet Voice Found. v. Hobbs,*
    No. 102569-6 (Wash. Sup. Ct.)....................................................9

*Watts v. Kidman,*
    42 F.4th 755 (7th Cir. 2022).......................................................13

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President,*
    784 F. Supp. 3d 127 (D.D.C. 2025)...............................2, 4, 7, 8, 12

## EXECUTIVE ORDERS

Addressing Risks from Perkins Coie LLP,
    Exec. Order No. 14230 (Mar. 6, 2025). ..............................1-3, 7, 8

Addressing Risks from Jenner & Block,
    Exec. Order No. 14246 (Mar. 25, 2025) .................................1-3, 8

Addressing Risks from WilmerHale,
    Exec. Order No. 14250 (Mar. 27, 2025) ....................................1-3, 8

Addressing Risks from Susman Godfrey,
    Exec. Order No. 14263 (Apr. 9, 2025) ..................................1-3, 7, 8

**OTHER AUTHORITIES**

Carrie Johnson, *Trump's deals with law firms are like deals 'made with a gun to the head,' lawyers say*, NPR (May 31, 2025)....................17

Daniel Barnes, *Inside the fallout at Paul, Weiss after the firm's deal with Trump*, Politico (June 29, 2025) .............................................19

David McCullough, John Adams (2001) .................................................10

David Thomas, *Three US law firms sidestep lawmakers' queries on Trump-related deals*, Reuters (Oct. 10, 2025) ...............................17

Diversity Matters Even More: The Case for Holistic Impact, McKinsey & Co. (Dec. 5, 2023)........................................................................18

Katelyn Polantz, *Trump's Crackdown on Law Firms Is Chilling the Future of Pro Bono Legal Work*, CNN (May 7, 2025) ....................14

March 5, 1773, in The Diary of John Adams.........................................14

Maria Gracia Santillana Linares, *Law Students Push Back On Firms That Have Capitulated To Trump*, Forbes (Apr. 4, 2025).............19

Matthew Goldstein & Jessica Silver-Greenberg, *Some Giant Law Firms Shy Away from Pro Bono Immigration Cases*, N.Y. Times (May 6, 2025).................................................................................14, 15

Mike Spector, et al., *How Trump's crackdown on law firms is undermining legal defenses for the vulnerable*, Reuters (July 31, 2025) ......................................................................................14-16

Molly Redden, *Trump's War on Big Law Means It's Harder to Challenge the Administration*, ProPublica (Aug. 6, 2025)........................13, 14

Stephanie Ferguson Melhorn & Makinizi Hoover, Understanding America's Labor Shortage: The Most Impacted Industries, U.S. Chamber of Com. (Apr. 18, 2025)..................................................18

Tanya Kateri Hernandez, *Can CRT Save DEI?: Workplace Diversity, Equity & Inclusion in the Shadow of Anti-Affirmative Action*, 71 UCLA L. Rev. Discourse 282 (2024) ............................................18

# GLOSSARY

EO                      Executive Order

Jenner                  Jenner & Block LLP

Perkins                 Perkins Coie LLP

Susman                  Susman Godfrey LLP

WilmerHale              Wilmer Cutler Pickering Hale & Dorr LLP

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, Massachusetts, New Jersey, Washington, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Maine, Maryland, Michigan, Minnesota, Nevada, New York, Oregon, Rhode Island, Vermont, and Virginia (collectively, "amici States") submit this amicus brief in support of Plaintiff-Appellees Perkins Coie LLP ("Perkins"), Jenner & Block LLP ("Jenner"), Wilmer Cutler Pickering Hale & Dorr LLP ("WilmerHale"), and Susman Godfrey LLP ("Susman," and collectively, the "Law Firms") pursuant to Federal Rule of Appellate Procedure 29(a)(2).

In March and April 2025, President Trump issued an unprecedented series of executive orders ("EOs") imposing severe sanctions on the Law Firms, whose advocacy, clients, and personnel he dislikes.[1]  The EOs do not hide their retaliatory nature:  they explicitly punish the Law Firms for the clients they represent, the political causes

---

[1] Addressing Risks from Perkins Coie LLP, Exec. Order No. 14230 (Mar. 6, 2025) ("EO 14230"); Addressing Risks from Jenner & Block, Exec. Order No. 14246 (Mar. 25, 2025) ("EO 14246"); Addressing Risks from WilmerHale, Exec. Order No. 14250 (Mar. 27, 2025) ("EO 14250"); Addressing Risks from Susman Godfrey, Exec. Order No. 14263 (Apr. 9, 2025) ("EO 14263").

their lawyers support, and their pro bono advocacy on behalf of political opponents of the President and other groups disfavored by the President.[2]  As four different district judges have recognized, these aspects of the EOs render them unconstitutional in a multitude of ways, including because they are retaliatory and viewpoint discriminatory in violation of the First Amendment.[3]

Amici States have a significant interest in protecting the bedrock rule-of-law and free speech principles that are implicated by this case. And as government entities subject to the First Amendment, amici States have uniquely relevant experience applying these principles.  In fact, it is commonplace for advocates and their clients to criticize and oppose amici States (as well as their agencies, officials, and policies) in both federal and state court.

---

[2]  EO 14230 §§ 2(a), 3, 5; EO 14246 §§ 2(a), 3, 5; EO 14250 §§ 2(a), 3, 5; EO 14263 §§ 2(a), 3, 5.

[3]  *See Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 58-60 (D.D.C. 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 173-74 (D.D.C. 2025); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 118-21 (D.D.C. 2025); *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 180-82 (D.D.C. 2025).

Additionally, the EOs directly threaten amici States' government operations. For instance, agencies in some amici States have contractual relationships with the federal government and so could be subject to the disclosure requirements that the EOs impose on federal contractors.[4] And amici States' Attorneys General oversee large law offices that have filed lawsuits challenging unlawful actions by the federal government. If the EOs are allowed to stand, the President may target other lawyers, including those in amici States, who challenge the current administration's policies in court.

Finally, amici States have a substantial interest in maintaining an independent, accessible legal system, which is essential to the fabric of our democracy. Amici States are home to hundreds of thousands of lawyers—including lawyers affiliated with all four of the Law Firms—who must be able to practice without fear of government retribution. And all of amici States' residents are potential clients who may need those lawyers' services to assert their rights, including against the federal government. By attempting to punish effective advocacy for

---

[4]  *See* EO 14230 § 3; EO 14246 § 3; EO 14250 § 3; EO 14263 § 3.

3

disfavored causes, the EOs make it harder for lawyers to provide the critical legal services on which our courts and residents depend.

## SUMMARY OF ARGUMENT

The EOs seek to sanction law firms that represent clients and issues disfavored by the President. As the lower courts explained, the EOs thus violate a number of different constitutional protections, including the First Amendment, *Susman*, 789 F. Supp. 3d at 41-48; *WilmerHale*, 784 F. Supp. 3d at 150-59; *Jenner*, 784 F. Supp. 3d at 94-99; *Perkins*, 783 F. Supp. 3d at 150-58, the Fifth Amendment, *Susman*, 789 F. Supp. 3d at 50-54; *WilmerHale*, 784 F. Supp. 3d at 163-68; *Perkins*, 783 F. Supp. 3d at 169-72, the Sixth Amendment, *WilmerHale*, 784 F. Supp. 3d at 169-70; *Perkins*, 783 F. Supp. 3d at 169-72, and separation of powers, *Susman*, 789 F. Supp. 3d at 54-56; *WilmerHale*, 784 F. Supp. 3d at 160-62. Amici States agree with the Law Firms that these decisions should be affirmed, and write separately to highlight two issues that are particularly relevant to their experience and interests.

First, the lower courts rightly concluded that the EOs violate the First Amendment because they seek to punish the Law Firms for their

4

or their clients' protected viewpoints.  In particular, the EOs seek to punish the Law Firms for purportedly supporting the President's political opponents or otherwise representing clients in election disputes against the President or his allies; for their commitment to diversity, equity, and inclusion; and for their expression of other disfavored viewpoints.

These aspects of the EOs are particularly troubling because they target law firms and lawyers for their legal advocacy and thus also transgress the First Amendment's protections for individuals who seek to vindicate their rights in court and for attorneys who choose to advocate on their behalf.  Indeed, the government has long been obliged not to single out for disfavored treatment litigants or lawyers who advocate for unpopular causes or who challenge the government in litigation—an obligation that the amici States support and honor.  The willingness of lawyers to represent such causes is vital for the rule of law, our system of justice, and our democracy, and the EOs threaten this foundational principle.

Second, the EOs threaten to harm the public interest of amici States and their residents in many ways.  To start, the EOs, if not

5

enjoined, would make it more difficult for many potential clients, especially those who rely on pro bono representation, to obtain legal services. And parties seeking to challenge administration policies or who belong to groups the President dislikes will have difficulty obtaining representation as lawyers seek to avoid presidential sanctions. Lawyers who reside in amici States will also be forced to decide between maintaining their livelihoods and representing disfavored clients. This burden will fall most heavily on members of vulnerable groups in amici States, who are disproportionately reliant on law firms' pro bono programs for representation.

## ARGUMENT

### I.    The EOs Violate Foundational First Amendment Principles That Protect The Rule Of Law In Our Democracy.

The First Amendment prohibits the government from retaliating against or threatening lawyers based on the clients or causes they represent. *See, e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019); *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188-89 (2024). In amici States' experience, those protections play a critical role in ensuring that all clients and causes—even those that are controversial, unpopular, or adverse to the government or other powerful interests—can obtain the

competent, zealous legal representation that is a prerequisite for the rule of law in our democracy.

At the threshold, the EOs impermissibly infringe on these bedrock First Amendment rights by engaging in blatant viewpoint discrimination and by punishing law firms for engaging in vigorous legal advocacy. Indeed, as the lower court decisions rightly concluded, the EOs single out several viewpoints for retaliation, all of which are protected by the First Amendment. *Susman*, 789 F. Supp. 3d at 41-43; *WilmerHale*, 784 F. Supp. 3d at 152-55; *Jenner*, 784 F. Supp. 3d at 94-99; *Perkins*, 783 F. Supp. 3d at 151-55.

Specifically, at least two of the EOs make plain that they seek to punish the Law Firms for purportedly supporting the President's political opponents or otherwise providing representation to clients associated with election outcomes unfavorable to the President. *See, e.g.*, EO 14230 § 1 (criticizing Perkins Coie for "representing failed Presidential candidate Hillary Clinton"); EO 14263 § 1 (accusing Susman of "efforts to . . . degrade the quality of American elections"). The EOs also clearly seek to retaliate unconstitutionally against the Law Firms for their commitment to "diversity, equity, and inclusion."

EO 14230 § 1; EO 14263 § 1; *see* EO 14246 § 1 (claiming Jenner uses "race-based 'targets'"); EO 14250 § 1 (claiming WilmerHale uses "race-based 'targets'").  Finally, the EOs punish the viewpoints of the Law Firms, including (as described by the EOs) Susman's "fund[ing] [of] groups that engage in dangerous efforts to undermine the effectiveness of the United States military through the injection of political and radical ideology," EO 14263 § 1, Jenner's "refusal to accept the biological reality of sex," EO 14246 § 1, and Jenner and WilmerHale's immigration-related representation, EO 14246 § 1; EO 14250 § 1.

Though this discrimination is alone sufficient to constitute a First Amendment violation, as the Law Firms explain, Perkins Br. 15-21; Jenner Br. 17-29; WilmerHale Br. 15-24; Susman Br. 13-23, the EOs are unlawful for the additional reason that they target law firms and lawyers for their legal advocacy on behalf of clients, as the lower courts correctly recognized, *Susman*, 789 F. Supp. 3d at 42, 54-55; *WilmerHale*, 784 F. Supp. 3d at 150-51, 161; *Jenner*, 784 F. Supp. 3d at 97-98; *Perkins*, 783 F. Supp. 3d at 119-20, 152.  Indeed, attorney advocacy as a category of speech is protected by the First Amendment. *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 542-43 (2001).  And

"litigation as a vehicle for effective political expression and association" likewise "comes within the generous zone of First Amendment protection." *In re Primus*, 436 U.S. 412, 431 (1978); *see also, e.g.*, *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000) ("The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition."); *Jacobs v. Schiffer*, 204 F.3d 259, 265-66 (D.C. Cir. 2000) (recognizing that a client has "an interest in communicating with his attorney" under the First Amendment and reviewing the contours of that right).

Amici States take seriously their obligation under the First Amendment not to single out for disfavored treatment litigants or lawyers who advocate for unpopular causes or who challenge the government in litigation. In fact, the offices of the undersigned state Attorneys General regularly litigate matters in which the Law Firms represent clients who are adverse to amici States. *See, e.g.*, *Thomas v. Anderson*, No. 18-1424 (U.S.) (Jenner adverse to Illinois); *Harris v. Fischer*, No. 14-2957 (2d Cir.) (Susman adverse to New York); *Vet Voice Found. v. Hobbs*, No. 102569-6 (Wash. Sup. Ct.) (Perkins Coie adverse to Washington). But amici States uniformly recognize the importance

9

of a cardinal First Amendment precept:  Advocates who appear in courtrooms must enjoy the right to speak freely on behalf of their clients and themselves without fear of retribution (let alone actual retribution) from their government.  *See Velazquez*, 531 U.S. at 542-49.

Amici States honor these principles for good reason.  If lawyers fear that the government will retaliate against them or subject them to adverse treatment based on the viewpoints they express, they will be far less likely to take on causes disfavored by the government.  And the willingness of lawyers to represent such causes is vital for the rule of law, our system of justice, and our democracy.  *See Sup. Ct. of New Hampshire v. Piper*, 470 U.S. 274, 281 (1985) (noting the "import[ance] to the maintenance or well-being of the Union" of "the lawyer who champions unpopular causes") (cleaned up).

Indeed, for centuries, lawyers have embraced their responsibility to represent disfavored clients and causes.  In 1770, for example, future President John Adams risked, "in his words, 'incurring a clamor and popular suspicions and prejudices' against him" by defending British soldiers charged with murder following the Boston Massacre.[5]  After

---

[5]  David McCullough, John Adams 66 (2001).

10

securing acquittals for most defendants and light sentences for the others, Adams accurately termed his involvement "one of the most gallant, generous, manly and disinterested Actions of [his] whole Life, and one of the best Pieces of Service [he] ever rendered [his] Country."[6]

Moreover, the existence of an independent, accessible bar facilitates and safeguards individual rights. *See Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907) (right to litigate is "conservative of all other rights, and lies at the foundation of orderly government"). That is because "the right to counsel is the foundation for our adversary system." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). An entitlement to competent representation undergirds, for example, criminal defendants' Sixth Amendment rights to effective assistance of counsel, *see, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010), and to counsel of their choice, *see, e.g.*, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). It also facilitates civil litigants' due process right to retain counsel. *See Powell v. Alabama*, 287 U.S. 45, 68-69 (1932); *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 (D.C. Cir. 1984). In fact, litigation conducted by counsel is often "the sole practicable avenue" for

---

[6] March 5, 1773, in The Diary of John Adams, https://bit.ly/4c0FKs6.

11

parties to seek to vindicate their other rights, including to freedom of association and speech under the First Amendment. *NAACP v. Button*, 371 U.S. 415, 430 (1963).

The EOs are an unprecedented departure from these foundational principles and protections. *See Perkins*, 783 F. Supp. 3d at 120 (describing the EO as "an unprecedented attack on . . . foundational principles"); *WilmerHale*, 784 F. Supp. 3d at 150 (favorably citing the plaintiff's expert for the proposition that the revocation of security clearances was "nearly unprecedented"). This court should affirm the decisions below.

## II.    If Not Invalidated, The EOs Will Harm Amici States And Their Residents.

In addition to violating the foundational constitutional principles that support our democratic system of governance, the EOs severely harm the public interest in several respects that are directly relevant to the amici States' interests.

To start, the EOs make—and, indeed, already have made—it more difficult for many potential clients, especially those who currently rely on pro bono representation, to obtain legal services. Most obviously, parties seeking to challenge the administration's policies or who belong

12

to groups the President is perceived to dislike—for instance, his political opponents—will have difficulty obtaining representation as lawyers seek to avoid presidential sanctions. And deprived of competent counsel, parties will often be unable to vindicate their rights. *Cf. Button*, 371 U.S. at 430 ("[U]nder the conditions of modern government, litigation may well be the sole practicable avenue to a minority to petition for redress of grievances.").

This burden will fall particularly heavily on members of vulnerable groups in amici States, who are disproportionately reliant on law firms' pro bono programs for representation. Such pro bono services are a scarce resource at the best of times, with demand often "far outpac[ing]" supply. *Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022); *see, e.g.*, *Cousart v. Metro Transit Police Chief*, 101 F. Supp. 3d 27, 28 n.3 (D.D.C. 2015) (noting "limited" availability of pro bono services). Indeed, public reporting suggests that, in the wake of the EOs, firms have become hesitant to provide pro bono services to clients or causes that the President disfavors.[7] Nonprofits engaged in such

---

[7] Molly Redden, *Trump's War on Big Law Means It's Harder to Challenge the Administration*, ProPublica (Aug. 6, 2025),

13

causes report that many major law firms have been unwilling to represent them. For example, the National Police Accountability Project revealed that a top law firm abruptly pulled out of a lawsuit it was helping the nonprofit to develop against a municipal police force.[8] Other nonprofits engaged in police accountability advocacy have experienced similar struggles with securing pro bono legal representation.[9]

Similarly, immigration-focused nonprofits are finding it especially difficult to obtain pro bono legal services from law firms. Whereas the 100 top-grossing law firms brought about 2.5% of immigration lawsuits in the President's first term, they have handled only 0.6% in the second.[10] Law firms, such as Davis Polk & Wardwell LLP and Skadden,

---

https://bit.ly/4ma4Lpq; Mike Spector, et al., *How Trump's crackdown on law firms is undermining legal defenses for the vulnerable*, Reuters (July 31, 2025), https://bit.ly/4c7XZMn; Katelyn Polantz, *Trump's Crackdown on Law Firms Is Chilling the Future of Pro Bono Legal Work*, CNN (May 7, 2025), https://bit.ly/4c4LXn1; Matthew Goldstein & Jessica Silver-Greenberg, *Some Giant Law Firms Shy Away from Pro Bono Immigration Cases*, N.Y. Times (May 6, 2025), https://bit.ly/4tkfGza.

[8]  Redden, *supra* note 7.

[9]  *Id.*

[10]  Spector, *supra* note 7.

Arps, Slate, Meagher & Flom LLP, that took a leading role in challenging immigration policies during the first Trump administration have now declined to do the same during the second.[11]  In fact, Skadden Arps refused to join such a lawsuit after negotiating a deal with the President to avoid an executive order targeted at it.[12]

Beyond the difficulties faced by these groups, public reporting suggests that many law firms are reluctant to represent *any* clients challenging federal government action on any topic, even those that are wholly apolitical in nature, for fear of provoking the President's ire.  A Reuters analysis of court dockets found a "sharp decline" in major firms taking on litigation against the federal government.[13]  According to the analysis, the top 50 U.S. law firms by revenue have brought about 3% of cases filed under the Administrative Procedure Act against the federal government since the start of the President's second term—as opposed to the nearly 9% of such cases brought by these firms in the President's first term.[14]  In fact, 20 of the 100 top-grossing law firms that brought

---

[11]  Goldstein, *supra* note 7.

[12]  *Id.*

[13]  Spector, *supra* note 7.

[14]  *Id.*

15

challenges during the first Trump administration, including Paul, Weiss, Rifkind, Wharton & Garrison LLP; Simpson Thacher & Bartlett LLP; and Goodwin Procter LLP, have not yet filed any similar lawsuits during this administration.[15]  Moreover, many "civic groups that frequently sue the government" and turn to law firms for pro bono services confirm that law firms have "backed away from providing legal help."[16]

Even parties that do obtain counsel might find the quality of the representation diminished.  In *Velazquez*, the Supreme Court concluded that a statute forbidding legal-aid lawyers from challenging the validity of certain laws created an unacceptable risk that those lawyers would, "either consciously to comply with this [restriction] or unconsciously to continue the representation despite the [restriction], avoid[] all reference to questions of statutory validity," "distort[ing] the legal system by altering the traditional role of the attorney[]" as a zealous advocate.  531 U.S. at 544, 546.  The EOs present the same concern: lawyers may seek to avoid presidential sanctions or similar

---

[15]  *Id.*

[16]  *Id.*

consequences by failing to raise all relevant claims or arguments or by moderating their presentation of clients' cases.  Either outcome would compromise the quality of legal representation provided.

Additionally, because the EOs engage in viewpoint discrimination, many law firms have, after being targeted by or threatened with similar EOs, begun capitulating to the federal government's viewpoints.  For instance, Kirkland & Ellis LLP; Paul, Weiss, Rifkind, Wharton and Garrison LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Willkie Farr & Gallagher LLP; Milbank; Latham & Watkins LLP; A&O Shearman; Simpson Thacher & Bartlett LLP; and Cadwalader, Wickersham & Taft LLP have entered agreements with the government limiting diversity policies while dedicating almost $1 billion in legal services to the federal government's preferred causes and clients.[17]

These changed policies have ripple effects in amici States, since policies and practices related to diversity provide benefits in the form of economic and social dividends for their residents, businesses, and

---

[17]  *See, e.g.*, David Thomas, *Three US law firms sidestep lawmakers' queries on Trump-related deals*, Reuters (Oct. 10, 2025), https://reut.rs/4s9uBLG; Carrie Johnson, *Trump's deals with law firms are like deals 'made with a gun to the head,' lawyers say*, NPR (May 31, 2025), https://bit.ly/4sNb5Wd.

17

organizations.  Social science research has shown that "diversity enhances innovation and efficiency."[18]  Companies with strong, diverse leadership teams overperform compared to companies that are more homogenous:  diversity is associated with higher financial returns and higher social and environmental impact scores.[19]  In addition, many employers that struggle with labor shortages, retention, or lack of competitive candidates have successfully mitigated these problems by adopting strategies based on principles of diversity, equity, inclusion, and accessibility, such as offering subsidized childcare benefits or by participating in second-chance programs for individuals with certain felony convictions.[20]

Finally, the EOs will cause significant and tangible harm to lawyers in amici States.  By pressuring law firms not to engage with disfavored parties and causes, the EOs will interfere both with firms'

---

[18]  Tanya Kateri Hernandez, *Can CRT Save DEI?: Workplace Diversity, Equity & Inclusion in the Shadow of Anti-Affirmative Action*, 71 UCLA L. Rev. Discourse 282, 291 (2024).

[19]  Diversity Matters Even More:  The Case for Holistic Impact, McKinsey & Co. (Dec. 5, 2023), https://tinyurl.com/263af5h8.

[20]  Stephanie Ferguson Melhorn & Makinizi Hoover, Understanding America's Labor Shortage: The Most Impacted Industries, U.S. Chamber of Com. (Apr. 18, 2025), https://tinyurl.com/dmv5p25t.

prerogative to choose their clients and with their responsibility to help ensure that all parties can access legal services. Firms that resist this chilling effect would operate under the threat of punitive executive orders and face the risk that existing clients might choose to move to competitors less likely to attract the President's disapproval. Lawyers at capitulating firms have faced difficult decisions about whether to remain or resign in protest, with many lawyers choosing to leave.[21] And law students, many with student loans and their entire careers ahead of them, are being forced to make similarly difficult decisions about whether to sacrifice career options in order to represent clients aligned with their beliefs.[22]

All of these consequences "threaten[] severe impairment of the judicial function," *Velazquez*, 531 U.S. at 546, and the legal profession. Like the restrictive statute in *Velazquez*, the EOs are "an attempt to draw lines around [firms' activities] to exclude from litigation those

---

[21] *See, e.g.*, Daniel Barnes, *Inside the fallout at Paul, Weiss after the firm's deal with Trump*, Politico (June 29, 2025), https://bit.ly/3PLro7y.

[22] Maria Gracia Santillana Linares, *Law Students Push Back On Firms That Have Capitulated To Trump*, Forbes (Apr. 4, 2025), https://bit.ly/4m6YryV.

arguments and theories [the President] finds unacceptable but which by their nature are within the province of the courts to consider." *Id.* The EOs' chilling effect will weaken the constitutional function of the judicial system—in some instances by dissuading firms from taking on particular matters, and in others by creating "lingering doubt whether the truncated representation had resulted in complete analysis . . . and proper presentation." *Id.* By thus compromising lawyers' ability to "present all the reasonable and well-grounded arguments necessary for proper resolution of the case," *id.* at 545, the EOs unconstitutionally interfere with the legal system, and the rights safeguarded by our Constitution.

20

## CONCLUSION

For these reasons and the reasons stated by Plaintiffs-Appellees, the Court should affirm the district court orders.

Respectfully submitted,

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts

DAVID C. KRAVITZ
State Solicitor

KATHERINE DIRKS
Chief State Trial Counsel
1 Ashburton Place
Boston, Massachusetts 02108

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Sarah A. Hunger
SARAH A. HUNGER
Deputy Solicitor General
AKANKSHA SHAH
BRIANNA YANG
Assistant Attorneys General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

Counsel for Amici States

JENNIFER DAVENPORT
Attorney General
State of New Jersey

JEREMY M. FEIGENBAUM
Solicitor General
25 Market Street
Trenton, NJ 08625

NICHOLAS W. BROWN
Attorney General
State of Washington

NOAH G. PURCELL
Solicitor General
P.O. Box 40100
Olympia, WA 98504

21

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N Central Ave
Phoenix, AZ 85004

PHILIP J. WEISER
*Attorney General,*
*State of Colorado*
1300 Broadway
Denver, CO 80203

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. MLK Jr. Blvd.
St. Paul, MN 55155

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
August, ME 04333

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

22

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Maine Street
Providence, RI 02903

JAY JONES
*Attorney General*
*Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219

April 3, 2026

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

23

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 29(a)(5) because it contains 3,814 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Sarah A. Hunger
SARAH A. HUNGER

April 3, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Sarah A. Hunger
SARAH A. HUNGER