**ORAL ARGUMENT NOT YET SCHEDULED**

**Nos. 25-5241, 25-5265, 25-5277, 25-5310**

In The
# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

PERKINS COIE LLP,

Plaintiff-Appellee,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

Defendants-Appellant.

JENNER & BLOCK LLP,

Plaintiff-Appellee,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

Defendants-Appellant.

WILMER CUTLER PICKERING HALE & DORR LLP,

Plaintiff-Appellee,

v.

EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,

Defendants-Appellant.

SUSMAN GODFREY LLP, et al.,

Plaintiff-Appellee,

v.

EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,

Defendants-Appellant.

On Appeal From The United States District Court
For The District Of Columbia

<div style="text-align: center; font-weight: bold;">

BRIEF OF CHARLOTTE BURROWS, ET AL., AS *AMICI CURIAE*
IN SUPPORT OFAPPELLEES

</div>

Samuel R. Bagenstos
Margo Schlanger
625 S. State St.
Ann Arbor, MI 48109
(857) 231-1663
sbagen@gmail.com

*Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Except for *amici curiae* Charlotte Burrows et al., all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Brief for Appellant.

References to the rulings at issue appear in the Brief for Appellant.

*Amici* are unaware of any related cases pending before this Court or any other court.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........................................................................................ i

TABLE OF AUTHORITIES ................................................................. ii

GLOSSARY OF ABBREVIATIONS ...................................................... vi

INTEREST OF THE *AMICI CURIAE* .................................................. 1

SUMMARY OF ARGUMENT.............................................................. 3

ARGUMENT....................................................................................... 4

    A. Congress Specifically Adopted a Charge-Based, Confidential Process for EEOC to Investigate Title VII Violations ........... 6

    B. Section 4 Contravenes Congress's Restrictions on the Process for Investigating Title VII Violations .................................. 10

CONCLUSION ................................................................................. 17

CERTIFICATE OF COMPLIANCE ..................................................... 18

CERTIFICATE OF SERVICE ............................................................ 19

# TABLE OF AUTHORITIES

*Cases*

*Am. Forest Res. Council v. United States*, 77 F.4th 787 (D.C. Cir. 2023), cert. denied, 144 S. Ct. 1110 (2025) ................................................ 16

*Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ......... 16

*Doe 1 v. E.E.O.C.*, No. 1:25-cv-01124-RBW (D.D.C., Feb. 9, 2026) ........ 11

*E.E.O.C. v. Hearst Corp.*, 103 F.3d 462 (5th Cir. 1997) .......................... 8

*E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54 (1984) ............................. 6, 7, 8, 12

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ................. 7

*Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76 (D.D.C. 2025) ......................................................................................... 14

*Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524 (1838) ................................. 16

*Occidental Life Insurance Co. v. E.E.O.C.*, 432 U.S. 355 (1977) ........ 6, 12

*Perkins Coie LLP v. U.S. Dep't of Justice*, 783 F. Supp.3d 105 (D.D.C. 2025) ............................................................................ 10, 13, 14, 15

*Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15 (D.D.C. 2025) ................................................................................ 14

*Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182 (1990) ......................... 6

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127 (D.D.C. 2025), amended, No. 25-cv-917 (RJL), 2025 WL 2105262 (D.D.C. June 26, 2025) ............................................... 14

*Constitutional Provisions*

U.S. Const., Art. II § 3 ........................................................................ 15

*Statutes*

15 U.S.C. § 43 ................................................................................ 8

15 U.S.C. § 46 ................................................................................ 8

29 U.S.C. § 211 .............................................................................. 8

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

    42 U.S.C. § 2000e-4 .......................................................... 12, 13

\*   42 U.S.C. § 2000e-5 ...................................... 3, 7, 9, 12, 13

    42 U.S.C. § 2000e-8 .................................................................. 7, 9


*Rules*

29 C.F.R. 1601.11 ........................................................................ 11

29 C.F.R. 1601.15 ........................................................................ 12

Fed. R. App. P. 29 ........................................................................ 2


*Executive Orders*

Exec. Order 14,230, 90 Fed. Reg. 11,782 (Mar. 6, 2025) .................... 5, 13

Exec. Order 14,246, 90 Fed. Reg. 13,997 (Mar. 25, 2025) .................. 5, 13

Exec. Order 14,250, 90 Fed. Reg. 14,549 (Mar. 27, 2025) .................. 5, 13

Exec. Order 14,263, 90 Fed. Reg. 15,615 (Apr. 9, 2025) .................... 5, 13


*Other Authorities*

110 Cong. Rec. 7,214 (1964) ........................................................... 8

110 Cong. Rec. 12,723 (1964) ......................................................... 9

EEOC, *Commissioner Charges*, https://www.eeoc.gov/commissioner-charges ............................................................................................. 12

Press Release, *EEOC Acting Chair Andrea Lucas Sends Letters to 20 Law Firms Requesting Information About DEI-Related Employment Practices* (Mar. 17, 2025), https://www.eeoc.gov/newsroom/eeoc-acting-chair-andrea-lucas-sends-letters-20-law-firms-requesting-information-about-dei ........................................................................ 11

\* Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY OF ABBREVIATIONS

| EEOC | Equal Employment Opportunity Commission |
|------|------------------------------------------|

# INTEREST OF THE *AMICI CURIAE*

*Amici* are former high-ranking officials who served at the U.S. Equal Employment Opportunity Commission, including former EEOC Chairs, Commissioners, and General and Legal Counsels. *Amici* have closely monitored the actions of the current administration, have collaborated on white papers and other documents, and have engaged in widespread outreach and public education. They have direct experience with, and deep expertise in, the enforcement authorities assigned by Congress to the EEOC.

The executive orders at issue in this case direct the EEOC to conduct investigations in a manner that violates the procedures Congress specifically required for enforcement of Title VII of the Civil Rights Act of 1964. *Amici* submit this brief to demonstrate how the executive orders conflict with the Commission procedures required by statute.

*Amici* are:

**Charlotte A. Burrows**, EEOC Commissioner 2015-2025; EEOC Chair 2021-2025

**Chai Feldblum**, EEOC Commissioner 2009-2019

**Stuart Ishimaru**, EEOC Commissioner 2003-2012; EEOC Acting Chair 2009-2010

**P. David Lopez**, EEOC General Counsel 2010-2016

**Peggy R. Mastroianni**, EEOC Legal Counsel 2011-2017

**Carol R. Miaskoff**, EEOC Associate Legal Counsel 2017-2021; EEOC Legal Counsel 2021-2024

**Jocelyn Samuels**, EEOC Commissioner 2020-2025; EEOC Vice Chair 2021-2025

**Jenny R. Yang**, OFCCP Director 2021-2023; EEOC Commissioner 2013-2018; EEOC Chair 2014-2017; EEOC Vice Chair 2014[1]

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *Amici* state: No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. And no person, other than the *Amici* or their counsel, contributed money that was intended to fund preparing or submitting the brief.

## SUMMARY OF ARGUMENT

*Amici* file this brief to address the legality of Section 4 of each of the executive orders at issue in these consolidated cases. As each court below concluded, the executive orders were motivated by the plaintiffs' First Amendment-protected speech and thus reflected unconstitutional retaliation. Defendants argue that, regardless of the motivation, Section 4 did not work any injury on the plaintiff law firms, because it merely directed the EEOC to do something the agency already had the power to do—and indeed already was doing. That is incorrect. Section 4 directs the EEOC to conduct investigations in a manner that directly conflicts with the processes Congress established for the agency.

Congress specifically adopted a charge-based, confidential process for investigation of alleged violations of Title VII of the Civil Rights Act of 1964. The statute does not authorize an investigation until "a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission" alleging that an employer "has engaged in an unlawful employment practice." 42 U.S.C. § 2000e-5(b). The charge "shall be in writing under oath or affirmation." *Id.* And Congress included unusually strong and emphatic provisions to ensure that

3

charges and investigations remain confidential. Congress adopted these provisions with the specific purpose to bar the EEOC from conducting free-floating investigations and to protect employers against the harm of publicizing unproven allegations against them.

Section 4 of each executive order departs significantly from the process required by Congress. Rather than instructing the EEOC to wait for a sworn charge before initiating an investigation, that section specifically directs investigations of "large law firms" for which charges concededly have not been filed with the Commission. And rather than respecting the requirement of confidentiality mandated by Congress, Section 4 broadcasts the existence of the investigations to the entire world. These conflicts with congressionally mandated process do not just appear on the face of the executive orders; they are evident from the EEOC's implementation of those orders. Although Defendants assert several purported legal bases for Section 4, none is apposite.

## ARGUMENT

In each of these consolidated cases, the district court correctly enjoined Section 4 of the relevant executive order.

Section 4 of the Perkins Coie executive order, in relevant part, directed the EEOC to "review the practices of representative large, influential, or industry leading law firms for consistency with Title VII of the Civil Rights Act of 1964, including whether large law firms: reserve certain positions, such as summer associate spots, for individuals of preferred races; promote individuals on a discriminatory basis; permit client access on a discriminatory basis; or provide access to events, trainings, or travel on a discriminatory basis." Exec. Order 14,230 § 4, 90 Fed. Reg. 11,781, 11,782 (Mar. 6, 2025). And Section 4 of the Jenner & Block, WilmerHale, and Susman Godfrey executive orders cross-referenced the Perkins Coie Section 4 provision. See Exec. Order 14,246 § 4, 90 Fed. Reg. 13,997, 13,998 (Mar. 25, 2025); Exec. Order 14,250 § 4, 90 Fed. Reg. 14,549, 14,550 (Mar. 27, 2025); Exec. Order 14,263 § 4, 90 Fed. Reg. 15,615, 15,616 (Apr. 9, 2025).[2]

As each court below concluded, the executive orders were motivated by the plaintiffs' First Amendment-protected speech and thus reflected unconstitutional retaliation. Defendants argue that, regardless of the

---

[2] Henceforth, this brief will refer to the Section 4 provisions in all of the four executive orders collectively as "Section 4."

5

motivation, Section 4 did not work any injury on the plaintiff law firms, because it merely directed the EEOC to do something the agency already had the power to do—and indeed already was doing.  That is incorrect. Section 4 directs the EEOC to conduct investigations in a manner that directly conflicts with the processes Congress established for the agency.

### A. Congress Specifically Adopted a Charge-Based, Confidential Process for EEOC to Investigate Violations of Title VII

When it enacted the Civil Rights Act of 1964, Congress carefully crafted a set of procedures designed to ensure that the EEOC could root out discrimination without enabling harassment of, or placing undue burdens on, employers.

One concept is the key to the balance Congress drew:  The EEOC is a charge-driven agency.  The Commission enforces Title VII through "'an integrated, multistep enforcement procedure'"—one that "*begins* with the filing of a charge with the EEOC alleging that a given employer has engaged in an unlawful employment practice."  *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 62 (1984) (emphasis added; footnote omitted) (quoting *Occidental Life Insurance Co. v. E.E.O.C.*, 432 U.S. 355, 359 (1977)).  *See also Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 190 (1990) ("The

Commission's enforcement responsibilities are triggered by the filing of a specific sworn charge of discrimination.").

The statute does not authorize an investigation until "a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission" alleging that an employer "has engaged in an unlawful employment practice." 42 U.S.C. § 2000e-5(b). The charge "shall be in writing under oath or affirmation." *Id.* Thus, as the Supreme Court has explained, "the EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.'" *Shell Oil Co.*, 466 U.S. at 64 (footnote omitted) (quoting 42 U.S.C. § 2000e-8(a)).

Congress's purpose for the statute's express charge requirement was to prevent the Commission from engaging in free-floating investigations. Senators Clark and Case explained the point in their "Interpretive Memorandum"—perhaps the most authoritative legislative history of Title VII. See *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 351 n.35 (1977). They found it "important to note that the

Commission's power to conduct an investigation can be exercised only after a specific charge has been filed in writing." 110 Cong. Rec. 7,214 (1964). And they expressly distinguished the EEOC from other agencies with greater authority: "In this respect the Commission's investigatory power is significantly narrower than that of the Federal Trade Commission, 15 U.S.C. 43, 46, or of the Wage and Hour Administrator, 29 U.S.C. 211, who are authorized to conduct investigations, inspect records, and issue subpenas [*sic*], whether or not there has been any complaint of wrongdoing." *Id. See also E.E.O.C. v. Hearst Corp.*, 103 F.3d 462, 464 (5th Cir. 1997) ("Unlike some other agencies, the EEOC does not possess plenary authority to demand information that it considers relevant to its area of jurisdiction. The EEOC's authority to investigate in Title VII cases is triggered only by the filing of a formal charge, either by or on behalf of an aggrieved individual, or by a Commissioner."). As the Supreme Court has explained, "[w]hen Congress in 1972 revamped Title VII, it retained the provision linking the Commission's investigatory power to outstanding charges ***." *Shell Oil Co.*, 466 U.S. at 65.

In addition to limiting the EEOC to investigating specific charges under Section 706 of Title VII, Congress made clear that those charges, and the investigations conducted pursuant to them, must remain confidential. Indeed, Title VII includes unusually strong and emphatic confidentiality provisions. The statute mandates that "[c]harges shall not be made public by the Commission." 42 U.S.C. § 2000e-5(b). It provides that "[n]othing said or done during and as a part of" conciliation efforts that flow from a charge "may be made public by the Commission, its officers or employees." *Id.* And it goes so far as to impose criminal penalties on any officer or employee who violates those confidentiality requirements, *id.*, or who "make[s] public in any manner whatever any information" obtained during a Commission investigation prior to the institution of a lawsuit, 42 U.S.C. § 2000e-8(e). Senator Humphrey, the principal Senate sponsor of the Civil Rights Act, explained that these provisions were designed to protect employers against "the making available to the general public of unproven charges" of discrimination. 110 Cong. Rec. 12,723 (1964).

*B. Section 4 Contravenes Congress's Restrictions on the Process for Investigating Title VII Violations*

On its face, Section 4 departs significantly from the process required by Title VII. Rather than instructing the EEOC to wait for a sworn charge before initiating an investigation, that section specifically directs investigations of "large law firms" for which charges concededly have not been filed with the Commission. See, *e.g.*, *Perkins Coie LLP v. U.S. Dep't of Justice*, 783 F. Supp.3d 105, 147 (D.D.C. 2025) ("Government counsel acknowledges that no such charge meeting statutory prerequisites has been filed against plaintiff."). Indeed, each of the relevant executive orders specifically calls out a particular large law firm as a target. And rather than respecting the requirement of confidentiality mandated by Congress, Section 4 broadcasts the existence of the investigation to the entire world.

Even if the face of Section 4 left any doubt about its conflict with the statutory procedures for EEOC investigations, the Commission Chair's implementation of that provision made the conflict clear. Without any sworn charge having been filed, Chair Lucas sent public letters to 20 named law firms—including two of the firms targeted by the executive orders challenged here—seeking extensive information from

10

them.  *See* Press Release, *EEOC Acting Chair Andrea Lucas Sends Letters to 20 Law Firms Requesting Information About DEI-Related Employment Practices* (Mar. 17, 2025), https://www.eeoc.gov/newsroom/eeoc-acting-chair-andrea-lucas-sends-letters-20-law-firms-requesting-information-about-dei.  Even though the Commission subsequently—well after the deadline Chair Lucas's requests set for response to them—took the position that the requests were "voluntary," see *Doe 1 v. E.E.O.C.*, No. 1:25-cv-01124-RBW (D.D.C., Feb. 9, 2026) (stipulation of dismissal), the extensive nature of the information requested was far more consistent with an investigation—which cannot precede the filing of a charge under Title VII—than with Defendants' post-hoc characterization of it as mere "informal information gathering" (Appellants' Br. 45).  By conducting that investigation without the filing of a charge, and by publicizing it through a press release, Chair Lucas violated the procedures Congress established.[3]

---

[3] There is no plausible argument that Section 4 and Chair Lucas's implementation of it concerned appropriate pre-charge inquiry.  True, Commissioners (including the Chair) can themselves file a charge (see 29 C.F.R. 1601.11(a)).  The Commission itself has stated that the information that triggers a Commissioner charge will typically either emerge from an ongoing investigation based on another charge or from an outside party.  See EEOC, *Commissioner Charges,*

Defendants attempt to rescue Section 4 by asserting that it means little—that it merely calls on the Commission to do something that "is *already* what the EEOC is supposed to be doing." Appellants' Br. 42 (emphasis in original). They rely on Title VII's general investigation and enforcement provisions in 42 U.S.C. § 2000e-5(a) and (b), as well as the reporting requirement in 42 U.S.C. § 2000e-4(e). See Appellants' Br. 42.

Those provisions provide no legal basis for Section 4. As to Section 2000e-5's general enforcement provisions, we have already shown that those provisions bar the Commission from engaging in any investigation in advance of the filing of a sworn charge. Yet no charge has been filed here. As to Section 2000e-4(e)'s reporting requirement, that provision empowers the Commission to provide general reports to the President and Congress "on the cause of and means of eliminating discrimination and such recommendations for further legislation as may appear desirable." But it contains no language purporting to circumvent the "'integrated, multistep enforcement procedure,'" *Shell Oil Co.*, 466 U.S.

---

https://www.eeoc.gov/commissioner-charges. But nothing in the EEOC's processes permits a Commissioner to conduct an investigation before a charge has been filed. See *id.* As with party charges, investigation comes *after* Commissioner charges, not before them. See 29 C.F.R. 1601.15(a).

at 62 (quoting *Occidental Life Insurance Co.*, 432 U.S. at 359), created by Section 2000e-5. It thus provides no authority for investigations of individual employers absent a charge. The district court correctly rejected Section 2000e-4 as a basis for the President's directives to the EEOC here. See *Perkins Coie LLP*, 783 F. Supp. 3d at 147.

Defendants also contend that Section 4 merely directs the EEOC "to investigate invidious discrimination by large law firms generally." Appellants' Br. 41. By this, they seem to mean that the President did not direct the Commission to investigate any specific firms. See Appellants' Br. 46 ("Notably, none of the law firms were singled out in Section 4 of the EOs. Section 4 only references large law firms generally.").

But that position is too clever by half. The relevant executive orders specifically call out particular large firms by name as having violated Title VII,[4] and they direct the EEOC to conduct investigations of large

---

[4] See Exec. Order 14,230 § 1, 90 Fed. Reg. at 11,781 ("In addition to undermining democratic elections, the integrity of our courts, and honest law enforcement, Perkins Coie racially discriminates against its own attorneys and staff, and against applicants."); Exec. Order 14,246 § 1, 90 Fed. Reg. at 13,997 (stating that "Jenner discriminates against its employees based on race and other categories prohibited by civil rights laws"); Exec. Order 14,250 § 1, 90 Fed. Reg. at 14,549 (stating that

law firms for violating the statute. As the district courts in the *Perkins Coie, Jenner & Block*, and *WilmerHale* cases specifically concluded, the message is clear and direct: The Commission should investigate the named law firms. See *Perkins Coie LLP*, 783 F. Supp. 3d at 160 ("Section 4, by implication, directs the EEOC to investigate plaintiff, as the government has conceded."); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 110 (D.D.C. 2025) (treating the executive order as having "singl[ed] Jenner out for investigation"); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 153 (D.D.C. 2025) ("§ 4 targets WilmerHale for investigation by the EEOC and the Attorney General."), amended, No. 25-cv-917 (RJL), 2025 WL 2105262 (D.D.C. June 26, 2025); see also *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 47 (D.D.C. 2025) ("While it is true that Susman has not yet received an inquiry from the Equal Employment Opportunity Commission, that is cold comfort given that the fact sheet accompanying the Order indicates that an investigation is forthcoming.").

"WilmerHale itself discriminates against its employees based on race and other categories prohibited by civil rights laws"); Exec. Order 14,263 § 1, 90 Fed. Reg. at 15,615 ("Susman itself engages in unlawful discrimination, including discrimination on the basis of race.").

Indeed, Defendants specifically acknowledged below that "Section 4 directs 'review [of] whether Perkins Coie and like employers are violating the civil rights laws.'" *Perkins Coie LLP*, 783 F. Supp. 3d at 160 (quoting the government's brief). Because the executive orders directed the EEOC to investigate these firms without the filing of a sworn, written charge, they contravened the processes Congress carefully crafted for enforcing Title VII.[5]

In addition, Defendants argue that the President's directives to the EEOC were merely a part of his supervision of the Executive Branch. Appellants' Br. 43. But even if the President has the same power to supervise an agency that Congress specifically made independent, like the EEOC, he would have no authority to disregard the procedural prerequisites Congress established for Title VII investigations. The Constitution gives the President the duty to "take Care that the Laws be faithfully executed." U.S. Const., Art. II § 3. Disregarding the provisions of Title VII creating specific investigative procedures directly violates

---

[5] In the event, and perhaps in part because of the litigation occasioned by the executive orders, Chair Lucas sent letters to only two of the orders' four targets. But that does not detract from the plain import of the orders themselves.

that duty. "To contend that the obligation imposed on the President to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the constitution, and entirely inadmissible." *Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 613 (1838).

It is well settled that the President may not, by executive order, override statutory limitations on the power of the government. See, *e.g.*, *Am. Forest Res. Council v. United States*, 77 F.4th 787, 797 (D.C. Cir. 2023) ("Even when the Congress gives substantial discretion to the President by statute, we presume it intends that the President heed the directives contained in other enactments."), cert. denied, 144 S. Ct. 1110 (2025); *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1338 (D.C. Cir. 1996) (invalidating executive order that conflicted with the National Labor Relations Act); *id.* at 1332 (rejecting position that "would permit the President to bypass scores of statutory limitations on governmental authority" by executive order). Even if the EEOC were not an independent agency, the President could not properly direct it to conduct investigations in violation of the processes Congress directed.

# CONCLUSION

The judgments of the district court should be affirmed.

Respectfully submitted,

/s/ Samuel R. Bagenstos
Samuel R. Bagenstos
Margo Schlanger
625 S. State St.
Ann Arbor, MI 48109
(857) 231-1663
sbagen@gmail.com
Counsel for *Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of the Federal Rules of Appellate Procedure and the D.C. Circuit Rules. The document contains 3,077 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This document complies with the typeface and type style requirements of the Federal Rules. The document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

<u>/s/ Samuel R. Bagenstos</u>
Counsel for *Amicus Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, the foregoing was filed and served upon all counsel of record electronically by filing a copy of the document with the Clerk through the Court's ECF system.

<div align="right">
/s/ Samuel R. Bagenstos  
Counsel for *Amici Curiae*
</div>